Appeal Nos. 24-5782, 24-5779

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

SHANE BEARD, HILDA PEREZ and N.P., a minor, by and through Guardian ad Litem, Donnie R. Cox,

*Plaintiffs/Appellants/Cross-Appellees,*

vs.

COUNTY OF STANISLAUS et al.

*Defendants/Appellees/Cross-Appellants*

_____

On Appeal From a Decision of the United States District Court, Eastern District of California, Case No. 1:21-cv-00841-JAM-CSK

_____

**APPELLEES' ANSWERING BRIEF**
**AND CROSS-APPELLANTS' OPENING BRIEF**

_____

PORTER SCOTT
A Professional Corporation
John R. Whitefleet, SBN 213301
2180 Harvard St. STE 500
Sacramento, CA 95815
Telephone: 916.929.1481
Facsimile: 916.927.3706
Attorneys for
Defendants/Appellees/Cross-Appellants
County of Stanislaus et al.

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................... 1

II.    STATEMENT OF JURISDICTION ....................................... 2

III.   SUMMARY OF THE ARGUMENTS................................... 2

IV.   STATEMENT OF THE FACTS AND PROCEDURE ......................... 4

     A. Facts ..................................................................................... 4

     B. Procedure ............................................................................. 6

V.     STANDARD OF REVIEW................................................... 9

VI.   ARGUMENT...................................................................... 9

     A. The Grant of Dismissal of Eric Anderson Should be Affirmed ......... 9

          1. Appellants failed to address the underlying merits of the Claims against him and thus dismissal may be affirmed on those grounds ..................................................... 9

          2. The underlying merits of the Fourth Amendment claim Against Eric Anderson ........................................... 10

          3. Plaintiffs separately failed to establish a Fourteenth Amendment violation.............................................. 12

          4. The granting of Qualified Immunity to Eric Anderson on Plaintiffs' Fourth and Fourteenth Amendment claims should be affirmed.................................................. 15

     B. The Dismissal of the Monell Claims Should be Affirmed ............... 17

          1. Plaintiffs do not raise/address the Monell claim alleged in Complaint of training or omitting information in warrants .... 17

2. The dismissal of the Monell Claim Based on "take one take all" was properly dismissed.............................................. 18

3. The exclusion of the claimed impeachment evidence was Not an abuse of discretion...................................................... 20

C. The District Court Did Not Abuse Its Discretion In Rejecting A Non-Local Hourly Rate Applied To Attorney Fees...................... 22

VII. CONCLUSION ...................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aguilera v. Baca,*
  510 F.3d 1161 (9th Cir.2007) ........................................................9

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011)......................................................................15

*Barjon v. Dalton,*
  132 F.3d 496 (9th Cir. 1997) ................................................. 24, 25

*Benavidez v. County of San Diego,*
  993 F.3d 1134 (9th Cir. 2021) .....................................................11

*Blum v. Stenson,*
  465 U.S. 886 (1984)......................................................................23

*Butler v. Elie,*
  281 F.3d 1014 (9th Cir.2002) ......................................................11

*City of Escondido, Cal. v. Emmonds,*
  586 U.S. 38 (2019)........................................................................15

*Connick v. Thomson,*
  563 US 51, 131 S. Ct. 1350 (2011)..............................................18

*Cox v. Dep't of Soc. & Health Servs.,*
  913 F .3d 831 (9th Cir. 2019) ......................................................13

*David v. Kaulukukui,*
  38 F.4th 792 (9th Cir. 2022) .......................................................11

*Duran v. City of Maywood,*
  221 F.3d 1127 (9th Cir. 2000) .....................................................22

*Est. of Osuna v. Cnty. of Stanislaus,*
  392 F. Supp. 3d 1162 (E.D. Cal. 2019) .......................................12

*Forro Precision, Inc. v. International Business Machines Corp.,*
  673 F.2d 1045 (9th Cir.1982) ........................................................9

*Gantt v. City of Los Angeles,*
  717 F.3d 702 (9th Cir. 2013) .......................................................13

*Gates v. Rowland,*
  39 F.3d 1439 (9th Cir. 1994) .......................................................23

*Gausvik v. Perez,*
  392 F.3d 1006 (9th Cir. 2004) .....................................................13

*Greenpeace, Inc. v. Stewart,*
  No. 17-35945, 2020 WL 2465321 (9th Cir. May 12, 2020) .........25

*Hall v. Bolger,*
  768 F.2d 1148 (9th Cir. 1985) .......................................................9

iii

*Henry A. v. Willden,*
   678 F.3d 991 (9th Cir. 2012) ......................................................14
*Hub v. Sun Valley Co.,*
   682 F.2d 776 (9th Cir. 1982) ................................................. 20, 21
*In re Hawaii Federal Asbestos Cases,*
   960 F.2d 806 (9th Cir.1992) .......................................................9
*Independent Towers of Washington v. State of Washington,*
   350 F.3d 925 (9th Cir. 2003) .....................................................10
*Ingram v. Oroudjian,*
   647 F.3d 925 (9th Cir. 2011) .....................................................23
*Int'l Union of Bricklayers & Allied Craftsman Loc. Union No. 20, AFL-CIO v.
   Martin Jaska, Inc.,*
   752 F.2d 1401 (9th Cir. 1985) ...................................................10
*J.P. ex rel. Balderas v. City of Porterville,*
   801 F.Supp.2d 965 (E.D. Cal. 2011) .........................................13
*Janes v. Wal–Mart Stores, Inc.,*
   279 F.3d 883 (9th Cir.2002) ........................................................9
*Malley v. Briggs,*
   475 U.S. 335 (1985)...................................................................15
*Montiel v. City of Los Angeles,*
   2 F.3d 335 (9th Cir. 1993) ...........................................................9
*Motley v. Parks,*
   432 F.3d 1072 (9th Cir. 2005) ...................................................16
*Navarro v. Block,*
   250 F.3d 729 (9th Cir. 2001) .....................................................18
*Nicholson v. City of Los Angeles,*
   935 F.3d 685 (9th Cir. 2019) .....................................................15
*Padgett v. Wright,*
   587 F.3d 983 (9th Cir. 2009) .....................................................10
*Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air,*
   478 U.S. 546 (1986)...................................................................24
*Perdue v. Kenny A.,*
   130 S. Ct. 1662 .........................................................................24
*Preschooler II v. Clark Cty. Sch. Bd. of Trustees,*
   479 F.3d 1175 (9th Cir. 2007) ...................................................11
*Rochin v. California,*
   14 342 U.S. 165 (1952)..............................................................14
*Rolex Watch USA Inc. v. Zeotec Diamonds Inc.,*
   No. CV 21-089- PSG (VBKx), 2021 WL 4786889 ......................24

iv

*Rosenbaum v. Washoe Cnty.*,
   663 F.3d 1071 (9th Cir. 2011) ................................................................ 14, 15
*Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*,
   628 F. App'x 527 (9th Cir. 2016) ....................................................................12
*Smith v. Brenoettsy*,
   158 F.3d 908 (5th Cir.1998) .............................................................................14
*Trevino v. Gates*,
   99 F.3d 911 (9th Cir. 1996) ..............................................................................18
*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) ................................................................................... 10, 17
*Van Ort v. Estate of Stanewich*,
   92 F.3d 831 (9th Cir.1996) ...............................................................................18
*Vazquez v. County of Kern*,
   949 F.3d 1153 (9th Cir. 2020) ..........................................................................11
*Woodrum v. Woodward Cnty.*,
   866 F.2d 1121 (9th Cir. 1989) ..........................................................................13

Statutes

28 U.S.C. § 1291 ................................................................................... 2, 4, 6
28 U.S.C. §§ 1331, 1343(a)(4), 1367(a) ...............................................................2
42 U.S.C. section 1983 .......................................................................................1

Rules

Rule 50(a) of the Federal Rules of Civil Procedure ................................... 2, 6, 9

4880-9861-0614, v. 1

**APPELLEES' ANSWERING BRIEF TO
PLAINTIFFS' APPEAL**

## I. <u>INTRODUCTION</u>

This case arises from the seizure of minor N.P., then 9 months old, pursuant to a protective custody warrant on July 19, 2019 obtained by Stanislaus County Social Worker April Cobbs, from parents Hilda Perez and Shane Beard, who were not married.   In 2019, Ms. Perez had six other children ages 5 to 21, five of them sired by Horatio Garcia.  Shane Beard did not live with Ms. Perez. The warrant laid out the lengthy history of social work referrals and findings of sexual play and abuse amongst her unsupervised children, as well as how Horatio Garcia and Hilda Perez were subjecting a 5 year old to sexual abuse allegations that had no medical or evidentiary support, which caused April Cobbs to conclude Ms. Perez did not provide adequate supervision for her children with appropriate boundaries.  This left the 9 month old at risk, which the juvenile court approved the warrant for removal.

Plaintiffs alleged the warrant, and subsequent Petitions and Initial Detention Report to the juvenile court contained omissions and misrepresentations, asserting claims for violation of the Fourth and Fourteenth Amendment pursuant to 42 U.S.C. section 1983 against April Cobbs, her supervisor Eric Anderson, the County of Stanislaus, and six other social workers.

1

At a jury trial, Plaintiff voluntarily dismissed five of the defendants without terms. In adjudicating a Rule 50(a) of the Federal Rules of Civil Procedure, the District Court dismissed all *Monell* claims, as well as Eric Anderson and the other social worker (not at issue in this appeal), leaving claims only against April Cobbs. The jury returned a verdict in favor of Plaintiffs. In post trial motions, the District Court, inter alia, awarded attorney fees and costs to Plaintiff. The parties cross-appealed.

Defendants now address the three limited issues raised by Plaintiffs in their Opening Brief in their appeal: (1) the dismissal of Eric Anderson and (2) dismissal of the Monell claims and (3) attorney fee award. Defendants submit the District Court did not err on those issues.

## II. <u>STATEMENT OF JURISDICTION</u>

The District Court had jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331, 1343(a)(4), 1367(a). This Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291 to review the amended final judgment.

## III. <u>SUMMARY OF THE ARGUMENTS</u>

Plaintiffs have raised three major contentions on appeal from the judgment: (1) the dismissal of Eric Anderson and (2) dismissal of the Monell claims and (3) the reduction by the District Court in the attorney fee award. Specifically, Plaintiffs argue that Eric Anderson should not been granted

qualified immunity because he was an "integral participant" by attending a Team Decision Meeting and reviewing the warrant. Plaintiffs next contend the Monell claims should not have been dismissed based on Plaintiffs' theory there was evidence of a "take-one take-all practice," including the exclusion of testimony from three witnesses. Lastly, Plaintiffs contend the District Court erred in reducing the claimed hourly rate for attorney fees of $1000/hour and $700/hour to $750/hour and $500/hour, respectively, based on the District Court's view of availability of local counsel in the area of civil rights.

Defendants counter that in dismissing supervisor Eric Anderson, the District Court correctly looked to the specific circumstances of the case, not merely the most abstract constitutional principle, and not only found no basis for liability on the merits, but also found no analogous case authorities establishing that a person in Mr. Anderson's position, who did not participate in the underlying investigation, only reviewed but did not draft the protective custody warrant, would understand he could be liable for judicial deception arising from the warrant's content.

Defendants further counter that in dismissing the Monell claims, the District Court properly found that the evidence did not fit the case: Plaintiffs' theory against the County of "take one take all" had no relation to the warrant which only removed one child in this case, and was not the moving force behind

3

obtaining the warrant. In addition, the evidence Plaintiffs sought to present did not hold up to evidentiary scrutiny.

Lastly, Defendants contend the District Court did not abuse its discretion in declining to apply the requested hourly rate, having found insufficient evidence -based on the court's own experience – that no local attorney experienced in civil would not have taken the job.

## IV. STATEMENT OF THE FACTS AND PROCEDURE

### A. Facts

In 2019, Ms. Perez had six other children ages 5 to 21, the father of five is Horatio Garcia. (See e.g. 3-SER-0595-0734) Shane Beard did not live with Ms. Perez.

Referrals of claimed issues are logged in the County's Children Protective Service ("CPS"), and include the outcome of each referral, what investigation was done and any conclusions. (3-SER-0595-0734) Eric Anderson, Ms. Cobb's supervisor, did not review the CPS referrals prior to reviewing the warrant. (EOR pp. 838-841) He reviewed the warrant for form and format purposes, and for accuracy based on what has been verbalized to him only. (Id) He had no other source of information other than what April Cobbs told him. (EOR p 841.) In that regard April Cobbs, the assigned Emergency Response to a referral of abuse, based on her own review of the CPS records and her own investigation, was

4

concerned that due to N.P's young age, 9 months old at the time, he was unable to protect and care for himself from risk of sexual abuse by the other children occurring in the home, and there was no plan of adequate supervision.

On July 15, 2019, a TDM (Team Decision Meeting) was held. Amongst others in attendance, Eric Anderson was present. The TDM was short: Ms. Perez asked for an attorney and "discovery" and when informed that the customary practice at TDMs is that they are informal and that attorneys are not present, Plaintiffs walked out of the meeting.

On July 19, 2019, Cobbs drafted and obtained a warrant for Protective Custody warrant, signed by Stanislaus Superior Court Judge John Freeland.[1] (EOR-0156-0162)

On July 19, 2019, SW Cobbs with the assistance of Law Enforcement executed the protective custody warrant. On July 23, 2019, Social Worker Granados and Gomez filed a dependency petition. On July 29, 2019, the Stanislaus County Juvenile Court issued an order of detention for N.P. (3-SER-0735-0737) On October 8, 2019, the Stanislaus County Juvenile Court adjudicated NP a ward of the court. On the same day, NP is physically returned to the custody of Plaintiffs as part of a reunification plan. On April 27, 2020, the Stanislaus County Juvenile Court terminated the dependency proceedings,

[1] The contents of the warrant are included in Defendants' Cross-appeal, below.

5

returning legal custody to the Plaintiffs.

**B.** **Procedure**

This matter proceeded to trial for 10 days in May 2024. Defendants submitted a trial brief which set forth the proposed legal procedure for the District Court to review the warrant versus what the jury should decide. (3-SER-0581-0594)

Following the close of evidence, Defendants moved for judgment under Rule 50(a). (2-SER-0153-0320) As to Eric Anderson, Defendants argued that mere review and approval of the warrant, without evidence that Mr. Anderson was aware of some facts that should have been in there and were not, or that there were some express misrepresentations either was insufficient to find him liable for judicial deception under the Fourth Amendment and/or qualified immunity would apply. (Id; Transcript day 8, pp 74-78, 97-98)

Defendant County also moved for judgment under Rule 50(a), arguing that there were express policies that required the warrant to be complete and not contain inaccuracies, then there was no causation in terms of *Monell* on that claim. (2-SER-0153-0320) Defendants also argued there was no evidence of prior warrants being submitted that had been found to have contained falsities or material omissions, and, therefore, plaintiff has failed to prove any practice with respect to that *Monell* claim regardless of the underlying claim in this case. (Id)

Defendants also argued any *Monell* claim based on alleged failure to train failed because the testimony has been abundant that these defendants in this case were trained on how to prepare a warrant and/or because they were, the alleged failure to prepare the warrant in compliance with that training, again, is not the moving force in terms of a practice or policy. (Id; Transcript day 8, pp 84-101)  As to the "take one take all", Defendants argued that theory was not sufficiently alleged in the complaint, was not applicable in this case because only one child was removed or there was insufficient evidence of such a practice or procedure, that would be the moving force in this case.

On the Monell issues, the District Court found a lack of causation.  (Id; Transcript day 8, pp 88-92; p.161)

> The take-one-take-all evidence, I think, is less than sufficient to allow the jury to make a finding that there was a practice. But even if I assume that there was a take-one-take-all practice used by Stanislaus County, *Monell* requires, again, that that practice be the moving force behind the alleged constitutional violation.

(Id; Transcript p. 161:17-22)   The District Court found no evidence of a lack of training. (Id; Transcript p.165:18-25)

As to Eric Anderson, the District Court analogized this case to *O'Neel versus City of Folsom,* noting that a social worker including a supervisor was entitled to rely on information from another social worker, such there is no

liability for a Fourth Amendment judicial deception claim. (id; Transcript day 8, pp 149-168):

> The issue of whether Mr. Anderson should also remain as a defendant on the first claim for relief, applying Judge Shubb's argument and finding and holding in *O'Neel*, I don't see that the law would permit me to allow the jury to return a verdict given that the evidence was exactly the same as what the evidence was in *O'Neel*, that the supervisor's role was to rely on the application that was prepared by the social worker, that the supervisor, Mr. Anderson, was not responsible for the preparation of the warrant that led to Noah's removal as in *O'Neel*, Mr. Anderson did not review the underlying evidence or documentation that went into the warrant, and, again, as Judge Shubb writes, "The Court is unaware of any authority holding that a supervisor must review the underlying evidence or documentation for a warrant application prepared by the subordinate."

(Id;Transcript day 8, p 164:9-23) The court asked for briefing on

qualified immunity. (Id. 165:3-6). Defendants filed a Supplemental Brief In

Support Of Motion For Judgment Pursuant To Rule 50(A) on Qualified Immunity

And Limitation Of Damages. (3-SER-0574-0580) That brief argued that where

the Fourth Amendment claim against Eric Anderson failed, so did the Fourteenth

Amendment familial association. (id). Defendants further briefed qualified

immunity. (id).

The District Court found insufficient facts to hold Eric Anderson liable

and/or he was entitled to qualified immunity. (1-SER-0002-0151; Transcript day

9 pp. 1-22).

## V. <u>STANDARD OF REVIEW</u>

This court conducts a *de novo* review of the district court's granting of judgment as a matter of law under Federal Rule of Civil Procedure 50(a). *Montiel v. City of Los Angeles*, 2 F.3d 335, 342 (9th Cir. 1993) citing *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 816 (9th Cir.1992). The court must "view conflicting evidence in the light most favorable to the non-movant, and determine whether the proffered result is the only reasonable conclusion." *Forro Precision, Inc. v. International Business Machines Corp*., 673 F.2d 1045, 1058 (9th Cir.1982).

The court also reviews *de novo* the district court's grant of qualified immunity, *Aguilera v. Baca*, 510 F.3d 1161, 1167 (9th Cir.2007). The court reviews for an abuse of discretion the district court's evidentiary rulings. *Janes v. Wal–Mart Stores, Inc*., 279 F.3d 883, 886 (9th Cir.2002). "A district court's award of attorney fees is generally subject to an abuse of discretion standard of review on appeal." *Hall v. Bolger*, 768 F.2d 1148, 1150 (9th Cir. 1985).

## VI. <u>ARGUMENT</u>

### A. THE GRANT OF DISMISSAL OF ERIC ANDERSON SHOULD BE AFFIRMED.

#### 1. Appellants failed to address the underlying merits of the claims against him and thus dismissal may be affirmed on those grounds.

Plaintiffs' argument appears to be limited to whether qualified immunity

to Eric Anderson applies, essentially arguing because the court denied qualified immunity as to April Cobbs, the same logic applies. (Appellants Opening Brief ("AOB"), p. 16). However, this argument fails to address that the District Court found the evidence against Eric Anderson insufficient of both a Fourth and Fourteenth Amendment violation, because he did not draft the warrant, did not set the investigation into motion, did not direct Ms. Cobb's in what to do or how to phrase the language in the warrant itself.

Appellate courts ordinarily will not consider matters on appeal that are not "specifically and distinctly" raised and argued in the opening brief. *TRW Inc. v. Andrews*, 534 U.S. 19, 34 (2001); *Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009); *Independent Towers of Washington v. State of Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Indeed, Appellant certainly does not appear to present any substantive argument on appeal that the dismissal of Eric Anderson on the merits was error. Accordingly, Appellant must be deemed to have waived or abandoned the issues of the lower court's ruling on said claim. *See Int'l Union of Bricklayers & Allied Craftsman Loc. Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985).

## 2. The underlying merits of the Fourth Amendment claim against Eric Anderson

Assuming arguendo the court does not find Plaintiffs waived this issue, Defendants submit the ruling of the District Court should be affirmed on the

10

merits of the Fourth Amendment claim.

"Although there is no pure respondeat superior liability under § 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them." *Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) quoting *Preschooler II v. Clark Cty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007) (internal quotation marks and citation omitted). "The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms." *Id*. at 1183 (internal quotation marks and citation omitted).

To prove a violation of the constitutional right under the Fourth or Fourteenth Amendments through judicial deception, a plaintiff must prove '(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision.' " *David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022)(quoting *Benavidez v. County of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021)). Plaintiffs "must make (1) a substantial showing of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred." *Butler v. Elie*, 281 F.3d 1014, 1024 (9th Cir.2002).

11

Here, there was no evidence against Eric Anderson that he initiated any action against Plaintiffs, directed April Cobbs to conduct her investigation in any particularly manner, nor directed her to include or omit any language in the warrant. Plaintiff fails to present any authority that mere attendance at a meeting to generally approve next steps and review of a warrant without having independent knowledge of its contents (he did not review the service logs prior to the warrant being obtained) is sufficient for supervisory liability. Therefore, on these grounds the dismissal of Eric Anderson should be affirmed.

**3. Plaintiffs separately failed to establish a Fourteenth Amendment violation**

Plaintiff also did not appear to separately address the Fourteenth Amendment claim, treating them as one and the same. Assuming arguendo the court reaches this issue, Defendants submit the dismissal should be affirmed.

To establish a familial association claim under the Fourteenth Amendment, Plaintiffs must show that (1) the liberty interest in having a relationship free from unwarranted state interference was violated; and (2) that the violation was committed though official conduct that "shocks the conscience." *Est. of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1176 (E.D. Cal. 2019).

This court has also held that recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation. *Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F.

App'x 527, 528 (9th Cir. 2016); see also *Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004); *J.P. ex rel. Balderas v. City of Porterville*, 801 F.Supp.2d 965, 988 (E.D. Cal. 2011) ("Where a claim for interference with familial relationships is integrally predicated upon, or entwined with, other conduct that is alleged to be unconstitutional, a finding that the other conduct was constitutional generally will preclude recovery for interference with familial relationship."). Insofar as Defendant submits Plaintiffs failed to establish their judicial deception claim, the Fourteenth Amendment claim fails as well.

In addition, Defendant submits Plaintiffs did not establish conscience shocking behavior in obtaining the warrant. A social worker's conduct shocks the conscience when he or she acts with "deliberate indifference," which means "conscious or reckless disregard of the consequences of one's acts or omissions." *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013). "To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions 'shock the conscience.' Conduct that 'shocks the conscience' is deliberate indifference to a known or so obvious as to imply knowledge of, danger." *Cox v. Dep't of Soc. & Health Servs.*, 913 F.3d 831, 837 (9th Cir. 2019). Negligent conduct does not shock the conscience. *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989). Rather, "[t]o amount to a violation of substantive due process, however, the harmful conduct must 'shock

13

the conscience' or offend the community's sense of fair play and decency.'"
*Rosenbaum v. Washoe Cnty*., 663 F.3d 1071, 1079 (9th Cir. 2011) (alterations
omitted) (quoting *Rochin v. California*, 14 342 U.S. 165, 172-73 (1952) (conduct
must violate the "decencies of civilized conduct").   Where conduct is based on
deliberate indifference, plaintiff must establish (1) a showing of an objectively
substantial risk of harm; and (2) a showing that the officials were subjectively
aware of facts from which an inference could be drawn that a substantial risk of
serious harm existed and (a) the official actually drew that inference or (b) that a
reasonable official would have been compelled to draw the inference." : (1) "an
objectively substantial risk of harm"; and (2) that a reasonable official would
have been compelled to draw an inference "that a substantial risk of serious harm
existed." *Henry A. v. Willden,* 678 F.3d 991, 1000-1001 (9th Cir. 2012); See also
*Smith v. Brenoettsy,* 158 F.3d 908,912 (5th Cir.1998) "the official must be both
aware of facts from which the inference could be drawn that a substantial risk of
serious harm exists, and he must also draw the inference." (citation omitted).

    Here, Plaintiffs did not elicit testimony, nor was there sufficient evidence
of, that Eric Anderson was aware that the warrant contained material omissions
or misrepresentations, and in fact would have been compelled to draw such an
inference by submitting the warrant as drafted.  Plaintiffs' argument that Eric
Anderson "did not simply rely on April Cobbs" or "knew that the warrant was

insufficient" (AOB p. 10) is unsupported by any citation to any factual record. Otherwise, the mere attendance as a supervisor at the Team Decision Meeting is insufficient to support the notion that he set anything in motion that was not already ongoing. Accordingly, Defendant submits Plaintiffs failed to establish the Fourteenth Amendment claim fails as well and dismissal of Eric Anderson should be affirmed.

**4.    The granting of Qualified Immunity to Eric Anderson on Plaintiffs' Fourth and Fourteenth Amendment claims should be affirmed.**

Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects `all but the plainly incompetent or those who knowingly violate the law.' *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011), quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1985). Whether a right is clearly established turns on whether it is "sufficiently definite that any reasonable official in the defendant's shoes would have understood he was violating it." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019). The plaintiff bears the burden of showing that the rights allegedly violated were clearly established. *Id*. at 1118. The Supreme Court has cautioned not to define the law at such a high level of generality in defining what is clearly established. See *City of Escondido, Cal. v. Emmonds*, 586 U.S. 38, 42 (2019).

Here, Plaintiffs do not present any authority that the law as to social worker

15

supervisors is clearly established. Rather, Plaintiffs seek to distinguish the facts in the analogous holding analyzed by the District Court in *O'Neel v. City of Folsom*, No. 2:21-cv-02403 WBS DB, 2024 U.S. Dist. LEXIS 71472 (E.D. Cal. Apr. 18, 2024) (granting qualified immunity to social worker supervisor on a claimed defective warrant). Plaintiffs miss the point. It is their burden to present some authority that a supervisor would have known the warrant for the 9 month old, based on alleged lack of supervision of other children in the home who exhibited sexual predator behavior, would violate the Constitution; indeed, Plaintiffs have not, as no such authority exists. The District Court in *O'Neel* reasoned that a social worker supervisor may rely on the information provided to him from a social worker subordinate akin to law enforcement. See *Id*. citing *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005), overruled on other grounds by *United States v. King*, 687 F.3d 1189 (9th Cir. 2012) ("law enforcement officers are generally entitled to rely on information obtained from fellow law enforcement officers"). Plaintiffs fail to address this underlying premise, which the District Court in this case also applied.

Otherwise, there is no authority that dictates/obligates a social-worker supervisor to independently verify each material fact in the warrant drafted by a subordinate social worker (both who have Masters degrees). The Constitution does not require as much. Accordingly, the finding of qualified immunity should

16

be affirmed.

## B. THE DISMISSAL OF THE MONELL CLAIMS SHOULD BE AFFIRMED.

### 1. Plaintiffs do not raise/address the Monell claim alleged in Complaint of training or omitting information in warrants.

Plaintiffs' complaint at Paragraphs 29-34, sets forth various conclusory allegations that the County has a policy or unwritten practice in terms of falsities or omissions in warrants (Paragraph 29, EOR0067), removals without legal justification (Paragraph 30, EOR0067-68); the "take one take all", referring to several unrelated lawsuits – the Santor, Nunes and Ford cases. (Paragraph 31, EOR0068); manipulating reports (Paragraph 32, EOR0068-0069); inadequate investigations for dependency petitions (Paragraph 33, EOR0069); and a failure to train (Paragraph 34, EOR0069-0070).

On appeal, Plaintiffs do not address any of these claims, save for the "take one take all" basis. Insofar as Plaintiffs have not "specifically and distinctly" raise or argue in the opening brief any of the issues on the Monell claims as set forth in Paragraphs 29, 30, 32, 33 or 34, those are waived and/or not subject to review. See *TRW Inc., supra,* 534 U.S. at 34. In other words, Plaintiffs do not raise or argue the dismissal of the *Monell* claims based on a policy or unwritten practice in terms of falsities or omissions in warrants, removals without legal justification, manipulating reports, inadequate investigations for dependency

17

petitions, or a failure to train was improper.  Accordingly, the court should otherwise affirm the dismissal of the *Monell* claims on those grounds.

### 2. The dismissal of the Monell claim based on "take one take all" was properly dismissed.

To establish Monell-type liability, Plaintiffs must show that (1) a deprivation of a constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996).  In the absence of an express policy, liability must be founded upon practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), holding modified on other grounds by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).  In addition, those other instances must bear sufficient resemblance to the fact pattern at issue to be pertinent. See e.g. *Connick v. Thomson*, 563 US 51, 131 S. Ct. 1350,1360 (2011) (prior *Brady* violations by attorneys in a District Attorney's Office were not sufficient to put the District Attorney on notice of need for further training because those prior *Brady* violations were not similar to the Brady violation at issue in the case before the court); *Trevino*, 99 F.3d at 920 ("When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to

4880-9861-0614, v. 1

constitute an actionable policy or custom.").

Here, Plaintiffs do not rely on express policy, but claim a practice of "take one take all" in terms of removal of children. Plaintiffs argue the dismissal of the *Monell* claim based was error. Not so.

Defendants first submit that there is a factual disconnect between that "take one take all" theory and what actually happened – Hilda Perez had six children, but only one was removed by way of the protective custody warrant. Accordingly, Plaintiffs' claimed theory is really irrelevant to the facts of the case such that dismissal was proper.

Second, Plaintiffs take issue with the District Court finding that even assuming a practice, there was no evidence such was the moving force behind April Cobb's obtainment of the warrant. In support, Plaintiffs argue the District Court essentially failed to account for a surreptitiously-recorded statement of former social worker Shynelle Jones,[2] who was not involved in obtaining the warrant for N.P.. Notwithstanding that the record on appeal does not support Plaintiffs, Ms. Jones' spontaneous statement is hardly evidence of a policy, nor a statement sufficient to establish long standing practice. Otherwise, there was no testimony from Ms. Cobbs, for example, agreed with Ms. Jones' statement that

---

[2] Defendants object and move to strike EOB933-946, a transcript that was not actually admitted into evidence during trial.

would create a causal connection to the warrant sought and obtained. Even so, as the District Court noted "[t]he primary moving force being the incomplete, inaccurate warrant and the, as the social workers put it, the "lack of cooperation" from Mr. Beard" (EOR 916 lines 2-9). Accordingly, this court should affirm the dismissal of the Monell claims.

### 3. The exclusion of the claimed impeachment evidence was not an abuse of discretion

Plaintiffs argue the District Court abused its discretion by not allowing Plaintiffs to impeach Mr. Anderson on the "take-one-take-all" policy by reading his prior deposition testimony in the case of *Nunes, et al. v. County of Stanislaus*, 1:17-cv-00633, or to read non-party testimony of Juan Perez from *Santor et al. v. County of Stanislaus et al.*, 1:19-cv-01593. The District Court reasoned the factual scenarios were substantially different from this case, and the parties were different.

Plaintiffs ignore the first finding, focusing solely on the argument of "substantial identity of issues" but fails to establish same.

"The decision whether to admit a deposition from a prior lawsuit is vested in the district court's sound discretion." *Hub v. Sun Valley Co.*, 682 F.2d 776, 777-78 (9th Cir. 1982) (affirming denial of admission) (citations omitted) "Because the underlying objective is efficiency at trial without jeopardizing accurate fact finding, the district court is usually in the best position to decide

20

whether a prior deposition should be admitted. If the district court applies the correct legal standards, we will not normally substitute our judgment on the admissibility of a prior deposition." *Id.*

Here, the correct standard was applied. As a threshold matter, Defendants submit the issue in regards to Mr. Anderson is not really the admission of the prior testimony but whether the prior testimony was proper impeachment or not. That of course depends on how the questions were posed and what the answers were. Plaintiffs fail to argue that context. In fact, Mr. Anderson's answer in the *Nunes* case was about whether there are typically more than one child being in a safety plan (EOB 175). Indeed, the *Nunes* matter was not about a removal at all, but merely a safety plan. Thus, the exclusion of Mr. Anderson's testimony from the *Nunez* case was not an abuse of discretion.

In addition, the *Santor* case involved the immediate warrantless removal of a 23-month-old after his 5-month-old sibling had suddenly died while in bed with his mother. (EOR pp. 166-167) Mr. Perez was an Emergency Response worker, but his testimony about "take one take all" had no timeframes, no context of the removals, nor whether any of said removals were pursuant to a warrant. No foundation was ever laid in the prior testimony that made is admissible in this case, notwithstanding Mr. Perez was not a policy maker or 30(b)(6) witness. Accordingly, there is no substantial identity of issue and therefore there was no

abuse of discretion in not allowing such impeachment and/or introduction of such prior testimony. For this additional reason, there was no prejudice to Plaintiffs in putting on their Monell case and dismissal should be affirmed.

Alternatively, the district Court did not abuse its discretion because to introduce evidence[3] from other cases runs the risk of trial devolving into mini-trials about those other cases. See e.g. *Duran v. City of Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000) (concluding that it was not an error for the district court to exclude evidence because it would require a "full blown trial within this trial" and "the marginal value of the evidence [was] substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury, or by consideration of undue delay, [and] waste of time.") For this additional reason, there was no prejudice to Plaintiffs in putting on their Monell case and dismissal should be affirmed.

## C.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REJECTING A NON-LOCAL HOURLY RATE APPLIED TO ATTORNEY FEES

By way of this appeal, counsel for Plaintiffs next seeks to have this Court award him an hourly rate of $1000, and his colleague a $700 hourly rate. Defendants submit those rates dwarfs the prevailing market rate of the most

---

[3]Plaintiffs include multiple deposition transcripts (EOB529-830) but only a portion of said depositions were played at trial. ·

22

qualified Eastern District of California civil rights attorneys, and is well above the $350/hr awarded to counsel in 2023 in connection with motion practice (while the matter was still venued in Fresno).

Plaintiffs take issue with the finding by the District Court that Plaintiffs did not demonstrated that local counsel was unavailable or unwilling to try their case. On May 24, 2021, Plaintiffs filed suit, originally in the Fresno as before the Eastern District of California decided to change the venue rules, and moved venue of Stanislaus County cases to Sacramento.

Reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Ninth Circuit has held that " '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.' " *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (citation omitted). Generally, the relevant legal community for purposes of determining a reasonable hourly rate is the forum district. *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994) Moreover, the party requesting fees bears the burden of producing "satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984).

23

"If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, No. CV 21-089- PSG (VBKx), 2021 WL 4786889, at *2 (C.D. Cal. Aug. 24, 2021). At the United States Supreme Court reiterated, a "reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys . . . Section 1988's aim to enforce covered civil rights statutes, not to provide a 'form of economic relief to improve the financial lot of attorneys.'" *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672-73 (citing *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986)).

Consideration of rates outside the forum district may be appropriate only "where local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to hand properly case." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

Here, Plaintiffs did not satisfy either of the exceptions that might otherwise entitle counsel for Plaintiffs to nonlocal rates. Plaintiffs have not demonstrated that local counsel were unwilling to handle the case. There is no indication that Mr. Beard or Ms. Perez sought local counsel experienced in civil rights cases as

24

being was unwilling to represent Plaintiffs, only that the "dozen" unnamed attorneys that Mr. Beard contacted did not "handle anything to do with civil rights violations in the context of removals by CPS, or having anything to do with the juvenile dependency system." Such implies Mr. Beard was looking for an attorney to handle the juvenile dependency matter, not civil rights litigation. Plaintiffs retained Mr. Powell after Mr. Powell was referred to Plaintiffs during the underlying juvenile proceeding. Finally, Plaintiffs have not stated that other qualified local counsel were approached and declined.

While Plaintiffs' proffered evidence in the numerous declarations disclaiming local counsel exists that "lack the degree of experience, expertise, or specialization required to handle properly the case." (*Barjon*, 132 F.3d at 500 (citation omitted)) the declarations provided in support of the Motion demonstrate essentially the opposite. For instance, Dennis Ingols, as his declaration comprehensively details, possesses the experience and expertise since being an associate with Mr. Powell and opening his own firm in 2016. (See EOR 250-252). Donnie Cox also possesses the qualifications to try a civil rights case to verdict. These cite to Shawn A. McMillan, Sarah Marinho, Dennis Ingols, Stephen D. Daner, and Evan D. Pullman, none of which stated that they could not take the case and/or refused to take the case.

Plaintiffs' citation to *Greenpeace, Inc. v. Stewart*, No. 17-35945, 2020 WL

2465321, at *3 (9th Cir. May 12, 2020) does not assist them, where there was apparent (but not discussed) evidence of unavailable counsel in the area.

Otherwise, Plaintiff has not met his burden to demonstrate that local counsel unwilling or unable to represent him in this civil rights action against Defendants. Indeed, Plaintiff's own evidence establishes that several qualified practitioners were capable of undertaking the representation. Mr. Powell and Mr. Park are therefore not entitled to non-local rates. Insofar as Defendants also appeal the District Court's application of $750/hour and $500/hour, such is addressed below.

## VII. **CONCLUSION**

For all the foregoing reasons, the judgment should be affirmed.

# DEFENDANTS' CROSS-APPEAL

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................... 27

II.    STATEMENT OF JURISDICTION ................................... 27

III.   SUMMARY OF THE ARGUMENTS ................................. 27

IV.   STATEMENT OF THE FACTS AND PROCEDURE ....................... 28

    A. The District Court Erred In Not Determining The Legal
       Issues Of Materiality Or Probable Cause Of The Warrant
       Prior To The Submission ................................. 34

       1. Judicial Deception under the Fourth and Fourteenth
          Amendment ........................................... 35

       2. Given the above limitations on warrants, it is the court that
          determines if the alleged false statement or omission is
          material, then determine probable cause ................. 36

       3. Without resolution of the materiality issues prior to the
          submission of the jury, such effectively precluded
          Defendants from formulating jury questions to determine
          scienter ............................................. 41

       4. The District Court did not determine the legal issue of
          probable cause in the warrant ......................... 42

       5. There was insufficient evidence of materials omissions and
          misrepresentations that rendered the warrant without
          probable cause ....................................... 42

       6. Defendant Cobbs was entitled to a new trial on the Fourteenth
          Amendment claim because the jury failed to follow the law
          And/or the evidence ................................... 44

i

B. April Cobbs Is Entitled To Qualified Immunity ................................ 45

C. Defendant Cobbs Is Entitled To Immunity As To The State
    Law Claim For False Imprisonment Under California Government
    Code Section 821.6 ........................................................................... 48

D. It Was Prejudicial Error To Not Instruct On Limitation of
    Damages ........................................................................................... 50

E. Prevailing Dismissed Defendants Should Have Had Judgment
    And Costs In Their Favor ................................................................. 52

F. The Court Erred In Awarding 750/500 As Hourly Rate For
    Attorney Fees In Eastern District of California .............................. 52

G. Defendants Submit It Was An Abuse Of Discretion To Reduce
    The Lodestar By Only 10% ............................................................. 55

STATEMENT OF RELATED CASES .......................................................... 58

CERTIFICATE OF COMPLIANCE REGARDING BRIEF LENGTH ........ 59

CERTIFICATE FOR BRIEF IN PAPER FORMAT ..................................... 60

CERTIFICATE OF SERVICE ....................................................................... 61

# TABLE OF AUTHORITIES

Page(s)

Cases

*Asgari v. City of Los Angeles*,
  15 Cal.4th 744 (1997) ...................................................................49

*Baldwin v. Placer County*,
  418 F.3d 966 (9th Cir.2005) ................................................... 37, 42

*Barjon v. Dalton*,
  132 F.3d 496 (9th Cir. 1997) ........................................................54

*Beard v. Sheet Metal Workers Union, Local 150*,
  908 F.2d 474 (9th Cir. 1990) .......................................................52

*Beltran v. Santa Clara County*,
  389 Fed.Appx. 679 (9th Cir. 2010)..............................................35

*Blum v. Stenson*,
  465 U.S. 886 (1984)................................................................ 52, 53

*Bocanegra v. Jakubowski*,
  241 Cal.App.4th 848 (2015) ........................................................48

*Butler v. Elle*,
  281 F. 3d 1014 (9th Cir. 2002) .............................................. 36, 41

*Caballero v. City of Concord*,
  956 F.2d 204 (9th Cir. 1992) .......................................................50

*Carey v. Piphus*,
  435 U.S. 247 (1948)......................................................................51

*Chism v. Washington State*,
  661 F.3d 380 (9th Cir. 2011) .......................................................36

*City of Escondido, Cal. v. Emmonds*,
  586 U.S. 38 (2019)........................................................................47

*Costanich v. Dep't of Soc. & Health Servs.*,
  627 F.3d 1101 (9th Cir. 2010) .....................................................47

*Coursen v. A.H. Robins Co., Inc.*,
  764 F.2d 1329 (9th Cir.1985) ......................................................50

*David v. Kaulukukui*,
  38 F.4th 792 (9th Cir. 2022) ........................................................36

*Devereaux v. Perez*,
  218 F.3d 1045 (9th Cir. 2000) .....................................................46

*Ewing v. City of Stockton*,
  588 F. 3d 1218 (9th Cir. 2009) .............................................. 35, 45

*Franks v. Delaware*,
  438 U.S. 154 (1978)......................................................................41

iii

*Garcia v. FCA US LLC*,
  (E.D. Cal. Mar. 7, 2018) ............................................................54
*Gates v. Rowland*,
  39 F.3d 1439 (9th Cir. 1994) ....................................................53
*Greene v. Camreta*,
  588 F.3d 1011 (9th Cir. 2009) ................................... 36, 46, 47
*Greenstreet v. County of San Bernardino*,
  41 F.3d 1306 (9th Cir.1994) .....................................................37
*Hamilton v. Firestone Tire & Rubber Co., Inc.*,
  679 F.2d 143 (9th Cir. 1982) ....................................................52
*Hardwick v. Cnty. of Orange*,
  844 F.3d 1112 (9th Cir. 2017) ..................................................47
*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ........................................................56
*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...................................................................56
*In re Taco Bell Wage & Hour Actions*,
  222 F. Supp. 3d 813 (E.D. Cal. 2016) ......................................54
*Ingram v. Oroudjian*,
  647 F.3d 925 (9th Cir. 2011) ............................................. 53, 54
*Jacqueline T. v. Alameda Cty. Child Protective Servs.*,
  155 Cal. App. 4th 456 (2007) ...................................................48
*KRL v. Moore*,
  384 F. 3d 1105 (9th Cir. 2004) .................................................36
*Lau v. Glendora Unified School Dist.*,
  792 F.2d 929 (9th Cir. 1986) ....................................................52
*Leon v. County of Riverside*,
  309 Cal.Rptr.3d 682, 530 P.3d 1093 (2023)..............................49
*Liston v. County of Riverside*,
  120 F.3d 965 (9th Cir.1997) .............................................. 37, 42
*Lombardi v. City of El Cajon*,
  117 F.3d 1117 (9th Cir. 1997) ........................................... 35, 43
*Lytle v. Carl*,
  382 F.3d 978 (9th Cir. 2004) ....................................................56
*Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc.*,
  (E.D. Cal. Apr. 19, 2018).........................................................55
*Millender v. Cnty. of Los Angeles*,
  (C.D. Cal. Mar. 15, 2007)........................................................35
*Motley v. Parks*,
  432 F.3d 1072 (9th Cir. 2005) ..................................................46

iv

*O'Neel v. City of Folsom*,
(E.D. Cal. Apr. 18, 2024) ................................................ 36, 45, 46

*Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*,
478 U.S. 546 (1986) ..........................................................54

*Perdue v. Kenny A.*,
130 S. Ct. 1662 ................................................................54

*Phillips 66 Co. v. California Pride, Inc.*,
(E.D. Cal. Jul. 6, 2017) ...................................................55

*Roach v. Tate Publ'g & Enters.*,
(E.D. Cal. Nov. 3, 2017) ..................................................55

*Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*,
(C.D. Cal. Aug. 24, 2021) ................................................53

*Sanchez w. Frito-Lay, Inc.*,
(E.D. Cal. Aug. 5, 2015) ..................................................55

*Scanlon v. Cnty. of Los Angeles*,
92 F.4th 781 (9th Cir. 2024) ............................................45

*Scannell v. Cnty. Of Riverside*,
152 Cal. App. 3d 596 (1984) ...........................................50

*Sullivan v. County of Los Angeles*,
12 Cal.3d 710 (1974) .......................................................49

*Taylor v. Chiang*,
(E.D. Cal. Feb. 23, 2009) .................................................53

*TBK Bank, SSB v. Singh*,
(E.D. Cal. Feb. 23, 2018) .................................................55

*United States v. Adler*,
879 F.2d 491 (9th Cir.1988) ............................................50

*United States v. Alaimalo*,
313 F.3d 1188 (9th Cir.2002) ..........................................37

*United States v. Alvarez*,
358 F.3d 1194 (9th Cir.2004) ..........................................37

*United States v. Bertrand*,
926 F.2d 838 (9th Cir.1991) ............................................37

*United States v. Burnes*,
816 F.2d 1354 (9th Cir.1987) ..................................... 35, 43

*US v. Colkley*,
899 F. 2d 297 (4th Cir. 1990) ...................................... 35, 43

*Watson v. City of San Jose*,
800 F.3d 1135 (9th Cir. 2015) ..................................... 50, 51

*Webb v. Sloan*,
330 F.3d 1158 (9th Cir. 2003) ..........................................56

v

*Williams v. Cnty. of Monterey*,
  (N.D. Cal. May 17, 2021) ...............................................................51

    Statutes

28 U.S.C. § 1291............................................................... 27, 29
CALIFORNIA GOVERNMENT CODE SECTION 821.6 ................. 48, 49, 50

    Rules

Fed. R. App. P. 32(a)(7)(C) ................................................59
Ninth Circuit Rule 28.........................................................58
Rule 50(a)..........................................................................52
Rule 50(a) & (b) of the Federal Rules of Civil Procedure ................................45

# I.    INTRODUCTION

Defendants appeal from the judgment in several respects.  Defendants submit a larger legal issue is at play - whether a protective custody warrant meets the probable cause standard is a legal issue for the court to decide, after a jury determines if the affiant had the requisite scienter of the omission or misrepresentation.  The District Court improperly skipped its role prior to  sending the whole matter to the jury. Defendants also submit April Cobbs is entitled to qualified immunity.

Defendants also submit the District Court erred in declining to find the subsequent juvenile court order holding N.P. over after removal, cuts off damages.

As for the additional post trial motions, dismissed defendants submit the District Court erred in not finding them prevailing parties.  Lastly, Defendants submit the District Court erred in not reducing attorney fees in light of the trial results.    Defendants respectfully requests this court reverse and remand the judgment pursuant to the Defendants' contentions in the cross-appeal.

## II. STATEMENT OF JURISDICTION

This Court of Appeals has jurisdiction to review the District Court's amended final judgment through a duly noticed cross-appeal pursuant to 28 U.S.C. § 1291.

## III. SUMMARY OF THE ARGUMENT

First, the District Court erred in declining to determine two distinct legal issues: whether any claimed omissions and misrepresentations were material to the

probable cause determination, and whether the warrant was nonetheless supported by probable cause. As a result, there was never a finding of whether April Cobbs had the requisite scienter for any purported omissions or misrepresentations. Concurrently, there was insufficient evidence to establish a lack of probable cause.

Second, the District Court also erred in declining to find the juvenile court orders cuts off damages. Third, Defendant Cobbs submit the District Court erred in denying the motions under Rules 50(b) and 59 by denying the merits of the case and/or qualified immunity. Fourth, dismissed defendants submit the District Court erred in not finding the prevailing parties and thus denying them costs. Fifth, Defendants submit the District Court erred in only reducing the attorney fee award by 10% after dismissal of multiple defendants and claims.

## IV. STATEMENT OF THE FACTS AND PROCEDURE

April Cobbs was a social worker in Emergency Response with the Stanislaus County since 2017, having obtained an undergraduate degree and then a master's degree. (2-SER-0324-0325) The purpose of her job was to conduct investigations in the best interests of the children. (2-SER-0328) She went through training that warrants should not omit information and falsify information. (2-SER-0328-0334) She also understood removing a child from their family is very traumatic in itself, and thus she would attempt to use any other resources and work with families to mitigate the children being removed. (2-SER-0336) When she drafted the warrant,

28

she was just trying to create a picture of the overall history and the repeated safety concern within the Perez' family dating back from 2011, and there was a lack of supervision and there was a safety concern that had yet to be mitigated, where she relied on your fellow social workers in terms of the context and the content of the prior service logs. (2-SER-0365)

Those service logs show that past referrals to Children Protective Services ("CPS), of which there was many, initially involved Ms. Perez' mental health. (3-SER-0592-0731) Later, there were claims that her son AS had been sexually abused by his father, having reported same to the police and subjecting AS to numerous interviews and medical appointments. (id) No allegation of abuse to AS were substantiated.[1]

On July 12, 2019, the County received a referral that the minor, A.S.Jr. age 5, reported that while at his mother's, minor W. age 8, who identifies as transgendered, showers with him, and touched his penis. (3-SER-0595-0734)On that same day, Social Worker April Cobbs completed a home visit to discuss the allegations with

---

[1] There were sustained finding of neglect from when Ms. Perez's nephew molested two of her children. (3-SER-0595-0734; Exhibit 22 and 23). There was also a referral generated when AS Jr broke his arm, Ms. Perez claimed the children witnesses it but none of them did; rather it was reported the older children are often left in charge. (Id; Ex 27, 33, 37)

Ms. Perez and Mr. Beard. (Id) Ms. Cobbs understood that Ms. Perez denied knowing

any inappropriate touching the shower, but admitted an incident that occurred where

AS and CG were playing a game called "sleepy sleepy" where one person plays

asleep and the other touches the person in inappropriate places to get them to wake

up. (Id). A.S. told CG to touch his "ding a ling". (id) During this investigation, CG

appeared to admit to touching AS inappropriately while playing in a fort made out

of blankets. It was Ms. Cobb's impression that Ms. Perez appeared to minimize the

situation, and that Shane Beard had been aware but did not report it. (id)  In the

warrant, Defendant Cobbs stated[2] the following:

> According to Case Management Systems (CMS) there have been 52
> referrals and/or reports regarding concerns since 12-15-2011. The
> common themes in these episodes and reports has been sexual abuse to
> Ms. Perez's children or relatives, concerns pertaining to Ms. Perez's
> mental health, along with some self-verbalization by Ms. Perez that she
> wanted to kill herself. Since 2011, there have been no open cases in
> which to try to remedy some of the concerns being observed by
> reporters or Child Protective Services. Throughout the years, there
> appears to be times with a heavy flow of reports, then seemingly a
> vacuum in which there are no reports for a period of time and then
> followed by significant reporting.
>
> Since the beginning of the year in 2019 there has been six sexual abuse
> allegations pertaining to A[] allegedly being perpetrated on by his
> father during a visit. All of these reports and or referrals have not been
> confirmed by CPS and medical findings suggest, no physical signs of
> sexual abuse to the child, however the child allegedly has told Ms.
> Perez (mother) that these things are happening. Based on the amount of
> information received from hospital records from different providers, as
> far as Valley Children's Hospital located in Madera, it is difficult to tell

---

[2] Minors names and dates of birth have been redacted using brackets.

how many times he has been taken to the doctor for alleged sexual abuse. What appears to be clear from the medical records is that although Ms. Perez lives in Patterson, she has taken her child to numerous other medical offices for exams and assessments of sexual abuse, only to be rebuffed that there is no sexual abuse evidence in regards to physical signs.

Based on the differing locations and the numerous different doctors, it appears that Ms. Perez is simply unwilling to accept medical information that suggests that her son has not been abused sexually.

On July 11th, I received another referral of many alluding to or concerned about sexual abuse. The concern listed in this referral allegation was that A[] (age 5) had again been exposed to another hospital visit. There again were no signs of sexual abuse physically speaking. At this juncture, this agency and Social Worker Cobbs became concerned that A[] is being forced into exams, questioning and ongoing sexual abuse assessments conducted by numerous people and facilities based on Ms. Perez's perception that he has been abused, despite information to the contrary. According to CMS, at this juncture, A[], minor, has also had two CAIRE's (Child abuse interviews, referrals and exams). The CAIRE center is a special entity specifically for sexual abuse victims. The victims are interviewed by a forensically sexual abuse interviewer and the environment is child friendly. The center is also audio and videotaped during these episodes. During A[]'s interviews, like the medical findings, there were no disclosures or information that supported sexual abuse.

At current time, I also investigated more referrals regarding Ms. Perez regarding sexual abuse allegations. During this time, it was alleged that A[] was being inappropriately touched by his brother W[]. During this investigation, SW Cobbs was made aware of an incident involving A[]being touched inappropriately by her older son C[] while playing a game in a fort made out of blankets. Ms. Perez appeared to minimize the allegations and made no efforts to make the appropriate reports regarding this allegation. Additionally, C[], a minor, admitted that he touched A[] inappropriately. He reported that A[] asked him to touch his "ding a ling" and he knew that it was wrong, but he continued to do so. Ms. Perez appeared to have inconsistent stories regarding the aforementioned incident and reported that she could not recall which

child made the disclosures. It appears that Ms. Perez does not provide adequate supervision for her children as evidenced by her not knowing what her children were doing in this fort which allowed C[] and A[] to have inappropriate boundaries. Additionally, this Social Worker would like to note during this investigation Ms. Perez appeared to be in a gaze and spoke in a soft tone almost in a whisper. At the present time, this was the family's 9th CMS referral regarding sexual abuse allegations within the past seven months. Additionally, Ms. Perez's fiancée Shane Beard (DOB []), was aware of the agency's concerns but failed to be a protective parent, and has made no new plans to remedy the issue.

In an attempt to remedy some or most of the concerns pertaining to sexual abuse, and primarily to mother's seeming mental illness, services were offered in regards to Family Maintenance, however this was never cleared up or hashed out as to whether she would or would not engage. Due to limited engagement and difficulty in communicating with Ms. Perez, a TDM (Team Decision Meeting) was scheduled to engage with the family and to hopefully discuss the concerns of the referrals, including what appears to be mother's mental health limitations, sexual abuse, and concerns of lack of supervision. As we sat down to begin the meeting and the discussion, I observed Ms. Perez to be quiet and soft-spoken but when she began to speak, her affect was flat and her requests were confusing to this social worker. Before the meeting began, Ms. Perez stated that she wanted an "attorney and to have discovery." Community Services Agency explained to Ms. Perez that at this juncture, attorneys and discovery do not apply and that the meeting was simply a meeting in regards to the concerns and how the family and the agency can find common ground or an agreement to ameliorate the concerns and to also not include court action if possible. When asked any questions, Ms. Perez became robotic in her responses and stated at least 3 more times; I want an attorney and discovery." Unfortunately at this juncture my supervisor asked Ms. Perez if she wanted the meeting or not and she did not want the meeting. Due to this, my supervisor advised Ms. Perez that the information that we have is concerning and a decision will have to be made by the agency without her input in regards to where her referral/case will need to go to be best addressed. Unfortunately, without family cooperation and engagement, voluntary services cannot be used to remedy the current issue.

Community Services Agency is requesting protective custody be taken

of baby N[], aged 9 months, from the care of Ms. Perez. Protective
Custody is being requested for baby N[] due to his young age, and
inability to protect and care for himself from risk of ongoing,
unmitigated sexual abuse occurring in the home. Ms. Perez has four
other minors in the home but their respective birth fathers have filed for
full custody mitigating safety concerns for our agency. Ms. Perez and
Mr. Beard have not demonstrated a protective capacity for Community
Services Agency at this time.

Based on my training and experience and the aforementioned
information, I am concerned that in fact, the mother, despite no physical
evidence to support her concerns, is subjecting A[] to numerous sexual
abuse assessments and evaluations. CAIRE interviews also did not
uncover supporting information of sexual abuse. Ms. Perez and Mr.
Beard were unwilling to engage in voluntary services, although offered
and explained numerous times, therefore a higher level of intervention
is necessary. I am requesting that a protective custody order be signed
for the physical removal of baby N[] aged 9 months from the care of
Ms. Perez and Mr. Beard. I am concerned that baby N[] is at risk for
emotional abuse, general neglect, and sexual abuse due to his
vulnerable age and ambulatory capacity.

(EOR 0159-0162). In their trial brief, Defendants argued that materiality and

probable cause were legal issues the court should decide. (3-SER-0578-0591) After

the close of evidence, Defendants moved under Rule 50(a) for judgment as a matter

of law. (See generally 1-SER-0002-0151). In doing so, Defendants argued qualified

immunity for April Cobbs and that damages should be limited based on the

underlying juvenile court having held N.P. over after removal, as well as damages

should be limited or were not established as awarded to NP. (Id)

After the verdict, Defendants also moved for renewed judgment under

Rule 50(b) (3-SER-0557-0571) and new trial under Rule 59 (3-SER-0544-0556),

arguing Defendant Cobbs was entitled to qualified immunity or new trial because materiality and probable cause were legal issues the court should have decided, the evidence was insufficient as well as damages should be limited or were not established. (See generally 3-SER-0557-0571). The District Court denied these grounds now raised on appeal.

 The dismissed Defendants also argued they were entitled to costs as prevailing parties, which was denied. (3-SER-0572-0573) Lastly, the District Court should have reduced fees based on the dismissal of several claims and defendants. (see EOR-0919-0931)

## A. THE DISTRICT COURT ERRED IN NOT DETERMINING THE LEGAL ISSUES OF MATERIALITY OR PROBABLE CAUSE OF THE WARRANT PRIOR TO THE SUBMISSION OF THE MATTER TO THE JURY

Defendants asked the District Court for Plaintiffs to submit a list of alleged facts and omissions from the warrant, from which the court could determine whether they are material to the warrant and thus should be submitted to the jury to determine if Plaintiffs have proven the alleged facts are false and whether the omission is, in fact, an omission, and whether Plaintiffs have proven the necessary scienter by the affiant. Defendants asked the District Court that it determines whether the warrant, as corrected, supports probable cause.

However, the District Court declined to have Plaintiffs list what facts or

34

omissions were material in the warrant, and declined to determine materiality or probable cause in the warrant, sending all issues to the jury. Defendants submit this was legal error.

### 1. <u>Judicial Deception under the Fourth and Fourteenth Amendments</u>

Defendants incorporate the Fourth or Fourteenth Amendments judicial deception cited above. In addition, the Ninth Circuit has repeatedly emphasized that the Fourth Amendment does not require inclusion of all exculpatory evidence. See *Beltran v. Santa Clara County*, 389 Fed.Appx. 679, 681 (9th Cir. 2010), and has upheld a warrant in the face of omitted evidence that contradicted statements in the warrant application. "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997) quoting *US v. Colkley*, 899 F. 2d 297, 300 (4th Cir. 1990)(finding no obligation to disclose an inconsistency in the timing of a witness' statement). See also *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir.1987) ("[t]he mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit."), and *Ewing v. City of Stockton,* 588 F. 3d 1218 (9th Cir. 2009) (omission of a non-identification by another witness "does not cast doubt on probable cause" when one witness did identify plaintiffs)

In addition, ambiguous statements in a warrant do not, as a matter of law, amount to a false statement or a misrepresentation. *Millender v. Cnty. of Los*

*Angeles*, No. CV 05-2298 DDP RZX, 2007 WL 7589200, at *15 (C.D. Cal. Mar. 15, 2007), aff'd, 620 F.3d 1016 (9th Cir. 2010), rev'd sub nom. *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012), and rev'd in part, 472 F. App'x 627 (9th Cir. 2012).

**2.    Given the above limitations on warrants, it is the court that first determines if the alleged false statement or omission is material, then determine probable cause**

The court must determine the materiality of the allegedly false statements or omissions. *KRL v. Moore*, 384 F. 3d 1105, 1117 (9th Cir. 2004); see also *Butler v. Elle*, 281 F. 3d 1014, 1024 (9th Cir. 2002) ("Materiality is for the court, state of mind is for the jury."). In the context of a judicial deception claim, "[a] misrepresentation or omission is 'material' if a court 'would have declined to issue the order had [the defendant] been truthful.'" *O'Neel v. City of Folsom*, No. 2:21-CV-02403 WBS DB, 2024 WL 1676723, at *3 (E.D. Cal. Apr. 18, 2024) citing *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022) (quotation omitted). "Whether a false statement was 'material' to the finding of probable cause is a question of law for the reviewing court." *Greene v. Camreta*, 588 F.3d 1011, 1034–35 (9th Cir. 2009), vacated in part on other grounds, 661 F.3d 1201 (9th Cir. 2011); see also *Chism v. Washington State*, 661 F.3d 380, 389 (9th Cir. 2011) (materiality is a "purely legal question"). In other words, this court has repeatedly and consistently stated materiality is a legal question

to be decided by the court. The same is true of probable cause:

Review by the court of a warrant is differential, upholding it if the issuing judge "had a `substantial basis' for concluding [that] probable cause existed based on the totality of circumstances." *Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir.1994) (quoting *United States v. Bertrand*, 926 F.2d 838 (9th Cir.1991)). See also *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir.2002) ("Probable cause requires only a fair probability or substantial chance" of the suspected activity). Thus, a judge's "determination that an affidavit provided probable cause to issue a search warrant will be upheld unless clearly erroneous." *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir.2004).

If an official submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant. See, e.g., *Baldwin v. Placer County*, 418 F.3d 966, 971 (9th Cir.2005). If the official omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause. See, e.g., *Liston v. County of Riverside*, 120 F.3d 965, 973-74 (9th Cir.1997).

Despite the abundance of authorities from this court that indicates materiality and probable cause are legal issues for the court to decide, the District Court did not do so prior to submitting the matter to the jury. Such was prejudicial to Defendant

Cobbs, where the whole issue of whether there was a Fourth Amendment violation was submitted to jury.

As trial evolved however, the only time the jury heard any partial list of claimed falsities/omissions was during closing argument from Plaintiffs. However, Plaintiffs submitted a list in opposing Defendants' motion for new trial. (SER ) Of the claimed omissions or misrepresentations, Defendants submit the majority were not material to the finding of probable cause. For example, Plaintiffs list as an omission in the warrant that Plaintiff Beard did not live in the same home as Plaintiff Perez. Defendants submit such is not material to the finding of probable cause. In fact, it is the opposite; had the warrant included such information would only tend to support that N.P. was at substantial risk – because the then-alleged father was not the physical caretaker of N.P. and had no control over what happened inside Ms. Perez' residence in which resided the other children over whom the alleged lack of supervision was being asserted. Without a determination by the District Court that that omission was not material,

Plaintiffs point to a "check the box" as "physical environment" as being false, but there was no box for supervisorial neglect of other children within the home that left the infant at risk, much less to any caselaw that such would be material for a finding of probable cause. Plaintiffs next claim the "common themes" was not Hilda's mental health which misstates the warrant, which refers to "concerns

38

pertaining to Hilda's mental health" which was demonstrably proven true, as the records clearly showed a historical suicide attempt and the family's concerns over her mental health.

In addition, Plaintiffs next claim the inclusion in the warrant characterizing Plaintiff Perez as "soft spoken" or having a flat affect does not implicate mental health, and were merely Defendant Cobb's subjective observations, which were confirmed at trial. This too was not material to the finding of probable cause.

Plaintiffs claim the "52 referrals" as referenced were duplicates in the CPS or not made against Hilda, again misstates the warrant and does not make the representation in the warrant material to the finding of probable cause, particularly because it was merely part of the broader picture. (Compare EOR 156-162 to 3-SER-0595-0734)

Plaintiffs claim that Defendant Cobbs misrepresented in the warrant that Mr. Beard "was aware of the agency's concerns but failed to be a protective parent, and has made no new plans to remedy the issue." There was no determination whether this was material to the warrant or not, since the case was more about that Ms. Perez' supervisorial role of the other children that implied the inability to protect N.P. to the sexual conduct of the other children in the home, in which Mr. Beard was not physically present.

Plaintiffs claim that statement of reports or referrals having "not been confirmed by CPS" appears exculpatory, not inculpatory. Accordingly, it should

have been excluded by the District Court as legal issue as not material to the finding of probable cause.

Plaintiffs also claim the warrant falsely stated that there were no physical signs of sexual abuse of minor AS by pointing to a "scratch near the child's rectum". Plaintiffs miss the point of this statement; Plaintiffs had no evidence that the  was considered a sign of abuse by a medical professional such that the claimed falsity was not material.

Plaintiffs argue that the warrant omitted that some of the referrals came from the father of the child AS.  This conveniently ignore references in the DSLs that it was reported then minor C allegedly touched A.S. in the genitals, and scrotum and even masturbated him.  (Id); Regardless, this claimed omission is not material, as the warrant included that Plaintiff Perez had repeatedly subjected AS to medical exams without medical evidence of sexual abuse.   In other words, an alleged omission in the warrant of who reported alleged sexual abuse is also not material when it was uncontroverted that no doctor had actually found sexual abuse of A.S.

Plaintiffs also claim the phrasing in the warrant that there was "inappropriate touching" was false.  The District Court should have determined this was not a material falsity given that this a conclusion based on the prior referrals, which had a factual foundation.

Defendants submit the combination of failures of the District Court to

determine whether any of the claimed omissions or misrepresentations were material to the finding of probable cause rendered the trial fundamentally unfair to Defendant Cobbs, and is was manifest error of the District Court to not have decided these issues of materiality before submitting the issues to the jury.

**3.     Without resolution of the materiality issues prior to the submission of the jury, such effectively precluded Defendants from formulating jury questions to determine scienter.**

Had the District Court determined which omissions or misrepresentations were material, then the jury (and Defendants) would have had a definitive understanding of which issues that Plaintiff must establish that the April Cobbs purportedly knew or should have known that any statements in the affidavit supporting the warrant for were false. See *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)  "In this variety of Fourth Amendment case, alleging judicial deception in the procurement of a search warrant, we confront a situation where ... a state-of-mind question is embedded in the underlying constitutional issue, i.e., whether or not in allegedly omitting relevant information from his affidavit in support of the application for a search warrant," the Defendant acted "with deliberate falsehood or reckless disregard for the truth." *Butler*, 281 F. 3d at 1025-26.  Here, without having a judicial determination of what omissions or misrepresentations were material, Defendant Cobbs was effectively foreclosed in being able to articulate questions to

the jury about the scienter element.

**4.      The District Court did not determine the legal issue of probable cause in the warrant.**

If an official submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant. See, e.g., *Baldwin v. Placer County*, 418 F.3d 966, 971 (9th Cir.2005). If the official omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause. See, e.g., *Liston v. County of Riverside*, 120 F.3d 965, 973-74 (9th Cir.1997).  This process did not happen at this trial. Rather, in post-trial motions, the District Court's announced that by allowing the matter go to the jury "implicitly demonstrates" the court found several omissions to be sufficiently material.  Defendants submit this after-the-fact announcement - after the matter had already been presented the jury  - should be rejected as legally insufficient.   For each of the foregoing reasons, this court should vacate the judgment.

**5.      There was insufficient evidence of materials omissions and misrepresentations that rendered the warrant without probable cause**

The District Court denied Defendants Rule 50(b) and Rule 59 motions in relation to the sufficiency of the evidence to support judicial deception as against

42

Defendant Cobbs.  Defendants submit this was error.

"An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997) quoting *US v. Colkley*, 899 F. 2d 297, 300 (4th Cir. 1990)(finding no obligation to disclose an inconsistency in the timing of a witness' statement). See also *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir.1987) ("[t]he mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit.").

Defendant submits that Plaintiffs did not establish that Defendant Cobbs knew or should have known that any statements in the affidavit supporting the warrant for were false, or that there were omissions that were material to a finding of probable cause by the issuing judge. Indeed, the warrant largely includes conclusory summaries of logs and opinions and impressions by Defendant Cobbs which as a matter of law cannot be false. In addition, there was no evidence proffered that the issuing judge would not have issued the warrant; to the contrary, the evidence established that in the subsequent proceedings, where Judge Ameral concluded CPS had made a prima facie case that the petition met the criteria of Welfare & Institutions Code § 300, and later adjudicated N.P. a ward of the court, where Judge Ameral had before her a fuller factual and procedural record, including much of the logs which showed who made the reports, the outcome such as whether referrals

43

were unfounded, evaluated out etc. (Exhibits 1-69), and sustained, all of which is uncontroverted evidence that supports that none of the claimed "falsities" or "omissions" in the warrant as claimed by Plaintiffs were material to a finding of probable cause. For each of the foregoing reasons, this court should vacate the judgment.

**6. Defendant Cobbs was entitled to a new trial on the Fourteenth Amendment claim because the jury failed to follow the law and/or the evidence**

Defendants submit it was error to deny the motion for new trial on the Fourteenth Amendment claim because the jury failed to follow the law and/or the evidence. Defendants incorporate the Fourteenth Amendment standard cited above herein.

Defendants submits the jury failed to apply the law and/or the evidence in terms of whether Defendant acted with conscience shocking behavior in obtaining the warrant. There is no evidence April Cobbs was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that she actually drew that inference or a reasonable official would have been compelled to draw the inference. Plaintiffs did not elicit testimony from Defendant Cobbs, nor was there sufficient evidence of, that she was aware that she was somehow materially omitting or falsified facts in the warrant, and in fact would have been compelled to draw such an inference by submitting the warrant as drafted to meet the deliberate indifference standard. Accordingly, Defendant submits the jury

44

failed to apply the evidence and/or misapplied the law in light of said evidence and therefore the District Court erred in not granting a new trial.

## B.    APRIL COBBS IS ENTITLED TO QUALIFIED IMMUNITY

In ruling on the motion under Rule 50(a) & (b) of the Federal Rules of Civil Procedure, the court denied qualified immunity to April Cobbs.  Even assuming a violation, she is entitled to qualified immunity.

Defendants incorporate the qualified immunity standard cites above.

"Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause," and "a claim of judicial deception [may not] be based on an officer's erroneous assumptions about the evidence he has received." *O'Neel*, supra 2024 WL 1676723, at *3 (E.D. Cal. Apr. 18, 2024) citing *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). Indeed, "CPS officials cannot be expected to include every fact that may or may not be potentially exculpatory in a protective custody warrant application. They are not required to provide a comprehensive recitation of every detail of the investigation up to that point. The warrant application need only include sufficient information to ensure that the facts presented are not "so wrenched from [their] context that the judicial officer will not comprehend how [they] fit[] into the larger puzzle." *O'Neel*, supra, 2024 WL 1676723, at *7 citing *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 799 (9th Cir. 2024). Officials need only provide an adequately

complete representation of the "total story" so as to not be "materially misleading." See *id*.    Indeed,officials are generally entitled to rely on information obtained from fellow officials. see e.g. *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005), overruled on other grounds by *United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (law enforcement officers).

At trial, Plaintiffs cited several cases in support that qualified immunity should not apply.  Defendants submit none stand for the proposition that the law was clearly established in this context.    For example, in *Devereaux v. Perez*, 218 F.3d 1045, 1053 (9th Cir. 2000), which was re-heard by the en banc panel in *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), this court determined that there was no Fourteenth Amendment due process right for a child to be interviewed in a particular manner. In rehearing the matter en banc, the Ninth Circuit recognized there is a constitutional due process right not to be subjected to criminal charges on the basis of false evidence, but Deveraux nonetheless failed to have sufficient facts to withstand summary judgment. Accordingly, neither *Deveraux* case assist Plaintiffs here to claim the law in the context of a protective custody warrant was clearly established.

Next, in the surviving portion of *Greene v. Camreta*, 588 F.3d 1011, 1034 (9th Cir. 2009), vacated in part on other grounds, 563 U.S. 692 (9th Cir. 2011), resulted in a reversal of summary judgment on qualified immunity based on a finding there

46

was a triable issue of fact on deliberate fabrication, due to conflicting accounts of one conversation. *Greene,* 588 F.3d at 1035. Arguably, the *Greene* court pronouncement of law being clearly established is dicta. Otherwise, *Greene* is factually distinguishable from this case, as there were no representations of financial resources or lack thereof in the protective custody warrant at issue.

Plaintiffs relied on *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101 (9th Cir. 2010), but that case affirmed qualified immunity to a social worker in a seeking to revoke a foster care license, where the report purportedly contained representations of statements to witnesses who denied making statements. However, reliance on this case would run counter to the Supreme Court's admonition to not to define the law at such a high level of generality in defining what is clearly established. See *City of Escondido, Cal. v. Emmonds*, 586 U.S. 38, 42 (2019).

Likewise, this court's decision in *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017), dealt with a case where the social workers had already been found to have committed perjury in a dependency court proceeding by a separate jury proceeding in state court, and thus denying qualified immunity to perjured testimony, which was a crime, elicited the obvious affirmation of denial of qualified immunity. Here, there was no prior jury finding of perjured testimony, and thus *Hardwick* does not assist Plaintiffs.

Defendant submits Plaintiffs have failed to put forth clearly established law

47

under the facts and circumstances of this case, and thus qualified immunity applies.

Accordingly, Defendant Cobbs is entitled to qualified immunity

## C. DEFENDANT COBBS IS ENTITLED TO IMMUNITY AS TO THE STATE LAW CLAIM FOR FALSE IMPRISONMENT UNDER CALIFORNIA GOVERNMENT CODE SECTION 821.6

"Under California law, the elements of false imprisonment are: (1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief. See *Bocanegra v. Jakubowski*, 241 Cal.App.4th 848, 855 (2015)." (*Ulikhanova v. County of Los Angele*s (C.D. Cal., Dec. 14, 2018, No. CV 17-9193 FMO (EX)) 2018 WL 10111334, at \*7.) Under California Government Code § 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously or without probable cause." This provision entitles a social worker to "absolute immunity from liability arising out of her actions in investigating child abuse allegations, initiating dependency proceedings and removing a child from his custodial parent." *Jacqueline T. v. Alameda Cty. Child Protective Servs*., 155 Cal. App. 4th 456, 467 (2007), as modified (Oct. 4, 2007). "[I]mmunity under section 821.6 covers not just the act of filing a criminal complaint, but also other prosecutorial or quasi-prosecutorial functions such as weighing and presenting evidence when rendering a decision on whether to proceed with litigation." *Id.* Immunity under Section 821.6 "is narrow in

48

the sense that it applies only if the conduct that allegedly caused the plaintiff's injuries was the institution or prosecution of an official proceeding." *Leon v. County of Riverside*, 309 Cal.Rptr.3d 682, 530 P.3d 1093, 1100-01 (2023). "But this immunity is broad in the sense that it applies to every such tort claim, whether formally labeled as a claim for malicious prosecution or not." *Id.*, 309 Cal.Rptr.3d 682, 530 P.3d at 1101. "And where it applies, it is absolute, meaning that the immunity is not conditioned on a showing that the defendant acted in a reasonable or procedurally proper manner, or any similar requirement." *Id.* (internal quotations omitted).

Defendant Cobb's actions of obtaining the protective custody warrant which instituted the removal and led to the filing of the juvenile dependency petition is conduct in the course of "instituting or prosecuting any judicial or administrative proceeding." "Malicious prosecution 'consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause' *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 720 (1974). In *Asgari v. City of Los Angeles*, 15 Cal.4th 744 (1997) noting that malicious prosecution, "… constitutes procuring the arrest or prosecution of another under lawful process." Here, the process is analogous, as section 821.6 "focus[es] upon the nature of the alleged tort, rather than the nature of the governmental duties performed by the defendant" Id. at 756–757, citation omitted.). Thus, obtaining of

a protective custody warrant and subsequent detention is considered malicious prosecution, *Scannell v. Cnty. Of Riverside*, 152 Cal. App. 3d 596, 608 (1984), for which California Government Code § 821.6 provides immunity.

## D. IT WAS PREJUDICIAL ERROR TO NOT INSTRUCT ON LIMITATION OF DAMAGES

"An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." *Caballero v. City of Concord*, 956 F.2d 204, 206–07 (9th Cir. 1992) citing *Coursen v. A.H. Robins Co., Inc*., 764 F.2d 1329, 1337 (9th Cir.1985). "While this standard of review is less stringent than review for harmless error in a criminal case, it is more stringent than review for sufficiency of the evidence, in which we view the evidence in the light most favorable to the prevailing party." *Id* citing, *United States v. Adler*, 879 F.2d 491, 495 (9th Cir.1988).

Here, the court declined to instruct that where a subsequent juvenile court order finding detention proper or jurisdiction cuts off damages caused by the social workers. *Watson v. City of San Jose*, 800 F.3d 1135, 1139 (9th Cir. 2015). In *Watson*, the plaintiffs asserted constitutional violations arising from the removal of minor children without a required warrant or exigent circumstances. See *Watson*, 800 F.3d at 1137-38. The children were removed on June 29, 2005 and June 30, 2005, and on July 5, 2005, the juvenile court made a determination that the children should remain detained for their welfare. See *id*. at 1137. The Ninth Circuit upheld the district court's decision to grant a motion for new trial on damages as against warrantless

removal by officers, which failed to account for in *Carey v. Piphus*, 435 U.S. 247 (1948), which held subsequent process creates a causal disconnect. The Ninth Circuit approved jury instruction language that stated "damages may not be awarded against the officers for the actions taken by the Department of Family and Child Services in connection with the petition and for the actions taken by the Juvenile Dependency Court which made an initial order on July 5, 2005, based upon the petition that the children were to be detained at the children's center pending further juvenile dependency court proceedings." See also *Williams v. Cnty. of Monterey*, No. 19-CV-01811-BLF, 2021 WL 1966712, at *8 (N.D. Cal. May 17, 2021) ("The Court finds that Plaintiffs may not seek damages flowing from the children's detention after May 14, 2018, the date of the Juvenile Court's detention order following contested proceedings.").

Here, the juvenile court order finding detention proper or jurisdiction cuts off damages caused by the social workers. In other words, a subsequent judicial order that occurs after the removal will limit the award of damages only to the period of time before the judicial order was issued. *Watson v. City of San Jose*, 800 F.3d 1135, 1139 (9th Cir. 2015). It was error for the court to not give this instruction, which Defendants submit was inherently not harmless. Had the jury been instructed on same, this would have supported the argument that damages were limited to the days between the removal and the order of the juvenile court holding N.P. over, rather

than the several months between removal and reunification.

## E.     PREVAILING DISMISSED DEFENDANTS SHOULD HAVE HAD JUDGMENT AND COSTS IN THEIR FAVOR

Defendants COUNTY OF STANISLAUS, ERIC ANDERSON, MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES, GLORIA SOLORIO were dismissed as defendants during trial as reflected at the Docket Entries 153 and 158, either voluntarily by Plaintiff or by way of Rule 50(a) motion. Accordingly, these Defendants were entitled to have judgment entered in their favor. Therefore, it was error to not have the Judgment be corrected to reflect that.  In addition, in *Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143 (9th Cir. 1982), the Ninth Circuit affirmed a decision awarding costs following a voluntary dismissal. In *Beard v. Sheet Metal Workers Union, Local 150*, 908 F.2d 474, 477 (9th Cir. 1990), the court dismissed an appeal of a similar judgment awarding costs following dismissal. Finally, *Lau v. Glendora Unified School Dist.*, 792 F.2d 929, 930 (9th Cir. 1986), involved a request for voluntary dismissal without prejudice.  The court erred in not awarding these dismissed defendants their costs.

## F.     THE COURT ERRED IN AWARDING 750/500 AS HOURLY RATE FOR ATTORNEY FEES IN EASTERN DISTRICT OF CALIFORNIA

Reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

The Ninth Circuit has held that "'[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.' " *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (citation omitted). Generally, the relevant legal community for purposes of determining a reasonable hourly rate is the forum district. *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994). Moreover, the party requesting fees bears the burden of producing "satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984). "If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge  of prevailing rates in the community." *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, No. CV 21-089-PSG (VBKx), 2021 WL 4786889, at *2 (C.D. Cal. Aug. 24, 2021).

The relevant rate in the instant case is the amount plaintiff's counsel who engage in civil rights actions against governmental entities would charge paying clients in the Sacramento2 area. *Taylor v. Chiang*, 2009 U.S. Dist. LEXIS 13470 (E.D. Cal. Feb. 23, 2009), adopted in full by *Taylor v. Chiang*, 2009 U.S. Dist. LEXIS 34644 (E.D. Cal. Apr. 24, 2009).   At the United States Supreme Court reiterated, a "reasonable attorney's fee is one that is adequate to attract competent

counsel, but that does not produce windfalls to attorneys . . . Section 1988's aim to enforce covered civil rights statutes, not to provide a 'form of economic relief to improve the financial lot of attorneys.'" *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672-73 (citing *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986)). Consideration of rates outside the forum district may be appropriate only "where local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to hand properly case." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

Thus, in January 2023, the District Court award Plaintiffs' counsel $350/hour:

Thus, the Court relies on its own knowledge of customary legal local rates and experience with the legal market in setting a reasonable hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 926 (9th Cir. 2011). In the Fresno Division of the Eastern District of California, across a variety of types of litigation generally, attorneys with experience of twenty or more years of experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded $250.00 to $350.00 per hour, attorneys with five to ten years of experience are awarded $225.00 to $300.00 per hour, and less than $200.00 per hour for attorneys with less than five years of experience. See *In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 839 (E.D. Cal. 2016) (noting attorneys in Fresno Division with twenty or more years of experience are awarded $350.00 to $400.00 per hour, and attorneys with less than fifteen years of experience are awarded $250.00 to $350.00 per hour); *Garcia v. FCA US LLC*, No. 1:16-cv-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with nearly thirty years of experience; $300.00 per hour to attorney with nearly fifteen years of experience; $250.00 per hour to attorney with ten years of experience; $225.00 per hour to attorneys attorney with five years of experience; and $175.00 per hour

54

to attorney with less than five years of experience); *Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc.*, No. 1:18-cv-0488-AWI-EPG, 2018 WL 1871412, at \*3 (E.D. Cal. Apr. 19, 2018) (awarding attorney with over twenty years of experience the \$325.00 per hour requested, the \$300.00 per hour requested by attorney with nearly twenty years of experience, and attorney with seven years of experience the requested \$250.00 per hour); *TBK Bank, SSB v. Singh*, No. 1:17-cv-00868-LJO-BAM, 2018 WL 1064357, at \*8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, No. 1:17-cv-00868-LJO-BAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding attorneys with over thirty-five years of experience \$400.00 per hour, attorney with twenty years of experience \$350.00 per hour; and attorney with ten years of experience \$300.00 per hour); *Phillips 66 Co. v. California Pride, Inc.*, No. 1:16-cv-01102-LJO-SKO, 2017 WL 2875736, at \*16 (E.D. Cal. Jul. 6, 2017), report and recommendation adopted, No. 1:16-cv-01102-LJO-SKO, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) (awarding attorney with twenty-years of experience \$400.00 per hour); *Roach v. Tate Publ'g & Enters.*, No. 1:15-cv-00917-SAB, 2017 WL 5070264, at \*10 (E.D. Cal. Nov. 3, 2017) (awarding attorney with sixteen years of experience \$325.00 per hour in copyright action); *Sanchez w. Frito-Lay, Inc.*, No. 1:14-cv-00797-AWI-MJS, 2015 WL 4662636, at \*18 (E.D. Cal. Aug. 5, 2015) (in a wage and hour class action finding reasonable rate of \$350.00 per hour for attorneys with more than twenty years of experience and \$275.00 per hour for attorney with fourteen years of experience).

In a previous order, in the face of any information as to experience and locality pay, this Court already determined \$350.00 per hour to be a reasonable rate, (ECF No. 36 at 20.) (ECF No. 60).

Defendants thus submit that to double that rate to \$750/500 a mere year later was an abuse of discretion. "It's higher than any hourly rate that this Court has ever awarded." (EOR 0013:17-18)

## G.    DEFENDANTS SUBMIT IT WAS AN ABUSE OF DISRECTION TO REDUCE THE LODESTAR BY ONLY 10%

The District Court correctly noted that trial started with eight claims and nine

55

defendants down to three claims and one defendant. However, the District Court only reduced fees by 10%. Defendants submit this was error.

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees" under § 1988." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Courts may, in their discretion, reduce a fee award to reflect limited success, such as when a plaintiff only prevails on some claims, or only against one of several defendants. See *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) (district court did not abuse discretion by reducing fees when plaintiff did not prevail on majority of original claims); *Webb v. Sloan*, 330 F.3d 1158, 1169-70 (9th Cir. 2003) (finding discretionary reduction of attorneys' fees to reflect limited success appropriate where plaintiff initially sued several defendants, but prevailed against only one, and had claims related to plaintiff's arrest, detention, and prosecution); *Harris v. Marhoefer*, 24 F.3d 16, 18-19 (9th Cir. 1994) (affirming district court's 50% reduction of attorneys' fees in civil rights case based on plaintiff's partial success).

Indeed, in this case, Defendants COUNTY OF STANISLAUS, ERIC ANDERSON, MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES, GLORIA SOLORIO submit that they are prevailing parties, having been dismissed as defendants during trial as reflected at the Docket Entries 153 and 158, either voluntarily by Plaintiff or by way

56

of Rule 50(a) motion. In addition, several of Plaintiff's claims against April Cobbs to include the due process violation, Bane Act, intentional inflectional of emotional distress were dismissed, and several deemed subsumed in the Fourth/Fourteenth judicial deception claims. Thus, Defendants submit approximately 80% (arguably 90%) of Plaintiff's case when viewed as a whole never made it to the jury. This translates to "limited success" and thus the fees may be summarily reduced to reflect such limited success.  Even if not 80%, certainly more than 10% a reduction was warranted; Defendants submit a 50% reduction in fees would not have been error.

Respectfully submitted,


Date:  June 23, 2025          PORTER SCOTT
                              A PROFESSIONAL CORPORATION


                          By /s/ John R. Whitefleet
                              John R. Whitefleet

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, there are no other cases pending before this Court related to this case.


Date:  June 23, 2025                    PORTER SCOTT
                                        A PROFESSIONAL CORPORATION


                                        By <u>/s/ John R. Whitefleet</u>
                                             John R. Whitefleet

## **CERTIFICATE OF COMPLIANCE**

## **REGARDING BRIEF LENGTH**

I certify that:

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 28.1-1, and in reliance upon the word count feature of the software used, the attached Cross-Appeal Brief is proportionately spaced in Times New Roman type style in a font no smaller than 14 points and contains 14,058 words, exclusive of those materials not required to be counted.

Date: June 23, 2025            PORTER SCOTT
A PROFESSIONAL CORPORATION


By /s/ John R. Whitefleet
      John R. Whitefleet

## <u>CERTIFICATE FOR BRIEF IN PAPER FORMAT</u>

**Ninth Circuit Case Number** 24-5782, 24-5779

I, John R. Whitefleet, certify that this brief is identical to the version submitted electronically on June 23, 2025, pursuant to Rule 6(c) of the Administrative Order Regarding Electronic Filing in All Ninth Circuit Cases.


Dated: June 23, 2025                    <u>/s/ John R. Whitefleet</u>
                                                      John R. Whitefleet

## <u>CERTIFICATE OF SERVICE</u>

**Ninth Circuit Case Number** 24-5782, 24-5779

I hereby certify that I electronically filed the foregoing Appellees' Answering Brief And Cross-Appellants' Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 23, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 23, 2025          <u>/s/ Cindy A. Grandinetti</u>