Appeal Nos. 24-5782, 24-5779

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

SHANE BEARD, HILDA PEREZ and N.P., a minor, by and through Guardian ad Litem, Donnie R. Cox,

*Plaintiffs/Appellants/Cross-Appellees,*

vs.

COUNTY OF STANISLAUS et al.

*Defendants/Appellees/Cross-Appellants*

———————————————————————

On Appeal From a Decision of the United States District Court,
Eastern District of California, Case No. 1:21-cv-00841-JAM-CSK

———————————————————————

## APPELLEES'/CROSS-APPELLANTS'S
## SUPPLEMENTAL EXCERPTS OF RECORD,
## VOLUME 3 OF 3

———————————————————————

PORTER SCOTT
A Professional Corporation
John R. Whitefleet, SBN 213301
2180 Harvard St. STE 500
Sacramento, CA 95815
Telephone: 916.929.1481
Facsimile: 916.927.3706
Attorneys for Defendant/Appellee
County of Stanislaus

Beard - Direct (Resumed) by Powell

1  I stopped going to work because I was too sick to go.

2          MR. WHITEFLEET:  Object, move to strike.

3          THE COURT:  Sustained.

4          You're not claiming that, correct?

5          THE WITNESS:  No.

6          MR. POWELL:  Yeah, but I don't know if that would be a

7  basis to -- I mean, an instruction later to --

8          THE COURT:  Well, it's irrelevant.

9  BY MR. POWELL:

10  Q   Go ahead.  Focus, if you can, on physical manifestations,

11  which you've covered.  Sleep?

12  A   I was throwing up a lot just because I was a nervous

13  wreck.  My stomach was constantly in knots.  I didn't know who

14  was taking care of my son.  I didn't know -- I didn't know

15  where the hell he was.  That feeling I cannot describe to a

16  parent.  If anybody had that feeling of not knowing where their

17  child is, it's sickening, it hurts.

18  Q   Had you ever had the experience of a child you were in

19  charge of, whether your own or a niece, a nephew, disappearing

20  in a store prior to N   being taken?

21          MR. WHITEFLEET:  Objection, relevance.

22          THE COURT:  Sustained.

23          MR. POWELL:  I was laying a foundation, Your Honor, if

24  I may.

25          THE COURT:  He already described his emotions, whether

Beard - Direct (Resumed) by Powell

1  he had an incident where someone got lost, it's not relevant.

2  BY MR. POWELL:

3  Q    You indicated you were throwing up a lot, was that

4  something that predated N    's removal?

5  A    I have a history with GIRD, it just intensified.

6  Q    Did it require medication after N    was taken?

7  A    It did.

8  Q    Did it require medication before N    was taken?

9  A    No.

10  Q    Are you still on the medication?

11  A    Just once in a blue moon if I eat a really greasy amount

12  of food.

13  Q    How long before you feel like you returned to sleep before

14  the removal of your son, sleep patterns?

15  A    I honestly don't think my sleep patterns have ever really

16  been the same, but I mean, I didn't really sleep much when he

17  was gone.  I was a little bit more content when he was in my

18  home because I knew where he was.  I was able to sleep at least

19  a few hours, maybe four to five, but I mean, that's pretty much

20  where I'm at now.

21  Q    And this phenomenon of him, you know, crying when you

22  leave, did that taper off at some point?

23  A    No, he still has separation anxiety, and that was

24  diagnosed by his doctor.

25        MR. WHITEFLEET:  I'll object, move to strike.

Beard - Cross by Mr. Whitefleet

1    THE COURT: Answer will be stricken. The jury will

2  disregard.

3    MR. POWELL: Nothing further.

4    THE COURT: Okay. Go ahead, cross.

5    CROSS-EXAMINATION

6  BY MR. WHITEFLEET:

7  Q    Mr. Beard, at the time that N    was born, were you and

8  Hilda actually separated?

9  A    When he was born?

10 Q    Yes.

11 A    No.

12 Q    But you didn't go to his birth?

13 A    I did not.

14 Q    You're not on his birth certificate?

15 A    I am now.

16 Q    At the time that he was born, you were not on his birth

17 certificate, correct?

18 A    That is correct.

19 Q    And it wasn't until the Court ordered you to get a

20 paternity test that you were actually to establish that you

21 were in actuality the father of N    , correct?

22    MR. POWELL: Objection, Your Honor, this calls for a

23 legal conclusion.

24    THE COURT: Overruled. He just asked if he was Court

25 ordered to --

Beard - Cross by Mr. Whitefleet

1       THE WITNESS:  That's actually extremely inaccurate.

2   BY MR. WHITEFLEET:

3   Q    A Court ordered you to take a paternity test as part of

4   the dependency proceedings?

5   A    No, they did not.

6   Q    So you volunteered to take one?

7   A    I never took a paternity test.

8   Q    So -- but it wasn't until the dependency hearing that you

9   were able to get your name on the birth certificate as the

10  father?

11  A    That's not true.

12  Q    All right.  When did the birth certificate actually change

13  to show that you were the father?

14  A    After the TDM.

15          THE COURT:  Say that again.

16          THE WITNESS:  After the TDM.

17          THE COURT:  After the TDM, okay.

18  BY MR. WHITEFLEET:

19  Q    So, then -- all right, at the time -- let's see.

20       When you first met Hilda, where were you working?

21  A    I was working at GameStop.

22  Q    What were your hours at GameStop?

23  A    I was pretty much a closer, so between the hours of

24  4:00 p.m. and I want to say between 9:00 and 10:00, depending

25  on when we got done.  And I also worked for Oak Harbor for a

Beard - Cross by Mr. Whitefleet

1  little while.

2  Q    And so would you go over to Hilda's everyday before work

3  or after work?

4  A    I would go after.

5  Q    After work, at 9:00 to 10:00 p.m. at night?

6  A    Yes.

7  Q    Okay.  And in your testimony, was -- N    was awake during

8  those timeframes?

9  A    He was.  He was a baby, they wake up at every time of the

10 day.

11 Q    Now, you had testified that you didn't speak to a -- the

12 first time you spoke to a social worker was July 12, and isn't

13 it actually true that you had an interview with a social worker

14 on July 1?

15 A    No, that's not true.

16 Q    You never spoke with a social worker named Stephanie

17 Herrera?

18 A    Not on July -- actually, you know what, you are right,

19 that was after the CAIRE interview.

20 Q    So even when you had said you had just heard the day

21 before, July 2, about the allegations about Alfredo, that

22 wasn't true, was it?

23     MR. POWELL:  Objection, Your Honor, it's vague as to

24 which allegation are we talking about now.

25     THE COURT:  Do you want to specify?

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

Beard - Cross by Mr. Whitefleet

1  BY MR. WHITEFLEET:

2  Q    So the allegation that Christopher and Alfredo were in a

3  tent playing sleepy, sleepy, you knew several weeks before

4  July 12, correct?

5  A    No, actually.

6  Q    So when it says in here, "Mr. Beard indicated the

7  allegations to this referral are true as he has heard Alfredo

8  disclose the allegations to him" --

9  A    That was regarding Alfredo and his father, not Alfredo and

10  Christopher.

11  Q    So at the detention hearing, was it your understanding

12  that the Court retained -- excuse me, detained -- continued to

13  detain N   ?

14  A    That was my understanding, yes.

15  Q    After you heard the allegations between Christopher and

16  Alfredo, somebody touching somebody's privates, did you ever

17  ask Hilda, What are you doing to ensure that either Christopher

18  or Alfredo are not alone in a room with N   ?

19  A    I did, and it wasn't the privates, it was the belt buckle.

20         MR. WHITEFLEET:  Move to strike as nonresponsive.

21         THE COURT:  Overruled.

22  BY MR. WHITEFLEET:

23  Q    Did you ask Hilda to ensure that N    wasn't in the same

24  room with either Christopher or Alfredo?

25  A    No, because Hilda was constantly around N    so I don't

Beard - Cross by Mr. Whitefleet

1   really see why.

2          MR. WHITEFLEET:  Move to strike after "no."

3          THE COURT:  Answer will be stricken after "no."

4   BY MR. WHITEFLEET:

5   Q    At the removal, July 19, 2019, you threatened to kill

6   Shynelle Jones; didn't you?

7   A    No, I did not.  I threatened to sue, not kill.

8   Q    Didn't you say, "I will kill you"?

9   A    No, I didn't.  You heard that video, actually, and I said,

10  "I will sue," not kill.  She may have heard that, but that's

11  not what I said.

12  Q    At the dependency hearing, did you have discussions with

13  your attorney about whether or not to make the argument that

14  you were not the father?

15  A    No, I didn't.

16  Q    Didn't, at some point, he actually argue that you were not

17  the father at the dependency hearing?

18  A    No, he didn't.  I don't know why anybody would say I'm not

19  the father.  He looks like just like me.

20         MR. WHITEFLEET:  Move to strike.

21         THE COURT:  Answer will be stricken.  Jury will

22  disregard.

23         Wait for a question.

24  BY MR. WHITEFLEET:

25  Q    Now, you had testified that -- whoops, sorry, sorry,

Beard - Cross by Mr. Whitefleet

1   sorry.

2          MR. POWELL:  Thank you, though.

3   BY MR. WHITEFLEET:

4   Q    You had testified that prior to N    being removed, that

5   you and Hilda lived separately.

6   A    Yes.

7   Q    And isn't it true that you never spent nights at her

8   place?

9   A    That is true.

10  Q    And she never spent nights at your place?

11  A    That is also true.

12  Q    So is it fair to say prior to the removal, you never had

13  to take care of N    on your own?

14  A    Apart from her being at work and me taking care of him

15  while I didn't have work, then yeah, that would be accurate.

16  But I don't think any father really takes care of --

17         THE COURT:  Stop, stop making comments, okay.  Wait

18  for your question.

19         THE WITNESS:  I'm sorry.  Water, anybody?  This thing

20  is empty.

21         MR. POWELL:  Your Honor, may I bring Mr. Beard some

22  water?

23         THE COURT:  You can.  Sure.

24  BY MR. WHITEFLEET:

25  Q    Reading from deposition transcript Page 103, 6 through 13.

Beard - Cross by Mr. Whitefleet

1      THE COURT:  I need the transcript, hang on.

2  Transcript of Mr. Beard.  When was the deposition taken?

3      MR. WHITEFLEET:  September, I want to say 13, 2022.

4      THE COURT:  I'm sorry, Mr. Whitefleet, September what?

5      MR. WHITEFLEET:  22 -- sorry, September 13, 2022.

6      THE COURT:  In this case?

7      MR. WHITEFLEET:  In this case.

8      THE COURT:  Hang on.  Thank you.

9      Okay, go ahead.

10  BY MR. WHITEFLEET:

11  Q    "Question:  Had you ever cared -- up to the present, have

12  you ever cared for N    on your own?

13      "Answer:  Yes.

14      "Question:  Okay, during what time frame?

15      "Answer:  During the family maintenance period of time

16  when I got N    and she was still going through her stuff to

17  get him back."

18  A    I believe you asked --

19      THE COURT:  Hang on.

20  BY MR. WHITEFLEET:

21  Q    All right.  When you were interviewed by social workers on

22  July 12, 2019, prior to that date, had Hilda ever shared her

23  mental health history with you?

24  A    No.

25  Q    And then at some point after the removal, you apologized

Beard - Cross by Mr. Whitefleet

1  to Eric Anderson for leaving the TDM, did you not?

2  A   No, I don't remember doing that.

3  Q   Okay.

4  A   I remember talking to him --

5         THE COURT:  Hang on, hang on.

6  BY MR. WHITEFLEET:

7  Q   Dr. Ho examined you in October of 2022?

8  A   Yes.

9  Q   After that date, have you undertaken any mental health

10  counseling?

11  A   Yes, I'm actually in therapy now.

12  Q   How many sessions have you had since October 2022?

13  A   I want to say approximately nine.  I recently had to stop

14  there --

15  Q   That's okay.  And these sessions are covering issues

16  arising out of this case?

17  A   They are.

18  Q   Okay.

19         MR. WHITEFLEET:  That's all I have.  Thank you.

20         THE COURT:  Anything further?

21         MR. POWELL:  No, Your Honor.

22         THE COURT:  Thank you.  You may step down.

23         (Witness is excused.)

24         THE COURT:  We're done for the day.  We finished today

25  at 1:30.

1          Okay.  Take tomorrow off, take Wednesday off.  Come

2      back ready to go on Thursday.  We'll start again around 9:15.

3          Please do not discuss the case with anyone.  Don't let

4      anyone discuss the case with you.  No independent investigation

5      or research.

6          Try to relax.  Enjoy yourself the next two days, and

7      I'll see you on Thursday at 9:15.  All right.  Thanks, folks.

8          MR. POWELL:  Are you going to stick around a minute,

9      Your Honor, or are you running?

10         (In open court outside the presence of the jury.)

11         THE COURT:  Outside the presence of the jury, where

12     are you starting with on Thursday -- who are we starting with?

13         MR. POWELL:  We're probably going to start with the

14     April Cobbs --

15         THE COURT:  You're going to play her video deposition,

16     all right.

17         MR. POWELL:  Yes.

18         THE COURT:  And then what?

19         MR. POWELL:  Now we have Shynelle Jones --

20         THE COURT:  Microphone.

21         MR. POWELL:  I'll sit down, if it's okay.

22         THE COURT:  Yes, please.

23         MR. POWELL:  Probably the Shynelle Jones as well.

24         THE COURT:  Play the video?

25         MR. POWELL:  Yes, we'll play the video.  I don't know

1   if Mr. Whitefleet is bringing her at all, but I guess I could

2   run and subpoena her if I need to.  I don't think I need to.  I

3   think the video --

4           THE COURT:  You have her video depo.

5           MR. POWELL:  -- is sufficient.

6           Then we have Horacio Garcia, Jr. would be one of the

7   witnesses.

8           THE COURT:  Okay.

9           MR. POWELL:  I know I have Thursday covered.  I have

10  Mr. Juan Perez, he's been served.  I just asked Mr. Whitefleet

11  in an e-mail that either he didn't receive, or maybe I never

12  hit the send for Elizabeth Anshutz on Thursday as well.  So my

13  Thursday is covered for sure.

14          THE COURT:  Anything else you want to raise outside

15  the presence of the jury?

16          MR. POWELL:  Yes, we had agreed to -- that's in the

17  e-mail that apparently he didn't get -- to dismiss the

18  intentional infliction of emotional distress claim by No   .

19          THE COURT:  Okay.

20          MR. POWELL:  I think that was it, though.  Yes, that

21  was it, Your Honor.

22          THE COURT:  I assume you have no objection to that,

23  Mr. Whitefleet?

24          MR. WHITEFLEET:  No objection.

25          THE COURT:  That claim will be dismissed.  It will not

144

1    be submitted to the jury.

2          MR. POWELL:  And we'll revise -- oh, Your Honor, we're

3    going to sit down and go through jury verdicts at such time

4    before it goes to the jury together, right?

5          THE COURT:  The verdict form?

6          MR. POWELL:  Yes, verdict forms.

7          THE COURT:  I'll let you see it.  Yes, we go over jury

8    instructions and verdict forms before it goes to the jury.

9          MR. POWELL:  Thank you.

10          THE COURT:  Anything, Mr. Whitefleet?

11          MR. WHITEFLEET:  Nothing, Your Honor.

12          THE COURT:  Okay, see everybody Thursday.

13          MR. POWELL:  Thank you, Your Honor.

14      (Proceedings adjourned at 1:35 p.m.)

15

16                    C E R T I F I C A T E

17

18    I certify that the foregoing is a true and correct

19    transcript of the proceedings in the above-entitled matter.

20

21

22    MARYANN VALENOTI, RMR, CRR          December 3, 2024
      Official Court Reporter                 DATE

23    CA CSR #11266

24

25

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

1  **P O R T E R | S C O T T**

2  A PROFESSIONAL CORPORATION
   John R. Whitefleet, SBN 213301
3  jwhitefleet@porterscott.com
   2180 Harvard Street, Suite 500
4  Sacramento, California 95815
   TEL: 916.929.1481
5  FAX: 916.927.3706

6  Attorneys for Defendants COUNTY OF STANISLAUS; ERIC ANDERSON, APRIL COBBS;
   MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON,
7  SHYNELLE JONES, GLORIA SOLORIO

8

9                          **UNITED STATES DISTRICT COURT**
                           **EASTERN DISTRICT OF CALIFORNIA**
10

11 SHANE BEARD, HILDA PEREZ, and N.P.,        Case No. 1:21-cv-00841-JAM-CSK
   a minor, by and through Guardian ad Litem
12 Donnie R. Cox,                             **REPLY TO OPPOSITION TO MOTION**
                                              **FOR NEW TRIAL**
13
            Plaintiffs,
14                                            Date:   August 20, 2024
15 v.                                         Time:   1:00 p.m.
                                              Courtroom: 6, 14th Floor
16 COUNTY OF STANISLAUS, a political
   subdivision of the State of California, ERIC
17 ANDERSON, APRIL COBBS, MARIELA             Complaint Filed: 05/24/2021
   GOMEZ,     DAVID     GRANADOS,
18 STEPHANIE    HERRERA,     SHARI
   JOHNSON, SHYNELLE JONES, GLORIA
19 SOLORIO, and DOES 1 through 10,
20
            Defendants.
21 _____/

22         Defendant APRIL COBBS hereby submits the following reply to the opposition to her motion

23 for new trial.

24 ///

25 ///

26 ///

27 ///

28

                                           1
                    REPLY TO OPPOSITION TO MOTION FOR NEW TRIAL
   4866-6535-5475, v. 1

                                                              SER-0466

## ARGUMENT

**A.   Defendant Cobbs is entitled to a new trial on the judicial deception claims under the Fourth or Fourteenth Amendments either because (1) the jury failed to correctly apply the law to the evidence or was contrary to the evidence or (2) the court erred in allowing materiality and probable cause to be determined by the jury or (3) the court erred in not allowing special interrogatories to the jury.**

Defendant Cobbs argued that she is entitled to a new trial on the judicial deception claims under the Fourth or Fourteenth Amendments either because (1) the jury failed to correctly apply the law to the evidence or was contrary to the evidence or (2) the court erred in allowing materiality and probable cause to be determined by the jury or (3) the court erred in not allowing special interrogatories to the jury, because there was insufficient evidence that she knew or should have known that any statements in the affidavit supporting the warrant for were false, or that there were omissions that were material to a finding of probable cause by the issuing judge, and that the conclusory summaries of logs and opinions and impressions by Defendant Cobbs which as a matter of law cannot be false, and no evidence proffered that the issuing judge would not have issued the warrant. Defendant also argued the court erred in submitting the issues of materiality and probable cause to the jury which are legal issues that should have been decided by the court.  Defendant also argued the court should not have rejected the procedure that Plaintiffs be required to submit a list of alleged false facts and omissions (like they did in connection with the opposition to this motion), as such would have been the bases for which Defendant could have used to submit special interrogatories to the jury about the scienter of each of the claimed falsities.

In opposition, Plaintiffs refer to an Exhibit A, which essentially is meant to supplement the argument as a list of claimed falsities and omissions.   Defendant submits had this list been presented prior to the matter being submitted to the jury, the court could have determined materiality, and/or the Defendant could have submitted special interrogatories specific to the scienter of Defendant.  As trial evolved however, the only time the jury heard any partial list of claimed falsities was during closing argument from Plaintiffs.  This prejudiced Defendant in multiple ways as argued above.

While recognizing cases repeatedly say materiality and probable cause are legal issues, Plaintiffs appear to argue those are only on summary judgment motion.  (Opposition, p8).  Defendant submits that if they are legal issues – then they should be decided by the court, not a jury.  The jury determines

REPLY TO OPPOSITION TO MOTION FOR NEW TRIAL

4866-6535-5475, v. 1

1    factual disputes, from this a court can determine the legal significance.

2        Plaintiffs also argue Defendant waived the special interrogatories by not submitting any.

3 However, without having a list of claimed falsities and omissions that Plaintiffs now set forth in Exhibit

4 A, it was impossible to formulate said questions.

5        Otherwise, Plaintiffs point to a "check the box" "physical environment" as being false, but there

6 was no box for supervisorial neglect of other children within the home that left the infant at risk, much

7 less to any caselaw that such would be material for a finding of probable cause.  Plaintiffs next claim the

8 "common themes" was not Hilda's mental health which misstates the warrant, which refers to "concerns

9 pertaining to Hilda's mental health" which was demonstrably proven true, as the records clearly showed

10 a suicide attempt and the family's concerns over her mental health.  In addition, being "soft spoken" or

11 flat affect does not implicate mental health, much less was Defendant Cobb's subjective observations,

12 which were confirmed at trial.   Plaintiffs claim the "52 referrals" were duplicates or not made against

13 Hilda against misstates the warrant and does not make the representation false.  Plaintiffs claim that

14 Cobbs misrepresented that Mr. Beard "was aware of the agency's concerns but failed to be a protective

15 parent, and has made no new plans to remedy the issue."   There was no evidence April Cobbs was

16 aware of the conversations Mr. Beard had with Ms. Jones to make this a misrepresentation.   In addition,

17 as previously argued, that Mr. Beard was not living with the child is not material, since this was about

18 Ms. Perez' supervisorial role of the other children that implied the inability to protect N.P.   The

19 statement of reports or referrals having "not been confirmed by CPS" appears exculpatory, not

20 inculpatory; Plaintiffs miss the point of this statement – it's that the minor claimed abuse to the mother

21 but medical findings suggested no such abuse – these matters were proven true at trial.  Plaintiffs had no

22 evidence that the "scratch near the child's rectum" was considered a sign of abuse by a medical

23 professional.   Plaintiffs conveniently ignore references in the DSLs that it was reported then minor C

24 allegedly touched A.S. in the genitals, and scrotum and even masturbated him.   Accordingly, the

25 conclusion in the warrant of inappropriate touching was not false.

26        In addition, and most important, there was no evidence that Ms. Cobbs was aware of some falsity

27 or omissions that was material to the warrant.   As a matter of law she was entitled to rely on the

28 information in the DSLs, and Plaintiffs argument throughout the case is the summaries in the warrant

REPLY TO OPPOSITION TO MOTION FOR NEW TRIAL

4866-6535-5475, v. 1

Case 1:21-cv-00841-JAM-CSK   Document 194   Filed 07/22/24   Page 4 of 8

created a false impression, for which Defendant submit the characterizations were in fact, supported by the information in the DSLs.   For all these reasons, the court should find the jury misapplied the law, Defendant COBBs is entitled to judgment as a matter of law.   This prejudiced Defendant in not being able to ask whether the jury found deliberate indifference in terms of what facts or omissions were in the warrant (which Plaintiffs were not required to delineate to the jury).

**B.    Defendant Cobbs is entitled to a new trial on the Fourteenth Amendment claim because the jury failed to follow the law and/or the evidence**

Defendant Cobbs argued she is entitled to a new trial on the Fourteenth Amendment claim because the jury failed to follow the law and/or the evidence for lack of evidence of deliberate indifference to the alleged falsities or omissions in the warrant that amounted to conduct that "shocks the conscience" because Plaintiffs did not elicit testimony from Defendant Cobbs, nor was there sufficient evidence of, that she was aware that she was somehow materially omitting or falsified facts in the warrant, and in fact would have been compelled to draw such an inference by submitting the warrant as drafted to meet the deliberate indifference standard.

Accordingly, Defendant submits the jury failed to apply the evidence and/or misapplied the law in light of said evidence.   Accordingly, Defendant is entitled to a new trial on the Fourteenth Amendment claim.

**C.    Defendant is entitled to a new trial on the false imprisonment claim insofar as the jury misapplied the and/or the verdict was contrary to the evidence**

**Defendant argued** the jury erred in applying the standard under this claim because the Defendant Cobbs relied on information in the service logs provided by other social workers and her own impression and evaluations in the language of the warrant, and Plaintiffs did not elicit testimony from Defendant Cobbs that she was somehow aware of the alleged falsities or materially omitted exculpatory information from the warrant and that she did so with malice.

Plaintiffs argue that a fact, if included in the warrant, and is alleged to be false, ipso facto was included on purpose – but this misses the point.  Plaintiffs must have proven that Cobbs knew or should have known of the falsity when including in the warrant.  Defendant is not arguing purpose to harm – rather the jury could not have found she deliberately included the facts in the warrant known to be false

REPLY TO OPPOSITION TO MOTION FOR NEW TRIAL

4866-6535-5475, v. 1

SER-0469

1    or should have known to be false (that was material to the finding of probable cause), when there was

2    now testimony of same and the DSLs support the conclusions in the warrant.  Defendant submits the

3    fallacy of the claimed falsities is in the list now submitted by Plaintiffs.  Defendant submits this was not

4    elicited and Plaintiffs point to no evidence thereof.  Accordingly, Defendant submits she entitled to a

5    new trial on the claim.

6    **D.    Defendant is entitled to a new trial and/or to have the judgment amended as to any claim**

7    **for past or future non-economic losses for Plaintiff N.P.**

8        Defendant argued that there was insufficient evidence of past or future non-economic losses for

9    Plaintiff N.P., to support the jury awards of $100,000 for past non-economic loss and $250,000 future

10   non-economic loss to Plaintiff N.P, particularly because Plaintiff N.P. did not testify and thus there was

11   no evidence he had suffered any physical or emotional pain, nor any "fright, nervousness, grief, anxiety,

12   worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal"

13   citing C*apelouto v. Kaiser Found. Hosps*., 7 Cal. 3d 889, 892-93 (1972), particularly because he was

14   under 1 year old when removed.

15       Plaintiffs oppose by conflating the standard under a motion for new trial to that of a motion for

16   judgment as a matter of law under Rule 50, misciting arguing *Rodríguez-Valentin v. Doctors' Ctr. Hosp.*,

17   27 F.4th 14, 22 (1st Cir. 2022).  The District Court in *Bandary v. Delta Air Lines, Inc.*, 623 F. Supp. 3d

18   1071, 1075–76 (C.D. Cal. 2022) summarizes the standard and process:

19       With respect to damages, if the Court determines that damages are excessive, the Court
20       "may grant defendant's motion for a new trial or deny the motion conditional upon the
21       prevailing party accepting a remittitur. The prevailing party is given the option of either
22       submitting to a new trial or of accepting a reduced amount of damage which the court
         considers justified." *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th
23       Cir. 1983). "A remittitur must reflect 'the maximum amount sustainable by the proof.' "
24       *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (citing *D & S Redi-Mix v.*
         *Sierra Redi-Mix & Contracting Co*., 692 F.2d 1245, 1249 (9th Cir. 1982)). "If the
25       prevailing party does not consent to the reduced amount, a new trial must be granted."
26       *Fenner*, 716 F.2d at 603. "If the prevailing party accepts the remittitur, judgment must be
         entered in the lesser amount." Id.
27       …
          "In general, the court has discretion to reopen liability if a new trial on damages alone
28       would work injustice." *Wharf v. Burlington N. R. Co.*, 60 F.3d 631, 638 (9th Cir. 1995)

REPLY TO OPPOSITION TO MOTION FOR NEW TRIAL

4866-6535-5475, v. 1

(citing *Gasoline Prods. Co. v. Champlin Refining Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931) ("Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."))

*Bandary*, 623 F. Supp. 3d at 1077-1078.   Here, Plaintiffs point to additional speculative testimony about removal being trained as recognized as "traumatic" but no witness testified about whether Plaintiff NP at 9 months old experienced fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal to justify the amounts awarded.   A damage award of zero is square with "the maximum amount sustainable by the proof" as no proof of actual damages **caused by the removal** occurred.

**E.      It was prejudicial error to not instruct on limitation of damages**

Defendant argued it was prejudicial error to not instruct on where a subsequent juvenile court order finding detention proper or jurisdiction cuts off damages caused by the social workers, based on *Watson v. City of San Jose*, 800 F.3d 1135, 1139 (9th Cir. 2015) and *Williams v. Cnty. of Monterey*, No. 19-CV-01811-BLF, 2021 WL 1966712, at *8 (N.D. Cal. May 17, 2021).

Plaintiffs in opposition argues *Williams* does not apply because there were two separate entities on a warrantless removal.   This misses the point – that this court must account for the holding in *Carey v. Piphus*, 435 U.S. 247 (1978), which held that the subsequent judicial process creates a causal disconnect. To that point, Plaintiffs argue that Carey was a procedural due process case.   Defendant submits that such should make no difference given there were subsequent court filings by others not Defendant.   There is no requirement the subsequent proceeding be adversarial – only that the court had its imprimatur on the proceeding – and it is that stamp that cuts off damages.

Here, a limiting instruction should have been given, and it was prejudicial to Defendant Cobbs to not given said instruction, as such improvidently increased the potential causal connection to the removal and subsequent time before Plaintiff N.P. was returned to his parents as a basis for damages.   As such the error was more probably harmful than harmless.   Accordingly, Defendant submits she entitled to a new trial on all claims.

///

REPLY TO OPPOSITION TO MOTION FOR NEW TRIAL

4866-6535-5475, v. 1

SER-0471

**F.      The compensatory awards were not supported.**

Defendant argued that damages awarded by the jury were grossly excessive, clearly not supported by the evidence, or only based on speculation or guesswork, and gives rise to an inference that "passion and prejudice" tainted the jury's finding of liability, such that a new trial should be ordered.

In opposition, Plaintiffs fail to point to any case under these circumstances where such awards were upheld, particularly where the removal length was only 2 ½ months, which again Defendant submit should not be attributed to her.   Plaintiffs' expert limited a year of therapy for Plaintiff Beard at a few hundred a session equates to only around $10,000.   How the jury arrived at $50,000 to Plaintiff Perez at future harm is without logic or support;  $350,000 to then 9 month old or $500,000 to Plaintiff Beard is simply not supported by the evidence or reasonably implies such was made on passion or prejudice. Accordingly, Defendant is entitled to a new trial.

**G.      Defendant is entitled to new trial and/or the judgment should be modified as punitive damages were excessive.**

Defendant argued the punitive damages award was not supported by any evidence of financial ability to pay, that Defendant was robbed of any opportunity to argue which fact or omission could have been the basis for malice, nor can any degree of reprehensibility be assigned, save only in a generally broad way that could apply to any judicial deception claim, and in light of a dearth of comparable cases, Defendant submits that even a 1:1 ratio is excessive, given that Defendant is no longer employed with the County and now works as a teacher, and the damages were all non-economic and no physical damages, because the deterrence of repetition effect is a nullity given her changed circumstances.

In opposition, Plaintiffs appear to concede the financial evidence issue, but otherwise seemingly dismiss the large majority of the argument of not being worth considering.  Plaintiffs correctly note this court has the option of remittitur on punitive damages unless passion and prejudice affected liability. However, the court is not so limited in it choices, as argued where the compensatory damages awarded is flawed, such justifies a retrial for punitive damages.

///

///

///

4866-6535-5475, v. 1

SER-0472

Case 1:21-cv-00841-JAM-CSK   Document 194   Filed 07/22/24   Page 8 of 8

1
2    Dated:  July 22, 2024
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

PORTER SCOTT
A PROFESSIONAL CORPORATION

By /s/ John R. Whitefleet
        John R. Whitefleet
        Attorneys for Defendants

8

REPLY TO OPPOSITION TO MOTION FOR NEW TRIAL

4866-6535-5475, v. 1

**P O R T E R  |  S C O T T**

A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
jwhitefleet@porterscott.com
2180 Harvard Street, Suite 500
Sacramento, California 95815
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants COUNTY OF STANISLAUS; ERIC ANDERSON, APRIL COBBS; MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES, GLORIA SOLORIO

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE BEARD, HILDA PEREZ, and N.P., a minor, by and through Guardian ad Litem Donnie R. Cox, | Case No. 1:21-cv-00841-JAM-CSK |
| Plaintiffs, | **REPLY TO OPPOSITION TO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW** |
| v. | Date:   August 20, 2024 |
| COUNTY OF STANISLAUS, a political subdivision of the State of California, ERIC ANDERSON, APRIL COBBS, MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES, GLORIA SOLORIO, and DOES 1 through 10, | Time:   1:00 p.m. Courtroom: 6, 14th Floor |
| | Complaint Filed: 05/24/2021 |
| Defendants. | |

Defendant APRIL COBBS hereby submits the following reply to the opposition filed by Plaintiffs to her renewed motion for judgment as a matter of law pursuant to Rule 50(b).

## ARGUMENT

### A.    Defendant Cobbs is entitled to Qualified Immunity

Defendant argued qualified immunity applied. Plaintiffs in opposition point to law of general applicability, rather than those that would put a reasonable official on notice in the facts and

1

REPLY TO OPPOSITION TO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
4865-8657-8642, v. 1

circumstances in this case.  Plaintiffs first cite to *Devereaux v. Perez*, 218 F.3d 1045, 1053 (9th Cir. 2000), which was re-heard by the en banc panel in *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001). However, in *Devereaux*, the Ninth Circuit determined that there was no Fourteenth Amendment due process right for a child to be interviewed in a particular manner.  In rehearing the matter en banc, the Ninth Circuit recognized there is a constitutional due process right not to be subjected to criminal charges on the basis of false evidence, but Deveraux nonetheless failed to have sufficient facts to withstand summary judgment.  Accordingly, neither *Deveraux* case assist Plaintiffs here.

Plaintiffs cite to *Greene v. Camreta*, 588 F.3d 1011, 1034 (9th Cir. 2009), vacated in part on other grounds, 563 U.S. 692 (9th Cir. 2011). The surviving portion of *Greene* actually reversed summary judgment on qualified immunity based on a finding there was a triable issue of fact on deliberate fabrication, due to conflicting accounts of one conversation.  *Greene,* 588 F.3d at 1035. Arguably, the *Greene* court pronouncement of law being clearly established is dicta.  Otherwise, *Greene* is factually distinguishable from this case, as there were no representations of financial resources or lack thereof in the protective custody warrant at issue.

Plaintiffs next cite to *Costanich v. Dep't of Soc. & Health Servs*., 627 F.3d 1101 (9th Cir. 2010), but that case affirmed qualified immunity to a social worker in a seeking to revoke a foster care license, where the report purportedly contained representations of statements to witnesses who denied making statements.  However, reliance on this case would run counter to the Supreme Court's admonition to not to define the law at such a high level of generality in defining what is clearly established. See *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019).

Likewise, the Ninth Circuit decision in *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017), dealt with a case where the social workers had already been found to have committed perjury in a dependency court proceeding by a separate jury proceeding in state court, and thus denying qualified immunity to perjured testimony, which was a crime, elicited the obvious affirmation of denial of qualified immunity.   Here, there was no prior jury finding of perjured testimony, and thus *Hardwick* does not assist Plaintiffs.

Plaintiffs next cite to four cases that post-date the warrant in this case and thus cannot be used to support a denial of qualified immunity (Opposition, pp.5-7):  *Benavidez v. Cnty. of San Diego*, 993 F.3d

1134, 1152 (9th Cir. 2021) (alleged false notice to parent of medical examination), *David v. Kaulukukui*, 38 F.4th 792, 802 (9th Cir. 2022) (knowingly omitted of information of a custody order in a TRO petition); *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 801 (9th Cir. 2024) (triable issues of involvement of medical professional in treating the child's autism with cannabis oil); R*ieman v. Vazquez*, 96 F.4th 1085, 1091 (9th Cir. 2024) (failure to give notice of a detention hearing to a parent), In addition to post dating this case, they are all factually distinguishable.

Having dispatched all of the cases cited and relied on by Plaintiffs, Defendant submits Plaintiffs have failed to put forth clearly established law under the facts and circumstances of this case, and thus qualified immunity applies.  Accordingly, Defendant Cobbs is entitled to qualified immunity.

**B.   Plaintiffs Failed to Establish by a Preponderance of the Evidence that Defendant Cobbs Violated of the Fourth or Fourteenth Amendments.**

Defendant argued that Plaintiffs failed to establish that she knew or should have known that any statements in the affidavit supporting the warrant for were false, or that there were omissions that were material to a finding of probable cause by the issuing judge, particularly because the conclusory summaries of logs and opinions and impressions by Defendant Cobbs which as a matter of law cannot be false, and there was no evidence proffered that the issuing judge would not have issued the warrant; to the contrary, the evidence established that in the subsequent proceedings, where Judge Ameral concluded CPS had made a prima facie case that the petition met the criteria of Welfare & Institutions Code § 300, and later adjudicated N.P. a ward of the court, where Judge Ameral had before her a fuller factual and procedural record, including much of the logs which showed who made the reports, the outcome such as whether referrals were unfounded, evaluated out etc. (Exhibits 1-69), and sustained, all of which is uncontroverted evidence that supports that none of the claimed "falsities" or "omissions" in the warrant as claimed by Plaintiffs were material to a finding of probable cause.

In opposition, Plaintiffs point to a "check the box" "physical environment" as being false, but there was no box for supervisorial neglect of other children within the home that left the infant at risk, much less to any caselaw that such would be material for a finding of probable cause.  Plaintiffs next claim the "common themes" was not Hilda's mental health which misstates the warrant, which refers to "concerns pertaining to Hilda's mental health" which was demonstrably proven true, as the records clearly showed a suicide attempt and the family's concerns over her mental health.  In addition, being

Case 1:21-cv-00841-JAM-CSK   Document 193   Filed 07/22/24   Page 4 of 5

1   "soft spoken" or flat affect does not implicate mental health, much less was Defendant Cobb's

2   subjective observations, which were confirmed at trial.   Plaintiffs claim the "52 referrals" were

3   duplicates or not made against Hilda against misstates the warrant and does not make the representation

4   false.  Plaintiffs claim that Cobbs misrepresented that Mr. Beard "was aware of the agency's concerns

5   but failed to be a protective parent, and has made no new plans to remedy the issue."   There was no

6   evidence April Cobbs was aware of the conversations Mr. Beard had with Ms. Jones to make this a

7   misrepresentation.   In addition, as previously argued, that Mr. Beard was not living with the child is not

8   material, since this was about Ms. Perez' supervisorial role of the other children that implied the

9   inability to protect N.P.   The statement of reports or referrals having "not been confirmed by CPS"

10   appears exculpatory, not inculpatory; Plaintiffs miss the point of this statement – its that the minor

11   claimed abuse to the mother but medical findings suggested no such abuse – these matters were proven

12   true at trial.   Plaintiffs had no evidence that the "scratch near the child's rectum" was considered a sign

13   of abuse by a medical professional.   Plaintiffs conveniently ignore references in the DSLs that it was

14   reported then minor C allegedly touched AS in the genitals, and scrotum and even masturbated him.

15   Accordingly, the conclusion in the warrant of inappropriate touching was not false.   For all these

16   reasons, the court should find Defendant COBBs is entitled to judgment as a matter of law.

17   **C.    Plaintiffs separately failed to establish a Fourteenth Amendment violation**

18         Defendant also argued that Plaintiffs failed to establish a familial association claim under the

19   Fourteenth Amendment, because Plaintiff Beard did not establish a full commitment to the

20   responsibilities of parenthood by coming forward to participate in the rearing of his child prior to

21   removal, and/or insofar as Defendant submits Plaintiffs failed to establish their judicial deception claim,

22   the Fourteenth Amendment claim fails as well, and/or Plaintiffs did not establish conscience shocking

23   behavior in obtaining the warrant.

24         In opposition, Plaintiffs argue the full commitment argument was not raised in the Rule 50(a)

25   motion and thus was not preserved.   However, Defendant referenced its Trial Brief in raising the

26   Fourteenth Amendment issue, and thus implicitly did so.   Otherwise, Plaintiffs fail to cite to any

27   authority that the facts in this case sufficiently establish commitment to meet the Fourteenth Amendment

28   parental relationship, nor to any caselaw that the facts in this case would meet the conscience shocking

REPLY TO OPPOSITION TO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
4865-8657-8642, v. 1

1    standard.  Accordingly, judgment in favor of Cobbs is warranted.

2    **D.    Plaintiff N.P. did not establish false imprisonment and/or Defendant is entitled to immunity**

3    Defendant next argued that Plaintiff N.P. did not establish the elements of false imprisonment

4    and/or overcome the immunities under California Government Code §§ 820.2, 820.21 or 821.6, because

5    she relied on information in the service logs provided by other social workers and her own impressions

6    and evaluations in the language of the warrant does not amount to the equivalent of perjured testimony.  In

7    opposition, Plaintiff essentially relies on the claimed falsities and omissions, which Defendant submits

8    were insufficient as argued above.  Accordingly, Defendant submits Plaintiffs failed to establish this claim

9    and is entitled to judgment.

10   **E.    Plaintiff N.P. failed to establish damages/causation**

11   In opposing the argument that Plaintiff N.P. failed to evince sufficient facts of damages caused

12   by the removal, Plaintiff points to instances of diaper rash and gaining weight, each of which have no

13   causal connection to being removed, or would require expert testimony that such are symptoms of harm

14   caused by the removal, as opposed to what seems to be more common sense care issues.   Infants are

15   supposed to gain weight if fed properly, and a diaper rash is common even in the best of care.

16   Accordingly, Defendant submits Plaintiff N.P. failed to establish actual damages or that Defendant

17   Cobbs caused same.   Accordingly, Defendant submits Plaintiff N.P. failed to establish all claim against

18   her and is entitled to judgment on all claims by N.P.

19                                      **II.  <u>CONCLUSION</u>**

20   For each of the foregoing reasons, Defendant COBBS request entry of judgment as a matter of

21   law.

22
23                                      Respectfully submitted,

24   Dated:  July 22, 2024              PORTER SCOTT
                                        A PROFESSIONAL CORPORATION

25
26                                      By <u>/s/ John R. Whitefleet</u>
                                            John R. Whitefleet
27                                          Attorneys for Defendants

28

---
REPLY TO OPPOSITION TO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
4865-8657-8642, v. 1

1  ROBERT R. POWELL, SBN: 159747
  POWELL & ASSOCIATES
2  925 West Hedding Street
  San Jose, California 95126
3  T: (408) 553-0201 F: (408) 553-0203
  E: rpowell@rrpassociates.com
4

5  Attorneys for Plaintiffs

6

7

8              UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11  SHANE BEARD, et al.,                Case No.: 1:21-cv-00841-JAM-CSK

                        Plaintiffs,     **DECLARATION OF ROBERT R.**
12                                      **POWELL IN SUPPORT OF**
          v.                            **PLAINTIFFS' OPPOSITION TO**
13                                      **MOTION FOR NEW TRIAL**
                                        **[Dkt. 177]**
14  COUNTY OF STANISLAUS, et al.,

15                        Defendants.

16

17  I, ROBERT R. POWELL, do hereby declare:

18    1.  I am an attorney licensed to practice before all of the Superior Courts of the State of

19        California, all 9th Circuit District Courts within the State of California, and a member in

20        good standing to the bar to the U.S. Supreme Court. I am an attorney of record for

21        Plaintiffs in the above-entitled action.

22    2.  Attached hereto as Exhibit A is a list, not exhaustive, of the lies and omissions I and

23        associated counsel Mr. Samuel H. Park believe were shown to the jury as regards

24        Defendant Cobbs warrant application to remove N.P. from his mother and father, Hilda

25

1

Declaration of Robert R. Powell ISO Opposition to Motion for New Trial
Case No. 1:21-CV-00841-JAM-CSK
Beard, et al. v. County of Stanislaus, et al.                    SER-0479

Perez and Shane Beard, at the trial ending May 29th, 2024. This list is referenced in

Plaintiffs' Opposition to the Defendant's Motion for New Trial found at Dkt. 177.

3.  We do not have transcripts of trial, spare a section with Mr. Granados testimony, thus my statements in the Opposition to the Motion for New Trial are as could be culled from memory, from notes (of others), and from my familiarity with the exhibits and video deposition excerpts used at trial and available to the jurors in deliberation.

4.  Attached as Exhibit B are true and correct excerpts of the March 8th, 2024 transcript for the Final Pre-Trial Conference in this case, as referenced in the Plaintiffs' Opposition to Motion for New Trial filed by Defendant Cobbs.

The foregoing is sworn to under penalty of perjury pursuant to the laws of the State of California.

POWELL & ASSOCIATES

Date: July 12, 2024          _____/S/ Robert R. Powell____
                             ROBERT R. POWELL, ESQ.
                             Attorney for Plaintiffs

2

Declaration of Robert R. Powell ISO Opposition to Motion for New Trial
Case No. 1:21-CV-00841-JAM-CSK
Beard, et al. v. County of Stanislaus, et al.          SER-0480

1
2
3

LIE: "*The child's physical environment poses an immediate threat to the child's health or safety and there are no reasonable services available to this worker which, if provided to the child's parent, guardian, caretaker, or to the child, would eliminate the need to remove the child from the custody of his or her parent, guardian or caretaker*."

4
5
6
7
8
9
10
11

HOW SHOWN:  As an initial matter, a "physical environment" has nothing to do with whether a person in the home is engaging in some conduct that would require removal of a child.  Nevertheless, to the extent this sworn allegation was intended to be based on "inappropriate touching" by some other child in Hilda's home, both Hilda Perez and April Cobbs testified that all of the other children in Hilda's care were removed from her care by the time the warrant application was prepared. Moreover, Defendant Cobbs never had any evidence that N.P. had suffered or was at risk of suffering "inappropriate touching" by any of the other children in the home.

12
13
14
15

LIE: "*According to Case Management Systems (CMS) there have been 52 referrals and/or reports regarding concerns since 12-15-2011. The common themes in these episodes and reports has been sexual abuse to Hilda's children or relatives, concerns pertaining to Hilda's mental health, along with some self-verbalization by Hilda that she wanted to kill herself.*"

16
17
18
19
20
21
22

HOW SHOWN: Hilda's mental health and suicidal ideation were not a *common* theme throughout these referrals. The evidence shows that there was one referral in 2011 where Hilda had an issue with post-partum depression. Cobbs left out of the warrant there was one single mental health episode over eight (8) years ago, and it was the result of post-partum depression, and that Hilda accepted and participated in services through third party providers at that time. By leaving these details out Cobbs painted a false picture that Hilda struggled with her mental health and suicidal ideation over a period of 8-9 years and was a present danger to the child, N.P. In fact, she doubled down on this narrative.

23
24
25
26
27

Cobbs supported her omission and built up the false inference by misrepresenting elsewhere in the affidavit that "*Hilda appeared to be in a gaze and spoke in a soft tone almost in a whisper*" during her interview at the home on 7/12/19, and added that at the Team Decision Meeting (7/15/19), "*I observed Hilda to be quiet and soft-spoken but when*

28

- 1 -
**EXHIBIT A**

1    *she began to speak, her affect was flat and her requests were confusing to this social*

2    *worker.*"[1]

3        These false and unsupported representations by Cobbs pushed the narrative that

4    Hilda had ongoing and unresolved mental health issues to create the perception that Hilda

5    suffered from some form of disability or incapacity, rendering her child unsafe. The jury

6    had the opportunity to review all of the evidence, including audio recordings of Cobbs and

7    Jones's interview of Hilda and Shane in the home on 7/12, and other than respecting the

8    fact children were present in the home and coming in and out of the room, there was

9    nothing that was "almost a whisper" at the home on 7/12. The jury heard the audio-

10    recordings of conversations and could decide for themselves. Trial Ex.'s 93, 94.

11        LIE: Cobbs failed to disclose to the court that of the "52 referrals," many were

12    duplicates or were not made against Hilda, thereby creating the false impression that Hilda

13    had an extensive and problematic history with child welfare services.

14        HOW SHOWN: The jury was provided the various referrals and their dispositions in

15    within the Exhibits 1 – 70 (some within that range being Delivered Service Logs). The jury

16    had the evidence and heard Cobbs testify about the referrals that actually came from

17    Alfredo Sosa Sr., which included a trend of escalating and padded allegations.

18        LIE:  As to Shane Beard, Cobbs misrepresented that Mr. Beard "*was aware of the*

19    *agency's concerns but failed to be a protective parent, and has made no new plans to*

20    *remedy the issue.*"

21        HOW SHOWN:  The jury heard testimony that Mr. Beard agreed to take custody of

22    and care for N.P. if the child was removed, pending completion of the "investigation." In

23    fact, he testified that he told Cobbs he would do whatever was necessary to maintain

24    custody of N.P. To that end, Mr. Beard child proofed his home and agreed to a home

25

26    _____

27    [1] It is unknown why requests of Hilda for an attorney and documents about the investigation
were confusing to Ms. Cobbs; she did not state anything else that was "confusing" about
what Hilda said at the Team Decision Meeting. Cobbs concocted this lie in order to paint

28    Hilda as having disorganized speech and suffering from mental illness.

**EXHIBIT A**                                                    SER-0482

1    inspection so that the child could be placed in his home. Cobbs concealed this material

2    information from the juvenile court, and having also omitted the fact she and Jones were

3    told that Hilda had sat down and spoken to the child about touching and boundaries.

4        RELATED OMISSION: Ms. Cobbs, admitting she knew the parents lived separately,

5    and that was a relevant factor in determining if a "safe" parent could step up to take

6    temporary custody of N.P. This critical fact was left out of Cobbs's warrant affidavit,

7    which, to the extent that the juvenile court believed there was probable cause for removal of

8    N.P. from Hilda Perez, would cause the court to believe that removal from both parents was

9    necessary. As Ms. Jones testified at trial (by video), there were "situations" where when

10   less than all children are removed, it's because, "they had, like, another parent that they

11   could go live with that was safe." The jury hearing that, quite likely added that to the

12   reasons for determining Cobbs intentionally concealed this fact and carried out the removal

13   of N.P. from Shane Beard out of malice and vindictiveness.

14       RELATED OMISSION: The jury heard, in a audio-recorded telephone call, Cobbs

15   instructing Hilda Perez that she could, but was not required, to bring people to support her

16   to the Team Decision Meeting. When Hilda asked whether Shane needed to be at the TDM,

17   Cobbs told her "no." This fact was also omitted in the warrant affidavit in order to suggest

18   that both Shane and Hilda were at the TDM to address concerns about both parents, when,

19   in reality, the concerns were solely with Hilda.

20       LIE: "*All of these reports and or referrals have not been confirmed by CPS and

21   *medical findings suggest, no physical signs of sexual abuse to the child, however the child*

22   *allegedly has told Hilda (mother) that these things are happening.*"

     HOW SHOWN: Cobbs said this, without a mention that well over half of the referrals

23   (thirty six) were "unfounded," i.e. inherently improbable or false, as shown in Exhibits 1-

24   70. Thus, what CPS *had "confirmed"* was that someone(s)/somebody(s) made a lot of

25   unfounded claims of abuse amidst the Garcia and Sosa families, but of course that was

26   never shared with the Court. Of course, Cobbs left out that several – especially starting in

27   December of 2018 – were unfounded and from Alfredo Sosa Sr., helped add to the false

28

- 3 -

**EXHIBIT A**

narrative that Hilda was abusive and making false accusations. Perhaps the most damning, Cobbs concealed that not a single referral had anything to do with Shane Beard or N.P.

LIE: Cobbs told the juvenile Court in the warrant application that there was essentially no proof of any kind that there had been any sexual abuse, in fact specifying no "physical signs," yet Cobbs left out the fact that the child was examined by a doctor who found a tear near the rectum despite testifying she read any referral that resulted in an investigation and it was right there in a fairly recent referral.[2]

LIE: "*What appears to be clear from the medical records is that although Hilda lives in Patterson, she has taken her child to numerous other medical offices for exams and assessments of sexual abuse, only to be rebuffed" that there is no sexual abuse evidence in regards to physical signs.*"

HOW SHOWN: First, there was the evidence of the scratch near the rectum; it is in Exhibit 67 (DSL). Second, if it is "difficult to tell how many times he has been taken to the doctor for alleged sexual abuse," it is reckless to, in the same breath, tell the Court there have been "numerous" such exams and assessments. Further, there no evidence, whatsoever, in any exhibit in this case or any testimony provided, that mother was "rebuffed" by any medical professional. (Cambridge Dictionary: to refuse to accept a helpful suggestion or offer).

LIE: "*On July 11th, I received another referral of many alluding to or concerned about sexual abuse. The concern listed in this referral allegation was that Alfredo (age 5) had again been exposed to another hospital visit. There again were no signs of sexual abuse physically speaking. At this juncture, this agency and Social Worker Cobbs became concerned that Alfredo is being forced into exams, questioning and ongoing sexual abuse assessments conducted by numerous people and facilities based on Hilda's perception that he has been abused, despite information to the contrary.*"

HOW SHOWN: Again, Ms. Cobbs failed to advise the Court of the scratch near the child's rectum, and continues the reckless exaggeration of the "numerous," here citing

---

[2] In fact, Cobbs claims in her Motion for New Trial, that she "relied on information in service logs provided by other social workers[.] Dkt. 177 9:4-5  This was basically an oblique shoehorn effort to bring in elements of the Motion for Summary Judgment ruling in *O'neel v. County of Sacramento*, 2024 WL 1676723 (2024)  But of course what Cobbs did, was twist words, cherry pick, turning a blind eye to exculpatory or mitigating information turn.

- 4 -

**EXHIBIT A**

1   "people and facilities," after telling the Court that quantifying the examinations was

2   "difficult."

3       RELATED OMISSION: Defendant left out that the most recent sexual abuse

4   allegations were made by Alfredo Sr., in the context of a custody dispute, and that it was his

5   allegations that actually led to the first forensic medical examination; leaving the Court to

6   believe it was just another of the "52 referrals" received about mother, and that Hilda was

7   the cause of the actual examination of the forensic variety that occurred the first of two

8   times.

9       LIE: "*At current time, I also investigated more referrals regarding Hilda regarding

10  *sexual abuse allegations. During this time, it was alleged that A.S.Jr. was being

11  *inappropriately touched by his brother William. During this investigation, SW Cobbs was

11  *made aware of an incident involving Alfredo Jr being touched inappropriately by her older

    *son Christopher while playing a game in a fort made out of blankets. Hilda appeared to

12  *minimize the allegations and made no efforts to make the appropriate reports regarding

13  *this allegation*."

14      HOW SHOWN: The actual referral showed that Alfredo Sosa senior made the report,

15  and while Cobbs told the juvenile court that there were "since beginning of the year 2019 [ ]

16  six sexual abuse allegations pertaining to [A.S. Jr.] allegedly being perpetrated on by his

17  father during a visit," that is absolutely not true based on the referrals themselves, evidence

18  the jury had in the ERRI's and DSL's.  Ex. 1-71

19      LIE:  "*Additionally, Christopher, a minor, admitted that he touched A.S.Jr.

20  *inappropriately. He reported that A.S.Jr. asked him to touch his 'ding a ling' and he knew

    *that it was wrong, but he continued to do so*."

21      HOW SHOWN: Ms. Cobbs falsely represents, "but he continued to do so," i.e. that

22  A.S.Jr. "continued" touching of the boys "*ding-a-ling.*" She did so without having any

23  supporting evidence. Cobbs knew full well from the DSL  entries for the visit on 7/12 at

24  Hilda's home, that no one claimed Christopher touched A.S.Jr. anywhere but the belt

25  buckle. (A.S. Jr.) actually claimed no one had touched him and Cobbs attended the first

26  CAIRE interview, which she described as containing "no disclosures." And as to the

27

28

**EXHIBIT A**                                                                    SER-0485

1   touching of a belt buckle, it happened one time, and said the child said he would not do it

2   again.[3]

3   LIE: "*Due to limited engagement and difficulty in communicating with Hilda, a TDM*

4   *(Team Decision Meeting) was scheduled to engage with the family and to hopefully discuss*
*the concerns of the referrals, including what appears to be mother's mental health*

5   *limitations, sexual abuse, and concerns of lack of supervision.*"

6   HOW SHOWN: Again, the evidence presented at trial showed that Cobbs had no

7   evidence, whatsoever, of any "mental health limitations" on the part of Hilda as of 2019,

8   "sexual abuse," or "lack of supervision."

9   LIE: "*Protective Custody is being requested for baby N     due to his young age, and*

10  *inability to protect and care for himself from risk of ongoing, unmitigated sexual abuse*
*occurring in the home.*"

11  HOW SHOWN: There was no "unmitigated sexual abuse occurring in the home."

12  The evidence showed that (1) Hilda had spoken to the children about setting boundaries, (2)

13  there was no "sexual abuse in the home," (3) Cobbs had already removed the other children

14  in the home who purportedly engaged in "inappropriate touching" with safety plans.

15  LIE: "*Hilda and Mr. Beard were unwilling to engage in voluntary services, although*

16  *offered and explained numerous times, therefore a higher level of intervention is*
*necessary.*"

17  HOW SHOWN: Cobbs does not identify a single service that she offered to either

18  parent, and, in fact, she never did. All of the witnesses testified that when Hilda requested

19  an attorney and discovery at the TDM, the meeting was adjourned without discussing any

20  potential services to be offered. The decision to remove N.P. was reached in a closed

21  meeting by the social workers thereafter. Moreover, Cobbs omits in her warrant affidavit

22  that Hilda had previously been offered and accepted services including FRC services, as

23  noted in the referral history and as testified to at trial. Cobbs further omits that, whatever

24  the reasons were for terminating the TDM, no further efforts were made to offer services to

25  Hilda after the meeting or to reschedule. Finally, Cobbs omits that Shane agreed to take

26

27

28  ---

[3] C.P. also testified how he avoided A.S.Jr. steadfastly after the talk with mother.

- 6 -

**EXHIBIT A**

custody of N.P. and "do whatever was required" to keep N.P. safe. In fact, Shane agreed to a home visit.

- 7 -

**EXHIBIT A**

Pages 1-36

1                    UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF CALIFORNIA

3                           (SACRAMENTO)

4

5   SHANE BEARD, et al.,          )  Case No.   21-cv-00841-JAM-KJN
                                   )
6               Plaintiffs,        )  Sacramento, California
                                   )  Friday, March 8, 2024
7        v.                        )  Courtroom No. 6, 14th Floor
                                   )
8   COUNTY OF STANISLAUS, et al.,  )
                                   )
9               Defendants.        )
                                   )
10  _____)

11

12              TRANSCRIPT OF FINAL PRETRIAL CONFERENCE
                  BEFORE THE HONORABLE JOHN A. MENDEZ
13                UNITED STATES SENIOR DISTRICT JUDGE

14  APPEARANCES:

15  For Plaintiffs:           ROBERT R. POWELL, ESQ.
                              Powell & Associates
16                            925 West Hedding Street
                              San Jose, California 95126
17                            (408) 553-0201

18  For Defendants:           JOHN R. WHITEFLEET, ESQ.
                              Porter Scott
19                            2180 Harvard, Suite 500
                              Sacramento, California 95815
20                            (916) 929-1481

21  Transcription Service:    Peggy Schuerger
                              Ad Hoc Reporting
22                            2220 Otay Lakes Road, Suite 502-85
                              Chula Vista, California 91915
23                            (619) 236-9325

24

25  Proceedings recorded by electronic sound recording; transcript
    produced by transcription service.

**EXHIBIT B**

28

1          And the other thing is if you pass, you don't lose your

2    peremptory.  You get to -- you get to keep your peremptory.  But

3    if I get two passes in a row, then the jury is deemed to be

4    acceptable to both parties and you would lose the peremptory, so

5    it's a strategy call on your part.  You can try to hoard your

6    peremptory challenges, but you could lose them.

7          You are to submit a proposed verdict form.  I like

8    general verdict forms.  I do not like to give juries

9    interrogatories or detailed verdict forms.  So keep that in mind.

10         The --

11         MR. WHITEFLEET:  Even --

12         THE COURT:  Go ahead.

13         MR. WHITEFLEET:  -- though you just said that, Your

14   Honor, I will be submitting special interrogatories for purposes

15   of qualified immunity.

16         THE COURT:  Yeah.  You can try.  You're going to try to

17   submit those.  Yeah.  Got it.  Qualified immunity is a legal

18   issue.  I mean, you can raise it at the close of Plaintiffs' case.

19   I don't think you have to --

20         MR. WHITEFLEET:  It's only to -- because if there are

21   specific disputed facts that I think would be necessary to resolve

22   in order to determine if qualified immunity should apply or not,

23   that's what I'm talking about.

24         THE COURT:  Yeah.  I know this case is going to raise

25   credibility issues, so -- okay.  I mean, submit them.  I'll look

29

1   at them.  But I don't like lengthy verdict forms.

2          And then your in limine motions have to be filed no

3   later than May 3rd.  Any oppositions to the in limine motions have

4   to be filed by May 8th.  No reply briefs are needed.  And I'll

5   take up in limine motions on the first day of trial.

6          I'm not going to schedule any further formal settlement

7   conference unless you want me to, but our magistrates are very

8   busy.  Up to you two.  I'm not going to waste their time if you

9   don't think it would be worthwhile.

10          MR. POWELL:  My response would be that Mr. Whitefleet

11   and I have worked together for a while since he substituted in

12   through a series of these cases, and we have the ability to

13   talk -- almost too much.

14          THE COURT:  Okay.  No agreed-upon statements.

15          Separate trial of issues.  Defendants submit the issue

16   of alleged fabrications should be bifurcated so the issue of

17   whether probable cause existed, which is a legal issue for the

18   Court, be adjudicated first.

19          Defendants also submit punitive damages should be

20   bifurcated.

21          Okay.  Then my order will say, "The Court denies both

22   requests."

23          Party cannot intend to offer any impartial experts.

24   Yeah.  There won't be any impartial experts.

25          Attorney fees are always taken up after or post-trial.

36

1          THE COURT:  Everything's in the order.  Right.  Mr.

2  Whitefleet, any questions?

3          MR. WHITEFLEET:  No questions, Your Honor.  Thank you.

4          THE COURT:  Okay.  All right.  We'll see you on May 13.

5  Call ten days ahead of time.  We'll hopefully get this order out

6  to you -- we'll put it on the docket today and then give me any

7  modifications or changes that you want to make within seven days.

8          MR. POWELL:  Thank you very much.

9          THE COURT:  All right.  Thanks, folks.  Have a good

10  weekend.

11          MR. WHITEFLEET:  Thank you.  You, too.

12      (Proceedings adjourned at 11:51 a.m.)

13

14          I, Peggy Schuerger, certify that the foregoing is a

15  correct transcript from the official electronic sound recording

16  provided to me of the proceedings in the above-entitled matter.

17

18  _____*Peggy Schuerger*_____          April 27, 2024
    Signature of Approved Transcriber      Date

19  Peggy Schuerger
    **Ad Hoc Reporting**
20  Approved Transcription Provider
    for the U.S. District Court,
21  Eastern District of California

22

23

24

25

1    ROBERT R. POWELL, SBN: 159747
     POWELL & ASSOCIATES
2    925 West Hedding Street
     San Jose, California 95126
3    T: (408) 553-0201 F: (408) 553-0203
     E: rpowell@rrpassociates.com
4

5    SAMUEL H. PARK (SBN: 261136)
     LAW OFFICE OF SAMUEL H. PARK, APC
6    374d Bergin Drive
     Monterey, CA 93940
7    T: (831) 529-5955
     E: sam@sampark.lawyer
8

9    Attorneys for Plaintiffs

10

11                **UNITED STATES DISTRICT COURT**

12                **EASTERN DISTRICT OF CALIFORNIA**

13

14   SHANE BEARD, et al.,                Case No.: 1:21-cv-00841-JAM-CSK

15              Plaintiffs,              PLAINTIFFS' OPPOSITION TO
                                         DEFENDANT'S MOTION FOR NEW
16        v.                             TRIAL [Dkt. 177]

17   COUNTY OF STANISLAUS, et al.,       Judge: John A. Mendez
                                         Magistrate Judge: Stanley A. Boone
18              Defendants.

19

20

21

22

23

24

25

                                    1
     Plaintiffs' Opposition To Defendant's Motion For New Trial
     Case No. 1:21-CV-00841-JAM-CSK
     Beard, et al. v. County of Stanislaus, et al.                    SER-0492

## TABLE OF CONTENTS

I.   INTRODUCTION...................................................................1

    A.  Overview Of Trial......................................................1

II.  MEMORANDUM OF POINTS AND AUTHORITIES..................3

    A.      LEGAL STANDARD..................................................... ..3

III. ARGUMENT................................................................... 5

    A.      No Error In The Judicial Deception Verdict...................................5

    - First Grounds – Jury Fails Follow Law & Evidence, Contrary To Evidence..... 5

    - Second Grounds – Error For Jury Determine Materiality / Probable Cause

    - Third Grounds – Error For Jury Determine Materiality / Probable Cause .... 8

    B.      The Jury Followed The Law & Evidence  Deciding April Cobbs
        Violated The 14th Amendment................................................. 9

    C.      The Jury Properly Found False Imprisonment Of N.P. .....................12

    D.      There Was Substantial Evidence From Which Jury Could Reasonably
        Conclude Past And Future Non-Economic Damage To N.P. ...............14

    E.      Denying A Requsted Damages "Cut-Off" Was Proper.......................17

    F.      The Compensatory Damage Awards Were Entirely Appropriate…..........22

    G.      Defendant Is Not "Entitled" To A New Trial For Punitive Damages......23

III. CONCLUSION..................................................................24

1

# TABLE OF AUTHORITIES

**Cases**

*Burke v. Regalado*, (10th Cir. 2019) 935 F3d 960.................................................................. 4

Carey v. Piphus, 435 U.S. 247 (1978) .................................................................................. 21

*County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)................................................... 11

*David v. Kaulukukui*, supra, 38 F.4th 792, 801, n.3............................................................... 6

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,  95 F3d 1422, 1435 (9th Cir. 1996).... 15

*Donnell v. City of Cedar Rapids*, 437 F. Supp. 2d 904, 925 (N.D. Iowa 2006) ........................... 7

*Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). ..................................................... 6

*Gilker v. Baker*, 576 F.2d 245, 247 (9th Cir. 1978)................................................................. 8

*Hervey v. Estes*, 65 F.3d 784, 788-9 (9th Cir. 1995) .............................................................. 8

*Landes Const. Co., Inc. v. Royal Bank of Canada*, (9th Cir. 1987) 833 F2d 1365 ....................... 4

*Liston v. Cty. Of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997) .............................................. 6

*Montgomery Ward & Co. v. Duncan*, (1940) 311 U.S. 243, 251 ............................................... 4

*Moreland v. Las Vegas Metro Police Dep't*, 159 F.3d 365, 371 (9th Cir.1998)........................... 11

*Morgan v. Woessner*, 997 F2d 1244, 1258 (9th Cir. 1993) ........................................................ 14

*Murphy v. City of Long Beach*, 914 F2d 183, 187 (9th Cir. 1990)................................................ 4

*O'neel v. County of Sacramento*, 2024 WL 1676723 (2024) ....................................................... 13

*Porter v. Osborn*, 546 F.3d 1131, 1137 (C.A.9 (Alaska), 2008) ................................................ 10

*Rodríguez-Valentin v. Doctors' Ctr. Hosp.*, 27 F.4th 14, 22 (1st Cir. 2022) .............................. 15

*Scanlon v. Cty. Of L.A.,* 92 F.4th 781 (9th Cir. 2024) ....................................................... 6, 7

*Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d, 1385, 1387 (9th Cir. 1987) ........................... 24

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001)..... 3, 4

*Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009)............................. 7

*Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981) ..................................................................... 19

*Spencer v. Peters*, 857 F.3d 789, 800-801 (9th Cir. 2017) ............................................... 7

*United States v. Staner*t, 762 F.2d 775, as amended, 769 F.2d 1410 (1985) ................................ 6

*Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000).......................................................... 20

*Watson v. City of San Jose*, 800 F.3d 1135 (9th Cir. 2015).......................................... 17

*Williams v. County of Monterey*, No. 19-CV-01811-BLF............................................ 17

**Rules**

Local Rule 291.2.......................................................................................... 4

**State Statutes**

Cal. Gov. Code §820.21................................................................................. 12

# I.  INTRODUCTION

### A.  Overview Of Trial

The Seventh Amendment to the Constitution was ratified on December 15, 1791. It protects the right for citizens to have a jury trial in federal courts with civil cases where the claim exceeds a certain dollar value. It also prohibits judges in these trials from overruling facts determined by the jury. The text reads;

> "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

Defendant seeks the wholesale supplanting of the jury's verdict, which at some point in the effort begs the question, why do we have a jury at all.  No doubt there are cases where usurping a jury's verdict is unequivocally appropriate and necessary, but that should only occur when it is unequivocally appropriate and necessary; this case is not one of them.

The jury-engaged portion of this trial was eight days in length, and to Plaintiffs' reckoning they reached a verdict in less than 3 ½ hours. They heard testimony from mother, father, a percipient-to the-removal paternal mother and paternal aunt, a renowned expert in psychology, and five different social workers (Cobbs, Jones, Anderson, Johnson, and Granados).  The jury was presented a multitude of exhibits, promulgated by or utilized by the social workers that testified (there were others of course in the Delivered Service Logs), and including policy documents of Stanislaus County's "child welfare" agency.  Plaintiffs have included as an attachment to the Declaration of Robert R. Powell submitted herewith a listing of the lies/omissions and addressed the evidence that showed/revealed them, and spelled out the nuances in the subterfuge that was the warrant application submitted by April Cobbs.[1]

---

[1] Plaintiffs do not have a transcript of the trial, but collective notes, good faith, many exhibits (all references to which herein are to Plaintiffs' unless otherwise noted) and transcripts of at the very least video-depositions shown to the jury provide a pretty good sense of the breadth of evidence presented this jury on the issue of deception by Cobbs. Exhibit A is not every

There was a vast swath of personal testimony of Hilda Perez and Shane Beard about their own psychological pain and trauma inflicted by Defendant Cobb's intentional acts, and some of the enduring aspects of that pain and suffering, for example the severe anxiety-response to even seeing County-obvious vehicles, a near everyday occurrence in a regular life.

Shane talked about the changes in his young son's reactions to him coming and going in visits, the changes in the child after he was taken from his parents in a volley of yelling, crying, and his father collapsing into sobs and wails as they took his only child away and he was tended to by an ambulance crew.  All part of the "absolutely no evidence" of injury to N.P. Defendants argue in their Motion that was evidence at trial.

Shari Johnson spoke of the harm to her own child from the removal, and while Plaintiffs have no transcript to cite to for exactitude, it was clearly a statement about how the emotional trauma from that removal of the child still affected the child to that day, years and years later.

Every aspect of this family's lives has changed and will remain forever changed by what happened to them at the hands of the Defendant; the evidence on that was substantial.

The jury was not given a monetary "number" for any of the damages the Plaintiffs were claiming, which were entirely non-economic damages commonly referred to as "pain and suffering" damages.  The jury was told to consider what would a person, a reasonable person of whatever variance in income and assets might exist in any pool of people, would pay to not have this trauma inflicted on themselves or their children, to avoid the pain and the suffering?

As the Court knows, per the jury it was a total of $1.1 million dollars for the three Plaintiffs.  Defendants' argue, at the core, that the Court should come up with different numbers, and $0 for N.P.  They offer virtually nothing in explication of case law that is often also mis-cited, inaccurately quoted, or cherry-picked to an extent that often removes any reasonable semblance with the actual holdings.  However, a district court may not grant a new trial simply because it would have arrived at a different verdict. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001)

single subtle nuanced lie or omission, an eight day trial was held and the Court heard it all.

Plaintiffs' Opposition To Defendant's Motion For New Trial
Case No. 1:21-CV-00841-JAM-CSK
Beard, et al. v. County of Stanislaus, et al.

There is no reasonable basis, no lawful basis for a new trial in this matter, and the repetition of Defendant result-friendly language, without more, could not justify such a result even if there were reason or law that actually supports it.

The jury has spoken, and their decision should not be disturbed.

## II.   MEMORANDUM OF POINTS AND AUTHORITIES

### A.    LEGAL STANDARD

It is true that a court may grant a motion for a new trial, and that the court can do so if the jury's verdict is against the "clear weight of the evidence," that damages are excessive, or that jury instructions were given in error. *Montgomery Ward & Co. v. Duncan*, (1940) 311 U.S. 243, 251  It is also true that there is no ready list provided for any other grounds for granting a new trial.  However, there are other guidelines for making such a determination,

> All that can be said is that a verdict should be set aside where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed [by the jury]." *Landes Const. Co., Inc. v. Royal Bank of Canada*, (9th Cir. 1987) 833 F2d 1365, 1371-1372 (emphasis added); *Burke v. Regalado*, (10th Cir. 2019) 935 F3d 960, 991 - "verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence" (internal quotes omitted)]

Plaintiffs can only posit that the compelling descriptive words of "clearly," and "decidedly," and "overwhelmingly," against the weight of the evidence, could not apply to the evidence in this case in terms of reversing the jury's verdict and granting a new trial, nor leave any "conviction" – another compelling descriptive word – that there has been a mistake committed.  Although not cited by Defendant, the law also is clear that a district court may not grant a new trial simply because it would have arrived at a different verdict. "[I]f the jury's verdict is not against the clear weight of the evidence, we may find that a district court abused its discretion in granting a new trial. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001)

It is also true as cited by Defendants that this Court is obligated to weigh the evidence and assess for itself the credibility of witnesses. *Murphy v. City of Long Beach*, 914 F2d 183,

4

1    187 (9th Cir. 1990)  Plaintiffs are confident the Court will come to the same conclusion the

2    jury did as to credibility; the evidence was of "clear weight" on the lack of credibility of Ms.

3    Cobbs, Ms. Jones, Mr. Anderson, everyone else was somewhere between credible and very

4    credible.  The Defendant concocted a story, painted it with sleight of hand and fact, to justify

5    facilitate an abuse of power; that was abundantly clear and the jury saw it clearly.

6           All that said, there are glaring deficiencies in the Defendant's Motion for New Trial,

7    and Local Rule 291.2 will be relevant in the Argument section below.

8

9           RULE 291.2 (Fed. R. Civ. P. 59) MOTIONS FOR NEW TRIAL
       Motions for new trial shall state with specific references to relevant portions of
10      any existing record and to any supporting affidavits: (1) the particular errors of
       law claimed, (2) *if a ground is insufficiency of the evidence, the particulars
11      thereof*, and (3) if a ground is newly discovered evidence, the particulars thereof,
       together with a full. complete description of the facts relating to the discovery of
12      such evidence and the movant's diligence in connection therewith. A motion for
       new trial and any opposition thereto shall be supported by briefs. Except as
13      otherwise provided in this Rule or in the Federal Rules of Civil Procedure, L.R.
       230 shall apply to motions for new trial.

14

15   **III.   ARGUMENT**

16          The Defendant's Motion for New Trial falls far short of the dictates of L.R. 291.2.

17   There are numerous citations of law to be sure, but very little in explication or articulated

18   symbiosis between law and the facts in the recent trial.  There are likewise numerous

19   "assertions" but they merely parrot the operative language, where language is favorable to

20   Defendants in an opinion, in the nature of "this case meets that standard."  Plaintiffs submit

21   that Defendants Motion does not remotely specify the "particulars thereof" when arguing

22   there was "insufficient evidence," the Defendants most oft-cited basis for requesting a new

23   trial.  Defendant merely claims there "was" insufficient evidence, and on that failure alone the

24   Motion for New Trial should be rejected.

        Plaintiff now addresses the arguments of Defendant in the order presented in Dkt. 177.

25   **A.   NO ERROR IN THE JUDICIAL DECEPTION VERDICT**

Plaintiffs' Opposition To Defendant's Motion For New Trial
Case No. 1:21-CV-00841-JAM-CSK
Beard, et al. v. County of Stanislaus, et al.                    SER-0499

In this section of Defendants' brief (4:7-6:28) arguing there should be a new trial on the verdict in favor of Plaintiffs for judicial deception, three propositions are made as to why Defendant should get a new trial.  Though actually, the first one "(1)" actually contains two within it; i) jury failure to apply law correctly to evidence, OR ii) was contrary to the evidence.  The next, (2) the Court errored in allowing jury to determine materiality / probable cause.  The last, (3) the court errored in not allowing special interrogatories to the jury. Plaintiffs will address them in the foregoing order.

**- First Grounds – Jury Fails Follow Law & Evidence, Contrary To Evidence**

"(1)(i)"- Defendants first statement as regards this argument, as to "how" the jury failed to follow law and evidence is on the premise that (presumably) the "law" states and the "evidence" did not show, that Ms. Cobbs "knew or should have known that any statements in the affidavit supporting the warrant were false, or that there were omissions that were material to a finding of probable cause by the issuing judge." Dkt. 177 5:14-17   Plaintiffs have tied together lie after lie after omission after omission of things Defendant knew (at the bottom of this brief) just like Plaintiff's did at trial, and all were material or collectively fraudulent overall for the purpose of persuading a judge to violate Plaintiffs' rights.  That's not allowed under the law.

"Judicial deception" consists of "deliberate omission or affirmative misrepresentation." *Scanlon v. Cty. Of L.A.,* 92 F.4th 781, 799 (9th Cir. 2024), citing *David v. Kaulukukui*, supra, 38 F.4th 792, 801, n.3. "A statement can also be misleading if, although technically true, it has been so wrenched from its context that the judicial officer will not comprehend how it fits into the larger puzzle." *Id*. An omission includes "facts required to prevent technically true statements in the affidavit from being misleading." *Id*., quoting *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). See also *Liston v. Cty. Of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997); *United States v. Staner*t, 762 F.2d 775, as amended, 769 F.2d 1410 (1985). "Even otherwise true observations made misleading by the omission of facts that are not themselves material may result in an affidavit that, considered as a whole, is materially misleading." Id.

6

"[B]y reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw . . . . [and] denude the probable cause requirement of all real meaning." Id. quoting *Liston* at 973.

Plaintiffs cannot say with certainty that Defendant ever argued at trial, in front of the jury our outside the presence of the jury, that there was a "subjective" component that had to be considered in order to establish "deliberate indifference" in support of a 14th Amendment violation case. To the extent there is a subjective component to applying the "deliberate indifference" prong of the "shocks the conscience" requirement, Plaintiffs wish to note that the word "*deliberate*" is part of "deliberate indifference;" it is right there in jury instruction. JI #16 - Dkt. 159 21:1-22. Defendant offers no basis for concluding the jury did not "get" that, and apply it to overwhelming evidence of Cobbs liability. According to the Merriam Webster Dictionary, the word "deliberate" means, "i. Characterized by or resulting from careful and thorough consideration," or, "ii. Characterized by awareness of the consequences," and finally – not unlike the *time* consideration as to which prong of "shocks the conscience" is to be applied - "slow, unhurried, and steady as though allowing time for decision on each individual action involved." https://www.merriam-webster.com/dictionary/deliberate

As previously noted, in Exhibit A is a list of the lies, and the evidence – or common sense – that revealed them to the jury. There has been no failure to "apply the law" or "apply the evidence" by this jury, and this jury absolutely did not render a verdict contrary to the evidence. As respectfully as it can be said, those claims are preposterous.

**- Second Grounds – Error For Jury Determine Materiality / Probable Cause**

"In a Section 1983 claim, causation is generally a jury question; only if the issue of cause is 'so free from doubt as to justify taking it from the jury,' should the court enter summary judgment." *Donnell v. City of Cedar Rapids*, 437 F. Supp. 2d 904, 925 (N.D. Iowa 2006) At trial, materiality is a question of fact for the jury. *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009).

The question of what would have happened in the absence of judicial deception is a

7

1   question of fact to be determined by the jury. *Spencer v. Peters*, 857 F.3d 789, 800-801 (9th
2   Cir. 2017). See also, *Scanlon v. Cty. Of L.A.*, 92 F.4th 781, 801 (9th Cir. 2024) [social
3   worker's false statement "could be found material and deliberate or reckless by a reasonable
4   jury."

5          The Defendant did not file a motion for summary judgment. There are no shortage of
6   disputed facts. "A determination of probable cause involves the weighing of many factors …
7   [r]easonable persons might reach different conclusions about the facts, the establishment of those
8   facts is for the jury, and the existence of probable cause is likewise for the jury, upon a proper
9   instruction about the law. *Gilker v. Baker*, 576 F.2d 245, 247 (9th Cir. 1978)

10          The Defendant tells this Court, "Specifically, the law clearly states that the court must
11   determine the materiality of the allegedly false statements or omissions." Dkt. 177 6:3-4  But then
12   cites two cases and pages from them that do not say any such thing, namely *KRL v. Moore*, at
13   1117 (MSJ ruling), and *Butler v. Elle*, at 1024 (MSJ ruling).  Both are summary judgment rulings.
14   This case sailed past the summary judgment phase with no filing of a summary judgment.  The
15   case of *Hervey v. Estes*, 65 F.3d 784, 788-9 (9th Cir. 1995) says, "If the matter survives the
16   summary judgment phase, the matter should go to trial."  In this case Defendant tried summary
17   judgment arguments in the Motions In Limine, and now is making them after trial, but did not
18   make them during the time set forth in the Scheduling Order, and there was at least one instance
19   of the trial related cut-off dates being backed up by agreement of the parties. Dkt. 37 Stipulation
     and Order of 7/12/22

20          Two more cases are cited, also summary judgment motion ruling cases, *Baldwin v. Placer
21   County*, and *Liston v. County of Riverside.*  Portions of the seminal holdings in each are set
22   forth, but then in summary fashion unrelated to those seminal holdings it is stated, "In other
23   words, both materiality and probable cause are legal issues for the court and whether the fact
24   or omission was in fact false or omitted with deliberate indifference the issue for the jury."

25          Defendant does not get three bites at the apple, or the fourth she seeks here.  Plaintiffs
     have provided four 9th Circuit opinions, including the most recent opinion in *Scanlon*, and the

8

law is quite clear that absent that the jury is perfectly suited and appropriate for determining probable cause and the effect of judicial deception on the issuance of a warrant. Defendants are not entitled to a new trial on their arguments in this regard.

### - Third Grounds – Error For Jury Determine Materiality / Probable Cause

There is a final salvo styled argument by Defendant, claiming that the Court erred in "requiring" a general verdict form. The argument adds, "before Defendant had submitted a proposed verdict form [the Court] indicated during the Pretrial Scheduling conference that the court did not allow special interrogatories to the jury." But the transcript of the Pre-Trial Conference says differently, without such finality, without any expression of a "require[ment]" that the parties use general verdict forms, and in fact the Court invited Defense counsel to submit Special Interrogatories, saying, "I'll take a look at them." After that, no such special interrogatories were submitted. From the Pre-Trial Conference transcript Exhibit B to the Declaration of Robert R. Powell, at 28:7-29:

> THE COURT: You are to submit a proposed verdict form. I like general verdict forms. I do not like to give juries interrogatories or detailed verdict forms. So keep that in mind. The --
> MR. WHITEFLEET: Even --
> THE COURT: Go ahead.
> MR. WHITEFLEET: -- though you just said that, Your Honor, I will be submitting special interrogatories for purposes of qualified immunity.
> THE COURT: Yeah. You can try. You're going to try to submit those. Yeah. Got it. Qualified immunity is a legal issue. I mean, you can raise it at the close of Plaintiffs' case. I don't think you have to --
> MR. WHITEFLEET: It's only to -- because if there are specific disputed facts that I think would be necessary to resolve in order to determine if qualified immunity should apply or not, that's what I'm talking about.
> THE COURT: Yeah. I know this case is going to raise credibility issues, so -- okay. I mean, submit them. I'll look at them. But I don't like lengthy verdict forms.

Defendants Proposed Jury Verdict forms were filed May 6th, 2024 (Dkt. 102), and did indeed contain the following "special interrogatory" of sorts as Question #10 reads, "What facts formed the basis for the answer to Question 9," then provided a space for writing those

9

facts for each of the Defendants by name.

Plaintiffs submit that Defendant waived this argument entirely, having been told expressly that special interrogatories could be submitted and would be looked at, and then for whatever reason, deciding not to do so.

**B.    The Jury Followed The Law & Evidence In Deciding April Cobbs Violated The 14th Amendment**

The jury instruction given the jury on the 14th Amendment violations and standards is clear and perfectly follows the law.  The operative instruction for this claim by Defendant is JI #16 (Dkt. 159 21:1-22)  This is the sum total of Defendant's "argument" as to why Plaintiffs victory on the 14th Amendment claim of a violation of their rights of familial association, and it is found at Dkt. 177 8:13-18,

> Here, Plaintiffs did not elicit testimony from Defendant Cobbs, *nor was there sufficient evidence of, that she was* <u>*aware that she was somehow materially omitting or falsified facts in the warrant*</u>, *and in fact would have been compelled to draw such an inference by submitting the warrant as drafted to meet the deliberate indifference standard*. Accordingly, Defendant submits the jury failed to apply the evidence and/or misapplied the law in light of said evidence. Accordingly, Defendant is entitled to a new trial on the Fourteenth Amendment claim.  Emphasis added[2]

The argument smacks of The Three Blind Men and The Elephant, as if Plaintiffs, Defendant, and the jury, although at the same trial, were touching different parts of the animal and reaching starkly different conclusions.  But there was a mile long phalanx of documents and testimony about lies and omissions in Cobbs warrant application that the jury heard about, and, they heard about Cobb's knowledge of things lied about and things she knew and did not tell the Court.  The jury did not need to find a "purpose to harm" prong of the "shocks the

---

[2] This sentence is a poorly tossed word salad. When one "omits" something, it isn't materially or non-materially "omitted" just "omitted." Then someone assesses the omitted items materiality –keeping in mind the holdings of *Ewing*, *Liston*, and *Stanert*.  It is also unclear how someone could include a "false[]" fact *without knowing they did so*, and at least ipso facto "reckless disregard" or "deliberate indifference" would apply in such instance.  Under California's P.C. 125, "*An unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false.*"  What seems clear is that Defendant is trying to conflate the "purpose to harm" prong with the "deliberate indifference" prong of the "shocks the conscience" standard, just as attempted at trial.

Plaintiffs' Opposition To Defendant's Motion For New Trial
Case No. 1:21-CV-00841-JAM-CSK
Beard, et al. v. County of Stanislaus, et al.

conscience" standard, there was "deliberate indifference" in spades in her conduct, and plenty

of time not to engage in it. The genesis of the law on "purpose to harm" as applicable versus

"deliberate indifference" is basically in the context of,

> "high speed police chases that led to the injury of the plaintiffs or their survivors.
> The evolution of the case law in this area of the Fourteenth Amendment—perhaps
> unsurprisingly—has been deferential to officer decisions to give chase or use
> force. After all, these officers have been simply reacting to the urgent public
> safety threat of fleeing motorists in a situation where inaction could be the most
> dangerous option. *Porter v. Osborn*, 546 F.3d 1131, 1137 (C.A.9 (Alaska), 2008)

The *Porter* Court cited *Moreland v. Las Vegas Metro Police Dep't*, 159 F.3d 365, 371

(9th Cir.1998), in saying the "critical consideration [is] whether the circumstances are such

that 'actual deliberation is practical." (quoting *County of Sacramento v. Lewis*, 523 U.S. 833,

851 (1998)  The term "split second" to describe the decision "window" of the defendant

police officers is the circumstance that will lead to an undeniable conclusion the "purpose to

harm" prong of shocking the conscience would/should apply, and that was not the case in this

matter under any reasonable view of the circumstances.  See *Porter* at 1139, citing that in

both *Lewis* and *Moreland*, the issue was an officer's competing obligations in the "split-

second" decisions to give chase, in inherently emergency situations.

There was no "emergency" in this case, and anyone can see that with a lot less than

what the jury learned.  Indeed the warrant application was submitted four days after the

fateful TDM on July 15th where the parents – at least Hilda – failed to "bend the knee" to the

social worker oligarchs.  As brought out repeatedly at trial, there was never an allegation of

any kind about N.P., nor the father Shane, and as the Court and jury learned at trial, Hilda and

the other father's may have been engaging in some form of a "custody battle" but the

omissions of how doctor appointments and/or evaluations of A.S. Jr. came about because of

the father's CPS referrals, omissions of the actual times any blanket-fort play, the denial of it

by A.S. Jr. himself, and the two year gap since any showering of two young kids, all

supported the judicial deception claim and nothing at all supported the removal of N.P. – an

11

eight (8) month old diaper wearing baby – from his mother Hilda when absolutely every other child had been spirited away by the social workers to their fathers by that time (immediately after the TDM actually) and thus were not in the Perez/Beard householdd at all, making inappropriate touching impossible.

No doubt whether an independent claim for relief or not, the jury saw what Cobbs did as deliberate and indifferent in her choices to speak obliquely or not at all to the truth and leave out significant and material truths as retaliatory, and Cobbs knew the truth mitigated risk and safety, but also minimize and/or defeat probable cause, so she lied and/or left important material facts out of the Warrant Application.  That is "deliberate indifference" and the jury read the jury instruction correction and applied the law correctly, it is that simple.

## C.    The Jury Properly Found False Imprisonment Of N.P.

Defendant starts her argument regarding the claim a new trial is needed as to her liability for the false imprisonment of N.P. by citing the elements of false imprisonment. Dkt. 177 8:21-24  Plaintiffs have no quarrel the elements are properly stated, they only stand on the proposition the elements were met in spades.

The first thing to note then, and dispense with, is Defendant's claim that,

> Plaintiff was also required to prove the elements of California Gov. Code, § 820.21, i.e. that Defendant committed perjury, fabricated of evidence, failed to disclose known exculpatory evidence, or obtained testimony by duress, fraud, or undue influence, all with malice, defined as "conduct that is intended by the person described in subdivision (a) to cause injury to the plaintiff or despicable conduct that is carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights or safety of others." (Gov. Code, § 820.21, subd. (b).)

That is the sum total of the "argument," which comes with no citation to any authority for that proposition whatsoever, but even if it exists, Defendant ignores the verdict in favor of Plaintiffs on judicial deception, and the one on punitive damages which indicates Plaintiffs' evidence met every element of G.C. §820.21.

Defendant participated in the submission of jury instructions initially, in the jury instruction conference with the Court, never mind meetings between Counsel prior to the commencement of

12

trial for the purpose of complying with the Court's order – and ordinary practice – to figure out what Jury Instructions could be agreed upon, and which could not.   There was no such instruction proffered by Defendant.  Defendant's answer (Dkt. 6) did not specify an affirmative defense based on G.C. 820.21, though did claim every immunity of every kind, "claim[ing] all rights, defenses and immunities granted to them by virtue of California Government Code §§ 810 through 996.6, inclusive[.]"   The heading even calls that "Affirmative Defense" a "Catch-All." Having claimed it as an affirmative defense, that would have been their burden to carry, which of course would have required a jury instruction which they did not supply nor seek.  This argument is misplaced, without foundation, and fails.

The remainder of Defendants argument starts with bald assertions the jury erred in light of the evidence and/or the evidence was not sufficient for a finding of malice.  Dkt. 177 9:3-4 Apparently, Defendant then attempts to obliquely shoehorn in the Motion for Summary Judgment ruling in *O'neel v. County of Sacramento*, 2024 WL 1676723 (2024), making a heretofore unheard claim or argument that (presumably) she did not have "malice," because she "relied on information in the service logs provided by other social workers and her own impression and evaluations in the language of the warrant." Id. *3-4[3]  Indeed the trial was about what she put in the warrant, but numerous times on numerous points about lies or omissions in the warrant application, Plaintiffs used Defendant's own Delivered Service Log entries against her.

The Court is asked to recall that both Jones and Cobbs, one of whom (Jones) admitted they sat right next to each other for something well over a year – and at the time of these events – both went to the home in the same car, and both were in the 'I don't specifically recall' category when it came to the interviewing of the children *together* at Ms. Perez's home on July 12th.  But the testimony from everyone else at the home who testified was they sat together, questioning everyone (mom, dad, Christopher) on the couch in the living room, hearing everything that was said, which means it doesn't matter if a fact / statement from those interviews are in one social workers DSL or the others', Cobbs became aware of every statement made by anyone interviewed

---

[3] This is an interesting tact to take, given that some of the

13

in both, as did Jones.  How Defendant thinks acknowledging she "relied" on all the DSL's when they were used to impeach her and uncover her failures to tell the truth throughout the trial, is not comprehensible to Plaintiffs.

The Defendant's final argument is that, "Plaintiffs did not elicit testimony from Defendant Cobbs that she was somehow materially omitted exculpatory information from the warrant or falsified facts in the warrant, and that she did so with malice." Dkt. 177 9:6-7  It is true that Plaintiffs did not ask the Defendant they accused of lying and omitting a plethora of evidence in the warrant application, and convinced a unanimous jury of eight that was the case, "Did you somehow materially omit[ ] exculpatory information from the warrant or falsified (*sic*) facts in the warrant, and [do] so with malice?"  That would have been the epitome of an exercise in futility. No, the jury was given Jury Instruction 8 (9th Cir 1.5 – Dkt. 159 11/32) and must be presumed to have read and understood it, and Plaintiffs had direct evidence in the form of Defendants own DSL's and those of her partner in child protection, Shynelle Jones, particularly as to July 12th.

There is no basis for a "new trial" on the liability found for false imprisonment of N.P., there was substantial evidence of every element for false imprisonment in the trial.[4]

**D.    There Was Substantial Evidence From Which The Jury Could Reasonably Conclude Past And Future Non-Economic Damage To N.P.**

Defendant's argument on the claim for reducing N.P.'s damages to zero, paraphrased down from Dkt. 177 9:11-10:3, is, 1) there was no evidence of non-economic "loss" (not really the term for the infliction of pain and suffering), 2) the jury's award was arbitrary, 3) N.P. did not testify thus "*absolutely no evidence*" that he suffered any 'fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal,' 4) at most jury heard about crying during visits, that's insufficient to show past or future anxiety, mental disturbance or other non-economic "loss" (again, not the right word).  In

---

[4] Given the "catch-all" affirmative defense claim, Plaintiff will point out in an abundance of caution that there is no immunity under G.C. §820.4, or § 821.6 for false imprisonment. *Sullivan v. County of Los Angeles*, (1974) 12 Cal.3d 710; *Botello v Hanlon*, (E.D. Cal.) 2020 WL 1472377:

14

sum, the damages the jury awarded N.P. are "wholly unsubstantiated and based on mere speculation," thus Defendant is "entitled" to a new trial on that issue or $350,000 should be subtracted.

Last point first, there is no "entitlement" to a new trial. In fact a court cannot order a verdict on damages reduced without affording plaintiff options for new trial on the damages issues. *Morgan v. Woessner*, 997 F2d 1244, 1258 (9th Cir. 1993) Plaintiff's only mention that law to not waive it – there is no basis to deny N.P.'s damage award by way of a new trial when the standard is essentially the same "against the clear weight of the evidence" standard for granting a new trial. A different damage conclusion in this case would in effect just be the Court concluding differently from the evidence the jury relied on to reach their damage award from N.P., something a Court cannot do.

In federal questions cases, the standard for whether a damage award is so excessive is generally whether the award is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F3d 1422, 1435 (9th Cir. 1996)

In opposition to Defendants over-reaching statement there was "absolutely no evidence," Plaintiffs note that when a Court is evaluating a motion for new trial *on damages or for remittitur*, the court is to consider the evidence *in the light most favorable to the prevailing party*. *Rodríguez-Valentin v. Doctors' Ctr. Hosp.*, 27 F.4th 14, 22 (1st Cir. 2022)– emphasis added. With that in mind, Plaintiffs wish to recount Mr. Beard's testimony about the condition of his son post-removal, and remind the Court that Mr. Beard saw his first born child daily after his birth – and that included even if he got off work at night, so he could be there to help raise his child even during the real tough period when the newborn comes home and wakes 4 – 6 times a night to eat.

The testimony was not just how the child cried a plaintive wail when his father departed visits at the agency, but it was like none father had ever heard prior to N.P.'s removal.

Mr. Beard testified about how N.P. promptly developed a diaper rash after being

15

removed and how he found his son in urine-soaked diapers on occasion.  Mr. Beard talked about how his son's eyes were always blood shot after the removal during visits while in County care.  He testified how after he finally got N.P. home he would scream when his father left the room and he would look around for him and would become literally unconsolable.  That searching for the missing parent is entirely common, and it is a condition called "hypervigilance," defined as an extreme or excessive vigilance or the state of being highly or abnormally alert to potential danger or threat.

Then there was the testimony about how his son had quickly grown heavier in County care, and that, along with finding formula in the child's diaper bag, meant the boy was being deprived his mother's breast milk despite the fact it was ordered to be provided.

Mr. Beard also testified about how N.P. was taken from a breast feeding mother, and placed with two men who were complete strangers to the eight month old, and of course, in entirely different surroundings from where he had spent his entire life prior thereto.

Mr. Beard nor counsel can say with certainty if this was testified to, but N.P. would always come to visits in the same clothes and he was always dirty, and under his toenails there would be an accumulated packing of dirt.  Again, not 100% certain, but believed so.

Then, there was the helpful testimony of Shari Johnson, about the life long trauma to her child from her child's removal, 'still effects her to this day' or something like it was the testimony.  The concept of emotional distress to the child (and parents) was also aided by the testimony of April Cobbs herself, to wit,

> "Q.  [ ] Now, also prior to your involvement with Hilda, Shane, and their children, you were aware that the removal of children can have a significant, long-term psychological consequence for those children; right? A.  Yes. Q.  And you were aware that that also is true for the parents; correct? A.  Yes." [Video depo]

And be it remembered, per the warrant application, Ms. Cobbs had "been a social worker for 1 year and 10 months, and [she has] conducted 250 cases involving allegations of child abuse or neglect."  This in addition being "qualified" to do so by virtue of her "education, training, and experience." Ex. 72

16

1    Eric Anderson, a supervisor of so many years he made a comment about having more

2    hair back when he began, testified thusly, "Q.·You would agree that it is also true that it is a

3    very significant and traumatic event for the parents when a child is taken, right? A.·It's

4    probably traumatic for everybody involved." When asked if one should proceed cautiously in

5    deciding to remove children because of the trauma it will cause both parents and children, he

6    testified, "I think that's a fair statement."

7    The truth of the matter is that Plaintiffs submit that it does not take a college degree or

8    an education in child development or being a supervisor in a child welfare agency to conclude

9    – even without the foregoing direct and circumstantial evidence presented in this case - that

10   indeed N.P. did go through 'fright, nervousness, grief, anxiety, worry, shock, apprehension,

11   terror, and this was an *ordeal* for the eight (8) month old unlike any he had ever experienced.  Per

12   Ms. Cobbs he is now subject to "significant, long term psychological consequences."  So it cannot

13   be said with a straight face there was not evidence of N.P.'s emotional distress, and as the

14   testimony just noted frames, the child will likely have that distress far into the future.

15   The calculation of emotional pain and suffering's monetary equivalent is a difficult task

16   even when the person with the emotional pain and suffering is the one trying to calculate it, and

17   that is before accounting for the variance in human's responses to tragedy, and no reasonable

18   person could call the unnecessary pulling of a child from everyone and everything familiar to the

19   child not "damaging."  It unarguably more "difficult" to determine the monetary equivalent of

20   emotional pain and suffering appropriate for another person who – in the case of jurors – is

21   necessarily a person they do not know and can only rely on their testimony and possibly the

22   testimony of others.  Yet that's how the U.S. jury system works.  Jurors determine non-economic,

23   pain and suffering damages, and they do it every day.  To claim that amounts to "speculation" or

24   "guesswork" is to minimize the role of the jury that brings its collective life experience to the jury

25   room – just as the nation's founders envisioned - for deliberations.

     Plaintiffs will only make this point about the argument made in court directly, more

     obliquely in Defendants current motion, that N.P. cannot, did not, testify.  As Plaintiff responded

17

Plaintiffs' Opposition To Defendant's Motion For New Trial
Case No. 1:21-CV-00841-JAM-CSK
Beard, et al. v. County of Stanislaus, et al.                                          SER-0511

1   to that argument in Court, Plaintiff says again, if the standard for whether or not a Plaintiff can

2   receive a damage award is their own ability to convey their own pain and suffering at the

3   malicious hands of another, then victim will be re-victimized, without recompense, without

4   respect as a member of society protected by the same laws as the "speaking."   That isn't the state

5   of the law, and it requires no citation.

6   **E.     Denying A Requsted Damages "Cut-Off" Was Proper**

7          Defendants cite *Watson v. City of San Jose*, 800 F.3d 1135 (9th Cir. 2015) and *Williams*

8   *v. County of Monterey*, No. 19-CV-01811-BLF for the proposition in their Motion for New

9   Trial (as in their trial JMOL per FRCP 50, Dkt. 155), that there was "prejudicial error" in not

10  ruling there could be no damages awarded Plaintiffs after the juvenile Court detention

11  hearing.[5]

12         Plaintiffs will start with the *Williams'* ruling, a matter involving a warrantless removal,

13  which Defendants do not explicate at all in their motion, and to the extent they do, do not do

14  represent it accurately.  It is in fact falsely portrayed by partial portrayal. Dkt. 177 10:25-27

15         The actual language in the actual decision they cite at page 8 of the District Court's

16  Motion in Limine rulings in *Williams*, simply does not say what Defendants want it to say,

17  nor does it provide any basis for disturbing the trial results, which explains the partial citation.

18  It is a reasoned decision, by an exceptional jurist, and reads in its entirety as follows;

> In this Court's view, the Watson court's application of Carey is appropriate here.
> Based on Carey and Watson, this Court concludes that Plaintiffs may recover all
> damage flowing from the initial removal of L.S. and Q.S., if the removal is shown
> to have violated Plaintiffs' constitutional rights, but that they may not recover
> *damages flowing from the Juvenile Court's detention decision*. Although this Court
> initially was inclined to find that the relevant juvenile court decision was the
> detention order issued on May 9, 2018, *Plaintiffs' counsel argued that because the*
> *May 9, 2018 order was based on a prima facie showing rather than any*
> *independent findings, it should not cut off damages flowing from the allegedly*
> *unconstitutional removal. The Court finds that argument persuasive, and therefore*
> *determines that the relevant Juvenile Court order was the order issued on May 14,*
> *2018 after a contested detention hearing.* Plaintiffs may not recover damages
> flowing from the May 14, 2018 detention order. Plaintiffs' counsel argued that

---

[5] The undersigned was attorney for Plaintiffs in both, Mr. Park also an attorney in *Williams*.

18

Plaintiffs' Opposition To Defendant's Motion For New Trial
Case No. 1:21-CV-00841-JAM-CSK
Beard, et al. v. County of Stanislaus, et al.                                    SER-0512

injury inflicted during the initial unlawful removal may extend beyond May 14, 2018, analogizing to a broken arm that causes injury long beyond the date of the break. *Plaintiffs may attempt to prove that emotional distress or other injuries caused by the initial removal extended beyond the May 14, 2018 date, as distinct from injuries caused by the Juvenile Court's May 14, 2018 detention order and the prolonged period of detention after that order*. Id. *8 emphasis added

The Court will recall that a "prima facie" standard is what kept the child separated from the parents the entire time, albeit Hilda had a couple of weeks longer than Shane after the jurisdiction trial before N.P. was placed in her full shared-custody relationship with Shane on a family law exit order; the return to Shane was immediate.

The *Williams* decision is very clear in that it recognizes there are damages "flowing" from some different events, some being the removal, and some potentially "flowing" from the continued detention – at least when it is a "contested detention hearing."[6]  In *Williams*, as in *Watson*, there were two different government entities involved, actively participating in the removal of the children, and the removal was without a warrant.  There was no warrant, no lies and omission filled application for a warrant, it was a procedural due process claim.

Another major distinction between *Watson* and this matter is the involvement of the two different entities (County of Santa Clara versus the City of San Jose) and their employees. Absolutely everything that happened to Hilda Perez, Shane Beard, and their son N.P., was at the hands of social worker Defendants with the County of Stanislaus and flowed from the very lies and omissions of Cobbs. There was no separate "charging" entity, such as a District Attorney's office, thus causation of damages to the Plaintiffs runs from the removal with the fraudulent warrant until a reasonable jury decides it ends. See, *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981), overruled on other grounds *Hartman v. Moore*, 567 U.S. 901 (2012) - in civil rights action for unreasonable seizure (4th Am.), evidence can rebut "independent judgment" presumption of D.A. charging crime as "intervening" cause effecting a cut-off of

---

[6] Contested jurisdiction hearings are near "unheard of" in the juvenile dependency system in which far past "the majority" of people are represented by government contracted lowest-bidder law firms, but, the undersigned was Ms. Williams counsel in the juvenile dependency matter as well.

19

1   damages while incarcerated, but burden of proving such intervening cause is on Defendant

2   per FRE 301.

3       As the jury heard, and the evidence Defendants put on showed, at "jurisdiction" the

4   child was returned to Mr. Beard and the testimony was Ms. Perez followed a mere 2-3 weeks

5   later.

6       Plaintiffs do not dispute an "argument" that the emotional pain and suffering of having

7   their child taken was less after he was returned to their care, custody, and control, but there is

8   nothing in a Court ruling that "cuts off" emotional damages legally from a substantive due

9   process violation in a case involving subterfuge of the judicial system by government actors

10  in a child welfare proceeding.  Some of the strongest language the 9th Circuit has ever used

11  with regard to lying or falsifying evidence is specifically in regard to child welfare

12  proceedings and this is that language,

13          [T]here is no such thing as a minor amount of actionable perjury or of false
            evidence that is somehow permissible. Why? Because government perjury and the
14          knowing use of false evidence are absolutely and obviously irreconcilable with
            the Fourteenth Amendment's guarantee of Due Process in our courts.
15          Furthermore, the social workers' alleged transgressions were not made under
            pressing circumstances requiring prompt action, or those providing ambiguous or
16          conflicting guidance. There are no circumstances in a dependency proceeding that
            would permit government officials to bear false witness against a parent.
17          *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1119 (9th Cir. 2017)

18      The decision in *Hardwick* did not exist when *Watson* was decided.

19      Another distinction is that the "removal" in Watson, was done without a warrant and

20  involved no claims of judicial deception as to the City of San Jose defendants; it was what

21  Plaintiffs call a "*Wallis*" case, referring to a seminal case in child welfare litigation whereby

22  warrantless removals are only constitutional if various elements are met, and they were not

23  met in the removal of the Watson children. *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000)

24  Wallis claims are procedural due process claims.

25      Another two distinctions worthy of being called "defining differences," is that in

    *Watson* the entire issue before the Court was, 1) a "procedural due process" claim, and, 2)

20

Plaintiffs' Opposition To Defendant's Motion For New Trial
Case No. 1:21-CV-00841-JAM-CSK
Beard, et al. v. County of Stanislaus, et al.

1    "Plaintiffs [did] not dispute that the children were legitimately held by the state from July 5,

2    2005." *Id*. 1137 There was no claim made that the County's DCFS had lied, perjured

3    themselves, or anything of that sort before the Detention Hearing. To be clear, not only did

4    Santa Clara social workers lie and hide evidence in Watson, but County Counsel were

5    actually involved, and all together the Defendants did a significant amount of lying,

6    misrepresenting facts, and even arguably hiding or destroying critical evidence, but they did

7    all of that once the juvenile proceeding was underway. Again, this kind of behavior is

8    endemic in the juvenile dependency system behind its closed doors.

9          The issue in the *Watson* decision cited by Defendants' counsel on May 24th, 2024,

10   which Plaintiffs understood to be that the decision in Carey v. Piphus, 435 U.S. 247 (1978)

11   cited within Watson applies, is misplaced. Carey is about procedural due process, and it bears

12   mention that it is a case about appropriate damages for being suspended from school after

13   being caught smoking pot – hardly a rational, moral, or legal equivalent to a case of a child

14   being removed by a warrant that is a textbook example of "judicial deception."

15         As already noted, the Carey decision was about appropriate procedural due process in a

16   context foreign to the issues in this case, but Plaintiffs will now cite a portion of it that the

17   *Watson* Court did to point out the acknowledgment that substantive due process violations are

18   compensable if a "loss" was not "justified,"

19            The district court did not abuse its discretion by determining that the first set of
             jury instructions did not adequately convey the causation principles in Carey. As
20            noted above, the Supreme Court held in Carey that compensatory damages may
             not be presumed from the violation of procedural due process. 435 U.S. at 263–
21            64, 98 S.Ct. 1042. An injury could result from either the violation of procedural
             due process itself, which is compensable, or from the underlying substantive loss,
22            such as the school suspension in Carey, which would not be compensable if the
             loss was justified. Id. at 263, 98 S.Ct. 1042. It was Plaintiffs' burden to "convince
23            the trier of fact that [they] actually suffered distress because of the denial of
             procedural due process itself." Id. 1141 – emphasis added

24         *Carey* does not stand for an artificial "cut-off" of damages, emotional distress damages,

25   due to a Court decision continuing to detain N.P., in this case. The removal of N.P. was not

21

"justified," and achieved through lies, manipulations and material omissions, thus violating N.P.'s 4th Amendment rights and the 14th Amendment rights of his parents.

Further, there was no evidence to the contrary at trial of the Plaintiffs' assertion that there was no opportunity to present evidence to the juvenile Court until the Jurisdiction hearing; Mr. Granados testified to that as well as Mr. Beard. There was also no dispute that N.P. was returned to Shane Beard literally that October 8th day, and to his mother Hilda one or two weeks later.[7]

Plaintiffs submit that emotional damages, do not turn on "jurisdiction" over a child, but rather on the absence of a child, and the forcing of that absence by an abuse of power coupled with falsehoods, which is what happened in this case and the jury saw that; how could it not?

### F.     The Compensatory Damage Awards Were Entirely Appropriate

Defendant is unhappy with the large compensatory non-economic damages awarded, but unhappiness does not make the award of damages, "clearly not supported by the evidence, or only based on speculation or guesswork, and gives rise to an inference that "passion and prejudice" tainted the jury's finding of liability, a new trial may be in order. Dkt. 177 11:7-12

There was plenty of evidence from the individual Plaintiffs themselves about the emotional pain, turmoil, and emptiness that was left in the wake of the removal of N.P.[8]

Plaintiffs submit the way the damages are set forth also indicate some real thought went into them by the jury.  Note that Hilda's damages are less as to the "past" non-economic, than Shane's.  Shane had an expert testify as to this psychological damage, there is of course the footage of his collapse when N.P. was actually removed, and what with losing his first child it makes perfect sense the jury would perceive that pain as of higher value.  The experts testimony could also explain the discrepancy in the "future" non-economic damages as between Shane and Hilda, but then the other thing that would explain that, is although the jury never heard (to the

---

[7] Defendants' Counsel's comments in his opening statement that the child was only separated from his parents for about two and a half months was never disputed.

[8] As Defendant devoted one entire section to N.P. in the brief above, and Plaintiffs have addressed his damages there, no more need be said here.

22

1  undersigned's recollection) the two parents respective ages, there was the snarky comment by Ms.

2  Cobbs about whether Shane realized Hilda was older than him, and the jury might well have

3  judiciously surmised (appearances may have assisted given Mr. Beard's virtually "boyish" face),

4  there was a better than 10 year age gap.  Thus, Shane would have more future non-economic loss,

5  because this pain we are talking about in this cases does not ever fully go away – again, what

6  happened was life altering, trust shattering, anxiety embedding.

7      Plaintiff has already addressed N.P.'s damages, and they are appropriate.  No eight month

8  old with their developing brain at a critical point in their life should suffer being ripped from hjis

9  family, his mother's milk, and what this child was put through.  The jury gets it, Defendant April

10  Cobbs did not – even though she "knew" of the trauma consequences.

11      These non-economic damages are not "grossly excessive or monstrous, clearly not

12  supported by the evidence, or only based on speculation or guesswork," in fact they reflect

13  reasoned consideration, and should not be altered in any way.

### G.  Defendant Is Not "Entitled" To A New Trial For Punitive Damages

14      As already noted, and case law provides, the Court can offer a remittitur on the punitive

15  damages.  Plaintiffs believe they are entirely appropriate given the way this family was

16  treated, the abuse of power was not even opaque, it was translucent.  Plaintiffs have

17  determined that the "state law" issue is real and have decided they will leave the

18  determination of what to do with the punitive damages award to the Court, with whom it

19  appears to reside under the law at all times anyway.

20      Plaintiffs do take deep satisfaction that the jury's punitive damage award surely does

21  reflect the "degree of reprehensibility" this jury saw in Defendant Cobbs conduct; the jury has

22  spoken but suspect the child welfare industry will not listen.  This should not be seen as a

23  "waiver" of the argument that the punitive damage award was appropriate, only that the lack

24  of any ability to pay evidence as required under state law is a fly in the ointment.

25      Some of the Defendants other arguments in this section seem tied at least academically

to the arguments about the lack of "special interrogatories," and plaintiffs have already

23

---

Plaintiffs' Opposition To Defendant's Motion For New Trial
Case No. 1:21-CV-00841-JAM-CSK
Beard, et al. v. County of Stanislaus, et al.

addressed the fallacy of that argument and the clear waiver of the offer to submit them.

However, Plaintiffs disagree with Defendant's claim, at Dkt. 177 13:9-11, "Because one of the factors used to examine the excessiveness of a punitive damages award is the amount of compensatory damages awarded, a flawed compensatory damages award justifies a retrial for punitive damages." There is no "flaw" in the compensatory damage awards. They are just and based on sufficient evidence, and most certainly – given damages are to be examined in a light favorable to the prevailing party – they are not in any way against the "clear weight of the evidence." Plaintiffs note again, no "pay the Plaintiffs this" was used with this jury. This was a jury of three citizens peers, making their assessment of the pain and suffering they incurred, and will continue to incur, as a result of a gross abuse of power.

There is no evidence of "passion or prejudice" in the compensatory damage awards, and no evidence it affected the finding of liability. In the *Watec Co. v. Liu* case cited by Defendants, the Court (citing *Seymour v. Summa Vista Cinema, Inc*., 809 F.2d, 1385, 1387 (9th Cir. 1987), opined,

> [A] new trial is not required even where there is an excessive damages award resulting from passion and prejudice, unless there is also evidence "that passion and prejudice affected the liability finding." *Pershing Park Villas*, 219 F.3d at 905. "Where there is no evidence that passion and prejudice affected the liability finding, remittitur is an appropriate method of reducing an excessive verdict," although the district court still retains the option of vacating the judgment and ordering a new trial. Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1387 (9th Cir.1987).

Plaintiffs do not believe there is any cogent argument, or evidence, passion and prejudice affected the liability finding, and believe Defendant Cobbs and her choice to sledge-hammer this family provided sufficient grounds for the jury's liability finding.

## III.   CONCLUSION

There is no legitimate argument that Plaintiffs judicial deception claim victory on liability and the resulting 14th Amendment (or 4th Amendment) violations can be the subject for granting a new trial; the evidence was overwhelming. As that evidence applied to the constitutional violations, so too did it to the         false imprisonment claim of N.P., and there is

24

Plaintiffs' Opposition To Defendant's Motion For New Trial
Case No. 1:21-CV-00841-JAM-CSK
Beard, et al. v. County of Stanislaus, et al.

no immunity to hide behind.  This jury did not make any errors in the law, or act contrary to the evidence in any way, shape or form.  They did an admirable job, and clearly applied reason to their calculation of the compensatory damages.  Nor did the Court make any error that would justify the granting of a new trial.

All of the jury's findings should stand, and though the Court may feel punitive damages have to be reduced due to the interplay of the state law on ability to pay evidence as a required procedure, they do not need to be $0, for that would not reflect the reality of the Defendants conduct.

Respectfully submitted,


**POWELL & ASSOCIATES**

Date: 7/12/24                                   __/S/ Robert R. Powell____
                                                ROBERT R. POWELL
                                                Attorney for Plaintiffs

25

Robert R. Powell (SBN: 159747)
POWELL & ASSOCIATES
925 W. Hedding St.
San Jose, CA 95126
Phone: (408) 553-0201
Fax: (408) 553-0203
Email: rpowell@rrpassociates.com

Samuel H. Park (SBN: 261136)
LAW OFFICE OF SAMUEL H. PARK, APC
374d Bergin Drive
Monterey, CA 93940
Phone: (831) 529-5955
Email: sam@sampark.lawyer

Attorneys for Plaintiffs,
Shane Beard, Hilda Perez, and N.P.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE BEARD, et al., | Case No. 1:21-cv-00841-JAM-CKD |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (Dkt 177)** |
| v. | |
| COUNTY OF STANISLAUS, et al., | Date:       8/20/2024 |
| Defendants. | Time:       1:00 p.m. |
| | Judge:      Hon. John A. Mendez |
| | Courtroom:  6, 14th Floor |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. RELEVANT PROCEDURAL HISTORY ........................................................ 2

III. LAW ................................................................................................................ 3

IV. ARGUMENT .................................................................................................. 4

  A.  Defendant April Cobbs is not entitled to Qualified Immunity ........................ 4

    1.  The right to be free from judicial deception in a child custody warrant was clearly established in 2019 ................................................................................ 4

    2.  Sufficient evidence supports the jury's finding that April Cobbs violated Plaintiffs' right to familial association through acts of judicial deception. ................... 7

  B.  The evidence supports that Plaintiff Beard was fully committed to the responsibilities of parenthood such that he had at all times the substantive right to familial association with N.P. ................................................................................................ 15

  C.  Sufficient evidence supports Plaintiff N.P.'s claim for False Imprisonment ................ 16

  D.  The evidence supports that N.P. suffered quantifiable harm caused by Defendant Cobbs ................................................................................................................ 18

V. CONCLUSION ............................................................................................... 20

---

PLAINTIFFS' OPPOSITION TO RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW (Dkt 177)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Cases**

*American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155 (6th Cir. 1997) ...................................3

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...........................................................4

*Beltran v. Santa Clara Cnty.*, 514 F.3d 906 (9th Cir. 2008) (per curiam) ..................................4

*Benavidez v. Cty. Of San Diego*, 993 F.3d 1134 (9th Cir. 2021) ...............................5, 6, 7

*Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011) ......................................8

*Costanich v. Dep't of Soc. And Health Servs.*, 627 F.3d 1101 (9th Cir. 2010) ......................5, 7

*David v. Kaulukukui*, 38 F.4th 792 (9th Cir. 2022) ...........................................6, 7, 8

*Devereaux v. Perez*, 218 F.3d 1045 (9th Cir. 2000) ...................................................4

*EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951 (9th Cir. 2009) ..................................3

*Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir. 2009) ........................................8

*Ford v. Cty. Of Grand Traverse*, 535 F.3d 483 (6th Cir. 2008) ..................................3

*Freund v. Nycomed Amersham,* 347 F.3d 752 (9th Cir. 2003) ..................................3

*Gordon v. Cnty. Of Orange*, 6 F.4th 961 (9th Cir. 2021) ........................................4

*Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), vacated in part on other grounds, 563 U.S.

   692 (9th Cir. 2011) ...........................................................................4, 6, 7

*Hardwick v. Cty. Of Orange*, 844 F.3d 1112 (9th Cir. 2017) ..................................5, 7

*Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) .....................................................8

*Kirkpatrick v. County of Washoe*, 843 F.3d 784 (9th Cir. 2016) (en banc) ..............................8

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) (per curiam) ..............................................4

*Liston v. Cty. Of Riverside*, 120 F.3d 965 (9th Cir. 1997) ........................................8

*Rieman v. Vazquez*, No. 22-56054, 2024 U.S. App. LEXIS 5252 (9th Cir. Mar. 5, 2024) .........7

*Scanlon v. Cty. Of L.A.*, 92 F.4th 781 (9th Cir. 2024) ...........................................7, 8

*Seidner v. de Vries*, 39 F.4th 591 (9th Cir. 2022) .................................................4

*United States v. Stanert*, 762 F.2d 775, as amended, 769 F.2d 1410 (1985) ..........................8

*Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 1999) ................................17

- ii -

*White v. Pauly*, 137 S. Ct. 548 (2017) ........................................................................4

**Rules**

Fed R. Civ. P. 50(a) ..........................................................................2, 3, 15, 18

Fed. R. Civ. P. 50(a)(1)...................................................................................3

Fed. R. Civ. P. 50(b) ......................................................................................3

**State Cases**

*Johnson v. State of Cal.*, 69 Cal. 2d 782, 787-798 (1968) ........................................17

*Newton v. Cty. Of Napa*, 217 Cal. App. 3d 1551, 1560 (1990) ...............................17

**State Statutes**

California Government Code Section 820.2 .........................................................16

- iii -

Case 1:21-cv-00841-JAM-CSK   Document 189   Filed 07/12/24   Page 5 of 24

## I. <u>INTRODUCTION</u>

Over the course of 8 days of trial, Plaintiffs presented testimony from the mother and father of N.P., the paternal grandmother, paternal aunt, a renowned expert in psychology, five different social workers (Cobbs, Jones, Anderson, Johnson, and Granados), and the facilitator of the TDM, Howard Courney. The jury was presented a multitude of exhibits, created by or utilized by the social workers that testified (there were others of course in the Delivered Service Logs), and including policy documents of Stanislaus County's "child welfare" agency. Plaintiffs demonstrated by a preponderance of the evidence, that Defendant April Cobbs, her warrant affidavit, knowingly lied, concealed material facts, and intentionally the misleading and false inference that that Hilda Perez suffered from mental illness, that she was making false allegations of abuse, that she was responsible for an extensive referral history with child welfare services, that Shane Beard refused to protect N.P. including by taking custody of N.P., that N.P. was at risk of suffering abuse in Hilda's home, and that both parents refused to accept any services or to keep N.P. safe. The prohibition against engaging in this conduct, as well as the rights that were implicated, was well established at the time of the events giving rise to suit.

The jury reviewed all of the evidence and determined that, in so doing, Cobbs caused the Juvenile Court to issue a custody warrant that resulted in the seizure and detention of a nine-month-old child from his mother and father. They awarded damages in the amount of $1.1 million and assessed punitive damages in the amount of $750,000, to send the message that such conduct will not, and cannot, be tolerated; it is to be deterred.

Defendant Cobbs is not entitled to qualified immunity for violating the Plaintiffs' right to familial association, guaranteed under the Fourth and Fourteenth Amendments. Plaintiffs proved that Cobbs committed acts of judicial deception that resulted in the violation of Plaintiffs' right to familial association. Plaintiffs proved that Cobbs is liable for false imprisonment of N.P. as California does not immunize the type of conduct proven at trial.

- 1 -

## II. <u>RELEVANT PROCEDURAL HISTORY</u>

Following Plaintiffs' opening argument, defense counsel made an oral motion for judgment as a matter of law, challenging the legal sufficiency of the claims against Defendants, Stephanie Herrera and Shari Johnson. Dkt. 136. The motion was denied. *Id.*

On day 8 of trial, after Plaintiffs rested, the parties stipulated to dismissal of Stephanie Herrera, Shari Johnson, Mariela Gomez, David Granados, and Gloria Solorio, as well Plaintiffs' Fourth Claim for Relief. Dkt 153. Defense counsel made a second oral motion for judgment as a matter of law (JMOL), which was taken under submission. After the defense rested, defense counsel augmented his oral motion for JMOL with further argument. Over the weekend, defense counsel submitted a written brief providing additional grounds for JMOL. Dkt. 155.

Relevant to this renewed motion[1], defense counsel argued in his pre-verdict motions for JMOL that:

1.     Defendant Cobbs is immune from N.P.'s false imprisonment claim, under California Government Code sections 820.2 and 820.21, because Plaintiffs did not show that Cobbs committed the alleged acts of judicial deception with malice.

2.     As to the First Claim for Relief, that insufficient evidence supported that Cobb committed judicial deception in her warrant affidavit, and, even if she did, that her conduct did not "shock the conscience."

3.     As an alternative, that Defendant Cobbs was entitled to qualified immunity on the First Claim for Relief.

Significant to the instant renewed motion, neither defense counsel, nor the court *sua sponte*, ever made a Rule 50(a) motion that Plaintiff Beard did not establish a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child, such that he had a protected parental right to familial association.

---

[1] For the sake of brevity, argument relating to claims or defendants that were dismissed pursuant to the defendants' pre-verdict Rule 50(a) motion, or those that are not renewed in this motion, e.g. *Rooker-Feldman*, are not listed here.

- 2 -

PLAINTIFFS' OPPOSITION TO RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW (Dkt 177)          SER-0525

1

### III. <u>LAW</u>

2       A motion for judgment as a matter of law tests the sufficiency of the evidence offered

3  in support of the other party's claim or defense. The movant must show that a reasonable

4  jury would not have a legally sufficient evidentiary basis to find for the other party on a

5  claim or issue. Fed. R. Civ. P. 50(a)(1).

6       A Rule 50(b) motion renews consideration of issues initially raised in a pre-verdict

7  motion for judgment as a matter of law. Fed. R. Civ. P. 50(b). Because it is a renewed

8  motion, a post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-

9  deliberation Rule 50(a) motion. A party cannot properly "raise arguments in its post-trial

10  motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-

11  verdict Rule 50(a) motion." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir.

12  2009), citing *Freund v. Nycomed Amersham,* 347 F.3d 752, 761 (9th Cir. 2003); Fed. R.

13  Civ. P. 50 advisory committee's notes to the 1991 amendments ("A post trial motion for

14  judgment can be granted only on grounds advanced in the pre-verdict motion.").

15       Rule 50(b) generally bars a renewed motion on any grounds not specifically raised in

16  an earlier Rule 50(a) motion. Fed. R. Civ. P. 50(b). While "technical precision" is not

17  required to preserve an issue by way of a pre-verdict motion, the issues discussed in the

18  post-verdict motion must, at a minimum, relate back to the same legal theory raised in the

19  pre-verdict motion. *Ford v. Cty. Of Grand Traverse*, 535 F.3d 483, 493 (6th Cir. 2008).

20       For the same reason, the Court also may not *sua sponte* grant a motion for judgment

21  as a matter of law after the verdict. *American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 159

22  (6th Cir. 1997).

23    **/ / /**

24    **/ / /**

25    **/ / /**

26

27

28

- 3 -

PLAINTIFFS' OPPOSITION TO RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW (Dkt 177)    

Case 1:21-cv-00841-JAM-CSK   Document 189   Filed 07/12/24   Page 8 of 24

## IV. <u>ARGUMENT</u>

**A.  Defendant April Cobbs is not entitled to Qualified Immunity**

"Qualified immunity" does not protect those who are plainly incompetent or those who knowingly violate the law. *Gordon v. Cnty. Of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Government officials, performing discretionary functions are entitled to qualified immunity, "as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The immunity applies "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam).

In deciding whether qualified immunity applies, the court asks two questions: (1) did the officer violate a constitutional right, and (2) was that right clearly established at the time of the events at issue?" *Seidner v. de Vries*, 39 F.4th 591, 595 (9th Cir. 2022).

**1.  The right to be free from judicial deception in a child custody warrant was clearly established in 2019**

When the events giving rise to Plaintiffs claims occurred in 2019, case law clearly established that as part of the right to familial association, parents and children have a "right to be free from judicial deception" in child custody proceedings and removal orders. See *Devereaux v. Perez*, 218 F.3d 1045, 1055-56 (9th Cir. 2000) (in the context of a child abuse proceeding that "the constitutional right to be free from the knowing presentation of false or perjured evidence" is clearly established); *Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008) (per curiam) (absolute immunity denied to social workers who fabricated evidence during an investigation or make false statements in a juvenile petition); *Greene v. Camreta*, 588 F.3d 1011, 1034 (9th Cir. 2009), vacated in part on other grounds, 563 U.S. 692 (9th Cir. 2011) (qualified immunity denied to a social worker that misrepresented that mother indicated a lack of resources to keep the alleged perpetrator father from having unsupervised contact with the children and concealed that mother

- 4 -

1   entered into a safety plan); *Costanich v. Dep't of Soc. And Health Servs.*, 627 F.3d

2   1101,1108 (9th Cir. 2010) ("[D]eliberately fabricating evidence in civil child abuse

3   proceedings violates the Due Process clause of the Fourteenth Amendment when a liberty

4   or property interest is at stake...."); *Hardwick v. Cty. Of Orange*, 844 F.3d 1112, 1114 (9th

5   Cir. 2017) (right to be free from judicial deception in civil child dependency proceedings

6   was clearly established – "*No official with an IQ greater than room temperature in Alaska*

7   *could claim that he or she did not know that the conduct at the center of this case violated*

8   *both state and federal law*").

9       The *Hardwick* court reaffirmed that no amount of judicial deception was tolerable; it

10  pronounced:

11         "[T]here is no such thing as a minor amount of actionable perjury
12         or of false evidence that is somehow permissible. Why? Because
           government perjury and the knowing use of false evidence are
13         absolutely and obviously irreconcilable with the Fourteenth
           Amendment's guarantee of Due Process in our courts.
14         Furthermore, the social workers' alleged transgressions were not
           made under pressing circumstances requiring prompt action, or
15         those providing ambiguous or conflicting guidance. There are no
           circumstances in a dependency proceeding that would permit
16         government officials to bear false witness against a parent."

17      Nothing in the case law following the events of this case presents any ambiguity

18  regarding the constitutional mandate on the part of social workers "to tell the truth, the

19  whole truth, and nothing but the truth." The cases uniformly hold that judicial deception, in

20  all of its forms, are offensive to the Constitutionally guaranteed right to due process.

21      In *Benavidez v. Cty. Of San Diego*, the Ninth Circuit reversed the district court's grant

22  of qualified immunity to a pair of social workers, who the plaintiffs alleged sought orders

23  from the juvenile court authorizing medical examinations of the minors based on the false

24  representation in a Detention Report and proposed order that "reasonable efforts" had been

25  made to notify the parents about the medical examinations, while actually never seeking the

26  parents' consent to any examinations, and never notifying the parents of their right to be

27  present during any medical examinations. *Benavidez v. Cty. Of San Diego*, 993 F.3d 1134,

28  1141 (9th Cir. 2021).

- 5 -

1    There, the district court based its order on a lack of precedent that clearly prohibiting

2  the social workers conduct in "presenting a proposed order granting the County the right to

3  conduct medical examinations of the Minor Plaintiffs without having provided notice to the

4  Parents themselves, or having a good faith basis to believe that the Parents had been

5  notified by someone else," *Id.* at 1151. In reversing, the Ninth Circuit Court of Appeals

6  stated that the district court incorrectly examined the issue "through the lens of

7  unconstitutional medical examinations on children in protective custody," instead of the

8  backdrop of law regarding judicial deception. *Id.* Although the harm to be avoided, i.e.

9  unwarranted and unconsented medical examination, differed from preexisting cases

10  regarding judicial deception, the Ninth Circuit found *Greene* to be most analogous for the

11  general proposition that "a defendant social worker was not entitled to qualified immunity

12  'as to the false representation claim, as the [plaintiffs'] right to be free from judicial

13  deception in securing the removal order was clearly established at the time of [defendant's]

14  alleged misrepresentations to the court.'" *Id.* at 1152, citing *Greene v. Camreta*, *supra*, 588

15  F.3d 1011, 1034.

16    In *David v. Kaulukukui*, 38 F.4th 792 (9th Cir. 2022), the Court denied qualified

17  immunity to a police officer who allegedly deceived a family court when she assisted a

18  non-custodial father in obtaining a temporary restraining order that prevented the sole

19  custodial parent from having any contact with her daughter.  *Id*. 795. In that case, the

20  defendant allegedly prepared a custody petition that omitted any reference to an existing

21  custody order. *Id*. at 801. Citing the aforementioned cases and others, the Court reaffirmed

22  that "the right to be free from judicial deception in matters of child custody 'is beyond

23  debate.'" *Id*.

24    In *Scanlon v. City of Los Angeles,* the social workers filed a warrant affidavit, that the

25  plaintiffs alleged contained the misrepresentations that the parents were treating a child

26  with cannabis oil without medical supervision, and that the treatment adversely affected the

27  child's behavior at school. Plaintiffs alleged that this statement contained false statements,

28

- 6 -

1    "statements taken so far out of context as to be misleading," and omissions of important

2    facts. *Scanlon v. Cty. Of L.A.*, 92 F.4th 781, 800 (9th Cir. 2024). In reversing, in part, the

3    district court's grant of summary judgment, the Ninth Circuit found multiple

4    misrepresentations and omissions of fact that "could be found material and deliberate or

5    reckless by a reasonable jury." *Id.* at 801. As to qualified immunity, the Court simply noted

6    that "[t]he right to be free from judicial deception was clearly established prior to 2016 and

7    so before the events of this case," citing the aforementioned cases, including *Hardwick*,

8    *Benavidez*, *Greene*, and *Costanich*.

9    In *Rieman v. Vazquez,* the Ninth Circuit affirmed the district court's denial of

10   qualified immunity to a social worker who misrepresented that she was unable to give

11   notice to a parent of the filing of a juvenile dependency petition because her whereabouts

12   were unknown. *Rieman v. Vazquez*, No. 22-56054, 2024 U.S. App. LEXIS 5252, at *16 (9th

13   Cir. Mar. 5, 2024). Again, the Court cited to existing law, finding "a well-established

14   constitutional right to be free from deception in the presentation of evidence during

15   juvenile dependency proceedings" *Id.* at *19; citing *Greene, Costanich*, and *Hardwick*.

16   These cases establish that no new ground is being broken in this area of law. The law

17   is, and was, well-established; the contours of the right to be free from judicial deception in

18   all matters relating to custody are unambiguous.

19
20   **2.   Sufficient evidence supports the jury's finding that April Cobbs violated
     Plaintiffs' right to familial association through acts of judicial deception.**

21   The elements of a constitutional violation of the right to familial association through

22   judicial deception, include "(1) a misrepresentation or omission (2) made deliberately or

23   with a reckless disregard for the truth, that was (3) material to the judicial decision."

24   *Benavidez v. Cty. Of San Diego*, *supra*, 993 F.3d 1134, 1147, citing *Greene v. Camreta*,

25   *supra*, 588 F.3d 1011, 1035.

26   "Judicial deception" consists of either "deliberate omission or affirmative

27   misrepresentation." *Scanlon v. Cty. Of L.A.*, *supra*, 92 F.4th 781, 799, citing *David v.*

28   *Kaulukukui*, *supra*, 38 F.4th 792, 801, n.3. "A statement can also be misleading if, although

- 7 -

1   technically true, it has been so wrenched from its context that the judicial officer will not

2   comprehend how it fits into the larger puzzle." *Id.* An omission includes "facts required to

3   prevent technically true statements in the affidavit from being misleading." *Id.*, quoting

4   *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). See also *Liston v. Cty. Of*

5   *Riverside*, 120 F.3d 965, 973 (9th Cir. 1997); *United States v. Stanert*, 762 F.2d 775, as

6   amended, 769 F.2d 1410 (1985). "Even otherwise true observations made misleading by

7   the omission of facts that are not themselves material may result in an affidavit that,

8   considered as a whole, is materially misleading." *Id.* "[B]y reporting less than the total

9   story, an affiant can manipulate the inferences a magistrate will draw . . . . [and] denude the

10  probable cause requirement of all real meaning." *Id.* quoting *Liston v. Cnty. Of Riverside*,

11  120 F.3d 965, 973 (9th Cir. 1997).

12        The materiality of omitted facts turns on "whether the affidavit, once corrected and

13  supplemented, establishes probable cause." *Bravo v. City of Santa Maria*, 665 F.3d 1076,

14  1084 (9th Cir. 2011), citing *Ewing v. City of Stockton*, *supra*, 588 F.3d 1218, 1224.

15        The parents' right to be free from judicial deception are analyzed under the

16  Fourteenth Amendment, while the child's rights are analyzed under the Fourth

17  Amendment. See *David v. Kaulukukui*, *supra*, 38 F.4[th] 792, 799, citing *Kirkpatrick v.*

18  *County of Washoe*, 843 F.3d 784, 788-89 & n.2 (9th Cir. 2016) (en banc). However, "the

19  same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the

20  removal of children." *Id.*, citing *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018).

21        Over eight days of trial, Plaintiffs meticulously presented evidence showing that

22  multiple misrepresentations and omissions of fact were made in Cobbs's warrant affidavit

23  that, considered as a whole, rendered the affidavit misleading and lacking in probable cause

24  for removal of N.P. The jury properly found that, but for the misrepresentations and

25  omissions of fact in the Cobb affidavit, the juvenile court would not have issued the custody

26  warrant. As discussed below, the omissions of fact were done with the purpose of creating

27  the misleading inference that Hilda Perez suffered from mental illness, that she was making

28

1  false allegations of abuse, that she was responsible for an extensive referral history, that

2  Shane Beard refused to protect N.P. including by taking custody of N.P., that N.P. was at

3  risk of suffering abuse in Hilda's home, and that both parents refused to accept any services

4  or to keep N.P. safe. The prohibition against engaging in this very conduct is discussed *ad*

5  *nauseum* in *Greene*, *Liston*, and *Stanert*.

6        The following is a summary of the knowing misrepresentations and omissions made

7  by Cobbs in her warrant affidavit and proven as such at trial:

8        LIE: "*The child's physical environment poses an immediate threat to the child's*
9  *health or safety and there are no reasonable services available to this worker which, if*
   *provided to the child's parent, guardian, caretaker, or to the child, would eliminate the*
10 *need to remove the child from the custody of his or her parent, guardian or caretaker.*"

11       HOW SHOWN:  As an initial matter, a "physical environment" has nothing to do

12 with whether a person in the home is engaging in some conduct that would require removal

13 of a child.  Nevertheless, to the extent this sworn allegation was intended to be based on

14 "inappropriate touching" by some other child in Hilda's home, both Hilda Perez and April

15 Cobbs testified that all of the other children in Hilda's care were removed from her care by

16 the time the warrant application was prepared. Moreover, Defendant Cobbs never had any

17 evidence that N.P. had suffered or was at risk of suffering "inappropriate touching" by any

18 of the other children in the home.

19       LIE: "*According to Case Management Systems (CMS) there have been 52 referrals*
20 *and/or reports regarding concerns since 12-15-2011. The common themes in these*
   *episodes and reports has been sexual abuse to Hilda's children or relatives, concerns*
21 *pertaining to Hilda's mental health, along with some self-verbalization by Hilda that she*
   *wanted to kill herself.*"

22       HOW SHOWN: Hilda's mental health and suicidal ideation were not a *common*

23 theme throughout these referrals. The evidence shows that there was one referral in 2011

24 where Hilda had an issue with post-partum depression. Cobbs left out of the warrant there

25 was one single mental health episode over eight (8) years ago, and it was the result of post-

26 partum depression, and that Hilda accepted and participated in services through third party

27 providers at that time. By leaving these details out Cobbs painted a false picture that Hilda

28

1   struggled with her mental health and suicidal ideation over a period of 8-9 years and was a

2   present danger to the child, N.P. In fact, she doubled down on this narrative.

3       Cobbs supported her omission and built up the false inference by misrepresenting

4   elsewhere in the affidavit that "*Hilda appeared to be in a gaze and spoke in a soft tone*

5   *almost in a whisper*" during her interview at the home on 7/12/19, and added that at the

6   Team Decision Meeting (7/15/19), "*I observed Hilda to be quiet and soft-spoken but when*

7   *she began to speak, her affect was flat and her requests were confusing to this social*

8   *worker*."[2]

9       These false and unsupported representations by Cobbs pushed the narrative that

10  Hilda had ongoing and unresolved mental health issues to create the perception that Hilda

11  suffered from some form of disability or incapacity, rendering her child unsafe. The jury

12  had the opportunity to review all of the evidence, including audio recordings of Cobbs and

13  Jones's interview of Hilda and Shane in the home on 7/12, and other than respecting the

14  fact children were present in the home and coming in and out of the room, there was

15  nothing that was "almost a whisper" at the home on 7/12. The jury heard the audio-

16  recordings of conversations and could decide for themselves. Trial Ex.'s 93, 94.

17      LIE: Cobbs failed to disclose to the court that of the "52 referrals," many were

18  duplicates or were not made against Hilda, thereby creating the false impression that Hilda

19  had an extensive and problematic history with child welfare services.

20      HOW SHOWN: The jury was provided the various referrals and their dispositions in

21  within the Exhibits 1 – 70 (some within that range being Delivered Service Logs). The jury

22  had the evidence and heard Cobbs testify about the referrals that actually came from

23  Alfredo Sosa Sr., which included a trend of escalating and padded allegations.

24

25

26  _____

27  [2] It is unknown why requests of Hilda for an attorney and documents about the investigation
    were confusing to Ms. Cobbs; she did not state anything else that was "confusing" about
    what Hilda said at the Team Decision Meeting. Cobbs concocted this lie in order to paint

28  Hilda as having disorganized speech and suffering from mental illness.

- 10 -

1    LIE:  As to Shane Beard, Cobbs misrepresented that Mr. Beard "*was aware of the*

2   *agency's concerns but failed to be a protective parent, and has made no new plans to*

3   *remedy the issue.*"

4    HOW SHOWN:  The jury heard testimony that Mr. Beard agreed to take custody of

5   and care for N.P. if the child was removed, pending completion of the "investigation." In

6   fact, he testified that he told Cobbs he would do whatever was necessary to maintain

7   custody of N.P. To that end, Mr. Beard child proofed his home and agreed to a home

8   inspection so that the child could be placed in his home. Cobbs concealed this material

9   information from the juvenile court, and having also omitted the fact she and Jones were

10   told that Hilda had sat down and spoken to the child about touching and boundaries.

11    RELATED OMISSION: Ms. Cobbs, admitting she knew the parents lived separately,

12   and that was a relevant factor in determining if a "safe" parent could step up to take

13   temporary custody of N.P. This critical fact was left out of Cobbs's warrant affidavit,

14   which, to the extent that the juvenile court believed there was probable cause for removal of

15   N.P. from Hilda Perez, would cause the court to believe that removal from both parents was

16   necessary. As Ms. Jones testified at trial (by video), there were "situations" where when

17   less than all children are removed, it's because, "they had, like, another parent that they

18   could go live with that was safe." The jury hearing that, quite likely added that to the

19   reasons for determining Cobbs intentionally concealed this fact and carried out the removal

20   of N.P. from Shane Beard out of malice and vindictiveness.

21    RELATED OMISSION: The jury heard, in a audio-recorded telephone call, Cobbs

22   instructing Hilda Perez that she could, but was not required, to bring people to support her

23   to the Team Decision Meeting. When Hilda asked whether Shane needed to be at the TDM,

24   Cobbs told her "no." This fact was also omitted in the warrant affidavit in order to suggest

25   that both Shane and Hilda were at the TDM to address concerns about both parents, when,

26   in reality, the concerns were solely with Hilda.

27

28

1       LIE: "*All of these reports and or referrals have not been confirmed by CPS and medical findings suggest, no physical signs of sexual abuse to the child, however the child allegedly has told Hilda (mother) that these things are happening.*"

2

3       HOW SHOWN: Cobbs said this, without a mention that well over half of the referrals

4   (thirty six) were "unfounded," i.e. inherently improbable or false, as shown in Exhibits 1-

5   70. Thus, what CPS *had "confirmed"* was that someone(s)/somebody(s) made a lot of

6   unfounded claims of abuse amidst the Garcia and Sosa families, but of course that was

7   never shared with the Court. Of course, Cobbs left out that several – especially starting in

8   December of 2018 – were unfounded and from Alfredo Sosa Sr., helped add to the false

9   narrative that Hilda was abusive and making false accusations. Perhaps the most damning,

10  Cobbs concealed that not a single referral had anything to do with Shane Beard or N.P.

11      LIE: Cobbs told the juvenile Court in the warrant application that there was

12  essentially no proof of any kind that there had been any sexual abuse, in fact specifying no

13  "physical signs," yet Cobbs left out the fact that the child was examined by a doctor who

14  found a tear near the rectum despite testifying she read any referral that resulted in an

15  investigation and it was right there in a fairly recent referral.[3]

16      LIE: "*What appears to be clear from the medical records is that although Hilda lives in Patterson, she has taken her child to numerous other medical offices for exams and assessments of sexual abuse, only to be rebuffed*" that there is no sexual abuse evidence in regards to physical signs."

17

18

19      HOW SHOWN: First, there was the evidence of the scratch near the rectum; it is in

20  Exhibit 67 (DSL). Second, if it is "difficult to tell how many times he has been taken to the

21  doctor for alleged sexual abuse," it is reckless to, in the same breath, tell the Court there

22  have been "numerous" such exams and assessments. Further, there no evidence,

23  whatsoever, in any exhibit in this case or any testimony provided, that mother was

24

25  ────────────────

26  [3] In fact, Cobbs claims in her Motion for New Trial, that she "relied on information in service logs provided by other social workers[.] Dkt. 177 9:4-5  This was basically an oblique shoehorn effort to bring in elements of the Motion for Summary Judgment ruling in

27  *O'neel v. County of Sacramento*, 2024 WL 1676723 (2024)  But of course what Cobbs did, was twist words, cherry pick, turning a blind eye to exculpatory or mitigating information turn.

28

- 12 -

1
2

"rebuffed" by any medical professional. (Cambridge Dictionary: to refuse to accept a

helpful suggestion or offer).

3
4
5
6
7

LIE: "*On July 11th, I received another referral of many alluding to or concerned about sexual abuse. The concern listed in this referral allegation was that Alfredo (age 5) had again been exposed to another hospital visit. There again were no signs of sexual abuse physically speaking. At this juncture, this agency and Social Worker Cobbs became concerned that Alfredo is being forced into exams, questioning and ongoing sexual abuse assessments conducted by numerous people and facilities based on Hilda's perception that he has been abused, despite information to the contrary.*"

8
9
10
11

HOW SHOWN: Again, Ms. Cobbs failed to advise the Court of the scratch near the child's rectum, and continues the reckless exaggeration of the "numerous," here citing "people and facilities," after telling the Court that quantifying the examinations was "difficult."

12
13
14
15
16
17

RELATED OMISSION: Defendant left out that the most recent sexual abuse allegations were made by Alfredo Sr., in the context of a custody dispute, and that it was his allegations that actually led to the first forensic medical examination; leaving the Court to believe it was just another of the "52 referrals" received about mother, and that Hilda was the cause of the actual examination of the forensic variety that occurred the first of two times.

18
19
20
21

LIE: "*At current time, I also investigated more referrals regarding Hilda regarding sexual abuse allegations. During this time, it was alleged that A.S.Jr. was being inappropriately touched by his brother William. During this investigation, SW Cobbs was made aware of an incident involving Alfredo Jr being touched inappropriately by her older son Christopher while playing a game in a fort made out of blankets. Hilda appeared to minimize the allegations and made no efforts to make the appropriate reports regarding this allegation.*"

22
23
24
25
26

HOW SHOWN: The actual referral showed that Alfredo Sosa senior made the report, and while Cobbs told the juvenile court that there were "since beginning of the year 2019 [ ] six sexual abuse allegations pertaining to [A.S. Jr.] allegedly being perpetrated on by his father during a visit," that is absolutely not true based on the referrals themselves, evidence the jury had in the ERRI's and DSL's.  Ex. 1-71

27
28

- 13 -

page

1

2

LIE: "*Additionally, Christopher, a minor, admitted that he touched A.S.Jr. inappropriately. He reported that A.S.Jr. asked him to touch his 'ding a ling' and he knew that it was wrong, but he continued to do so.*"

3

4

5

6

7

8

9

10

HOW SHOWN: Ms. Cobbs falsely represents, "but he continued to do so," i.e. that A.S.Jr. "continued" touching of the boys "*ding-a-ling.*" She did so without having any supporting evidence. Cobbs knew full well from the DSL  entries for the visit on 7/12 at Hilda's home, that no one claimed Christopher touched A.S.Jr. anywhere but the belt buckle. (A.S. Jr.) actually claimed no one had touched him and Cobbs attended the first CAIRE interview, which she described as containing "no disclosures." And as to the touching of a belt buckle, it happened one time, and said the child said he would not do it again.[4]

11

12

13

LIE: "*Due to limited engagement and difficulty in communicating with Hilda, a TDM (Team Decision Meeting) was scheduled to engage with the family and to hopefully discuss the concerns of the referrals, including what appears to be mother's mental health limitations, sexual abuse, and concerns of lack of supervision.*"

14

15

16

HOW SHOWN: Again, the evidence presented at trial showed that Cobbs had no evidence, whatsoever, of any "mental health limitations" on the part of Hilda as of 2019, "sexual abuse," or "lack of supervision."

17

18

LIE: "*Protective Custody is being requested for baby N        due to his young age, and inability to protect and care for himself from risk of ongoing, unmitigated sexual abuse occurring in the home.*"

19

20

21

22

HOW SHOWN: There was no "unmitigated sexual abuse occurring in the home." The evidence showed that (1) Hilda had spoken to the children about setting boundaries, (2) there was no "sexual abuse in the home," (3) Cobbs had already removed the other children in the home who purportedly engaged in "inappropriate touching" with safety plans.

23

24

LIE: "*Hilda and Mr. Beard were unwilling to engage in voluntary services, although offered and explained numerous times, therefore a higher level of intervention is necessary.*"

25

26

HOW SHOWN: Cobbs does not identify a single service that she offered to either parent, and, in fact, she never did. All of the witnesses testified that when Hilda requested

27

28

---

[4] C.P. also testified how he avoided A.S.Jr. steadfastly after the talk with mother.

- 14 -

an attorney and discovery at the TDM, the meeting was adjourned without discussing any potential services to be offered. The decision to remove N.P. was reached in a closed meeting by the social workers thereafter. Moreover, Cobbs omits in her warrant affidavit that Hilda had previously been offered and accepted services including FRC services, as noted in the referral history and as testified to at trial. Cobbs further omits that, whatever the reasons were for terminating the TDM, no further efforts were made to offer services to Hilda after the meeting or to reschedule. Finally, Cobbs omits that Shane agreed to take custody of N.P. and "do whatever was required" to keep N.P. safe. In fact, Shane agreed to a home visit.

**B.   The evidence supports that Plaintiff Beard was fully committed to the responsibilities of parenthood such that he had at all times the substantive right to familial association with N.P.**

Plaintiffs object to Defendant Cobbs's new grounds for seeking judgment as a matter of law against Shane Beard's claims, which were not raised in the pre-verdict motion under Rule 50(a). Defendant Cobbs did not make a pre-verdict motion based on a lack of evidence that Shane Beard was fully committed to the responsibilities of parenthood such that he had a substantive right to familial association with his son, N.P.

Without waiving the foregoing objection, Plaintiff submits that there is ample evidence in the record supporting a protected familial association right by Mr. Beard. He testified at trial that, N.P., who was breastfeeding, primarily resided with Hilda. He did not immediately move into the home because N.P. was conceived during a short dating relationship and he needed more time to determine where the relationship was headed. However, Shane testified that he visited with N.P. every day after work and that he loved his child. Mr. Beard also signed the voluntary declaration of paternity, thereby holding N.P. out to the world as his son. Mr. Beard further agreed to take custody of N.P. while Cobbs continued her investigation if the child could no longer reside with the mother. He childproofed his home and agreed to a home inspection.

- 15 -

1

2

> *Mr. Beard collapsed and an ambulance hand to be called when his son was ripped away from his arms.*

3

4

Plaintiffs submit that ample evidence supports that Shane Beard was not merely the biological father of N.P.; he was bonded to, exercised custody over, and loved his child.

5

6

7

8

9

10

11

12

13

14

15

Contrary to Cobbs's contention that her conduct does not meet the standard of "shocking the conscience," the evidence is overwhelming. The evidence shows that Cobbs intentionally and recklessly made false representations and omissions of fact in the warrant affidavit. The jury had ample evidence that Cobbs did so, knowing that it was unlawful to commit perjury in a warrant affidavit and unprivileged conduct – in fact she received training on this point – and she chose to do so anyway. The evidence shows that Cobbs submitted her false warrant affidavit with the intention that the Juvenile Court issue an order detaining N.P. from his parents, and with the intent to execute the warrant, which would result in massive trauma to all of the plaintiffs. Plaintiff Beard testified that as his child was being removed from his care, and he was lying on the ground convulsing, Cobbs yelled something to the effect that "this is what you get for having a baby with Hilda."

16

17

The jury was entitled to review the evidence and make findings of fact regarding Cobbs's state of mind when she offended the Constitution by violating Plaintiffs' rights.

18

**C.  Sufficient evidence supports Plaintiff N.P.'s claim for False Imprisonment**

19

California Government Code Section 820.2 provides:

20

21

22

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

23

California Government Code Section 820.21 provides:

24

25

26

27

> a) Notwithstanding any other provision of the law, the civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code shall not extend to any of the following, if committed with malice:

28

- 16 -

(1) Perjury.

(2) Fabrication of evidence.

(3) Failure to disclose known exculpatory evidence.

(4) Obtaining testimony by duress, as defined in Section 1569 of the Civil Code, fraud, as defined in either Section 1572 or Section 1573 of the Civil Code, or undue influence, as defined in Section 1575 of the Civil Code.

(b) As used in this section, "malice" means conduct that is intended by the person described in subdivision (a) to cause injury to the plaintiff or despicable conduct that is carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights or safety of others.

Immunity under the foregoing statutes does not extend to non-discretionary actions, including intentional torts, such as battery and false imprisonment. See *Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126, 1145 (9th Cir. 1999), citing *Newton v. Cty. Of Napa*, 217 Cal. App. 3d 1551, 1560 (1990). See also *Johnson v. State of Cal.*, 69 Cal. 2d 782, 787-798 (1968) (discussing the limits of discretionary function.)

As discussed in the preceding sections, the jury received ample evidence of the material misrepresentations and omissions in Cobbs's fraudulent warrant affidavit, which caused the removal and detention of N.P. from his parents. The jury also heard evidence supporting malice. The blatantly false and misleading warrant affidavit was submitted to the juvenile court with the intention to secure an order removing N.P., with knowledge of its insufficiency if the misrepresentations of fact were removed and if the misleading omissions were included. The jury, further sent a clear message of their finding of malice in that an award of $750,000 in punitive damages were assessed.

As for the other elements of the claim for false imprisonment:  Cobbs's lies were the legal and proximate, i.e. foreseeable, cause of N.P. being forcibly removed from his parents' care and involuntarily confined in protective custody.

Ample evidence adduced at trial shows that the elements of false imprisonment were met and that Ms. Cobbs actions were unprivileged and not covered by Government Code Sections 820.21 and 820.2. As for any belated argument by the defense based on

- 17 -

1   Government Code Section 821.6, the failure to raise it in her Rule 50(a) motion results in

2   waiver; Plaintiffs object. Even if the Court were to consider this additional ground for

3   immunity, the acts comprising N.P.'s false imprisonment were non-discretionary and fueled

4   by malice. The immunity does not apply.

**D.   The evidence supports that N.P. suffered quantifiable harm caused by Defendant Cobbs**

7   The Defendants' assertion that "the only evidence presented [to support N.P.'s

8   damages] was Mr. Beard's testimony that N.P. cried a bit when he left the room during

9   visits" is incorrect and flies in the face of ample evidence presented on this point.[5]

10   Mr. Beard testified about the condition of his son post-removal. To remind the Court,

11   Mr. Beard saw his first born child daily after his birth, even if he got off work at night, so

12   he could be there to help raise his child even during the real tough period when the

13   newborn comes home and wakes 4 – 6 times a night to eat.

14   The testimony was not just how the child cried a plaintive wail when his father

15   departed visits at the agency, but it was like none father had ever heard prior to N.P.'s

16   removal.

17   Mr. Beard testified about how N.P. promptly developed a diaper rash after being

18   removed and how he found his son in urine-soaked diapers on occasion.  Mr. Beard talked

19   about how his son's eyes were always blood shot after the removal during visits while in

20   County care.  He testified how after he finally got N.P. home he would scream when his

21   father left the room and he would look around for him and would become literally

22   unconsolable.  That searching for the missing parent is entirely common, and it is a

23   condition called "hypervigilance," defined as an extreme or excessive vigilance or the state

24   of being highly or abnormally alert to potential danger or threat.

25

26

27

28

---

[5] This identical point is made by Cobbs in her Motion for New Trial. The arguments in Opposition apply equally here and are repeated verbatim.

1    Then there was the testimony about how his son had quickly grown heavier in

2    County care, and that, along with finding formula in the child's diaper bag, meant the boy

3    was being deprived his mother's breast milk despite the fact it was ordered to be provided.

4    Mr. Beard also testified about how N.P. was taken from a breast-feeding mother, and

5    placed with two men who were complete strangers to the eight month old, and of course, in

6    entirely different surroundings from where he had spent his entire life prior thereto.

7    Mr. Beard nor counsel can say with certainty if this was testified to, but N.P. would

8    always come to visits in the same clothes and he was always dirty, and under his toenails

9    there would be an accumulated packing of dirt.  Again, not 100% certain, but believed so.

10    Then, there was the helpful testimony of Shari Johnson, about the life long trauma to

11    her child from her child's removal, 'still effects her to this day' or something like it was the

12    testimony.  The concept of emotional distress to the child (and parents) was also aided by

13    the testimony of April Cobbs herself, to wit,

14    "Q.  [ ] Now, also prior to your involvement with Hilda, Shane, and their
15    children, you were aware that the removal of children can have a significant,
      long-term psychological consequence for those children; right? A.  Yes. Q.
16    And you were aware that that also is true for the parents; correct? A.  Yes."
17    [Video depo]

18    And be it remembered, per the warrant application, Ms. Cobbs had "been a social

19    worker for 1 year and 10 months, and [she has] conducted 250 cases involving allegations

20    of child abuse or neglect."  This in addition being "qualified" to do so by virtue of her

21    "education, training, and experience." Ex. 72

22    Eric Anderson, a supervisor of so many years he made a comment about having more

23    hair back when he began, testified thusly, "Q.·You would agree that it is also true that it is

24    a very significant and traumatic event for the parents when a child is taken, right? A.·It's

25    probably traumatic for everybody involved." When asked if one should proceed cautiously

26    in deciding to remove children because of the trauma it will cause both parents and

27    children, he testified, "I think that's a fair statement."

28

- 19 -

1    The truth of the matter is that Plaintiffs submit that it does not take a college degree

2    or an education in child development or being a supervisor in a child welfare agency to

3    conclude – even without the foregoing direct and circumstantial evidence presented in this

4    case - that indeed N.P. did go through 'fright, nervousness, grief, anxiety, worry, shock,

5    apprehension, terror, and this was an *ordeal* for the eight (8) month old unlike any he had

6    ever experienced.  Per Ms. Cobbs he is now subject to "significant, long term

7    psychological consequences."  So it cannot be said with a straight face there was not

8    evidence of N.P.'s emotional distress, and as the testimony just noted frames, the child will

9    likely have that distress far into the future.

10    ## V. <u>CONCLUSION</u>

11    Based on the foregoing, Plaintiffs respectfully request the Court to deny Defendant's

12    renewed motion for judgment as a matter of law.

13

14    Dated: 7/12/2024                    **LAW OFFICE OF SAMUEL H. PARK, APC**

15

16                         By:    /s/ Samuel H. Park
                                  Samuel H. Park,
17                                Attorney for Plaintiffs,
                                  Shane Beard, Hilda Perez, and N.P.

18

19

20

21

22

23

24

25

26

27

28

- 20 -

Case 1:21-cv-00841-JAM-CSK   Document 177   Filed 06/26/24   Page 1 of 13

1

**P O R T E R  |  S C O T T**

2     A PROFESSIONAL CORPORATION
      John R. Whitefleet, SBN 213301
3     jwhitefleet@porterscott.com
      2180 Harvard Street, Suite 500
4     Sacramento, California 95815
      TEL: 916.929.1481
5     FAX: 916.927.3706

6     Attorneys for Defendants COUNTY OF STANISLAUS; ERIC ANDERSON, APRIL COBBS;
      MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON,
7     SHYNELLE JONES, GLORIA SOLORIO

8

9
                          **UNITED STATES DISTRICT COURT**
10                        **EASTERN DISTRICT OF CALIFORNIA**

11

12    SHANE BEARD, HILDA PEREZ, and N.P.,          Case No. 1:21-cv-00841-JAM-CSK
      a minor, by and through Guardian ad Litem
13    Donnie R. Cox,                               **NOTICE OF MOTION AND MOTION
                                                    FOR NEW TRIAL**
14                    Plaintiffs,
15                                                  Date:   August 6, 2024
      v.                                            Time:   1:00 p.m.
16                                                  Courtroom: 6, 14th Floor
      COUNTY OF STANISLAUS, a political
17    subdivision of the State of California, ERIC
      ANDERSON, APRIL COBBS, MARIELA               Complaint Filed: 05/24/2021
18    GOMEZ,      DAVID      GRANADOS,
      STEPHANIE    HERRERA,     SHARI
19    JOHNSON, SHYNELLE JONES, GLORIA
      SOLORIO, and DOES 1 through 10,
20
21                    Defendants.
22    _____/

23          TO PLAINTIFFS, THEIR ATTORNEYS OF RECORD, AND THE COURT:

24          NOTICE IS HEREBY GIVEN that at the above date and time, Defendant APRIL COBBS will

25    and hereby does move for amended judgment pursuant to Rule 59(e) and/or new trial pursuant Rule 59

26    on the following grounds:

27          A.     Defendant Cobbs is entitled to a new trial on the judicial deception claims under the

28    Fourth or Fourteenth Amendments either because (1) the jury failed to correctly apply the law to the

---

                                           1
                NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT
      4889-6038-2924, v. 1

                                                                            SER-0544

evidence or was contrary to the evidence or (2) the court erred in allowing materiality and probable cause to be determined by the jury or (3) the court erred in not allowing special interrogatories to the jury;

      B.    Defendant Cobbs is entitled to a new trial on the Fourteenth Amendment claim because the jury failed to follow the law and/or the evidence;

      C.    Defendant is entitled to a new trial on the false imprisonment claim insofar as the jury misapplied the and/or the verdict was contrary to the evidence;

      D.    Defendant is entitled to a new trial and/or to have the judgment amended as to any claim for past or future non-economic losses for Plaintiff N.P;

      E.    It was prejudicial error to not instruct on limitation of damages;

      F.    The compensatory awards were not supported;

      G.    Defendant is entitled to new trial and/or the judgment should be modified as punitive damages were excessive.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the pleadings, and records on file in this matter, and on any evidence, including oral and documentary evidence, that may be presented at the time of hearing on the motion.

## MEMORDANDUM OF POINTS AND AUTHORITIES

Defendant APRIL COBBS submit the submits the following points and authorities in support:

### I.

### INTRODUCTION

Following a jury trial, the jury returned a verdict in favor of Plaintiffs as against Defendant COBBS, which included damages both past and future non-economic loss for each plaintiff and punitive damages.   In this Motion, Defendants submit the jury and/or court committed error and/or the compensatory and punitive damage awards are unsupported or entitle Defendant to a new trial.

### II.

### LEGAL STANDARD

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, any party may move for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."

NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT
4889-6038-2924, v. 1

1  Fed. R. Civ. Proc., Rule 59(a)(1)(A).  While Rule 59 does not explicitly list the grounds available, it is
2  well-settled that possible grounds include that a verdict is against the clear weight of the evidence, that
3  damages are excessive, or that jury instructions were given in error.  *Montgomery Ward & Co. v.*
4  *Duncan*, (1940) 311 U.S. 243, 251.

5  Unlike a motion for judgment as a matter of law, where a court must view the evidence in the
6  light most favorable to the party opposing the motion, a court deciding a motion for new trial has a duty
7  to re-weigh the evidence independently, and to grant a new trial if the jury's verdict is against the clear
8  weight of the evidence.  *Molski v. M.J. Cable, Inc.,* 481 F.2d 724, 729 (2007).

9  A party moving for a renewed judgment as a matter of law may move for a new trial in the
10  alternative.  (See motion for renewed judgment filed concurrently herewith).  The District Court may
11  conditionally grant the motion for a new trial in conjunction with granting a renewed judgment as a
12  matter of law, thus assuring the moving party of a new trial should the granting of the motion for
13  judgment as a matter of law be overturned on appeal, unless the appellate court orders otherwise.  The
14  decision on whether to grant a new trial lies entirely within the discretion of the trial court.  *Murphy v.*
15  *Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990).  Rule 59 of the Federal Rules of Civil Procedure
16  provides that a "new trial may be granted to all or any of the parties and on all or part of the issues…in
17  an action in which there has been a trial by jury, for any of the reasons for which new trials have
18  heretofore been granted in actions at law in the courts of the United States."  The Court has a duty to
19  grant a new trial if the verdict is against the clear weight of the evidence such that the court "is left with
20  the definite and firm conviction that a mistake has been committed by the jury."  *Landes Const. Co., Inc.*
21  *v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir 1987).  The court does not presume that the
22  verdict is correct nor need it view the evidence in the light most favorable to the prevailing party. Id.
23  Instead, the court has an independent obligation to weigh the evidence and assess for itself the
24  credibility of the witnesses.  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir 1990).  "[E]ven
25  if substantial evidence supports the jury's verdict, a trial court may grant a new trial if the verdict is
26  contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in
27  the sound discretion of the trial court, a miscarriage of justice."  *Silver Sage Partners Ltd. v. City of*
28  *Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

---

3

NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT

4889-6038-2924, v. 1

# III.

## ARGUMENT

**A.** **Defendant Cobbs is entitled to a new trial on the judicial deception claims under the Fourth or Fourteenth Amendments either because (1) the jury failed to correctly apply the law to the evidence or was contrary to the evidence or (2) the court erred in allowing materiality and probable cause to be determined by the jury or (3) the court erred in not allowing special interrogatories to the jury.**

Defendant Cobbs submits that she is entitled to a new trial on the judicial deception claims under the Fourth or Fourteenth Amendments either because (1) the jury failed to correctly apply the law to the evidence or was contrary to the evidence or (2) the court erred in allowing materiality and probable cause to be determined by the jury or (3) the court erred in not allowing special interrogatories to the jury.

To prove a violation of the constitutional right under the Fourth or Fourteenth Amendments through judicial deception, a plaintiff must prove '(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision.' " *David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022)  (quoting *Benavidez v. County of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021)). Plaintiffs "must make (1) a substantial showing of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred." *Butler v. Elie*, 281 F.3d 1014, 1024 (9th Cir.2002).

The Ninth Circuit has repeatedly emphasized that the Fourth Amendment does not require inclusion of all exculpatory evidence.  See *Beltran v. Santa Clara County*, 389 Fed.Appx. 679, 681 (9th Cir. 2010), and has upheld a warrant in the face of omitted evidence that contradicted statements in the warrant application.  "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997) quoting *US v. Colkley*, 899 F. 2d 297, 300 (4th Cir. 1990)(finding no obligation to disclose an inconsistency in the timing of a witness' statement).  See also *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir.1987) ("[t]he mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit."), and *Ewing v. City of Stockton,* 588 F. 3d 1218 (9th Cir. 2009) (omission of a non-identification by another witness "does not cast doubt on probable cause" when one

NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT

4889-6038-2924, v. 1

1   witness did identify plaintiffs)

2        In addition, ambiguous statements in a warrant do not, as a matter of law, amount to a false

3   statement or a misrepresentation. *Millender v. Cnty. of Los Angeles*, No. CV 05-2298 DDP RZX, 2007

4   WL 7589200, at *15 (C.D. Cal. Mar. 15, 2007), aff'd, 620 F.3d 1016 (9th Cir. 2010), rev'd sub nom.

5   *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012), and rev'd in part,

6   472 F. App'x 627 (9th Cir. 2012).

7        Plaintiff must establish that the defendant knew or should have known that any statements in the

8   affidavit supporting the warrant for were false. See *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct.

9   2674, 57 L.Ed.2d 667 (1978)  "In this variety of Fourth Amendment case, alleging judicial deception in

10  the procurement of a search warrant, we confront a situation where ... a state-of-mind question is

11  embedded in the underlying constitutional issue, i.e., whether or not in allegedly omitting relevant

12  information from his affidavit in support of the application for a search warrant," the Defendant acted

13  "with deliberate falsehood or reckless disregard for the truth." *Butler*, 281 F. 3d at 1025-26.

14       Defendant submits that Defendant Cobbs is entitled to a new trial on the judicial deception claim

15  because the jury failed to follow the law and evidence as to whether she knew or should have known

16  that any statements in the affidavit supporting the warrant for were false, or that there were omissions

17  that were material to a finding of probable cause by the issuing judge.   Indeed, the warrant largely

18  includes conclusory summaries of logs and opinions and impressions by Defendant Cobbs which as a

19  matter of law cannot be false.   In addition, there was no evidence proffered that the issuing judge would

20  not have issued the warrant; to the contrary, the evidence established that in the subsequent proceedings,

21  where Judge Ameral concluded CPS had made a prima facie case that the petition met the criteria of

22  Welfare & Institutions Code § 300, and later adjudicated N.P. a ward of the court, where Judge Ameral

23  had before her a fuller factual and procedural record, including much of the logs which showed who

24  made the reports, the outcome such as whether referrals were unfounded, evaluated out etc. (Exhibits 1-

25  69), and sustained, all of which is uncontroverted evidence that supports that none of the claimed

26  "falsities" or "omissions" in  the warrant as claimed by Plaintiffs were material to a finding of probable

27  cause.    Accordingly, the jury erred in finding a Fourth and/or Fourth Amendment violation and thus

28  Defendant is entitled to a new trial.

NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT

4889-6038-2924, v. 1

1    Alternatively, the court erred in submitting to the jury the issue of materiality and probable
2    cause, and therefore Defendant is entitled to a new trial on those grounds for the Fourth and Fourteenth
3    Amendment claims as well.   Specifically, the law clearly states that the court must determine the
4    materiality of the allegedly false statements or omissions. *KRL v. Moore*, 384 F. 3d 1105, 1117 (9th Cir.
5    2004); see also *Butler v. Elle*, 281 F. 3d 1014, 1024 (9th Cir. 2002) ("Materiality is for the court, state of
6    mind is for the jury."). If an official submitted false statements, the court purges those statements and
7    determines whether what is left justifies issuance of the warrant. See, e.g., *Baldwin v. Placer County*,
8    418 F.3d 966, 971 (9th Cir.2005). If the official omitted facts required to prevent technically true
9    statements in the affidavit from being misleading, the court determines whether the affidavit, once
10   corrected and supplemented, establishes probable cause. See, e.g., *Liston v. County of Riverside*, 120
11   F.3d 965, 973-74 (9th Cir.1997).   In other words, both materiality and probable cause are legal issues for
12   the court and whether the fact or omission was in fact false or omitted with deliberate indifference the
13   issue for the jury.

14        Here, the court rejected the procedure that Plaintiffs be required to submit a list of alleged false
15   facts and omissions, from which the court determines whether they are material to the warrant and
16   should be submitted to the jury to determine if Plaintiffs have proven the alleged facts are false and
17   whether the omission is, in fact, an omission, and whether Plaintiffs have proven the necessary scienter
18   by the affiant.   The court did not require a list alleged false facts and omissions in the warrant, nor did
19   the court determine materiality, and thus the jury was not required to determine if Plaintiffs have proven
20   the alleged facts are false and whether the omission was submitted in the warrant with the necessary
21   scienter by the affiant.  Lastly, the court did not determine if, once corrected, the warrant was or was not
22   supported by probable cause.   These legal issues prejudiced Defendant and were errors in trial,
23   warranting a new trial on those claims.

24        Alternatively, the court erred in requiring a general verdict form and, before Defendant had even
25   submitted proposed verdict form, indicated during the Pretrial Scheduling conference that the court did
26   not allow special interrogatories to the jury.   This prejudiced Defendant in not being able to ask whether
27   the jury found deliberate indifference in terms of what facts or omissions were in the warrant (which
28   Plaintiffs were not required to delineate to the jury).

NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT
4889-6038-2924, v. 1

1    **B.**    **Defendant Cobbs is entitled to a new trial on the Fourteenth Amendment claim because the**

2    **jury failed to follow the law and/or the evidence**

3        Defendant Cobbs is entitled to a new trial on the Fourteenth Amendment claim because the jury

4    failed to follow the law and/or the evidence. To establish a familial association claim under the

5    Fourteenth Amendment, Plaintiffs must show that (1) the liberty interest in having a relationship free

6    from unwarranted state interference was violated; and (2) that the violation was committed though

7    official conduct that "shocks the conscience." *Est. of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d

8    1162, 1176 (E.D. Cal. 2019).

9        Otherwise, "'[r]ecovery for a violation of the right to familial association is generally contingent

10   on the existence of an underlying constitutional violation.' " *A.B. v. Cnty. of San Diego*, No. 18cv1541-

11   MMA-LL, 2020 WL 5847551, 2020 U.S. Dist. LEXIS 182507 (S.D. Cal. Oct. 1, 2020) (quoting

12   *Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016)); see also

13   *Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004); *J.P. ex rel. Balderas v. City of Porterville*, 801

14   F.Supp.2d 965, 988 (E.D. Cal. 2011) ("Where a claim for interference with familial relationships is

15   integrally predicated upon, or entwined with, other conduct that is alleged to be unconstitutional, a

16   finding that the other conduct was constitutional generally will preclude recovery for interference with

17   familial relationship."). Insofar as Defendant submits Defendant is entitled to a new trial on the judicial

18   deception claim, she is entitled to a new trial on the Fourteenth Amendment claim fails as well.

19       In addition, Defendant submits the jury failed to apply the law and/or the evidence in terms of

20   whether Defendant acted with conscience shocking behavior in obtaining the warrant. A social worker's

21   conduct shocks the conscience when he or she acts with "deliberate indifference," which means

22   "conscious or reckless disregard of the consequences of one's acts or omissions." *Gantt v. City of Los*

23   *Angeles*, 717 F.3d 702, 708 (9th Cir. 2013). "To violate due process, state officials must act with such

24   deliberate indifference to the liberty interest that their actions 'shock the conscience. ' Conduct that

25   'shocks the conscience' is deliberate indifference to a known or so obvious as to imply knowledge of,

26   danger." *Cox v. Dep't of Soc. & Health Servs.*, 913 F .3d 831 , 83 7 (9th Cir. 2019) Negligent conduct

27   does not shock the conscience. *Woodrum v. Woodward Cnty*. , 866 F.2d 1121 , 1126 (9th Cir. 1989).

28   Rather, "[t]o amount to a violation of substantive due process, however, the harmful conduct must

1  'shock the conscience' or offend the community's sense of fair play and decency.'" *Rosenbaum v.*
2  *Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (alterations omitted) (quoting *Rochin v. California*,
3  14 342 U.S. 165, 172-73 (1952) (conduct must violate the "decencies of civilized conduct").   Where
4  conduct is based on deliberate indifference, plaintiff must establish (1) a showing of an objectively
5  substantial risk of harm; and (2) a showing that the officials were subjectively aware of facts from which
6  an inference could be drawn that a substantial risk of serious harm existed and (a) the official actually
7  drew that inference or (b) that a reasonable official would have been compelled to draw the inference." :
8  (1) "an objectively substantial risk of harm"; and (2) that a reasonable official would have been
9  compelled to draw an inference "that a substantial risk of serious harm existed." *Henry A. v. Willden,*
10 678 F.3d 991 , 1000-1001 (9th Cir. 2012); See also *Smith v. Brenoettsy,* 158 F.3d 908,912 (5th Cir.1998)
11 "the official must be both aware of facts from which the inference could be drawn that a substantial risk
12 of serious harm exists, and he must also draw the inference." (citation omitted).

13      Here, Plaintiffs did not elicit testimony from Defendant Cobbs, nor was there sufficient evidence
14 of, that she was aware that she was somehow materially omitting or falsified facts in the warrant, and in
15 fact would have been compelled to draw such an inference by submitting the warrant as drafted to meet
16 the deliberate indifference standard.   Accordingly, Defendant submits the jury failed to apply the
17 evidence and/or misapplied the law in light of said evidence.   Accordingly, Defendant is entitled to a
18 new trial on the Fourteenth Amendment claim.

19 **C.     Defendant is entitled to a new trial on the false imprisonment claim insofar as the jury**
20 **misapplied the and/or verdict was contrary to the evidence**

21      "Under California law, the elements of false imprisonment are: (1) nonconsensual, intentional
22 confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however
23 brief. See *Bocanegra v. Jakubowski*, 241 Cal.App.4th 848, 855 (2015)." (*Ulikhanova v. County of Los*
24 *Angele*s (C.D. Cal., Dec. 14, 2018, No. CV 17-9193 FMO (EX)) 2018 WL 10111334, at *7.)   Plaintiff
25 was also required to prove the elements of California Gov. Code, § 820.21, i.e. that Defendant
26 committed perjury, fabricated of evidence, failed to disclose known exculpatory evidence, or obtained
27 testimony by duress, fraud, or undue influence, all with malice, defined as "conduct that is intended by
28 the person described in subdivision (a) to cause injury to the plaintiff or despicable conduct that is

NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT
4889-6038-2924, v. 1

1  carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights

2  or safety of others." (Gov. Code, § 820.21, subd. (b).)

3        Here, Defendant submits the jury erred in applying this standard in light of the evidence and/or the

4  evidence was not sufficient for a finding of malice.  Rather, Defendant submits she relied on information in

5  the service logs provided by other social workers and her own impression and evaluations in the language

6  of the warrant, and Plaintiffs did not elicit testimony from Defendant Cobbs that she was somehow

7  materially omitted exculpatory information from the warrant or falsified facts in the warrant, and that she

8  did so with malice.  Accordingly, Defendant submits she entitled to a new trial on the claim.

9  **D.**  **Defendant is entitled to a new trial and/or to have the judgment amended as to any claim**

10  **for past or future non-economic losses for Plaintiff N.P.**

11        The amount of damages awarded must be supported by substantial evidence.  *Freitag v. Ayers*,

12  468 F.3d 528, 537; *Major v. Western Home Ins. Co.,* 169 Cal.App.4th 1197, 1208 (2009).  Damages

13  may be reduced if they are unsupported by the evidence or so excessive as to "shock the conscience" of

14  the trial court.  *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 2003); *Herrington v. County of Sonoma*,

15  12 F.3d 901, 904 (1993).  In making the determination on whether damages are excessive, the trial court

16  must focus on the qualitative harm suffered by the plaintiff. "The severity or pervasiveness of the

17  conduct is relevant insofar as it provides probative evidence from which a jury may infer the nature and

18  degree of emotional injury suffered, but direct evidence of the injury is still the primary proof."  *Velez v.*

19  *Roche*, 335 F.Supp. 2n 1022, 1038 (N.D. Cal. 2004).

20        Defendants submit there was no evidence of past or future non-economic losses for Plaintiff

21  N.P., yet the jury awarded an arbitrary $100,000 for past non-economic loss and $250,000 future non-

22  economic loss to Plaintiff N.P.  Plaintiff N.P. did not testify and thus was absolutely no evidence he had

23  suffered any physical or emotional pain, nor any "fright, nervousness, grief, anxiety, worry,

24  mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal."  See

25  *Capelouto v. Kaiser Found. Hosps*., 7 Cal. 3d 889, 892-93 (1972) (detailing pain and suffering).  At

26  most, the jury heard testimony that N.P. cried while still under 1 year of age during visitations with

27  Plaintiff Beard soon after N.P. was taken into custody, which is insufficient to establish past or future

28  non-economic losses, nor any sort of anxiety, mental disturbance or other non-economic loss.

NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT

4889-6038-2924, v. 1

1    Accordingly, the award of $100,000 for past non-economic loss and $250,000 future non-economic loss

2    is wholly unsubstantiated and based on mere speculation.  Thus, either Defendant is entitled to new trial

3    on that issue and/or the judgment should be amended to subtract $350,000 from the judgment.

4    **E.    It was prejudicial error to not instruct on limitation of damages**

5           "An error in instructing the jury in a civil case requires reversal unless the error is more probably

6    than not harmless."  *Caballero v. City of Concord*, 956 F.2d 204, 206–07 (9th Cir. 1992) citing *Coursen v.*

7    *A.H. Robins Co., Inc.*, 764 F.2d 1329, 1337 (9th Cir.1985). "While this standard of review is less stringent

8    than review for harmless error in a criminal case, it is more stringent than review for sufficiency of the

9    evidence, in which we view the evidence in the light most favorable to the prevailing party." Id citing

10   United States v. Adler, 879 F.2d 491, 495 (9th Cir.1988).

11          Here, the court declined to instruct that where a subsequent juvenile court order finding detention

12   proper or jurisdiction cuts off damages caused by the social workers.  *Watson v. City of San Jose*, 800 F.3d

13   1135, 1139 (9th Cir. 2015).  In *Watson*, the plaintiffs asserted constitutional violations arising from the

14   removal of minor children without a required warrant or exigent circumstances. See *Watson*, 800 F.3d at

15   1137-38. The children were removed on June 29, 2005 and June 30, 2005, and on July 5, 2005, the

16   juvenile court made a determination that the children should remain detained for their welfare. See id. at

17   1137.  The Ninth Circuit upheld the district court's decision to grant a motion for new trial on damages as

18   against warrantless removal by officers, which failed to account for in *Carey v. Piphus*, 435 U.S. 247

19   (1948), which held subsequent process creates a causal disconnect.    The Ninth Circuit approved jury

20   instruction language that stated "damages may not be awarded against the officers for the actions taken by

21   the Department of Family and Child Services in connection with the petition and for the actions taken by

22   the Juvenile Dependency Court which made an initial order on July 5, 2005, based upon the petition that

23   the children were to be detained at the children's center pending further juvenile dependency court

24   proceedings."  See also *Williams v. Cnty. of Monterey*, No. 19-CV-01811-BLF, 2021 WL 1966712, at *8

25   (N.D. Cal. May 17, 2021) ("The Court finds that Plaintiffs may not seek damages flowing from the

26   children's detention after May 14, 2018, the date of the Juvenile Court's detention order following

27   contested proceedings.").

28

NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT

4889-6038-2924, v. 1

1    Here, a limiting instruction should have been given, and it was prejudicial to Defendant Cobbs to

2    not given said instruction, as such improvidently increased the potential causal connection to the removal

3    and subsequent time before Plaintiff N.P. was returned to his parents as a basis for damages.  As such the

4    error was more probably harmful than harmless.   Accordingly, Defendant submits she entitled to a new

5    trial on all claims.

6    **F.      The compensatory awards were not supported.**

7    Where an award of damages is grossly excessive or monstrous, clearly not supported by the

8    evidence, or only based on speculation or guesswork, and gives rise to an inference that "passion and

9    prejudice" tainted the jury's finding of liability, a new trial may be in order. *Snyder v. Freight, Constr.,*

10   *Gen. Drivers, Warehousemen & Helpers, Local No. 287*, 175 F.3d 680, 689 (9th Cir.1999)(citing *Los*

11   *Angeles Memorial Coliseum Comm'n v. National Football League*, 791 F.2d 1356, 1360 (9th Cir.1986);

12   Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1387 (9th Cir.1987)). In reviewing a jury's

13   damages award, the court must uphold the jury's "finding of the amount of damages unless the amount is

14   'grossly excessive or monstrous,' clearly not supported by the evidence, or 'only based on speculation or

15   guesswork.' " *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1297 (9th Cir.1984) (quoting *Blanton v.*

16   *Mobil Oil Corp*., 721 F.2d 1207, 1216 (9th Cir.1983), cert. denied, 471 U.S. 1007 (1985).

17   Here, Defendant submits the arbitrary numbers in the verdict award after a few hours of

18   deliberation of $200,000 to Plaintiff Perez for past non-economic loss and $50,000 for future economic

19   loss, $300,000 to Plaintiff Beard for past non-economic loss and $20,000 for future economic loss

20   reasonably and $100,000 Plaintiff NP for past non-economic loss and $250,000 for future economic loss

21   logically imply the awards were based on guesswork or passion, particularly given the lack of evidence of

22   damages to Plaintiff N.P.   In other words, that the jury awarded $350,000 to then 9 month old that was

23   without any evidence taints the remainder of the award that such was made on passion or prejudice.

24   Accordingly, Defendant is entitled to a new trial.

25   **G.      Defendant is entitled to new trial and/or the judgment should be modified as punitive**

26   **damages were excessive.**

27   A "jury may award punitive damages under Section 1983 either when a defendant's conduct was

28   driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional

---

11

NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT

4889-6038-2924, v. 1

1    rights of others." *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir.1991). An award that is "grossly

2    excessive" violates the Due Process Clause because it denies individuals fair notice of the penalty to which

3    his conduct could expose her. *BMW v. Gore*, 517 U.S. 559, 5746 (1996). To determine the

4    constitutionality of an award of punitive damages, a court must refer to the three *BMW* guideposts: (1) the

5    degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential

6    harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive

7    damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Bains*

8    *LLC v. Arco Prods. Co.*, 405 F.3d 764, 775 (9th Cir.2005) (citing *BMW*, 517 U.S. at 574–75, 116 S.Ct.

9    1589).    Where based on a state claim the California Supreme Court held that an award of punitive

10    damages cannot be properly reviewed unless the record contains evidence of a defendant's financial worth.

11    *Adams v. Murakami*, 54 Cal.3d 105 (1991).

12    Here, Plaintiffs sought punitive damages under both state and federal law.  Because the award was

13    based in part on state law, the *Murakami* court required Plaintiffs to present evidence of defendant's

14    financial worth.  They did not.  Instead, Defendant Cobbs testified she was no longer employed with the

15    County of Stanislaus but is now a teacher in Texas, but no financial worth was solicited.  Accordingly, the

16    punitive damages award was without substantial evidence and must be reduced or Defendant is entitled to

17    a new trial.

18    Otherwise, Defendant submits because Plaintiffs were not required to set forth what material facts

19    or omissions were in the warrant for the jury to determine Defendant's scienter, there is now insufficient

20    evidence of what facts there may have been to evaluate any degree of reprehensibility.   In other words,

21    there is a significant different between a perjured fact and omitted fact done with deliberate indifference.

22    Without any special interrogatories, nor any guidance to the jury whether certain facts were material or not

23    to any finding of probable cause, Defendant is left without the opportunity to argue which fact or omission

24    could have been the basis for malice, nor can any degree of reprehensibility be assigned, save only in a

25    generally broad way that could apply to any judicial deception claim.   In addition, Defendant submits it

26    could not find any comparable case where punitive damages were awarded against a social worker for a

27    judicial deception or familial association claim.  In light of a dearth of comparable cases, Defendant

28    submits that even a 1:1 ratio is excessive, given that Defendant is no longer employed with the County and

1    now works as a teacher, and the damages were all non-economic and no physical damages.   The

2    deterrence of repetition effect is a nullity given her changed circumstances.

3        In addition, because the court did not instruct the jury on limitation of damages given the

4    subsequent juvenile court orders, a new trial with respect to punitive damages awards is warranted because

5    it could have resulted from passion and prejudice of the jury connected to its misunderstanding of the

6    injuries for which Defendant could properly be held responsible. *Watson v. City of San Jose*, 800 F.3d

7    1135, 1142–43 (9th Cir. 2015) citing *Watec Co. v. Liu*, 403 F.3d 645, 655 (9th Cir.2005) (district court

8    may vacate a judgment and order a new trial if excessive damages could have resulted from passion and

9    prejudice). Because one of the factors used to examine the excessiveness of a punitive damages award is

10   the amount of compensatory damages awarded, a flawed compensatory damages award justifies a retrial

11   for punitive damages.

12                                          Respectfully submitted,

13   Dated:  June 26, 2024                  PORTER SCOTT
                                            A PROFESSIONAL CORPORATION
14

15                                          By /s/ John R. Whitefleet
                                                John R. Whitefleet
16                                              Attorneys for Defendants

17

18

19

20

21

22

23

24

25

26

27

28

---

13

NOTICE OF MOTION AND MOTION FOR NEW TRIAL; P&As IN SUPPORT

4889-6038-2924, v. 1

Case 1:21-cv-00841-JAM-CSK   Document 176   Filed 06/26/24   Page 1 of 15

1

**PORTER | SCOTT**

2  A PROFESSIONAL CORPORATION
   John R. Whitefleet, SBN 213301
3  jwhitefleet@porterscott.com
   2180 Harvard Street, Suite 500
4  Sacramento, California 95815
   TEL: 916.929.1481
5  FAX: 916.927.3706

6  Attorneys for Defendants COUNTY OF STANISLAUS; ERIC ANDERSON, APRIL COBBS;
   MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON,
7  SHYNELLE JONES, GLORIA SOLORIO

8

9                    **UNITED STATES DISTRICT COURT**

10                   **EASTERN DISTRICT OF CALIFORNIA**

11

12  SHANE BEARD, HILDA PEREZ, and N.P.,        Case No. 1:21-cv-00841-JAM-CSK
    a minor, by and through Guardian ad Litem
13  Donnie R. Cox,                             **NOTICE   AND    MOTION    FOR**
                                               **RENEWED  MOTION  FOR  JUDGMENT**
14                  Plaintiffs,                **AS   A   MATTER   OF   LAW;**
                                               **MEMORANDUM   OF   POINTS   AND**
15  v.                                         **AUTHORITIES IN SUPPORT**

16
    COUNTY OF STANISLAUS, a political          Date:   August 6, 2024
17  subdivision of the State of California, ERIC   Time:   1:00 p.m.
    ANDERSON, APRIL COBBS, MARIELA             Courtroom: 6, 14th Floor
18  GOMEZ,    DAVID    GRANADOS,
    STEPHANIE   HERRERA,    SHARI
19  JOHNSON, SHYNELLE JONES, GLORIA
    SOLORIO, and DOES 1 through 10,            Complaint Filed: 05/24/2021
20
21
                    Defendants.
22  _____/

23          TO PLAINTIFFS, THEIR ATTORNEYS OF RECORD, AND THE COURT:

24          NOTICE IS HEREBY GIVEN that at the above date and time, Defendant APRIL COBBS will

25  and hereby does move for an order for renewed motion for judgment as a matter of law pursuant to Rule

26  50(b)[1].

27          This Motion is based on this Notice of Motion, the attached Memorandum of Points and

28  Authorities, the pleadings, and records on file in this matter, and on any evidence, including oral and

---

[1] Defendants alternatively move for new trial under Rule 59, filed separately and concurrently herewith.

1

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

4872-4163-5020, v. 1

documentary evidence, that may be presented at the time of hearing on the motion.

## MEMORDANDUM OF POINTS AND AUTHORITIES

Defendant APRIL COBBS submit the submits the following points and authorities in support:

## I. INTRODUCTION

Defendant COBBS is entitled to judgment as a matter of law. Following a jury trial, the jury returned a verdict in favor of Plaintiffs as against Defendant COBBS.  In this Renewed Motion for Judgment as a Matter of Law, Defendant submit she is entitled to qualified immunity.  Alternatively, Defendants submit Plaintiff failed to prove by a preponderance of the evidence the critical elements required for violation of the Fourth or Fourteenth Amendments, or false imprisonment claim, as well as causation.  Lastly, Defendant submits Plaintiff N.P. failed to establish damages.

## II. STATEMENT OF FACTS

This case arises from the seizure of minor N.P., then 9 months old, pursuant to a protective custody warrant on July 19, 2019 obtained by Social Worker April Cobbs, from parents Hilda Perez and Shane Beard.

In 2019, Ms. Perez had six other children, the father of five is Horatio Garcia.  At the time, the children ranged from ages 5 to 21.  Shane Beard did not live with Ms. Perez.

On July 12, 2019, the County received a referral that the minor, A.S.Jr. age 5, reported that while at his mother's, another minor child, age 8, who identifies as transgendered, showers with him, and touched his penis. On that same day, Social Worker April Cobbs completed a home visit in Patterson to discuss the allegations with Ms. Perez and Mr. Beard.   Ms. Cobbs understood that Ms. Perez denied knowing any inappropriate touching the shower, but admitted an incident that occurred where AS and CG were playing a game called "sleepy sleepy" where one person plays asleep and the other touches the person in inappropriate places to get them to wake up.  A.S. told CG to touch his "ding a ling". During this investigation, CG appeared to admit to touching AS inappropriately while playing in a fort made out of blankets. It was Ms. Cobb's impression that Ms. Perez appeared to minimize the situation, and that Shane Beard had been aware but did not report it.

Past referrals to CPS, of which there was many, generally involved Ms. Perez mental health and/or her claims that her son AS had been sexually abused by his father, having reported same to the

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
4872-4163-5020, v. 1

1   police and subjecting AS to numerous interviews and medical appointments.  No allegation of abuse to
2   AS were substantiated.

3   On July 15, 2019, a TDM (Team Decision Meeting) was held.  Ms. Perez asked for an attorney
4   and "discovery" and when informed that the customary practice at TDMs is that they are informal and
5   that attorneys are not present, Plaintiffs walked out of the meeting.

6   The concern was due to N.P's young age, 9 months old at the time, he was unable to protect and
7   care for himself from risk of sexual abuse by the other children occurring in the home, and no plan of
8   adequate supervision.  On July 19, 2019, Cobbs drafted and obtained a warrant for Protective Custody
9   warrant, signed by Stanislaus Superior Court Judge John Freeland.  In the warrant, Defendant Cobbs
10  stated[2] the following:

> According to Case Management Systems (CMS) there have been 52 referrals and/or
> reports regarding concerns since 12-15-2011. The common themes in these episodes and
> reports has been sexual abuse to Ms. Perez's children or relatives, concerns pertaining to
> Ms. Perez's mental health, along with some self-verbalization by Ms. Perez that she
> wanted to kill herself. Since 2011, there have been no open cases in which to try to
> remedy some of the concerns being observed by reporters or Child Protective Services.
> Throughout the years, there appears to be times with a heavy flow of reports, then
> seemingly a vacuum in which there are no reports for a period of time and then followed
> by significant reporting.
>
> Since the beginning of the year in 2019 there has been six sexual abuse allegations
> pertaining to A[] allegedly being perpetrated on by his father during a visit. All of these
> reports and or referrals have not been confirmed by CPS and medical findings suggest, no
> physical signs of sexual abuse to the child, however the child allegedly has told Ms.
> Perez (mother) that these things are happening. Based on the amount of information
> received from hospital records from different providers, as far as Valley Children's
> Hospital located in Madera, it is difficult to tell how many times he has been taken to the
> doctor for alleged sexual abuse. What appears to be clear from the medical records is that
> although Ms. Perez lives in Patterson, she has taken her child to numerous other medical
> offices for exams and assessments of sexual abuse, only to be rebuffed that there is no
> sexual abuse evidence in regards to physical signs.
>
> Based on the differing locations and the numerous different doctors, it appears that Ms.
> Perez is simply unwilling to accept medical information that suggests that her son has not
> been abused sexually.
>
> On July 11th, I received another referral of many alluding to or concerned about sexual
> abuse. The concern listed in this referral allegation was that A[] (age 5) had again been
> exposed to another hospital visit. There again were no signs of sexual abuse physically

---

[2] Minors names and dates of birth have been redacted

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

4872-4163-5020, v. 1

speaking. At this juncture, this agency and Social Worker Cobbs became concerned that A[] is being forced into exams, questioning and ongoing sexual abuse assessments conducted by numerous people and facilities based on Ms. Perez's perception that he has been abused, despite information to the contrary. According to CMS, at this juncture, A[], minor, has also had two CAIRE's (Child abuse interviews, referrals and exams). The CAIRE center is a special entity specifically for sexual abuse victims. The victims are interviewed by a forensically sexual abuse interviewer and the environment is child friendly. The center is also audio and videotaped during these episodes. During A[]'s interviews, like the medical findings, there were no disclosures or information that supported sexual abuse.

At current time, I also investigated more referrals regarding Ms. Perez regarding sexual abuse allegations. During this time, it was alleged that A[] was being inappropriately touched by his brother W[]. During this investigation, SW Cobbs was made aware of an incident involving A[]being touched inappropriately by her older son C[] while playing a game in a fort made out of blankets. Ms. Perez appeared to minimize the allegations and made no efforts to make the appropriate reports regarding this allegation. Additionally, C[], a minor, admitted that he touched A[] inappropriately. He reported that A[] asked him to touch his "ding a ling" and he knew that it was wrong, but he continued to do so. Ms. Perez appeared to have inconsistent stories regarding the aforementioned incident and reported that she could not recall which child made the disclosures. It appears that Ms. Perez does not provide adequate supervision for her children as evidenced by her not knowing what her children were doing in this fort which allowed C[] and A[] to have inappropriate boundaries. Additionally, this Social Worker would like to note during this investigation Ms. Perez appeared to be in a gaze and spoke in a soft tone almost in a whisper. At the present time, this was the family's 9th CMS referral regarding sexual abuse allegations within the past seven months. Additionally, Ms. Perez's fiancée Shane Beard (DOB []), was aware of the agency's concerns but failed to be a protective parent, and has made no new plans to remedy the issue.

In an attempt to remedy some or most of the concerns pertaining to sexual abuse, and primarily to mother's seeming mental illness, services were offered in regards to Family Maintenance, however this was never cleared up or hashed out as to whether she would or would not engage. Due to limited engagement and difficulty in communicating with Ms. Perez, a TDM (Team Decision Meeting) was scheduled to engage with the family and to hopefully discuss the concerns of the referrals, including what appears to be mother's mental health limitations, sexual abuse, and concerns of lack of supervision. As we sat down to begin the meeting and the discussion, I observed Ms. Perez to be quiet and soft-spoken but when she began to speak, her affect was flat and her requests were confusing to this social worker. Before the meeting began, Ms. Perez stated that she wanted an "attorney and to have discovery." Community Services Agency explained to Ms. Perez that at this juncture, attorneys and discovery do not apply and that the meeting was simply a meeting in regards to the concerns and how the family and the agency can find common ground or an agreement to ameliorate the concerns and to also not include court action if possible. When asked any questions, Ms. Perez became robotic in her responses and stated at least 3 more times; I want an attorney and discovery." Unfortunately at this juncture my supervisor asked Ms. Perez if she wanted the meeting

4

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

or not and she did not want the meeting. Due to this, my supervisor advised Ms. Perez that the information that we have is concerning and a decision will have to be made by the agency without her input in regards to where her referral/case will need to go to be best addressed. Unfortunately, without family cooperation and engagement, voluntary services cannot be used to remedy the current issue.

Community Services Agency is requesting protective custody be taken of baby N[], aged 9 months, from the care of Ms. Perez. Protective Custody is being requested for baby N[] due to his young age, and inability to protect and care for himself from risk of ongoing, unmitigated sexual abuse occurring in the home. Ms. Perez has four other minors in the home but their respective birth fathers have filed for full custody mitigating safety concerns for our agency. Ms. Perez and Mr. Beard have not demonstrated a protective capacity for Community Services Agency at this time.

Based on my training and experience and the aforementioned information, I am concerned that in fact, the mother, despite no physical evidence to support her concerns, is subjecting A[] to numerous sexual abuse assessments and evaluations. CAIRE interviews also did not uncover supporting information of sexual abuse. Ms. Perez and Mr. Beard were unwilling to engage in voluntary services, although offered and explained numerous times, therefore a higher level of intervention is necessary. I am requesting that a protective custody order be signed for the physical removal of baby N[] aged 9 months from the care of Ms. Perez and Mr. Beard. I am concerned that baby N[] is at risk for emotional abuse, general neglect, and sexual abuse due to his vulnerable age and ambulatory capacity.

(Exhibit 70).

On July 19, 2019, SW Cobbs with the assistance of Law Enforcement executed the protective custody warrant.  On July 23, 2019, Social Worker Granados and Gomez filed a dependency petition. On July 29, 2019, the Stanislaus County Juvenile Court issued an order of detention for N.P.   On October 8, 2019, the Stanislaus County Juvenile Court adjudicated NP a ward of the court.  On the same day, NP is physically returned to the custody of Plaintiffs as part of a reunification plan.  On April 27, 2020, the Stanislaus County Juvenile Court terminated the dependency proceedings, returning legal custody to the Plaintiffs.

### III.  PROCEDURAL STATUS

During trial, Defendant moved under Rule 50(a) for judgment on the following issues:   that Defendant Cobbs is entitled to qualified immunity, that Plaintiff failed to prove by a preponderance of the evidence the critical elements required for violation of the Fourth or Fourteenth Amendments, or false imprisonment claim, as well as causation.   Lastly, Defendant submits Plaintiff N.P. failed to establish damages.  Plaintiff opposed.  The Court denied the motion on the basis of disputed issues of

1    fact.  The jury returned a verdict in favor of Plaintiffs.

2    **IV.  LEGAL STANDARD**

3       Rule 50(b) governs renewed motions for judgment as a matter of law made under Rule 50(a) and

4    provides that the court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a

5    new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). A Rule 50(b)

6    motion for JMOL is not treated as a separate motion; instead, it is a renewed Rule 50(a) motion.

7    *E.E.O.C. v. Go Daddy Software, Inc.,* 581 F.3d 951, 961 (9th Cir. 2009).  In reaching the merits of a

8    Rule 50 motion, the court must view the evidence in the light most favorable to the party in whose favor

9    the jury returned a verdict and must draw all reasonable inferences in favor of the non-moving party.

10    *First Nat. Mortgage Co. v. Federal Realty Inv. Trust*, 631 F.3d 1058, 1067 (9th Cir. 2011).  "A district

11    court can set aside a jury verdict and grant JMOL only if, under governing law, there can be but one

12    reasonable conclusion as to the verdict and only if there is no legally sufficient basis for a reasonable

13    jury to find for that party on that issue."  *Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d

14    1146, 1155 (9th Cir. 2010) (internal quotation marks omitted).

15    **V.  ARGUMENT**

16    **A.**     **Defendant Cobbs is entitled to Qualified Immunity**

17       Qualified immunity gives government officials breathing room to make reasonable but mistaken

18    judgments about open legal questions. When properly applied, it protects `all but the plainly

19    incompetent or those who knowingly violate the law.' *Ashcroft v. al-Kidd*, 563 U.S. 731,  743 (2011),

20    quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1985). Whether a right is clearly established turns on

21    whether it is "sufficiently definite that any reasonable official in the defendant's shoes would have

22    understood he was violating it." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir.

23    2019).The plaintiff bears the burden of showing that the rights allegedly violated were clearly

24    established. *Id*. at 1118.   The Supreme Court has cautioned not to define the law at such a high level of

25    generality in defining what is clearly established. See *City of Escondido, Cal. v. Emmonds*, 586 U.S. 38,

26    42 (2019)

27       The Ninth Circuit has repeatedly emphasized that the Fourth Amendment does not require

28    inclusion of all exculpatory evidence.  See *Beltran v. Santa Clara County*, 389 Fed.Appx. 679, 681 (9th

6

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

4872-4163-5020, v. 1

Cir. 2010), and has upheld a warrant in the face of omitted evidence that contradicted statements in the warrant application. "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997) quoting *US v. Colkley*, 899 F. 2d 297, 300 (4th Cir. 1990)(finding no obligation to disclose an inconsistency in the timing of a witness' statement).  See also *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir.1987) ("[t]he mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit."), and *Ewing v. City of Stockton,* 588 F. 3d 1218 (9th Cir. 2009) (omission of a non-identification by another witness "does not cast doubt on probable cause" when one witness did identify plaintiffs)

In addition, ambiguous statements in a warrant do not, as a matter of law, amount to a false statement or a misrepresentation. *Millender v. Cnty. of Los Angeles*, No. CV 05-2298 DDP RZX, 2007 WL 7589200, at *15 (C.D. Cal. Mar. 15, 2007), aff'd, 620 F.3d 1016 (9th Cir. 2010), rev'd sub nom. *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012), and rev'd in part, 472 F. App'x 627 (9th Cir. 2012).

In the context of a judicial deception claim, "[a] misrepresentation or omission is 'material' if a court 'would have declined to issue the order had [the defendant] been truthful.'" *O'Neel v. City of Folsom*, No. 2:21-CV-02403 WBS DB, 2024 WL 1676723, at *3 (E.D. Cal. Apr. 18, 2024) citing *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022) (quoting Greene, 588 F.3d at 1035) (quotation omitted). "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause," and "a claim of judicial deception [may not] be based on an officer's erroneous assumptions about the evidence he has received."   *O'Neel*, supra 2024 WL 1676723, at *3 (E.D. Cal. Apr. 18, 2024)  citing *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009).  Indeed, "CPS officials cannot be expected to include every fact that may or may not be potentially exculpatory in a protective custody warrant application. They are not required to provide a comprehensive recitation of every detail of the investigation up to that point. The warrant application need only include sufficient information to ensure that the facts presented are not "so wrenched from [their] context that the judicial officer will not comprehend how [they] fit[] into the larger puzzle." *O'Neel*, supra, 2024 WL 1676723, at *7 citing *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 799 (9th

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1  Cir. 2024). Officials need only provide an adequately complete representation of the "total story" so as
2  to not be "materially misleading." See id.

3  However, officials are generally entitled to rely on information obtained from fellow officials.  see
4  e.g. *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005), overruled on other grounds by United States v.
5  King, 687 F.3d 1189 (9th Cir. 2012) (law enforcement officers).  If an official submitted false statements,
6  the court purges those statements and determines whether what is left justifies issuance of the warrant.
7  See, e.g., *Baldwin v. Placer County*, 418 F.3d 966, 971 (9th Cir.2005). If the official omitted facts
8  required to prevent technically true statements in the affidavit from being misleading, the court
9  determines whether the affidavit, once corrected and supplemented, establishes probable cause. See,
10 e.g., *Liston v. County of Riverside*, 120 F.3d 965, 973-74 (9th Cir.1997).

11 Here, Defendants submit the uncontroverted evidence is that the large majority of the contents of
12 the warrant were based on information upon which Defendants relied in the Delivered service logs.
13 (Exhibits 1-69)  Plaintiff must establish that the defendant knew or should have known that any
14 statements in the affidavit supporting the warrant for were false. See *Franks v. Delaware*, 438 U.S. 154,
15 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)  "In this variety of Fourth Amendment case, alleging
16 judicial deception in the procurement of a search warrant, we confront a situation where ... a state-of-
17 mind question is embedded in the underlying constitutional issue, i.e., whether or not in allegedly
18 omitting relevant information from his affidavit in support of the application for a search warrant," the
19 Defendant acted "with deliberate falsehood or reckless disregard for the truth." *Butler*, 281 F. 3d at
20 1025-26.

21 There is no evidence submitted by Plaintiffs to cause Defendant to doubt the veracity of the
22 information in the such logs.   *Kastis v. Alvarado*, No. 1:18-cv-01325 DAD BAM, 2019 WL 3037912,
23 at *10 (E.D. Cal. July 11, 2019) ("An assertion is made with reckless disregard when 'viewing all the
24 evidence, the affiant must have entertained serious doubts as to the truth of his statements or had
25 obvious reasons to doubt the accuracy of the information he reported.'") (quoting *Wilson v. Russo*, 212
26 F.3d 781, 788 (3d Cir. 2000)).

27 The omission such as not including in the warrant that Plaintiff Beard did not live in the same
28 home as Plaintiff Perez is not material to the warrant.  In fact, it is the opposite; had the warrant included

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
4872-4163-5020, v. 1

1    such information would only tend to support that N.P. was at substantial risk – because the then-alleged

2    father was not the physical caretaker of N.P. and had no control over what happened inside Ms. Perez'

3    residence in which resided the other children over whom the alleged lack of supervision was being

4    asserted.   Likewise, an alleged omission in the warrant of who reported alleged sexual abuse is also not

5    material when it was uncontroverted that no doctor had actually found sexual abuse of A.S.

6         The statement of "inappropriate touching" is not false as a matter of law because it is based on

7    Defendant Cobb's assessment of the children's conduct.   Specifically not including the version of the

8    touching being on the belt is not material or false, particularly in light of C.P's admission he knew it was

9    inappropriate and the other service logs in which reporters claimed the inappropriate touching included

10   masturbation and touching of testicles.    In addition, the inappropriate touching was not the only basis

11   for the warrant.

12        Like the *O'Neel* case, supra, a conclusion that the warrant would have been issued in this case

13   regardless of the claimed falsities or omissions is bolstered by the subsequent proceedings, where Judge

14   Ameral concluded CPS had made a prima facie case that the petition met the criteria of Welfare &

15   Institutions Code § 300, and later adjudicated N.P. a ward of the court, where Judge Ameral had before her a

16   fuller factual and procedural record, including much of the logs which showed which referrals were

17   unfounded, evaluated out etc.  Lastly, there is no authority that exists that the warrant in these circumstances

18   would violate the Fourth or Fourteenth Amendments.  Accordingly, Defendant Cobbs is entitled to qualified

19   immunity.

20   **B.    Plaintiffs Failed to Establish by a Preponderance of the Evidence that Defendant Cobbs**

21   **Violated of the Fourth or Fourteenth Amendments.**

22        To prove a violation of the constitutional right under the Fourth or Fourteenth Amendments

23   through judicial deception, a plaintiff must prove '(1) a misrepresentation or omission (2) made

24   deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision.' "

25   *David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022)  (quoting *Benavidez v. County of San Diego*, 993

26   F.3d 1134, 1147 (9th Cir. 2021)). Plaintiffs "must make (1) a substantial showing of deliberate falsehood

27   or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action

28   would not have occurred." *Butler v. Elie*, 281 F.3d 1014, 1024 (9th Cir.2002).

9

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1    As noted above, the Ninth Circuit has repeatedly emphasized that the Fourth Amendment does

2    not require inclusion of all exculpatory evidence. See *Beltran v. Santa Clara County*, 389 Fed.Appx.

3    679, 681 (9th Cir. 2010), and has upheld a warrant in the face of omitted evidence that contradicted

4    statements in the warrant application. "An affiant cannot be expected to include in an affidavit every

5    piece of information gathered in the course of an investigation." *Lombardi v. City of El Cajon*, 117 F.3d

6    1117, 1124 (9th Cir. 1997) quoting *US v. Colkley*, 899 F. 2d 297, 300 (4th Cir. 1990)(finding no

7    obligation to disclose an inconsistency in the timing of a witness' statement). See also *United States v.*

8    *Burnes*, 816 F.2d 1354, 1358 (9th Cir.1987) ("[t]he mere fact that the affiant did not list every

9    conceivable conclusion does not taint the validity of the affidavit."), and *Ewing v. City of Stockton,* 588

10   F. 3d 1218 (9th Cir. 2009) (omission of a non-identification by another witness "does not cast doubt on

11   probable cause" when one witness did identify plaintiffs)

12   In addition, ambiguous statements in a warrant do not, as a matter of law, amount to a false

13   statement or a misrepresentation. *Millender v. Cnty. of Los Angeles*, No. CV 05-2298 DDP RZX, 2007

14   WL 7589200, at *15 (C.D. Cal. Mar. 15, 2007), aff'd, 620 F.3d 1016 (9th Cir. 2010), rev'd sub nom.

15   *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012), and rev'd in part,

16   472 F. App'x 627 (9th Cir. 2012).

17   Plaintiff must establish that the defendant knew or should have known that any statements in the

18   affidavit supporting the warrant for were false. See *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct.

19   2674, 57 L.Ed.2d 667 (1978) "In this variety of Fourth Amendment case, alleging judicial deception in

20   the procurement of a search warrant, we confront a situation where ... a state-of-mind question is

21   embedded in the underlying constitutional issue, i.e., whether or not in allegedly omitting relevant

22   information from his affidavit in support of the application for a search warrant," the Defendant acted

23   "with deliberate falsehood or reckless disregard for the truth." *Butler*, 281 F. 3d at 1025-26.

24   Defendant submits that Plaintiffs did not establish that Defendant Cobbs knew or should have

25   known that any statements in the affidavit supporting the warrant for were false, or that there were

26   omissions that were material to a finding of probable cause by the issuing judge. Indeed, the warrant

27   largely includes conclusory summaries of logs and opinions and impressions by Defendant Cobbs which

28   as a matter of law cannot be false. In addition, there was no evidence proffered that the issuing judge

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1    would not have issued the warrant; to the contrary, the evidence established that in the subsequent

2    proceedings, where Judge Ameral concluded CPS had made a prima facie case that the petition met the

3    criteria of Welfare & Institutions Code § 300, and later adjudicated N.P. a ward of the court, where Judge

4    Ameral had before her a fuller factual and procedural record, including much of the logs which showed who

5    made the reports, the outcome such as whether referrals were unfounded, evaluated out etc. (Exhibits 1-69),

6    and sustained, all of which is uncontroverted evidence that supports that none of the claimed "falsities" or

7    "omissions" in  the warrant as claimed by Plaintiffs were material to a finding of probable cause.

8    **C.    Plaintiffs separately failed to establish a Fourteenth Amendment violation**

9            To establish a familial association claim under the Fourteenth Amendment, Plaintiffs must show

10   that (1) the liberty interest in having a relationship free from unwarranted state interference was

11   violated; and (2) that the violation was committed though official conduct that "shocks the conscience."

12   *Est. of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1176 (E.D. Cal. 2019).

13           However, "parental rights do not spring full-blown from the biological connection between

14   parent and child." *Kirkpatrick*. at 789 (quoting *Lehr*, 463 U.S. at 260). Rather, "[i]t is when an unwed

15   father demonstrates a full commitment to the responsibilities of parenthood by coming forward to

16   participate in the rearing of his child, that his interest in personal contact with his child acquires

17   substantial [constitutional protection]. Until then, a person with only potential parental rights enjoys a

18   liberty interest in the companionship, care, and custody of his children that is unambiguously lesser in

19   magnitude." *Kirkpatrick*, 843 F.3d at 789 (internal quotations and citations omitted). "[T]he mere

20   existence of a biological link does not merit equivalent constitutional protection." *Lehr*, 463 U.S. at 261.

21   Thus, a person who brings a familial association claim requires a "more enduring" relationship "which

22   reflect[s] some assumption of parental responsibility." *Kirkpatrick*, 843 F.3d at 788–90 (holding father

23   could not challenge the seizure of a child because he had failed to establish his parental rights as of the

24   date of the seizure).  The Ninth Circuit has also held that recovery for a violation of the right to familial

25   association is generally contingent on the existence of an underlying constitutional violation. *Schwarz v.*

26   *Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016).

27           Here, Defendant submits Plaintiff Beard did not establish a full commitment to the

28   responsibilities of parenthood by coming forward to participate in the rearing of his child.  His testimony

---

11

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1    was he did not even tell his mother of N.P. existence until after his birth, did not live with the child,

2    never spent the night, never cared for him on his own prior to removal, and only visited after 9 or 10 pm.

3    after work.    Plaintiff's subjective connections notwithstanding, Defendant submits that this is not a full

4    commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his

5    child, as a matter of law in order to establish the Fourteenth Amendment rights.    For that reason,

6    Defendant is entitled to judgment as to the claim by Plaintiff Beard.

7        Otherwise, "'[r]ecovery for a violation of the right to familial association is generally contingent

8    on the existence of an underlying constitutional violation.' " *A.B. v. Cnty. of San Diego*, No. 18cv1541-

9    MMA-LL, 2020 WL 5847551, 2020 U.S. Dist. LEXIS 182507 (S.D. Cal. Oct. 1, 2020) (quoting

10    *Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016)); see also

11    *Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004); *J.P. ex rel. Balderas v. City of Porterville*, 801

12    F.Supp.2d 965, 988 (E.D. Cal. 2011) ("Where a claim for interference with familial relationships is

13    integrally predicated upon, or entwined with, other conduct that is alleged to be unconstitutional, a

14    finding that the other conduct was constitutional generally will preclude recovery for interference with

15    familial relationship.").    Insofar as Defendant submits Plaintiffs failed to establish their judicial

16    deception claim, the Fourteenth Amendment claim fails as well.

17        In addition, Defendant submits Plaintiffs did not establish conscience shocking behavior in

18    obtaining the warrant. A social worker's conduct shocks the conscience when he or she acts with

19    "deliberate indifference," which means "conscious or reckless disregard of the consequences of one's

20    acts or omissions." *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013). "To violate due

21    process, state officials must act with such deliberate indifference to the liberty interest that their actions

22    'shock the conscience. ' Conduct that 'shocks the conscience' is deliberate indifference to a known or so

23    obvious as to imply knowledge of, danger." *Cox v. Dep't of Soc. & Health Servs.*, 913 F .3d 831 , 83 7

24    (9th Cir. 2019) Negligent conduct does not shock the conscience. *Woodrum v. Woodward Cnty.* , 866

25    F.2d 1121 , 1126 (9th Cir. 1989). Rather, "[t]o amount to a violation of substantive due process,

26    however, the harmful conduct must 'shock the conscience' or offend the community's sense of fair play

27    and decency.'" *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (alterations omitted)

28    (quoting *Rochin v. California*, 14 342 U.S. 165, 172-73 (1952) (conduct must violate the "decencies of

---

12

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1    civilized conduct").    Where conduct is based on deliberate indifference, plaintiff must establish (1) a

2    showing of an objectively substantial risk of harm; and (2) a showing that the officials were subjectively

3    aware of facts from which an inference could be drawn that a substantial risk of serious harm existed

4    and (a) the official actually drew that inference or (b) that a reasonable official would have been

5    compelled to draw the inference." : (1) "an objectively substantial risk of harm"; and (2) that a

6    reasonable official would have been compelled to draw an inference "that a substantial risk of serious

7    harm existed." *Henry A. v. Willden,* 678 F.3d 991 , 1000-1001 (9th Cir. 2012); See also *Smith v.*

8    *Brenoettsy,* 158 F.3d 908,912 (5th Cir.1998) "the official must be both aware of facts from which the

9    inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

10   inference." (citation omitted).

11           Here, Plaintiffs did not elicit testimony from Defendant Cobbs, nor was there sufficient evidence

12   of, that she was aware that she was somehow materially omitting or falsified facts in the warrant, and in

13   fact would have been compelled to draw such an inference by submitting the warrant as drafted.

14   Accordingly, Defendant submits Plaintiffs failed to establish the Fourteenth Amendment claim fails as

15   well and is entitled to judgment.

16   **D.        Plaintiff N.P. did not establish false imprisonment and/or Defendant is entitled to immunity**

17           "Under California law, the elements of false imprisonment are: (1) nonconsensual, intentional

18   confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief.

19   See *Bocanegra v. Jakubowski*, 241 Cal.App.4th 848, 855 (2015)." (*Ulikhanova v. County of Los Angeles*

20   (C.D. Cal., Dec. 14, 2018, No. CV 17-9193 FMO (EX)) 2018 WL 10111334, at *7.) Under California

21   Government Code § 821.6, "[a] public employee is not liable for injury caused by his instituting or

22   prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts

23   maliciously or without probable cause." This provision entitles a social worker to "absolute immunity

24   from liability arising out of her actions in investigating child abuse allegations, initiating dependency

25   proceedings and removing a child from his custodial parent." *Jacqueline T. v. Alameda Cty. Child*

26   *Protective Servs.*, 155 Cal. App. 4th 456, 467 (2007), as modified (Oct. 4, 2007). "[I]mmunity under

27   section 821.6 covers not just the act of filing a criminal complaint, but also other prosecutorial or quasi-

28

1   prosecutorial functions such as weighing and presenting evidence when rendering a decision on whether to

2   proceed with litigation." *Id.*

3        Similarly, under California Government Code § 820.2, '[e]xcept as otherwise provided by statute,

4   a public employee is not liable for an injury resulting from his act or omission where the act or omission

5   was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.'"

6   (Ulikhanova supra) Section 820.2, which shields discretionary decisions by public employees, reads as

7   follows: "Under this provision, social workers are entitled to immunity for their child removal and

8   placement decisions in dependency proceedings." *Christina C. v. Cty. of Orange*, 220 Cal. App. 4th 1371,

9   1381 (2013), as modified (Oct. 29, 2013). "The immunity applies even to lousy decisions in which the

10  worker abuses his or her discretion, including decisions based on woefully inadequate information." Id.

11  (internal quotation marks and citation omitted). *Ortega v. Sacramento Cty. Dep't of Health & Human*

12  *Servs.,* 161 Cal. App. 4th 713, 733 (2008) (finding that § 820.2 immunity applied to claims based on social

13  workers' alleged failure to gather the pertinent facts before releasing child to her father, who then stabbed

14  child in the heart and lung).

15       The only way to avoid these immunities is by way of California Government Code § 820.21, which

16  abrogates immunity for perjury, fabrication of evidence, failure to disclose known exculpatory evidence,

17  or obtaining testimony by duress, fraud, or undue influence—if committed with malice. (Gov. Code, §

18  820.21, subd. (a).) Malice is defined as "conduct that is intended by the person described in subdivision (a)

19  to cause injury to the plaintiff or despicable conduct that is carried on by the person described in

20  subdivision (a) with a willful and conscious disregard of the rights or safety of others." (Gov. Code, §

21  820.21, subd. (b).) "Thus, not only must the act fall into one of the enumerated categories, but it must also

22  be committed with malice.  This is a high bar to clear…." *Gabrielle A. v. Cnty. of Orange*, 10 Cal. App.

23  5th 1268, 1285 (2017), as modified (Apr. 18, 2017)

24       Here, Defendant submits immunity under California Government Code §§ 820.2 or 821.6 applies

25  to this removal in accordance with the above authorities.  In addition, Defendant submits Plaintiff N.P. did

26  not establish that Defendant committed perjury, fabricated evidence, failed to disclose known exculpatory

27  evidence, or obtained testimony by duress, fraud, or undue influence, and that such was done with malice

28  in order to overcome the immunity in California Government Code § 820.21, subd.   Rather, Defendant

---

14

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1  submits she relied on information in the service logs provided by other social workers and her own

2  impression and evaluations in the language of the warrant.   Accordingly, Defendant submits Plaintiffs

3  failed to establish this claim and is entitled to judgment.

4  **E.   Plaintiff N.P. failed to establish damages/causation**

5        For all claims, Plaintiff N.P. was required to establish that the action of Defendant caused him

6  actual damages.   Defendant submits that the only evidence presented was Mr. Beard's testimony that

7  N.P. cried a bit when he left the room during visits.   This is insufficient to establish damages to the

8  child caused by the removal.   At best, the inference is N.P. was anxious because Mr. Beard left the

9  room in the immediate circumstance.   Accordingly, Defendant submits Plaintiff N.P. failed to establish

10  actual damages or that Defendant Cobbs caused same.   Accordingly, Defendant submits Plaintiff N.P.

11  failed to establish all claim against her and is entitled to judgment on all claims.

12

13                              **VI.  CONCLUSION**

14        For each of the foregoing reasons, Defendant COBBS request entry of judgment as a matter of

15  law.

16                                    Respectfully submitted,

17  Dated:  June 26, 2024            PORTER SCOTT
                                     A PROFESSIONAL CORPORATION
18

19                                   By /s/ John R. Whitefleet
                                        John R. Whitefleet
20                                      Attorneys for Defendants

21

22

23

24

25

26

27

28

NOTICE OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
4872-4163-5020, v. 1

SER-0571

**P O R T E R | S C O T T**

A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
jwhitefleet@porterscott.com
2180 Harvard Street, Suite 500
Sacramento, California 95815
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants COUNTY OF STANISLAUS; ERIC ANDERSON, APRIL COBBS; MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES, GLORIA SOLORIO

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE BEARD, HILDA PEREZ, and N.P., a minor, by and through Guardian ad Litem Donnie R. Cox,<br><br>       Plaintiffs,<br><br>v.<br><br>COUNTY OF STANISLAUS, a political subdivision of the State of California, ERIC ANDERSON, APRIL COBBS, MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES, GLORIA SOLORIO, and DOES 1 through 10,<br><br>       Defendants.<br>_____/ | Case No. 1:21-cv-00841-JAM-CSK<br><br>**NOTICE OF MOTION AND MOTION TO CORRECT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  July 30, 2024<br>Time:  1:00 p.m.<br>Courtroom:  6, 14th Floor<br><br>Complaint Filed:  05/24/2021 |

TO PLAINTIFFS, THEIR ATTORNEYS OF RECORD, AND THE COURT:

NOTICE IS HEREBY GIVEN that pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, Defendants COUNTY OF STANISLAUS, ERIC ANDERSON, MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES, GLORIA SOLORIO will, and hereby do, move for an order correcting the judgment (ECF No. 169), to reflect these moving defendants dismissals.

NOTICE OF MOTION AND MOTION TO CORRECT JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT
4882-0838-6247, v. 1                                                                          SER-0572

1       This Motion is based on this Notice of Motion, the attached Memorandum of Points and

2   Authorities, the pleadings, and records on file in this matter, and on any evidence, including oral and

3   documentary evidence, that may be presented at the time of hearing on the motion.

4   <u>**MEMORDANDUM OF POINTS AND AUTHORITIES**</u>

5       Defendants COUNTY OF STANISLAUS, ERIC ANDERSON, MARIELA GOMEZ, DAVID

6   GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES, GLORIA

7   SOLORIO submit that this Court has the power to amend the judgment (ECF No. 169), under Rule

8   60(a) of the Federal Rules of Civil Procedure.  Rule 60(a) allows the Court to correct a "clerical mistake

9   or a mistake arising from oversight or omission." Fed. R. Civ. P. 60(a). See e.g. *Weeks v. Jones*, 100

10  F.3d 124, 128 (11th Cir. 1996).

11      These moving Defendants submit that they were dismissed as defendants during trial as reflected

12  at the Docket Entries 153 and 158, either voluntarily by Plaintiff or by way of Rule 50(a) motion.

13  Accordingly, these Defendants are entitled to have judgment entered in their favor.   Therefore, these

14  Defendants respectfully request that the Judgment should be corrected to reflect that "Pursuant to the

15  dismissal of these parties during trial, Judgment be entered against Plaintiffs and in favor of Defendants

16  COUNTY OF STANISLAUS, ERIC ANDERSON, MARIELA GOMEZ, DAVID GRANADOS,

17  STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES, and GLORIA SOLORIO."

18

19                     Respectfully submitted,

20  Dated:  June 12, 2024          PORTER SCOTT

21                     A PROFESSIONAL CORPORATION

22                   By <u>/s/ John R. Whitefleet</u>

23                     John R. Whitefleet

24                     Attorneys for Defendants

25

26

27

28

NOTICE OF MOTION AND MOTION TO CORRECT JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT

4882-0838-6247, v. 1                                                         SER-0573

**P O R T E R | S C O T T**

A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
jwhitefleet@porterscott.com
2180 Harvard Street, Suite 500
Sacramento, California 95815
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants COUNTY OF STANISLAUS; ERIC ANDERSON, APRIL COBBS;
MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON,
SHYNELLE JONES, GLORIA SOLORIO

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE BEARD, HILDA PEREZ, and N.P., a minor, by and through Guardian ad Litem Donnie R. Cox, | Case No. 1:21-cv-00841-JAM=KJN |
| Plaintiffs, | **DEFENDANTS SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR JUDGMENT PURSUANT TO RULE 50(a) ON QUALIFIED IMMUNITY AND LIMITATION OF DAMAGES** |
| v. | |
| COUNTY OF STANISLAUS, a political subdivision of the State of California, ERIC ANDERSON, APRIL COBBS, MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES, GLORIO SOLORIO, and DOES 1 through 10, | |
| Defendants. | |
| _____/ | |

Defendants ERIC ANDERSON and APRIL COBBS[1] hereby submit the following supplemental brief.

---

[1] All other defendants have been dismissed.  See ECF No. 153

1

1

**A.      Defendant ANDERSON should be dismissed[2]**

2

3      The Ninth Circuit has held that recovery for a violation of the right to familial association is

4 generally contingent on the existence of an underlying constitutional violation. *Schwarz v. Lassen Cnty.*

5 *ex rel. Lassen Cnty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016).   Insofar as the court has dismissed

6 Defendant Anderson from the underlying Fourth Amendment claim, there is no underlying violation to

7 support the familial association claim.

**B.      Qualified Immunity applies to Fourth and Fourteenth Amendment claims**

8      Qualified immunity gives government officials breathing room to make reasonable but mistaken

9 judgments about open legal questions. When properly applied, it protects `all but the plainly

10 incompetent or those who knowingly violate the law.' *Ashcroft v. al-Kidd*, 563 U.S. 731,  743 (2011),

11 quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1985). Whether a right is clearly established turns on

12 whether it is "sufficiently definite that any reasonable official in the defendant's shoes would have

13 understood he was violating it." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir.

14 2019).The plaintiff bears the burden of showing that the rights allegedly violated were clearly

15 established. *Id*. at 1118.   The Supreme Court has cautioned not to define the law at such a high level of

16 generality in defining what is clearly established. See *City of Escondido, Cal. v. Emmonds*, 586 U.S. 38,

17 42 (2019)

18      The Ninth Circuit has repeatedly emphasized that the Fourth Amendment does not require

19 inclusion of all exculpatory evidence.  See *Beltran v. Santa Clara County*, 389 Fed.Appx. 679, 681 (9th

20 Cir. 2010), and has upheld a warrant in the face of omitted evidence that contradicted statements in the

21 warrant application.  "An affiant cannot be expected to include in an affidavit every piece of information

22 gathered in the course of an investigation." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir.

23 1997) quoting *US v. Colkley*, 899 F. 2d 297, 300 (4th Cir. 1990)(finding no obligation to disclose an

24 inconsistency in the timing of a witness' statement).  See also *United States v. Burnes*, 816 F.2d 1354,

25 1358 (9th Cir.1987) ("[t]he mere fact that the affiant did not list every conceivable conclusion does not

26 taint the validity of the affidavit."), and *Ewing v. City of Stockton,* 588 F. 3d 1218 (9th Cir. 2009)

27 (omission of a non-identification by another witness "does not cast doubt on probable cause" when one

28

---

[2] In reviewing the notes from the court proceeding, the undersigned realized he had overlooked this argument and thus now brings it to the court's attention.

DEFENDANTS SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR JUDGMENT PURSUANT TO RULE 50(a)
ON QUALIFIED IMMUNITY AND LIMITATION OF DAMAGES

4868-2546-9882, v. 1                                                        SER-0575

1  witness did identify plaintiffs)

2       In addition, ambiguous statements in a warrant do not, as a matter of law, amount to a false

3  statement or a misrepresentation.  *Millender v. Cnty. of Los Angeles*, No. CV 05-2298 DDP RZX, 2007

4  WL 7589200, at *15 (C.D. Cal. Mar. 15, 2007), aff'd, 620 F.3d 1016 (9th Cir. 2010), rev'd sub nom.

5  *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012), and rev'd in part,

6  472 F. App'x 627 (9th Cir. 2012).

7       **1.**    **The court determines if the alleged false statement or omission is material**

8       Review by the court of a warrant is differential, upholding it if the issuing judge "had a

9  `substantial basis' for concluding [that] probable cause existed based on the totality of circumstances."

10  *Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir.1994) (quoting United States v.

11  Bertrand, 926 F.2d 838 (9th Cir.1991)).  See also *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th

12  Cir.2002) ("Probable cause requires only a fair probability or substantial chance" of the suspected

13  activity). Thus, a judge's "determination that an affidavit provided probable cause to issue a search

14  warrant will be upheld unless clearly erroneous." *United States v. Alvarez*, 358 F.3d 1194, 1203 (9[th]

15  Cir.2004).

16       The court must determine the materiality of the allegedly false statements or omissions. *KRL v.*

17  *Moore*, 384 F. 3d 1105, 1117 (9th Cir. 2004); see also *Butler v. Elle*, 281 F. 3d 1014, 1024 (9th Cir. 2002)

18  ("Materiality is for the court, state of mind is for the jury."). In the context of a judicial deception claim,

19  "[a] misrepresentation or omission is 'material' if a court 'would have declined to issue the order had

20  [the defendant] been truthful.'" *O'Neel v. City of Folsom*, No. 2:21-CV-02403 WBS DB, 2024 WL

21  1676723, at *3 (E.D. Cal. Apr. 18, 2024) citing *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022)

22  (quoting Greene, 588 F.3d at 1035) (quotation omitted). "Whether a false statement was 'material' to the

23  finding of probable cause is a question of law for the reviewing court." *Greene v. Camreta*, 588 F.3d

24  1011, 1034–35 (9th Cir. 2009), vacated in part on other grounds, 661 F.3d 1201 (9th Cir. 2011); see also

25  *Chism v. Washington State*, 661 F.3d 380, 389 (9th Cir. 2011) (materiality is a "purely legal question").

26       "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate

27  an affidavit which on its face establishes probable cause," and "a claim of judicial deception [may not]

28  be based on an officer's erroneous assumptions about the evidence he has received."   O'Neel, supra

DEFENDANTS SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR JUDGMENT PURSUANT TO RULE 50(a)
ON QUALIFIED IMMUNITY AND LIMITATION OF DAMAGES

4868-2546-9882, v. 1

Case 1:21-cv-00841-JAM-CSK   Document 155   Filed 05/26/24   Page 4 of 7

1  2024 WL 1676723, at *3 (E.D. Cal. Apr. 18, 2024)  citing Ewing v. City of Stockton, 588 F.3d 1218,
2  1224 (9th Cir. 2009).  Indeed, "CPS officials cannot be expected to include every fact that may or may
3  not be potentially exculpatory in a protective custody warrant application. They are not required to
4  provide a comprehensive recitation of every detail of the investigation up to that point. The warrant
5  application need only include sufficient information to ensure that the facts presented are not "so
6  wrenched from [their] context that the judicial officer will not comprehend how [they] fit[] into the
7  larger puzzle." *O'Neel*, supra, 2024 WL 1676723, at *7 citing *Scanlon v. Cnty. of Los Angeles*, 92 F.4th
8  781, 799 (9th Cir. 2024). Officials need only provide an adequately complete representation of the "total
9  story" so as to not be "materially misleading." See id.

10  However, officials are generally entitled to rely on information obtained from fellow officials.  see
11  e.g. *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005), overruled on other grounds by United States v.
12  King, 687 F.3d 1189 (9th Cir. 2012) (law enforcement officers).  If an official submitted false statements,
13  the court purges those statements and determines whether what is left justifies issuance of the warrant.
14  See, e.g., *Baldwin v. Placer County*, 418 F.3d 966, 971 (9th Cir.2005). If the official omitted facts
15  required to prevent technically true statements in the affidavit from being misleading, the court
16  determines whether the affidavit, once corrected and supplemented, establishes probable cause. See,
17  e.g., *Liston v. County of Riverside*, 120 F.3d 965, 973-74 (9th Cir.1997).

18  Here, Defendants submit the uncontroverted evidence is that the large majority of the contents of
19  the warrant were based on information upon which Defendants relied in the Delivered service logs.
20  Plaintiff must establish that the defendant knew or should have known that any statements in the
21  affidavit supporting the warrant for were false. See *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct.
22  2674, 57 L.Ed.2d 667 (1978)  "In this variety of Fourth Amendment case, alleging judicial deception in
23  the procurement of a search warrant, we confront a situation where ... a state-of-mind question is
24  embedded in the underlying constitutional issue, i.e., whether or not in allegedly omitting relevant
25  information from his affidavit in support of the application for a search warrant," the Defendant acted
26  "with deliberate falsehood or reckless disregard for the truth." *Butler*, 281 F. 3d at 1025-26.

27  There is no evidence submitted by Plaintiffs to cause Defendants to doubt the veracity of the
28  information in the such logs.   *Kastis v. Alvarado*, No. 1:18-cv-01325 DAD BAM, 2019 WL 3037912,

1   at *10 (E.D. Cal. July 11, 2019) ("An assertion is made with reckless disregard when 'viewing all the

2   evidence, the affiant must have entertained serious doubts as to the truth of his statements or had

3   obvious reasons to doubt the accuracy of the information he reported.'") (quoting *Wilson v. Russo*, 212

4   F.3d 781, 788 (3d Cir. 2000)).

5         The omission such as not including in the warrant that Plaintiff Beard did not live in the same

6   home as Plaintiff Perez is not material to the warrant.  In fact, it is the opposite; had the warrant included

7   such information would only tend to support that N.P. was at substantial risk – because the then-alleged

8   father was not the physical caretaker of N.P. and had no control over what happened inside Ms. Perez'

9   residence in which resided the other children over whom the alleged lack of supervision was being

10  asserted.   Likewise, an alleged omission in the warrant of who reported alleged sexual abuse is also not

11  material when it was uncontroverted that no doctor had actually found sexual abuse of A.S.

12        The statement of "inappropriate touching" is not false as a matter of law because it is based on

13  Defendant Cobb's assessment of the children's conduct.  Specifically not including the version of the

14  touching being on the belt is not material or false, particularly in light of C.P's admission he knew it was

15  inappropriate and the other service logs in which reporters claimed the inappropriate touching included

16  masturbation and touching of testicles.   In addition, the inappropriate touching was not the only basis

17  for the warrant.

18        Like the *O'Neel* case, supra, a conclusion that the warrant would have been issued in this case

19  regardless of the claimed falsities or omissions is bolstered by the subsequent proceedings, where Judge

20  Ameral concluded CPS had made a prima facie case that the petition met the criteria of Welfare &

21  Institutions Code § 300, and later adjudicated N.P. a ward of the court, where Judge Ameral had before her a

22  fuller factual and procedural record, including much of the logs which showed which referrals were

23  unfounded, evaluated out etc.

24        If the court is not inclined to grant qualified immunity, Defendants submit this court must

25  determine which facts are material to be submitted to the jury  to determine scienter.

26  ///

27  ///

28  ///

---

5

DEFENDANTS SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR JUDGMENT PURSUANT TO RULE 50(a)
ON QUALIFIED IMMUNITY AND LIMITATION OF DAMAGES

4868-2546-9882, v. 1                                                                SER-0578

**C.     Limitation on Damages**

        The juvenile court order finding detention proper or jurisdiction cuts off damages caused by the social workers.  In other words, a subsequent judicial order that occurs after the removal will limit the award of damages only to the period of time before the judicial order was issued. *Watson v. City of San Jose*, 800 F.3d 1135, 1139 (9th Cir. 2015).  In *Watson*, the plaintiffs asserted constitutional violations arising from the removal of minor children without a required warrant or exigent circumstances. See *Watson*, 800 F.3d at 1137-38. The children were removed on June 29, 2005 and June 30, 2005, and on July 5, 2005, the juvenile court made a determination that the children should remain detained for their welfare. See id. at 1137.  The Ninth Circuit upheld the district court's decision to grant a motion for new trial on damages as against warrantless removal by officers, which failed to account for in *Carey v. Piphus*, 435 U.S. 247 (1948), which held subsequent process creates a causal disconnect.    The Ninth Circuit approved jury instruction language that stated "damages may not be awarded against the officers for the actions taken by the Department of Family and Child Services in connection with the petition and for the actions taken by the Juvenile Dependency Court which made an initial order on July 5, 2005, based upon the petition that the children were to be detained at the children's center pending further juvenile dependency court proceedings."    See also *Williams v. Cnty. of Monterey*, No. 19-CV-01811-BLF, 2021 WL 1966712, at *8 (N.D. Cal. May 17, 2021) ("The Court finds that Plaintiffs may not seek damages flowing from the children's detention after May 14, 2018, the date of the Juvenile Court's detention order following contested proceedings.").    Accordingly, a limiting instruction should be included.  Defendants suggest the following be included in the damages instruction (court's draft instruction No. 18):

        "However, damages may not be awarded against the Defendant(s) after July 29, 2019 when the Juvenile Dependency Court which made an initial detention order, based upon the petition that N.P. was to be detained pending further juvenile dependency court proceedings."

1

2                                            Respectfully submitted,

3    Dated:  May 26, 2024                     PORTER SCOTT
                                              A PROFESSIONAL CORPORATION
4

5                                            By /s/ John R. Whitefleet
                                                   John R. Whitefleet
6                                                  Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

7

DEFENDANTS SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR JUDGMENT PURSUANT TO RULE 50(a)
ON QUALIFIED IMMUNITY AND LIMITATION OF DAMAGES

1

**PORTER | SCOTT**

2

A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301

3

jwhitefleet@porterscott.com
2180 Harvard Street, Suite 500

4

Sacramento, California 95815
TEL: 916.929.1481

5

FAX: 916.927.3706

6

Attorneys for Defendants COUNTY OF STANISLAUS; ERIC ANDERSON, APRIL COBBS;

7

MARIELA GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON,
SHYNELLE JONES, GLORIA SOLORIO

8

9

**UNITED STATES DISTRICT COURT**

10

**EASTERN DISTRICT OF CALIFORNIA**

11

12

SHANE BEARD, HILDA PEREZ, and N.P.,                    Case No. 1:21-cv-00841-JAM=KJN

13

a minor, by and through Guardian ad Litem
Donnie R. Cox,                                         **DEFENDANTS TRIAL BRIEF**

14

15

        Plaintiffs,

16

v.

17

COUNTY OF STANISLAUS, a political

18

subdivision of the State of California, ERIC
ANDERSON, APRIL COBBS, MARIELA

19

GOMEZ,      DAVID      GRANADOS,
STEPHANIE    HERRERA,    SHARI

20

JOHNSON, SHYNELLE JONES, GLORIO
SOLORIO, and DOES 1 through 10,

21

22

        Defendants.

23

_____/

24

25

      Defendants COUNTY OF STANISLAUS; ERIC ANDERSON, APRIL COBBS; MARIELA

26

GOMEZ, DAVID GRANADOS, STEPHANIE HERRERA, SHARI JOHNSON, SHYNELLE JONES,

27

GLORIA SOLORIO, hereby submit the following Trial brief.

28

///

1
DEFENDANTS TRIAL BRIEF

## I.   **FACTS**

This case arises from the seizure of minor N.P., then 9 months old, pursuant to a protective custody warrant on July 19, 2019 obtained by Social Worker April Cobbs, from parents Hilda Perez and Shane Beard.

In 2019, Ms. Perez has six other children, the father of five is Horatio Garcia.  At the time, the children ranged from ages 5 to 21.  Shane Beard did not live with Ms. Perez.

On July 12, 2019, the County received a referral that the minor, A.S.Jr. age 5, reported that while at his mother' s, minor W. age 8, who identifies as transgendered, showers with him, and touched his penis. On that same day, Social Worker April Cobbs completed a home visit in Patterson to discuss the allegations with Ms. Perez and Mr. Beard.   Ms. Cobbs understood that Ms. Perez denied knowing any inappropriate touching the shower, but admitted an incident that occurred where AS and CG were playing a game called "sleepy sleepy" where one person plays asleep and the other touches the person in inappropriate places to get them to wake up.  A.S. told CG to touch his "ding a ling". During this investigation, CG appeared to admit to touching AS inappropriately while playing in a fort made out of blankets. It was Ms. Cobb's impression that Ms. Perez appeared to minimize the situation, and that Shane Beard had been aware but did not report it.

Past referrals to CPS, of which there was many, generally involved Ms. Perez mental health and/or her claims that her son AS had been sexually abused by his father, having reported same to the police and subjecting AS to numerous interviews and medical appointments.  No allegation of abuse to AS were substantiated.

On July 15, 2019, a TDM (Team Decision Meeting) was held.  Hilda, Shane and Shane's mother were present, however, when the topic came up regarding parenting and being protective of the children, the CSA workers got the impression that Shane did not know Hilda's history with the CSA. There was also a suggestion that Shane did not want to be with Hilda and did not understand why they were at the TDM.   Ms. Perez asked for an attorney and "discovery" and when informed that the customary practice at TDMs is that they are informal and that attorneys are not present, Plaintiffs walked out of the meeting.

The concern was due to N.P's young age, 9 months old at the time, he was unable to protect and care for himself from risk of sexual abuse by the other children occurring in the home, and no plan of

1    adequate supervision.  On July 19, 2019, Cobbs drafted and obtained a warrant for Protective Custody

2    warrant, signed by Stanislaus Superior Court Judge John Freeland.

3        On July 19, 2019, SW Cobbs with the assistance of Law Enforcement executed the protective

4    custody warrant. N    Perez was placed into Protective Custody at 1:30 p.m. The other minor children

5    in the family home are safety planned with their respective fathers.

6        On July 23, 2019, Social Worker Granados and Gomez filed a dependency petition.  On July 29,

7    2019, the Stanislaus County Juvenile Court issued an order of detention for N.P.

8        On October 8, 2019, the Stanislaus County Juvenile Court adjudicated NP a ward of the court.

9    On the same day, NP is physically returned to the custody of Plaintiffs as part of a reunification plan.

10   On April 27, 2020, the Stanislaus County Juvenile Court terminated the dependency proceedings,

11   returning legal custody to the Plaintiffs.

12                              **II.**    **APPLICABLE LAW**

13   **1.**   **Judicial Deception under the Fourth and Fourteenth Amendments**

14        To prove a violation of the constitutional right under the Fourth or Fourteenth Amendments

15   through judicial deception, a plaintiff must prove '(1) a misrepresentation or omission (2) made

16   deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision.' "

17   *David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022)  (quoting *Benavidez v. County of San Diego*, 993

18   F.3d 1134, 1147 (9th Cir. 2021)). Plaintiffs "must make (1) a substantial showing of deliberate falsehood

19   or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action

20   would not have occurred." *Butler v. Elie*, 281 F.3d 1014, 1024 (9th Cir.2002).

21        **a.**    **A warrant need not include all facts, exculpatory or not, and opinions and**

22           **ambiguous statements are not false statements.**

23        The Ninth Circuit has repeatedly emphasized that the Fourth Amendment does not require

24   inclusion of all exculpatory evidence.  See *Beltran v. Santa Clara County*, 389 Fed.Appx. 679, 681 (9th

25   Cir. 2010), and has upheld a warrant in the face of omitted evidence that contradicted statements in the

26   warrant application.  "An affiant cannot be expected to include in an affidavit every piece of information

27   gathered in the course of an investigation." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir.

28   1997) quoting *US v. Colkley*, 899 F. 2d 297, 300 (4th Cir. 1990)(finding no obligation to disclose an

3
DEFENDANTS TRIAL BRIEF

                                                  

1    inconsistency in the timing of a witness' statement).  See also *United States v. Burnes*, 816 F.2d 1354,

2    1358 (9th Cir.1987) ("[t]he mere fact that the affiant did not list every conceivable conclusion does not

3    taint the validity of the affidavit."), and *Ewing v. City of Stockton,* 588 F. 3d 1218 (9th Cir. 2009)

4    (omission of a non-identification by another witness "does not cast doubt on probable cause" when one

5    witness did identify plaintiffs)

6          In addition, ambiguous statements in a warrant do not, as a matter of law, amount to a false

7    statement or a misrepresentation.  *Millender v. Cnty. of Los Angeles*, No. CV 05-2298 DDP RZX, 2007

8    WL 7589200, at *15 (C.D. Cal. Mar. 15, 2007), aff'd, 620 F.3d 1016 (9th Cir. 2010), rev'd sub nom.

9    *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012), and rev'd in part,

10   472 F. App'x 627 (9th Cir. 2012).

11          **b.     The court determines if the alleged false statement or omission is material**

12          Review by the court of a warrant is differential, upholding it if the issuing judge "had a

13   `substantial basis' for concluding [that] probable cause existed based on the totality of circumstances."

14   *Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir.1994) (quoting United States v.

15   Bertrand, 926 F.2d 838 (9th Cir.1991)).  See also *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th

16   Cir.2002) ("Probable cause requires only a fair probability or substantial chance" of the suspected

17   activity). Thus, a judge's "determination that an affidavit provided probable cause to issue a search

18   warrant will be upheld unless clearly erroneous." *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th

19   Cir.2004).

20          The court m"st determine the materiality of the allegedly false statements or omissions. *KRL v.

21   Moore*, 384 F. 3d 1105, 1117 (9th Cir. 2004); see also *Butler v. Elle*, 281 F. 3d 1014, 1024 (9th Cir. 2002)

22   ("Materiality is for the court, state of mind is for the jury."). If an official submitted false statements, the

23   court purges those statements and determines whether what is left justifies issuance of the warrant. See,

24   e.g., *Baldwin v. Placer County*, 418 F.3d 966, 971 (9th Cir.2005). If the official omitted facts required to

25   prevent technically true statements in the affidavit from being misleading, the court determines whether

26   the affidavit, once corrected and supplemented, establishes probable cause. See, e.g., Liston v. County of

27   Riverside, 120 F.3d 965, 973-74 (9th Cir.1997).

28   ///

---

4

DEFENDANTS TRIAL BRIEF

1        **c.**     **The issue of whether alleged false statement or omission the scienter required.**

2       Plaintiff must establish that the defendant knew or should have known that any statements in the

3 affidavit supporting the warrant for were false. See *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct.

4 2674, 57 L.Ed.2d 667 (1978)  "In this variety of Fourth Amendment case, alleging judicial deception in

5 the procurement of a search warrant, we confront a situation where ... a state-of-mind question is

6 embedded in the underlying constitutional issue, i.e., whether or not in allegedly omitting relevant

7 information from his affidavit in support of the application for a search warrant," the Defendant acted

8 "with deliberate falsehood or reckless disregard for the truth." *Butler*, 281 F. 3d at 1025-26

9        **d.**     **Suggested procedures**

10       Given the above authorities about the court's role vs the jury's role, Defendants suggest that

11 Plaintiffs be required to submit a list of alleged facts and omissions, from which the court determines

12 whether they are material to the warrant and should be submitted to the jury to determine if Plaintiffs

13 have proven the alleged facts are false and whether the omission is, in fact, an omission, and whether

14 Plaintiffs have proven the necessary scienter by the affiant.   The court then determines whether the

15 warrant, as corrected, supports probable cause.

16 **2.**    **Substantive Due Process claims**

17       "[P]arents 'have a well-elaborated constitutional right to live' with their children that is an

18 essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children

19 will not be separated by the state without due process of law except in an emergency." *Kirkpatrick v.*

20 *County of Washoe*, 843 F.3d 784, 789 (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1136).  To establish a

21 familial association claim, Plaintiffs must show that (1) the liberty interest in having a relationship free

22 from unwarranted state interference was violated; and (2) that the violation was committed though

23 official conduct that "shocks the conscience." *Est. of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d

24 1162, 1176 (E.D. Cal. 2019).

25       However, "parental rights do not spring full-blown from the biological connection between

26 parent and child." *Kirkpatrick*. at 789 (quoting *Lehr*, 463 U.S. at 260). Rather, "[i]t is when an unwed

27 father demonstrates a full commitment to the responsibilities of parenthood by coming forward to

28 participate in the rearing of his child, that his interest in personal contact with his child acquires

substantial [constitutional protection]. Until then, a person with only potential parental rights enjoys a liberty interest in the companionship, care, and custody of his children that is unambiguously lesser in magnitude." *Kirkpatrick*, 843 F.3d at 789 (internal quotations and citations omitted). "[T]he mere existence of a biological link does not merit equivalent constitutional protection." *Lehr*, 463 U.S. at 261. Thus, a person who brings a familial association claim requires a "more enduring" relationship "which reflect[s] some assumption of parental responsibility." *Kirkpatrick*, 843 F.3d at 788–90 (holding father could not challenge the seizure of a child because he had failed to establish his parental rights as of the date of the seizure). The Ninth Circuit has also held that recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation. *Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016).

**3.    Procedural Due Process**

"To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (citation and alterations omitted), cert. denied, 568 U.S. 940 (2012).. Due process is generally satisfied if plaintiff received "prompt post-deprivation judicial review" in which she was given adequate notice and an opportunity to be heard. See *Campbell v. Burt*, 141 F.3d 927, 929 (9th Cir. 1998) ("Federal procedural due process guarantees prompt post-deprivation judicial review in child custody cases."); *Dulaney v. Grimm*, 2013 WL 3897770, at *8 (E.D. Wash. July 29, 2013) ("When the state removes a child from his parent, due process guarantees a prompt and fair post-deprivation judicial review."). Here, Plaintiffs have admitted they were afforded such post-deprivation procedures by way of the juvenile court hearings.

**4.    Deliberate Fabrication**

To prevail on a claim for deliberate fabrication of evidence, a plaintiff must, "at a minimum, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux v. Abbey*,

6
DEFENDANTS TRIAL BRIEF

1   263 F.3d 1070, 1076 (9th Cir. 2001)). However, a "careless or inaccurate investigation that does not
2   ensure an error-free result does not rise to the level of a constitutional violation." *Costanich v. Dept. of*
3   *Social and Health Services*, 627 F. 3d 1101 (9th Cir. 2010)

4   **5.    Immunities**

5       **a.    Quasi prosecutorial immunity**

6       A social worker acts as a legal advocate when initiating court proceedings such as the filing of
7   the initial Detention Report.  See e.g. *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir.2000). "Social
8   workers have absolute immunity when they make 'discretionary, quasi-prosecutorial decisions to
9   institute court dependency proceedings to take custody away from parents.' "  *Beltran v. Santa Clara*
10  *County*, 514 F.3d 906, 908 (9th Cir. 2008) (quoting *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir.
11  2008); The scope of this immunity is akin to the scope of absolute prosecutorial immunity, which
12  applies to conduct "intimately associated with the judicial phase of the criminal process," *Imbler v.*
13  *Pachtman*, 424 U.S. 409, 430 (1976).

14      While the court in *Beltran* denied application of immunity if there was fabricated evidence, that
15  denial is not applicable to the instant case because the dependency petition in Beltran was denied and the
16  child was returned to his parents.  Here, the dependency petition was upheld, meaning Plaintiff is barred
17  from arguing the petition contained falsities under the Rooker-Felman doctrine.  The *Rooker-Feldman*
18  doctrine is premised on the principle that federal district courts lack jurisdiction to review the decisions
19  of a state judicial proceeding. (See *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) and
20  *Doe & Associates Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir.2001))

21      **b.    Witness immunity**

22      Witnesses  are absolutely immune from liability for testimony.  *Lisker v. City of Los Angeles*,
23  780 F.3d 1237, 1241 (9th Cir. 2015) (citing *Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983) (emphasis
24  added)); *Rehberg v. Paulk*, 566 U.S. 356, 375 (2012).

25      **c.    Qualified Immunity for federal claims**

26      Qualified immunity gives government officials breathing room to make reasonable but mistaken
27  judgments about open legal questions. When properly applied, it protects `all but the plainly
28  incompetent or those who knowingly violate the law.' *Ashcroft v. al-Kidd*, 563 U.S. 731,  743 (2011),

DEFENDANTS TRIAL BRIEF

1    quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1985). Whether a right is clearly established turns on

2    whether it is "sufficiently definite that any reasonable official in the defendant's shoes would have

3    understood he was violating it." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir.

4    2019).The plaintiff bears the burden of showing that the rights allegedly violated were clearly

5    established. *Id*. at 1118. Generally, a plaintiff need not find a case directly on point, but existing

6    precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft*, 563 U.S. at

7    741. Qualified immunity is a question of law, not a question of fact. *Torres v. City of Los Angeles*, 548

8    F.3d 1197, 1210 (9thCir. 2008)

9    **6.    Monell claim**

10    To establish liability, Plaintiffs must show that (1) a deprivation of a constitutional right; (2) the

11    County had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and

12    (4) the policy was the "moving force behind the constitutional violation." Van Ort v. Estate of

13    Stanewich, 92 F.3d 831, 835 (9th Cir.1996).  In the absence of an express policy, liability must be

14    founded upon practices of "sufficient duration, frequency and consistency that the conduct has become a

15    traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), holding

16    modified on other grounds by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).  In addition, those other

17    instances must bear sufficient resemblance to the fact pattern at issue to be pertinent. See e.g. *Parkison*

18    *v. Butte Cty. Sheriff's Dep't*, No. 2:09-CV-2257-MCE-DAD, 2013 WL 1007042, * 12 (E.D. Cal. Mar.

19    13, 2013), report and recommendation adopted, No. 2:09-CV-02257-MCE, 2013 WL 1345080 (E.D.

20    Cal. Mar. 28, 2013)

21    To prove inadequacy in training, Plaintiffs must establish that the County's failure to train or

22    adequately supervise "amounts to 'deliberate indifference to the rights of persons with whom the

23    [untrained employees] come into contact,' " which is "a stringent standard of fault, requiring proof that a

24    municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of*

25    *Bryan Cnty*., 520 U.S. at 410; *Canton*, 489 U.S at 388. Accordingly, the County's policymakers must

26    have been "on actual or constructive notice that a particular omission in their training program causes

27    city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 6.  A municipality's

28    failure to train employees may rise to the level of an official policy under *Monell*, but the omission must

8

1    amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come

2    into contact." *Connick*, 563 U.S. at 61 (quoting *City of Canton, Ohio,* 489 U.S. at 388(internal

3    quotations omitted). Deliberate indifference is a stringent standard of fault. *Bd. of Cnty. Comm'rs of*

4    *Bryan Cnty.*, 520 U.S. at 410. The need for training must be "so obvious, and the inadequacy so likely to

5    result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to

6    have been deliberately indifferent to the need." Canton, 489 U.S. at 390. Absent a single violation with a

7    "highly predictable consequence," *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 398, a pattern of

8    similar constitutional violations is necessary to demonstrate deliberate indifference. Connick, 563 U.S.

9    at 62 (citing *Bryan Cty.*, 520 U.S. at 409). "[C]ontinued adherence to an approach that [policymakers]

10   know or should know has failed to prevent tortious conduct by employees may establish the conscious

11   disregard for the consequences of their action . . .necessary to trigger municipal liability." *Bryan Cty.*,

12   520 U.S. at 407 (internal citations omitted). But without a pattern of similar violations, policymakers

13   cannot be said to have "deliberately chosen a training program that will cause violations of

14   constitutional rights." *Connick*, 563 U.S. at 62.  "Under this standard, a municipal defendant can be held

15   liable because of a failure to properly train its employees only if the failure reflects a "conscious" choice

16   by the government." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc).  The

17   indifference of officials may be shown where, "in light of the duties assigned to specific . . .

18   employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result

19   in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have

20   been deliberately indifferent to the need."  *City of Canton*, 489 U.S. at 390.

21   **7.    Compliance with the California Tort Claims Act.**

22       The Government Tort Claims Act (Government Code §810 et seq.) requires an injured party to

23   submit a claim to the governmental entity before initiating litigation. (Id., §945.4.) This claim must

24   include "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as

25   it may be known at the time of presentation of the claim." (Id., §910(d).) Having been at liberty to define

26   the claim's content and scope, a plaintiff may not thereafter expand that scope during the litigation itself:

27   "The primary function of the [Government Tort Claims Act] is to apprise the governmental body of

28   imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid

litigation by settling meritorious claims. [Citations Omitted.] It is therefore necessary for the claims served on the governmental entity to describe fairly what the entity is alleged to have done." (*Turner v. State of California* (1991) 232 Cal. App.3d 883, 888.) "If a plaintiff relies on more than one theory of recovery ... each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim." *(Nelson v. State of California* (1982) 139 Cal.App.3d 72, 79; see also *Donahue v. State of California* (1986) 178 Cal.App.3d 795, 802.)

Here, the parents did not submit claims, and thus any state law claims by the parents is barred. Likewise, the claim by the minor did not include facts that would support a Bane Act claim.

**8.    Intentional infliction of emotional distress**

Plaintiffs must prove: "(1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Cozad v. Astrazeneca LP*, No. 1:14-CV-02049-SKO, 2016 WL 4539945, at *8 (E.D. Cal. Aug. 30, 2016) (citing Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it."  Id. Conduct is "extreme and outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Id.  Evidence that reflects "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" is insufficient.

**9.    Bane Act**

**a.    Standard**

In order to establish a cause of action pursuant to Civil Code § 52.1, a plaintiff must prove that a defendant interfered or attempted to interfere by threats, intimidation or coercion with "exercise or enjoyment" or rights secured by the U.S. and California Constitutions, or laws of the state. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under

1   the law or to force the plaintiff to do something that he or she was not required to do under the law."

2   (*Austin B. v. Escondido Union Sch. Dist.* (2007) 149 Cal.App.4th 860, 883; see *Jones v. Kmart Corp.*

3   (1998) 17 Cal.4th 329, 334 [§ 52.1 requires "an attempted or completed act of interference with a legal

4   right, accompanied by a form of coercion."].)   Whether a violation occurred and whether that violation

5   was accompanied by any threats, intimidation or coercion are separate analytical inquiries.  (See *Jones,*

6   *supra*, 17 Cal.4th at p. 338.)

7       The Ninth Circuit in *Reese v. Cty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)  noted that

8   *Cornell v. City and County of San Francisco,* 17 Cal.App.5th 766 (2017) as modified (Nov. 17, 2017),

9   review denied (Feb. 28, 2018) requires when a plaintiff premises his Bane Act claim on a constitutional

10   violation, plaintiff must establish that the person who violated the plaintiff's constitutional rights "had a

11   specific intent" to do so.  *Id.*  At 801, 225Cal.Rptr.3d 356.   *Cornell* explained that the test:

12       "essentially sets forth two requirements for a finding of "specific intent"…The first is a
         purely legal determination. Is the…right at issue clearly delineated and plainly applicable
13       under the circumstances of the case? If the trial judge concludes that it is, then the jury
         must make the second, factual, determination."
14

15   Plaintiff must prove a "specific intent to violate the arrestee's right to freedom from unreasonable

16   seizure" akin to assessing criminal violations of federal civil rights as set forth in Screws v. United States,

17   325 U.S. 91 (1945), albeit applying a civil burden of proof.

18       "[I]n adopting the Screws standard we find it particularly significant that so much of the
19       text and structure of Section 52.1 appears to descend from Section 241.  It seems to us
         that, when our Legislature enacted hate crime legislation in 1987, it chose not to adhere
20       strictly to the federal scheme by adopting a civil enforcement statute on the model of
         Section 1983, covering "deprivations" of rights and limiting the statute to public officials
21       or other conduct evincing state action. Instead, it used as a model Section 241—a
22       criminal conspiracy statute"

23   *Cornell*, 17 Cal. App. 5th at 802

24       The United States Supreme Court defined this standard as "a specific intent to deprive a person

25   of a federal right made definite by decision." Screws at 103.  The Supreme Court's fairly recent decision

26   in Lanier held that the Screws notice requirement and the civil 'clearly established' qualified immunity

27   tests are essentially the same. *United States v. Lanier*, 520 U.S. 259, 270, 117 S. Ct. 1219, 1227 (1997).

28   "[T]he object of the "clearly established" immunity standard is not different from that of "fair warning"

DEFENDANTS TRIAL BRIEF

1  as it relates to law "made specific" for the purpose of validly applying" the specific intent standard.  Id.

2  The Supreme Court reasoned:

> The fact that one has a civil and the other a criminal law role is of no significance; both serve the same objective, and in effect the qualified immunity test is simply the adaptation of the fair warning standard to give officials (and, ultimately, governments) the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes.  To require something clearer than "clearly established" would, then, call for something beyond "fair warning."

*Lanier*, 520 U.S at 270.

### b.    No Penalties available

Civil Code § 52.1 only allows a penalty where the action is brought by the "Attorney General, any district attorney, or any city attorney."  (See Civ. Code, § 52.1(a).)  Under § 52.1(b), there is no mention of an individual being able to assert a penalty.  Instead, it expressly limits the claims to "damages, including, but not limited to, damages under § 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured."  In that regard, "damages" are not construed as including "penalties."  (See e.g. *Cuviello v. City of Oakland*, (E.D. Cal. Aug. 3, 2010) 2010 U.S. Dist. LEXIS 79566. ["damages" are not considered "penalties"].)  see also *Weaver v. Cnty. of Santa Clara* (N.D. Cal. 2014) 2014 U.S. Distr. LEXIS 160376, *10.)  While Civil Code § 52(b) does allow a penalty, it is only where the conduct is based on some immutable characteristic under Civil Code § 51.7, for example, race, creed, religion, medical condition, genetic condition, or sex.

### c.    No treble damages

Under its own terms, § 52(a) only applies to violations of Civil Code § 51 (discrimination in business establishments), § 51.5 (discrimination in business transactions), and § 51.6 (discrimination in business establishments to gender.

### 10.    False Imprisonment

"Under California law, the elements of false imprisonment are: (1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief. See *Bocanegra v. Jakubowski*, 241 Cal.App.4th 848, 855 (2015)." (*Ulikhanova v. County of Los Angeles* (C.D. Cal., Dec. 14, 2018, No. CV 17-9193 FMO (EX)) 2018 WL 10111334, at *7.)

---

12

DEFENDANTS TRIAL BRIEF

**11.   State immunities**

Under California Government Code § 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously or without probable cause." This provision entitles a social worker to "absolute immunity from liability arising out of her actions in investigating child abuse allegations, initiating dependency proceedings and removing a child from his custodial parent." *Jacqueline T. v. Alameda Cty. Child Protective Servs*., 155 Cal. App. 4th 456, 467 (2007), as modified (Oct. 4, 2007). "[I]mmunity under section 821.6 covers not just the act of filing a criminal complaint, but also other prosecutorial or quasi-prosecutorial functions such as weighing and presenting evidence when rendering a decision on whether to proceed with litigation." *Id.*

Similarly, under California Government Code § 820.2, '[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.'" (Ulikhanova supra) Section 820.2, which shields discretionary decisions by public employees, reads as follows: "Under this provision, social workers are entitled to immunity for their child removal and placement decisions in dependency proceedings." *Christina C. v. Cty. of Orang*e, 220 Cal. App. 4th 1371, 1381 (2013), as modified (Oct. 29, 2013). "The immunity applies even to lousy decisions in which the worker abuses his or her discretion, including decisions based on woefully inadequate information." Id. (internal quotation marks and citation omitted). *Ortega v. Sacramento Cty. Dep't of Health & Human Servs.,* 161 Cal. App. 4th 713, 733 (2008) (finding that § 820.2 immunity applied to claims based on social workers' alleged failure to gather the pertinent facts before releasing child to her father, who then stabbed child in the heart and lung).

The only way to avoid these immunities is by way of California Government Code § 820.21, which abrogates immunity for perjury, fabrication of evidence, failure to disclose known exculpatory evidence, or obtaining testimony by duress, fraud, or undue influence—if committed with malice. (Gov. Code, § 820.21, subd. (a).) Malice is defined as "conduct that is intended by the person described in subdivision (a) to cause injury to the plaintiff or despicable conduct that is carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights or safety of others." (Gov. Code, §

---

13

DEFENDANTS TRIAL BRIEF

820.21, subd. (b).)  "Thus, not only must the act fall into one of the enumerated categories, but it must also be committed with malice.  This is a high bar to clear…."  *Gabrielle A. v. Cnty. of Orange*, 10 Cal. App. 5th 1268, 1285 (2017), as modified (Apr. 18, 2017)

**12.  Limitation on Damages**

The juvenile court order finding detention proper or jurisdiction cuts off damages caused by the social workers.  In other words, a subsequent judicial order that occurs after the removal will limit the award of damages only to the period of time before the judicial order was issued. *Watson v. City of San Jose*, 800 F.3d 1135, 1139 (9th Cir. 2015)

Respectfully submitted,

Dated:  May 6, 2024

PORTER SCOTT
A PROFESSIONAL CORPORATION

By /s/ John R. Whitefleet
John R. Whitefleet
Attorneys for Defendants

DEFENDANTS TRIAL BRIEF

4893-6088-8252, v. 1

| NAME OF AGENCY: | Stanislaus County Community Services Agency Family and Childrens Services | | DATE: 01/11/2012 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Jorje Garcia | | Q2G Garcia | (209) 558-2305 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

**REFERRAL NAME:** Hilda Garcia  **REFERRAL NUMBER:** 0121-6034-2308-7074866

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | | TITLE | | DATE | TIME |
|---|---|---|---|---|---|
| Amezcua, Martha | | Social Worker IV | | 12/15/2011 | 04:00pm |
| CASELOAD # | | PHONE NUMBER | LOCATION | | |
| N5I Amezcua | | (209) 558-2186 | Community Services Facility | | |

ALERTS:
Path 2

Tanf link
No CWS hx

CN: Hilda Garcia   ER#: 0354535

Allegation Emotional and Physical Abuse

▬▬▬ reports that minor ▬▬▬ age 10 is afraid of her Mom. During the summer more than once Mom threatened to kill herself and one time Mom was upset at all the kids that she took the knife and told kids if "I don't hurt myself I will hurt you." Another time Mom told her she was going to overdose and for her to stay with her brother. Mom did overdose while the Father and she with the brothers were away doing errands. The Father is out working and sometimes gets home late. Mom has also used a wire to hit her brother ▬▬▬ and her on their bare bottoms. Mom's behavior is on going and Destiny reports she is afraid of her Mom. There are no current marks or injuries.

Rationale: Mental Concerns for the behavior impacting on the children

Screener; Amezcua, M   N51

LAW ENFORCEMENT AGENCY   POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| Modesto, California 95351 | |

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
w/Mo and Fa

School for ▬▬▬ ▬▬▬
▬▬▬ ▬▬▬

**PLAINTIFF'S(S')
EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
1
Page  1  of  7

...ealth and Welfare Agency
...al Services
...ment System

**EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
Page 1 of 7

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:48 AM | Logged-On Staff Person. Eric Anderson  N9 In-box | Page  1 of 3 |

## DELIVERED SERVICE LOG
### Contacts

FROM: 12/15/2011    TO:  7/10/2020

FOR: ███████████████████████

Contact Date: **12/19/2011**    On Behalf Of: ██████████████████████

Contact Purpose: Investigate Referral              Staff Person: Jorje Garcia
Participant(s): **Horacio G. Garcia, Hilda Perez**
Method: In-Person              Location: CWS Office              Status: Completed

CN  Hilda Garcia
31-034535

12/19/2011

1:47pm

Hilda Garcia came to CSA and requested to writer.

F/F with Hilda Garcia. Writer identified himself as a CPS SW and distributed a CRB
and business card to Mrs. Garcia. Mrs. Garcia informed writer that she was told a
CPS report was made regarding her family and wanted to address the issues with
writer.  Referral Briefed. Mrs. Garcia reported that on Nov. 11, 2011 her husband
and her mother confront her regarding her mental health state. She became upset and
started to argue with them. Her family threatened to call the police or to put her
in psychiatric facility because she was not addressing her mental needs.  She
became upset because she did not feel she needed to be hospitalized then grabbed a
knife and said she would give them a reason now. Mrs. Garcia denied pointing the
knife or attempting to hurt any of children or her family.  Law Enforcement was
called and transported her to the behavioral center where she stayed for 4-5 hours
and then released. Mrs. Garcia reported that at the time of the incident she had
gone 7 days without medication. Mrs. Garcia reported she had an issue with refills
and had ranout. Mrs. Garcia reported she is back on her Medication and now will
seek refills 2 weeks prior to running out. She has started seeing a counselor
again. Her husband has enrolled her children in counseling services also. Mrs.
Garcia reported she has suffered from Depression for the last 1  years and has
feelings she is not a good mother. Mrs. Garcia admitted she once attempted to over
dose by taking pills and told her daughter Destiny that if she did not wake up ,she
loved her and to go with her grandmother who resided in the same trailer park.
Mrs. Garcia's 3yr old son has autism and is currently receiving services from VMRC
( Tom).  Mrs. Garcia reported she has disciplined her children with corporal
punishment in the past.  In July of 2011, Mrs. Garcia confirmed she did spanked
Destiny with a wire on her bare bottom. Red marks were left.  Since then she no
longer uses corporal punishment and is currently only using time outs, no cell
phone or video's.  Since she was last hospitalize her husband no longer leaves her

**PLAINTIFF'S(S')
EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**2**
Page  1  of  3

SER-0596

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03.48 AM | Logged-On Staff Person, Eric Anderson N9 In-box | Page: 2 of 3 |

children alone with her. Writer discussed concerns and agreed with her that at
this time it would be best if her children were not left alone with her. Writer
discussed services and requested Mrs. Garcia have her husband call writer back
today. Mrs. Garcia was cooperative and initiated contact with writer regarding
referral. No current feelings of hurting herself or others. She is seeing a
Counselor (Mia) and a Psychiatrist at Golden Valley Medical Center.

3:29pm
TC from Horacio Garia-Mora. Writer identified himself as a CPS SW. Mr. Garcia-Mora
informed writer that Spanish was preferred for verbal and written communication.
Interview completed in Spanish. Mr. Garcia-Mora informed writer she was aware of
referral and confirmed he does not allow his wife to be alone with his children due
to his concerns with her mental health. Appt made for 12/20/2011 at common with FRC
or FM

**Contact Date: 12/20/2011     On Behalf Of:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Contact Purpose: Investigate Referral** | **Staff Person: Jorje Garcia**
**Participant(s):** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Method: In-Person**          **Location: Home**          **Status: Completed**

12/20/2011
1pm

Joint Visit with Parent Resource Center worker Anita

F/F with Horacio Garcia-Mora. Writer identified himself as a CPS SW and
distributed a CRB and business card to Mr. Garcia-Mora. Mr. Garcia-Mora informed
writer that Spanish was preferred for verbal and written communication. Interview
completed in Spanish. Mr. Garcia-Romo reported ongoing marriage conflict due to
Mrs. Garcia's mental health state. She has a short temper and will argue about
everything. On the day of the incident Mrs. Garcia's Mother and he attempted to
have an intervention in order get help for Mrs. Garcia because she refused to take
her medication. She became upset and pushed her mother then grabbed a knife. She
then stated "don't touch me or someone going to get hurt". Since then he has not
left his children alone with Mrs. Garcia. His father, mother and brother all reside
in the same trailer park and supervise children when he leaves. Mrs. Garcia is back
on her medication and seeing a counselor. She is doing better. He also enrolled his
children into school base counseling. Substance abuse, DV and criminal hx denied by
Mr. Garcia.

F/F with ▮▮▮▮▮ (13) appeared clean and healthy at time of visit. ▮▮▮▮▮
reported he attends ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ reported he felt safe with father
however not with his mother. ▮▮▮▮▮ reported he did not feel safe with mother
because she once sat on top of him and asked him questions. ▮▮▮▮▮ reported he
was disciplined by his mother by getting spanked with her hand however denied
bruises. ▮▮▮▮▮ denied current or past threats by his mother to harm him or his
siblings. ▮▮▮▮▮ did report he witnessed his mother grabbed a knife and tell his
father and grandmother she was going to hurt herself and someone else. ▮▮▮▮▮
reported that after the knife incident he father has not left siblings or him alone
with his mother.

F/F with ▮▮▮▮▮ (3) appeared clean and healthy at time of visit. Unable to

SER-0597

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:48 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 3 of 3 |

interview minor due to his age and autism.

F/F with ███████ (10) appeared clean and healthy at time of visit. ███████ reported she felt safe with father however not with her mother because she gets mad easily. ███████ reported she seen her mother damage personal property when upset. She has seen her mother slap her brother on multiple occasions and has been slapped by her also. Two months ago, her mother spanked her with a wire on her bare bottom 4x for fighting with her siblings which resulted in 3 marks. She has not been spanked since. No current marks or bruise observed. ███████ reported her mother on one occasion took her medication then told her that if she didn't wake up she loved her and to go with her grandmother however told her not tell anyone. ███████ confirmed she witnessed her mother with a knife and threatening to hurt everyone. She then went to her grandmother house and called 911. Since that incident her father has not allowed her siblings or her to be left alone with her mother. Destiny confirmed she was currently in counseling services.

F/F with ███████ (1) appeared clean and healthy at time of visit. No interview due age.

F/F with ███████ (6) appeared clean and healthy at time of visit. ███████ reported he feels safe at home with his mother and father. He is disciplined by getting spanked by his mother with her hand on his back or face. No current or past mark/bruises reported. ███████ denied being left alone with his mother.

F/F with Hilda Garcia, Horacio Garcia-Mora Sr and Parent Resource Center Worker Anita. Writer discussed concerns. Family agreed to participate in FRC services. Mrs. Garcia agreed to continue to work with her mental health providers and restrain from using corporal punishment. Children will not be left alone with her mother until her mental health condition stabilizes. Family was receptive to FRC services.

Summary:
Mother admitted from suffering from depression for over a one year. She has attempted to overdose once whileher daughter was present. In November of 2011 she pulled a knife on her mother and husband after they attempte to have a family intervention. She was taken the behavioral center however released after a couple hours. Mother admitted to spanking her daughter with a wire which resulted in marks. Children are now enrolled in counseling services. Mother has started taking her medication and resumed counseling. Father has not allowed minors to be alone with mother. Joint visit completed with Parent Resource Center. Family engaged in FRC services. General Neglect will be substantiated due to inappropriate parent and referral will be closed with FRC services. SDM Risk Moderate.

Physical abuse: unfounded
Emotional Abuse: Unfounded
General Neglect: substantiated
Ret Date: 7/2028

SDM safety completed: none
SDM Risk: Moderate

SER-0598

| NAME OF AGENCY: | Stanislaus County Community Services Agency Family and Childrens Services | | DATE: 01/23/2012 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |
| Bee Lee | | N5D Lee | (209) 558-3643 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia          REFERRAL NUMBER: 1684-4598-3140-8047805

| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | [ ] N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Lee, Bee | Social Worker IV | 01/20/2012 | 04:06pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5D Lee | (209) 558-3643 | Community Services Facility | |

ALERTS:
Eval Out  -  Not Referred

CN: Hilda Garcia/ER-0354535
CCN:50FA 50GN0120120406
General Neglect/NR
(Tanf link)

████ reports that Hilda (mother) disclosed her son ██████ (13yo) was molested by a male
cousin, no name, with similar age. Incident occurred in Newman. The boys were 4yo during
the time of the incident. Mother claims she came to Modesto and made a report to LE.
Incident was made to CPS and it was dealt with. ██████ started counseling for a while
and then stopped. He is starting counseling again. Family moved to Modesto and hasn't had
much contact with the cousin in Newman. Per cms hx, this allegation was never reported to
CPS. Two reports were made to CPS. There is a current report opening to SW Petra Orozco-
Sandoval concerning for mother's mental health. A copy was given of this was given to SW.

Eval out: Incident occurred 9 years ago between cousins. Victim child's family moved to
Modesto and hasn't much contact with other cousin in Newman, Ca. A copy was given to SW
Orozco-Sandoval.

Screener N5D Lee

| LAW ENFORCEMENT AGENCY | | POLICE REPORT NUMBER |
|---|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
@common

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
3
Page  1  of  9

th and Welfare Agency        **EMERGENCY RESPONSE REFERRAL INFORMATION**
ervices
nt System

Confidential in accordance with
Penal Code Section 11167.5 and/or
WIC Sections 827 and 10850
Page 1 of 9

| NAME OF AGENCY: | Stanislaus County Community Services Agency Family and Childrens Services | | DATE: 01/11/2012 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | Petra Orozco-Sandoval | CASELOAD ID: N9H Orozco-Sandoval | TELEPHONE (209) 558-2973 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia   REFERRAL NUMBER: 1394-0710-8926-4010939

[NA] EVALUATE OUT   [ ] IMMEDIATE   [ ] 3 DAY   [ ] 5 DAY   [X] 10 DAY   [ ] N/A SECONDARY REPORT

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Davis, Denae | | 01/11/2012 | 02:20pm |

CASELOAD #    PHONE NUMBER (209) 558-2026    LOCATION Community Services Facility

ALERTS:
Path 2, General Neglect    [TANF LINKED]

CN: Hilda Garcia    ER#: 0354535
No CWS hx

Open to FRC worker Anita McKinley 549-8193 would like joint visit.

There was an investigation conducted on the family in December and general neglect was substantiated. Hilda has major mental health issues. The family agreed to follow through with the safety plan (dad was primary and only caretaker and Hilda was never to be left alone with the children); Hilda was to continue to take her medications. Hilda is taking her medications intermittently and she has been breast feeding her one year old. The father is stressed out and is talking about a divorce and he can no longer comply with the safety plan that he can not leave the children alone with Hilda because of some family illnesses and he believes it is not safe leaving the children with the grandmother. The previous referral was closed on the agreement that there was an appropriate safety plan that appears to be no longer viable.

Screener - N5A - Dr. J. Wren
LAW ENFORCEMENT AGENCY    POLICE REPORT NUMBER

### HOME ADDRESS

PHONE NUMBER

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
w/Mo and Fa

School for ███████

Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 4
Page 1 of 7

Welfare Agency ... tem   EMERGENCY RESPONSE REFERRAL INFORMATION   Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850   Page 1 of 7
SER-0600

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:50 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page: 1 of 3 |

## DELIVERED SERVICE LOG
### Contacts

FROM: 1/11/2012     TO: 7/10/2020

FOR: ███████████████████

---

**Contact Date: 01/17/2012    On Behalf Of:** ████████████████████

**Contact Purpose:** Investigate Referral            **Staff Person:** Petra Orozco-Sandoval
**Participant(s):** ██████████████████████████
**Method:** In-Person            **Location:** School            **Status:** Completed

F/F SV with ████████████ (6) at ████████ Elementary School in Modesto, CA. He declined having school staff present and agreed to answer questions. SW informed █████████r that the interview was voluntary and that he could leave at any time. The interview lasted less than 30 minutes. ██████████r appeared to be clean and healthy. He is currently in 1st grade. He knows the difference between telling the truth and a lie and agreed to say only the truth. He stated that he lives with his mom, dad, 2 baby brothers, his big sister and big brother. He stated that his mom and dad take care of him and that he feels safe in their care. In an emergency, he knows that he can go to his mom and his dad for help. He likes to play with his brothers and hunt for spiders in the yard with his dad.██████ stated that his mom and dad get along ok. He stated that they do not yell at each other. When he gets in trouble at home, his mom and dad tell him he can't play or watch TV. ████████ went back to class.

F/F SV with ████████████ at ██████████████████l in Modesto, CA. ████████ declined having school staff present and agreed to answer questions. SW informed her that the interview was voluntary and that she could leave at any time. The interview lasted less than 30 minutes. ████████ appeared to be clean and healthy. She is currently in 5th grade. She knows the difference between telling the truth and a lie and agreed to say only the truth. She lived with her mom, dad and 4 brothers. When she gets in trouble at home, her dad tells her to go to her room with no tv and no going to her friend's house. She stated that she is in gifted classes and hopes to go to college some day. ████████ stated that she started going to counseling every week at school and likes it. Her dad works. Her mom does not but she went to nursing school. ████████ stated that her mom has not been as sad as she had been last year. She stated that she takes her medicine every day and that they talk to each other about going to counseling since her mom also has to go. In an emergency, she can count on her mom, dad and ████████ (her 22 year old cousin) for help. She stated that she feels safe in the home and in the care of her mom and dad.

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**5**
Page __1__ of __3__

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:50 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page   2 of 3 |

**Contact Date:** 01/17/2012     **On Behalf Of:** ▆▆▆▆▆▆

**Contact Purpose:** Investigate Referral          **Staff Person:** Petra Orozco-Sandoval
**Participant(s):**              **Perez**
**Method:** In-Person          **Location:** School          **Status:** Completed

F/F SV with ▆▆▆▆▆▆▆▆ at ▆▆▆ Middle School in Modesto, CA. ▆▆▆
declined having school staff present and agreed to answer questions. SW informed
him that the interview was voluntary and that he could leave at any time. The
interview lasted less than 30 minutes. ▆▆▆ appeared to be clean and healthy.
He is currently in 7th grade. He knows the difference between telling the truth and
a lie and agreed to say only the truth. ▆▆▆ stated that he lives with his mom,
dad and 3 brothers and sister. He stated that he and his siblings are not allowed
to be alone with his mom. When his dad is working and only mom is home, his cousin
Bertha who lives next door has to stay with them until his dad gets home. When he
gets in trouble at home, his dad tells him not to do it again or that he can't
watch tv or go to play wii with his friend. ▆▆▆ stated that his mom is getting
better. His mom takes her medicine and does not cry for no reason like she did
before. In an emergency, he can count on her, his dad and Bertha for help.
stated that he feels safe in the home and in the care of both his parents.

TC to Anita McKinely of PRC. Anita will do a jv with SW today. She stated that she
had concerns about mom taking her medicine regularly at time of report. Since then,
she has made contact with the mother and father and has no concerns. She stated
that she is confident that the father has been honering the standing safety plan
and has not allowed the mother to be the only adult taking care of the children. SW
will meet Anita at common address.

**Contact Date:** 01/17/2012     **On Behalf Of:** ▆▆▆▆▆ ▆ ▆▆▆

**Contact Purpose:** Investigate Referral          **Staff Person:** Petra Orozco-Sandoval
**Participant(s):** ▆▆▆ ▆ ▆▆▆▆▆▆▆▆ ▆.
**Method:** In-Person          **Location:** Home          **Status:** Completed

JV at         Spc 5 with PRC CW Anita McKinely. Present at home were the
mother, Hilda Garcia, the father, Horacio Garcia-Mora, and minors ▆▆▆ (1) and
▆▆ (3).

F/F with Horacio Garcia Mora. SW identified self as a CPS SW and distributed a CRB
and Business card to Horacio. He invited SW and CW McKinley into the home. SW
reviewed the referral allegations with Horacio inside the home. The home was clean
and appropriate. This conversation was conducted in Spanish by SW Orozco-Sandoval
even though Horacio bilingual since he stated that he was most comfortable in
Spanish. Horacio stated that things have improved at home between himself and Hilda
since December when CPS first came out. He stated that Hilda has been taking her
medications but that he thought she was not now that it took a while for the
medication to take effect. He admitted that he is losing hope in the marriage and
that he is considering getting a divorce. He stated that even though Hilda's mental
health has improved it is difficult at times for him to find patience  for her now
that there have been several family illnesses on his side of the family. He stated
that as his family members have gotten healthier, he is feeling less stressed and
more hopeful that his marriage may work out after all. He will continue working
with Anita on going to parenting classes and communicate with Anita if he moves

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:50 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page    3 of 3 |

forward with his initial divorce plans.

F/F with Hilda Garcia. SW distributed a CRB and Business card to Hilda as well. SW discussed the referral allegations with Hilda inside the home. Hilda speaks fluent English. She stated that she is on a wait list to take a parenting class at the PRC. She stated that she is going to couseling 2 times per month. She presented SW with the recently filled medications she is taking and stated that she has been taking her medication regularly and has only recently taken effect. The medications she is on are:
30 mgs. She is not working at this time. Hilda stated that Damien has started at Tuolomne Headstart and is getting speech therapy. VMRC is working with them. Anita was present for this conversation and verified Hilda's participation in services. Hilda stated that she does not breast feed ████████ (1) she stated that she can never be left alone with any of her children per the standing safety plan made in December. She asked SW for how long this will be. SW informed her that if a mental health provider is able to provide her with a letter stating that she is at a low risk to herself and others and that she is stable, she can provide that letter to Anita who will communicate with CPS. Hilda stated that she understood this and agreed to continue on with the safety plan as it is. Anita also agreed to communicate with CPS when this happens in addition to scheduling a Team Decision Meeting at PRC.

F/F with ████████████ (3). He appeared to be clean and healthy. He was very playful and with his brother William and showed SW his puppy. SW did not interview Damien due to his age.

F/F with ████████████ (1). He appeared to be clean and healthy. He was also very playful with his brother ██████ and his puppy. SW did not interview William due to his age.

Summary and Disposition:

General Neglect-Unfounded

On 1/11/2012, a referral was received regarding the mother, Hilda Garcia, taking her mental health medication intermittently and concerns that the father would be having to leave the children with the mother while he took care of his medically ill family members despite standing CPS safety plan indicating that the mother can not be alone with the children. The father stated that his family members's conditions had since improved and that he is able to care for the children as planned. He stated that his original plans to divorce Hilda are no longer an issue and that he would like to give the marriage another chance. All children appeared to be clean and healthy. Those who were school-aged reported feeling safe in the care of their parents. JV with CW Anita McKinely complete. DR Referral sent. Situation Stabilized.

Date Closed: 1/17/2012
CRB: Provided
████: Verbal
RET: 07/2028

| NAME OF AGENCY: | Stanislaus County Community Services Agency Family and Childrens Services | | DATE: 02/07/2012 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |
| Angela Kelley | | N9C Kelley | (209) 558-2307 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

**REFERRAL NAME:** Hilda Garcia          **REFERRAL NUMBER:** 1560-7232-2289-6052612

| NA | EVALUATE OUT | | X | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Shepherd, Dan | Social Worker IV | 02/07/2012 | 01:09pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5F Shepherd | (209) 558-2684 | Community Services Facility | |

ALERTS:
******IMMEDIATE******

CN: Hilda Garcia          ER # 0354535
Gen Neg

▬▬ reports that ▬▬▬▬ was brought into the ER less interactive, disoriented and confused with a gazed look in his eyes. After speaking with mother, a urine drug test was done and the child tested positive for Benzo's. The mother is suffering from Clinical Depression and Anxiety and takes ▬▬ for sleep and ▬▬ for panic disorder. According to ▬▬ Celexa falls within the category of Benzo. The mother did not have any explanation about how the child may have gotten Rx meds. The mother reported she counted her meds, checked the cap on the bottles and made other checks in an effort to determine if the child got into her meds, but could find nothing missing. The hospital is testing the child for other causes of the behavior, as it appears to be more severe than that which would be caused by ingesting a benzo tablet. The mother reported a CPS Hx where she was directed to attend parenting classes at Parent Resource Center. The 1/11/12 case showed that mother had been taking her meds intermittently and was continuing to breast feed the child. The father and mother are in the process of beginning a divorce. The mother is listed as bi-lingual by the ▬▬.

Path 3
Rationale - Child is in the hospital, having ingested benzo's and is suffering from behavior which is too severe to simply be explained by this. The mother takes benzo's for Clinical Depression and Anxiety.

Screener - Shepherd - N5F
LAW ENFORCEMENT AGENCY                                                     POLICE REPORT NUMBER

### HOME ADDRESS

|  | PHONE NUMBER |
|---|---|
| | |

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
At common with mom and dad.

**PLAINTIFF'S(S') EXHIBIT**
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 6
Page 1 of 7

...Welfare Agency ...s ...tem          EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with Penal Code Section 11167 5 and/or WIC Sections 827 and 10850
Page 1 of 7

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:51 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:   1 of 3 |

## DELIVERED SERVICE LOG
### Contacts

FROM: 2/7/2012     TO:  7/10/2020

FOR: ███████████

**Contact Date:** 02/07/2012   **On Behalf Of:** William T. Garcia
**Contact Purpose:** Investigate Referral   **Staff Person:** Angela Kelley
**Participant(s):** ████████████████████

**Method:** In-Person     **Location:** Home     **Status:** Completed

Home visit completed. Horacio met SW outside and SW provided him with a CRB and business card. He invited SW into the home. Present also were: ███ (13) and ███ (3). ███ was not interviewed as he has autism and cannot talk. ███ agreed to speak to SW. Both children appeared clean and healthy with no visible marks or bruises. ███ stated that he feels safe with his father, but no this mother, he thinks she probably gave ███ meds to keep him quiet. He denied that he had seen her or heard her say that this is the case. He is just worried about his brother. None of them can be left alone wit her because no one knows what she will do, so they always have their grandma or cousin over watching them. He wants to live with just his father and visit his mother.

Soon after SW arrived, ████████ (6) and ███ (10) arrived home from school. Each agreed to meet with SW alone. ███ stated everything is fine now , he is not alone with his mom, and thinks everything is ok. He does not know where his baby brother is, stating maybe at their grandma's.

Met with ███. She stated that her brother is in the hospital because their mom did something to him, but she does not know what, guessing that maybe she gave him one of her pills. She stated no one told her that, she and her brother, ███ just think it. She denied that anyone told her to say that or that anyone told her that was the truth. She feels safe with her dad and wants to live with just him right now, she is afraid of her mom. She denied that her mom has done anything, she is just worried about what would happen with her mom. She stated that her grandma or cousin have to come over whenever their dad has to look for a job.

Met with Horacio. He reports that he cannot take this any more, and he has found his own place and will be leaving tomorrow with the children to the new place. He will tell Hilda tonight, and he will let her sty in the hospital with ███. He knows it will be ok, because he is going to bring her each of her dosages throughout the day instead of her keeping them. SW told him it sounded like ███ was positive for benzodiazepines form the breast milk. However, the other concerns were likely due to a medical condition that was not his nor Hilda's fault. He stated all of his family has been sick lately, so that makes sense. He said, however, that he will still leave Hilda because he cannot take the ups and downs and his kids being scared. He signed a new Safety Plan indicating he would live

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
7
Page  1  of  3

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03.51 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:  2 of 3 |

with his children alone until such time that Hilda's mental health is appropriate
to be alone with her children, as evidenced by the word of a professional
therapist/psychiatrist.

Horacio to call with new address.

**Contact Date: 02/07/2012**   On Behalf Of: ██████████████████

**Contact Purpose:** Investigate Referral          **Staff Person:** Angela Kelley
**Participant(s)** ████████████████████████
**Method:** In-Person          **Location:** Other          **Status:** Completed

Hospital visit completed. SW met with Nurse Brenda 1st. She reports that ████████
symptoms are far worse than a simple ingestion of some benzos. She stated that Dr.
Johnson ordered blood tests and ████████ is positive for bacteria in his blood, so
████████ had a spinal tap to check for bacterial meningitis. Dr. Johnson agrees that
████████ could have tested positive for the benzoes through breast milk as mom is
breastfeeding. Dr. Johnson ordered her not to after Hilda told the staff her
"doctor" said she could. (note: previous log notes in the cms file indicate Hilda
is NOT suppose to breast feed and in fact told the last SW that she was not). Hilda
is staying with ████████ as a parent really needs to and the father cannot leave all
the other kids with Hilda. Nurse Brenda informed this SW that due to the nature of
████████ medical concerns, this SW has to wear a face mask in order to see him.

Met with Hilda in the private room of ████████ He was asleep. SW gave Hilda a CRB
and business card. Hilda reports that she did not give ████████ any of her
medication and that she is sure he did not get into her meds. She takes mirtazapine
)tricyclic antidepressant), Celexa, and Klonapin for panic. Klonapin is the benzo
class of drug she is taking. However, she reports it is the mirtazapine that she
takes for sleep that knocks her out and makes her sleepy. She confirmed that they
do make her fall asleep quickly and soundly. SW told her that the medical staff and
this SW believe that ████████ is positive for benzoes because of her breastfeeding
him and still taking the sleeping medications. She admitted that she was still
breastfeeding. SW asked her why and she said it is the only way to get him to go to
sleep. She confirmed that she knew she was not supposed to be breastfeeding, in
fact told the last SW that she was not breastfeeding. SW explained that what she
was doing was like giving her son the pill directly. She said she had not thought
about that before. SW explained that she is very concerned about her mental health
status and the fact that the agency ahs received 3 referrals regarding same in the
last 6 weeks alone. Hilda said she would be willing to stay away form the children
and get her self straight, as long as the kids are not taken form her. SW explained
she was not going to take the children from her, but had instructed Horacio that he
must protect the children when Hilda cannot. Therefore, SW asked him to take the
children and now is asking Hilda to work solely on herself so continued referrals
are not coming in to the agency and the children are safe. Hilda was visibly upset,
stating that her husband had already threatened to divorce her and take the kids
and that he was not going to let her make him lose the kids. SW attempted to
redirect Hilda to the point that her children need to be safe and her mental health
needs to be stable. Hilda began talking about having panic attacks, anxiety, and
postpartum. ████████ is 18 months old now, and post partum should be diminishing
because she has been taking meds for a while and supposedly getting therapy. When
questioned, she said she sees Mia through Golden Valley 2 times a month, and she
was u sure if she was a therapist. Secondly, a medical doctor has been keeping her
up on her prescriptions, not a psychiatrist. She did have one appointment with DR.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03.51 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 3 of 3 |

Brown (psych) who made the original prescriptions. SW told her she needs to see a
psychiatrist for all of her meds and for an official diagnosis and needs to
participate in weekly counseling. SW asked her if there was anything form her
childhood that was unresolved, such as molest. Hilda said yes, but was reluctant to
seek treatment in the AMAC program at Parents United, despite SW telling her often
unresolved and unaddressed child sexual abuse can result in anxiety and panic
attacks.

SW told Hilda that Horacio would be taking ███████ when he is discharged from the
hospital and that eh will be bringing her med s at the dosage time, so she is
notleft with a bottle of any of her meds at this time. Hilda agreed. SW explained
that it was up to Hilda how well she gets and how soon based on her choices of
seeking help. SW explained her job is protection of children, and their safety and
at this time, they appear to be the most safe solely in the care of their father.
Hilda stated she understood.

SW met with Medical SW Kimberly Richardson and explained that Horacio will be
taking ███████ home, that Hilda is aware of this. If there are any problems.
concerns, she will contact this SW .

**Contact** Date: **02/08/2012**    On Behalf Of: ████████████████████

**Contact Purpose:** Investigate Referral            **Staff Person:** Angela Kelley
**Participant(s):**
**Method:** Telephone          **Location:** CWS Office          **Status:** Completed

T/c with Anita from PRC. She stated that she has on many occasion told Hilda not to
breastfeed, that it was not good. She is also certain that Hilda s medications are
not appropriate and is in agreement that she needs to be officially diagnosed and
have her meds re-evaluated. She will work with both parents and support them the
best she can. She agreed to contact this agency if she finds out that the children
are having unsupervised contact with Hilda.

SUMMARY: Allegations of GN are substantiated. The referral alleged that 18 month
old ███████ tested positive for benzodiazepines when brought in to the ER. He does
have another medical issue that has nothing to do with that. Hilda knew she should
not be breastfeeding ███████ while taking the medication she is taking       a
sleeping pill and an antidepressant) and in fact, told the last SW and PRC staff
member that she was not breastfeeding. Hilda admitted to this and has agreed that
she needs more intensive help for her mental well being and knows that her children
are safest with their father, Horacio. Horacio agreed to keep his children safe and
there will be no unsupervised time with Hilda and the children. PRC is involved and
will report any concerns to this agency.

DISPO: SUBSTANTIATED
████: VERBAL
 CRB: GIVEN
RD: 07/2028

| NAME OF AGENCY: | Stanislaus County Community Services Agency Family and Childrens Services | | DATE: 04/09/2012 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |

| NAME OF SOCIAL WORKER: | CASELOAD ID: | TELEPHONE |
|---|---|---|
| Martha Amezcua | N5I Amezcua | (209) 558-2186 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia

REFERRAL NUMBER: 0364-6507-0987-2074866

| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | [ ] N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Amezcua, Martha | Social Worker IV | 04/04/2012 | 04:27pm |

| CASELOAD # | PHONE NUMBER | LOCATION |
|---|---|---|
| N5I Amezcua | (209) 558-2186 | Community Services Facility |

ALERTS:
Path 1                    *** Spanish Speaking***
SSI/ Medi Cal
Prev CWS HX

CN: Hilda Garcia   ER # 0354535
Allegation General Neglect

████ reports that ████████ age 10 has been having sexual relations with a boy ████ age 13 over the past few months. It was recently discovered when ████ asked for a pregnancy test from ████s mother, ████████████ She in turn told the Father of and took her and his other children to the Mom and discussed what had happened. Mom had ████ tested for pregnancy and STD as it was known that ████ has had STD in the past. ████ so far tested negative. A Police report was done by Father and Mom and have not allowed any contact between ████ and ████ However, the brothers of ████ have been upset at ████ by yelling at her, calling her "ho" and beating up ████ after school. The Mom reports to ████ that there is so much "tension at home between the siblings and Mom and Father." ████ reportedly is to be sent back to Mexico to live with his Uncles. Mom and Father protective . Per reference Chart this incident is no Mandatory report required. However, family seems to have adjustment issues and coping skills impaired. Rationale: Non-Familial . Refer to FRC for services for counseling, coping and adjustment issues to this recent experience. Mom and Father protective, similar age experiences. Police report on partner of 10 yr old.
Screener: Amezcua, M   N5I

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILDREN
Fa's cell

chn w/Mom and Fa

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
8
Page __1__ of __8__

EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
Page 1 of 8

| NAME OF AGENCY: | Stanislaus County Community Services Agency Family and Childrens Services | | DATE: 08/15/2012 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Kelly Hood | | N9B Hood | (209) 558-2328 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia          REFERRAL NUMBER: 0011-7334-0734-4035797

| NA | EVALUATE OUT | | X | IMMEDIATE | | | 3 DAY | | | 5 DAY | | | 10 DAY | | | N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Parreno Amarante, Camille | Social Worker IV | 07/25/2012 | 02:45pm |

| CASELOAD # | PHONE NUMBER | LOCATION |
|---|---|---|
| N5M Parreno-Amarante | (209) 558-3426 | Community Services Facility |

ALERTS:
Path 3, Sexual Abuse          [TANF LINKED]

CN: Hilda Garcia/ER-0354535

CC: Rosario ███████████
TANF LINKED
Telephone
Allegations: Sexual Abuse

According to the RP, ███████ (11) disclosed that she and ███████████ (13) had intercourse
inside the family home, approximately around April of 2012. RP is reporting that ███ is the
son of Rosario ███████ Horacio's; ██████ father. RP is reporting that ████s father
and his girlfriend Rosario and her children all reside in the same home. The concern is that
parents are not supervising the children and inappropriate sexual contact between two young
non-related pre-teen having intercourse and these allegations have not been reported to the
CSA agency. It is unknown if the parents of both children are keeping the two kid separated.
RP states that police report was made on behalf of victim ███████, ███████ however never
cross reported to CSA. Hilda Garcia has no CPS history and Rosario has 1 hit in Alameda CPS.

Rationale: two pre-adolescents having a physical sexual relations and they both reside in
the same home, unknown if ███ has perped on other children in the home. Parents general
neglect, lack of supervision.

LAW ENFORCEMENT AGENCY                    POLICE REPORT NUMBER

### HOME ADDRESS

PHONE NUMBER

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
9
Page  1  of  7

...are Agency    EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with
Penal Code Section 11167.5 and/or
WIC Sections 827 and 10850
Page 1 of 7

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03.54 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page 1 of 10 |

## DELIVERED SERVICE LOG
### Contacts

FROM: 7/25/2012     TO: 7/10/2020

FOR:



**Contact Date: 07/26/2012     On Behalf Of:** ███████

**Contact Purpose:** Investigate Referral     **Staff Person:** Kelly Hood
**Participant(s):** ███████

**Method:** In-Person     **Location:** Home     **Status:** Completed

On July 26, 2012 at 10:00 SW Kelly Hood was assigned an AA and SW Hood responded to referral at 11:00 am on July 26, 2012. SW Hood was not assigned this case until the next day. SW Hood informed SWS Anderson and SWS Wren of the time delay.

SW Hood arrived at the house were Horacio Garcia, father and Rosario ███████ mother are living together. The families were living at a different location, but when Horacio found out that ██████ (11 yo his daughter) had sex with ████ (14 yo-Rosario's son) in the house that the family was living in, Horacio moved his family to current common address. When Rosario found of about the sexual interaction between the two minor's Rosario had her son stay with paternal uncel. However, Rosario was not able to afford the house on her own so Horacio allowed Rosario and her children moved back into the home without ████
Rosario is the mother to: ████ (14), ████ (11), ███████ (10 months), and ████ (10).
Horacio is the father to ████ (11), ████ (4), ████ (6), ████ (13), and ████ (2).

SW Hood met with mom, Rosario ████ outside alone. Rosario is the mother to: ████ (14), ████ (11), ████ (10 months), and ████ (10). SW Hood informed Rosario that a free interpretive sevices is available. Rosario declined the interpretive services. Rosario stated her preferred language is English and her written language is Spanish. Rosario agreed to speak English but preferred to have her CRB in Spanish. SW Hood offered to have a Spanish speaking interpreter but Rosario denied and stated she felt comfortable speaking English. SW Hood provided Spanish CRB. Rosario stated she knew why this SW was at her house and stated it was because ████ and ████ had sex. Rosario stated her family was living at different house in ████ Modesto, CA with Horacio Garcia, father to ████

**PLAINTIFF'S(S')
EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
10
Page 1 of 10

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03:54 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 2 of 10 |

Rosario stated she did not know that ████ (14) and ████ (11) had sex until ████ told Rosario and Horacio that ████ may be pregnant. ████ did not give details to Rosario except that she had sex one time with ████ Rosario stated she never saw the children be physically affectionate.

Rosario stated the day ████ told Horacio, he took all of his kids to his home (current address now), called LE and Rosario send ████ to live with his maternal uncle, Manuel ████ in Washington.

Rosario stated she lost her telephone two weeks ago and does not know Manuel's contact information. SW Hood requested that Rosario gain this information and provide to SW Hood. Rosario stated ████ has been with his uncle for a month and half.

Horacio agreed to met this SW outside with out any visible neighbors. Horacio is the father to ████ (11), ████ (4), ████ (13), and ████ (2). Horacio stated his verbal language is English and written language is Spanish. Horacio stated while he and the children were living with Rosario, ████ (11) told him that she had sex with ████ (14). Horacio stated he called the police and immediately moved his children back to current address. Horacio stated Rosario moved ▪ ▪ with the maternal uncle in Washington or Mexico. Horacio stated he will not allow ████ to have any contact with ████ or come back into his home. Rosario will be moving out of Horacio's home as soon as Rosario has enough money saved up to get a new place.

According to Horacio, he brought ████ to Golden Valley for counseling; however, Horacio feels that the counselor who sees ████'s mom, Hilda, is bias and not addressing ████'s needs. The counselor is only focusing on him and if he is not a good dad.

FF contact with ████ (11) who agreed to meet with SW Hood alone and outside. At the interview, ████ appeared clean and healthy without any visible marks or bruises. ████ reported to SW Hood that she had consensual sex with ████ (13) in her family home while her dad and Rosario (Horacio girlfriend and ████'s mom). ████ stated since she did not use a condom when she had sex with ████ she believed that she may have been pregnant. ████ reported that she did not know what sex was before the incident with ████ ████ stated that her and Juan were boyfriend and girlfriend. Hilda, ████'s mom took ████ to the doctor for blood work for sexual transmitted disease and pregnancy. All test results were negative. ████ does not believe that ████ had sex with any other girls. SW Hood informed ████ that she should not be having sex. ████ stated she was seeing a counselor but stated she does not want to go back to the counselor because she does not like talking.

████ reported she feels safe at home and has enough food to eat. The normal form of discipline is to go inside and sit down. ████ denied being physically abused. If ████ is in trouble she will tell her dad or Rosario. In case of an emergency, ████ will call 9-1-1. ████ reported that drugs were cocaine which is snorted, THC which is smoked and denied seeing anyone use drugs.

FF contact with ████ (6) who agreed to speak with SW Hood with Horacio Sr present in the front yard. ████ was not able to distinguish the difference between a truth and a lie. At the time of the interview, ████ appeared clean and healthy without any visible marks or bruises. The normal form of discipline was to be talked to. ████ denied seeing any of the children in the home touching each other. ████ stated he has enough food in the home and felt safe with dad. In the case of an emergency see Christopher will call 9-1-1.

FF contact with ████ (2) outside of the home in the front yard. At the



| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:54 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 3 of 10 |

time of the visit, ███ appeared clean and healthy without any visible marks or
bruises. Due to child's age SW Hood did not conduct an interview.

FF contact with ███ (4) outside of the home in the front yard. At the
time of the visit ███ appeared clean and healthy without any visible marks or
bruises. ███ is not verbal, According to dad ███ is autistic.

continue to next contact log........

**Contact Date:** 07/26/2012   **On Behalf Of:** ███

**Contact Purpose:** Investigate Referral        **Staff Person:** Kelly Hood
**Participant(s):** ███

**Method:** In-Person        **Location:** Home        **Status:** Completed

FF contact with ███ (13) who agreed to meet with SW Hood alone
in the front yard. At the interview, ███ appeared clean and healthy without any
visible makrs or bruises. Horacio Jr reported there is enough food and feels safe
at home. ███ reported drugs are prescriptions which his dad uses. The bad
type of drugs he was not aware of the name but denied seeing anyone use drugs. When
SW Hood asked ███ if he knew why SW Hood was there, ███ stated he was
aware of the situation between ███ and ███ denied seeing ███ and
███ be intimate. He stated that no one in his family knew that ███ and ███
had sex. ███ told ███ that she and ███ just had sex onetime. ███
stated that ███ left the home and is staying with his uncle. The normal form of
discipline is time out. If ███ is ever in trouble he will tell his dad.
Horacio saw his mother, Hilda two to three weeks ago.

FF contact with ███ (10) agreed to meet with SW Hood with mom present
outside in the front yard. ███ was able to distinguish the difference between a
truth and a lie and agreed to tell the truth during the interview. At the time of
the interview ███ appeared clean and healthy without any marks or bruises. The
normal form of discipline is to go inside. ███ reported he feels safe at home
and there is enough to eat at home. ███ stated he does not see his father often.
According to ███, drugs are cigarettes and guns. SW Hood attempted to review
body parts with ███ but he denied knowing his body parts. ███ denied seeing
any of the children in the home become physical. If Alvaro was in trouble he would
tell his mom. In case of an emergency, ███ agrees to call 9-1-1.

FF contact with ███ (11) agreed to speak with SW Hood alone in the front
yard of the home. At the time of the interview, ███ appeared clean and healthy
with out any marks or bruises. The normal form of discipline is to be placed in
time out. ███ reported drugs to be cocine and denied seeing anyone around her
use drugs. Accoring to ███, ███ is currently in Washington but does not know
why he left. According to ███ denied seeing any children touch each other.

FF contact with ███ (6) who agreed to meet with SW Hood in the front yard
of the home while mom was present. Rosario stated her daughter does speak a little
English but mostly Spanish. SW Hood asked Rosa her preferred language and Rosa
stated her preferred verbal language is English. ███ knows a small amount of
English and appeared to understand SW Hood due to sporadic answering of SW Hood's
questions. ███ stated she would prefer her mother to interpret SW Hood's questions

SER-0612

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03:54 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page. 4 of 10 |

to Spanish. When mom asked ███ the same question in Spanish that SW Hood just asked Rosa in English, ███ would reply in Spanish to SW Hood. At the time of the interview, ███ appeared clean and healthy without any visible marks or bruises.

FF contact with ███████████ (10 months). At the time of the interview, ███ appeared clean and healthy without any visible marks or bruises.

According to Rosario and Horacio Sr, ███████████ is currently living with his maternal uncle, Manuel ███████████. SW Hood emailed Karla Self. Contact information from Karla Self: Manuel ███████████

Rosario invited SW Hood into the home. The trailer is small and did not have any safety or health hazards. The trailer did not have a smell. SW Hood did not see any cockroaches but Horacio Sr explained to SW Hood that he places insecticide behind the kitchen and bathroom cupboards. He stated they only come when a new tenant in the trailer park leaves. Horacio's children sleep in one bedroom and Horacio sleeps in the front room. Rocario sleeps with her children in a different bedroom with her children. SW Hood viewed food in the refrigerator and cupboards.
Horacio Sr and Rosario requested services from FRC. Horacio Sr stated he would like to get counseling for ███ other than Golden Valley because he feels Golden Valley is bias due to Golden Valley also providing services to the children's mom, Hilda. Horacio Sr stated he would like his son, ███ (4) to receive treatment for autisim.

**Contact Date:** 07/26/2012      **On Behalf Of:** ███████████████████████

**Contact Purpose:** Investigate Referral           **Staff Person:** Kelly Hood
**Participant(s):** Juan Gamino
**Method:** In-Person            **Location:** Home            **Status:** Attempted

Rosario, mom, stated ███ left with his uncle to either Washington or Mexico.

**Contact Date:** 07/26/2012      **On Behalf Of:** ███████████████████████

**Contact Purpose:** Investigate Referral           **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** E-Mail            **Location:**            **Status:** Completed

SW Hood emailed Karla Self to obtain contact information for Victor, ███ father. Contact information from Karla Self: Manuel ███████████ ███ Phone:

SW Hood left VM on telephone for Manuel Murillo requesting a telephone call back.

**Contact Date:** 07/26/2012      **On Behalf Of:** ███████████████████████

**Contact Purpose:** Investigate Referral           **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** Telephone            **Location:** Home            **Status:** Attempted

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:54 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:  5 of 10 |

SW Hood was not able to make contact with Victor (████s father) due to his whereabouts unknown. SW Hood left VM on telephone for Manuel ████ requesting a telephone call back.

**Contact Date: 07/26/2012**     **On Behalf Of:** ████████████████████████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Kelly Hood
**Participant(s):** **Hilda Perez**
**Method:** Telephone          **Location:**          **Status:** Completed

TC with Hilda Garcia and Hilda will meet SW Hood at CSA at roughly 2:45pm.

**Contact Date: 07/26/2012**     **On Behalf Of:** ████████████████████████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Kelly Hood
**Participant(s):** **Hilda Perez**
**Method:** In-Person          **Location:** CWS Office          **Status:** Completed

SW Hood met with Hilda (mother to ████████████████) at the CSA office on July 26, 2012 at 2:45pm. Hilda stated the courts recently assigned custody to Horacio. According to Hilda she made a LE report with Det Joe Delgado who informed her that he will not be proceeding with the case due to the children's age. SW Hood spoke with Det J Delgado who confirmed that he spoke with Hilda and is waiting to hear from the DA about pursuing the investigation further. According to Hilda, ████(her daughter) reported to mom that ████████ would wake up in her bedroom with ████looking at her and then he would just leave. ████ told ████ that if the family found out they were talking ████ would get in trouble. ████ reported to her mother on April 1, 2012 that she had sex with ████ in February 2012.
According to Hilda when ████ told ████ that she had sex, Hilda called LE. Hilda was very concerned that ████ was still leaving in the home with ███████ SW Hood stated that ████ was not in the home. Hilda feels that the children are not being supervised by Horacio and Rosario. Mom reported that she could see in ████ and ███████s eyes that they had a crush on each other.
Hilda took ████████ to Golden Valley Clinic on April 2, 2012 for a sexual transmitted disease and pregnancy test: all test results were negative.

**Contact Date: 07/27/2012**     **On Behalf Of:** ████████████████████████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** Telephone          **Location:**          **Status:** Attempted

TC to ████████ ( father to ███████████████████a) ████████ (contact information provided by Karla Self) but the telephone number is disconnected.

SER-0614

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03:54 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page 6 of 10 |

**Contact Date:** 07/27/2012    **On Behalf Of:** ███████████████████████████

**Contact Purpose:** Investigate Referral      **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** Telephone        **Location:**        **Status:** Completed

Attempted cross report by SW Hood to Det J Delgado via telephone call . According
to mom, Hilda she spoke to Det Delgado who informed her based on the children's
ages at the time of intercourse ██████ (10) and ████ (12) no further investigation
is needed.

**Contact Date:** 07/31/2012    **On Behalf Of:** ███████████████████████████

**Contact Purpose:** Investigate Referral      **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** E-Mail        **Location:**        **Status:** Completed

Emailed Det J Delgado requesting feed back on cross report. Mom, Hilda Garcia
provided SW Hood        which she obtained from the original responding
officer with SO, Adam Christianson. SW Hood did not confirm with SO that Sheriff
Adam Christianson spoke with Hilda.

**Contact Date:** 08/01/2012    **On Behalf Of:** ███████████████████████████

**Contact Purpose:** Investigate Referral      **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** E-Mail        **Location:**        **Status:** Completed

Emailed from Det J Delgado, "If the DA is not willing to file on the case, I will
close the investigation. I will confirm with the DA on whether they have am
interest in the case and let you know." SW Hood will wait to hear back from Det
Delgado before attempting further contact with ████ perpetrator.

**Contact Date:** 08/02/2012    **On Behalf Of:** ███████████████████████████

**Contact Purpose:** Investigate Referral      **Staff Person:** Kelly Hood
**Participant(s):** Rosario ██████████
**Method:** In-Person        **Location:** Home        **Status:** Completed

SW Hood conducted a unannounced HV to common address. Rosario agreed to meet with
SW Hood outside. Rosario stated she lost her phone does not have contact
information for her brother who is caring for her son ██████. Rosario stated she is
not concerned with ████ because her brother can provide for ████. SW Hood explained
to Rosario that this SW is concerned Rosario is hiding ████ from CPS and ████ maybe
in danger. Rosario stated she does not believe ████ is in danger. Rosario stated
she is having a hard time caring for 10 children and can not afford a calling card
to call her mother in Mexico who may be able to provide contact information for her
brother. Rosario stated that no one from the FRC has been to the house to visit the
family. SW Hood stated she will bring someone from the FRC tomorrow and provide bus
passes so she can go to the grocery store and to the FRC for diapers.

SER-0615

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:54 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page. 7 of 10 |

**Contact Date:** 08/06/2012    **On Behalf Of:** ███████

**Contact Purpose:** Investigate Referral        **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** E-Mail        **Location:**        **Status:** Completed

SW Hood emailed Det Delgado to check status of case.

**Contact Date:** 08/06/2012    **On Behalf Of:** ███████

**Contact Purpose:** Investigate Referral        **Staff Person:** Kelly Hood
**Participant(s):** Rosario ███
**Method:** In-Person        **Location:** Home        **Status:** Completed

SW Hood made HV with Rosario at her home in the front yard. Rosario agreed to speak
with SW Hood in front yard. SW Hood provided information for Child's Crisis Center
and bus passes. Rosario stated she found out that ███ is staying with his father,
Victor ███. SW Hood confirmed that
Rosario could see ███ away from the other children and he was not allowed to come
to common address.

**Contact Date:** 08/06/2012    **On Behalf Of:** ███████

**Contact Purpose:** Investigate Referral        **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** Telephone        **Location:**        **Status:** Completed

TC from Maria from Parent Resource Center stating she made contact with Rosario.
According to Maria, Rosario requested SW Hood to call Rosario back because she did
not understand what SW Hood explained to Rosario about the current status of
investigation. SW Hood stated to Maria this SW will have someone call mom who
speaks Spanish to explain the current situation. SW Hood did not take an
interpreter orginally due to the AA was for an English speaking family.

**Contact Date:** 08/07/2012    **On Behalf Of:** ███████

**Contact Purpose:** Investigate Referral        **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** E-Mail        **Location:**        **Status:** Completed

Received email from Det Delgado, "Hi Kelly, Go ahead and make contact, that wont be
a problem."
SW Hood will contact family.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03.54 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page    8 of 10 |

**Contact Date:** 08/08/2012     **On Behalf Of:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Contact Purpose:** Investigate Referral          **Staff Person:** Kelly Hood
**Participant(s):** **Hilda Perez**
**Method:** Telephone          **Location:**          **Status:** Completed

TC to Hilda to update of the current status of the investigation. Hilda is afriad
that ▓▓▓▓▓ is having contact with ▓▓▓ based on ▓▓▓▓▓▓ posting on
www.facebook.com. Hilda has not seen children in 9 weeks.

**Contact Date:** 08/08/2012     **On Behalf Of:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Contact Purpose:** Investigate Referral          **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** Telephone          **Location:**          **Status:** Completed

TC to Victor, father of ▓▓▓ by SW Ruezga. Victor stated his preferred to verbal
language of Spanish. SW Ruezga informed Victor that CPS offers a free interpretive
service. All further contact with Victor was conducted in Spanish. The current
contact was made by SW Ruezga who interpreted for SW Hood. Victor reported that
▓▓▓ was in his care but currently at daycare. Victor stated he will pick up ▓▓▓
from day care and SWs could meet ▓▓▓ and Victor at Victor's home.

**Contact Date:** 08/08/2012     **On Behalf Of:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Contact Purpose:** Investigate Referral          **Staff Person:** Kelly Hood
**Participant(s):** **Rosario** ▓▓▓▓▓
**Method:** Telephone          **Location:**          **Status:** Completed

TC by SW Maldonado on behalf of SW Hood to Rosario. Per prior contact that Rosario
had with FRC worker, Maria, Rosario requested someone to speak to her in Spanish
for clarification about the case. SW Maldonado informed Rosario that CSA offers
free interpretive services and SW Maldonado would be interpreting for SW Hood. The
contact was conducted in Spanish. SW Maldonado who interpreted for SW Hood informed
Rosario that the case is ongoing and will continue to be until SW Hood makes FF
contact with ▓▓▓▓▓ Rosario was also informed that she can see ▓▓▓ at his father's
house, Victor but ▓▓▓ is not allowed to come to the common address.

**Contact Date:** 08/10/2012     **On Behalf Of:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Contact Purpose:** Investigate Referral          **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** Telephone          **Location:**          **Status:** Completed

SW Ruezga completed a telephone call to Victor, ▓▓▓▓▓ father and interpreted for
SW Hood. Victor stated he would be home all day and SWs can come to his house.

SER-0617

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03.54 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page 9 of 10 |

**Contact Date:** 08/10/2012    **On Behalf Of:** ████████████████████████████████
████████████████████████████████████████████

**Contact Purpose:** Investigate Referral    **Staff Person:** Kelly Hood
**Participant(s):** ███████████████
**Method:** In-Person    **Location:** Home    **Status:** Completed

SW Hood and SW Maldanado conducted an unannounced HV to █████████████████████
where █████ father, Victor lives. Per prior telephone conversation with Victor via
SW Ruezga Victor informed SWs that he would be home all day with ██████

██████(14) greeted SWs outside of the home. SW Hood introduced SWs to █████ who
agreed he felt comfortable talking with SWs alone on the front porch of the home.
SW Hood informed ██████ he does not have to talk to SWs and could leave at any time.
SWs informed █████ he nor anyone in his family was in trouble █████ stated he
understood. At the time of the interview, █████ appeared clean and healthy without
any visible marks or bruises. SW Hood provided ████ with a CRB and business and
asked if he could give it to his father. █████ stated his mother sent him to live
with his father a few weeks ago and did not know why. █████ stated he has enough
food to eat at both his father's home and his mother's home. █████ reported he felt
safe with both his mother and his father. █████ stated the normal form of discipline
was to go to his room or not be able to play video games. ██████ reported that he
knew █████ and stated he and ████████ were boyfriend and girlfriend. █████ denied
touching █████ except to kiss her. █████ reported he would like to go back and
live with his mother.

**Contact Date:** 08/10/2012    **On Behalf Of:** ███████████████████████████
██████████████████████████████████████████████████

**Contact Purpose:** Investigate Referral    **Staff Person:** Kelly Hood
**Participant(s):**
**Method:** Telephone    **Location:**    **Status:** Completed

SW Maldanado completed TC to Victor, █████ father on behalf of SW Hood. Victor was
informed that CSA offers free interpretive services and SW Maldanado interpreted
for SW Hood through out the interview. Victor stated he preferred verbal language
was Spanish. The interview was conducted in Spanish. SWs informed Victor was
offered to meet in person or the telephone and agreed to speak on the telephone.
SWs informed Victor of the allegation and he stated he was not aware of the
allegation. Victor reported that the mom, Rosario told him to get █████ but did not
say why. Victor stated he was not aware of the situation. SWs informed him that
█████ can not be at the house where Rosario is staying. Victor stated he understood
and wanted to know if █████ could stay at his home. SWs informed Victor that █████
can continue to stay at the home.

SUMMARY:
The allegation of SEXUAL ABUSE is UNFOUNDED due to █████ (11) and █████ (14)
reporting conflicting information. █████ stated she did have unprotected
consensual sex with █████ and her family did not know until █████ reported to her
mother, Hilda and father, Horacio. █████ reported that he only kissed ████████.
Horacio and Rosario denied knowing about the intercourse between █████ and ████████.
Once Horacio found out about the sexual contact between his daughter, █████████, he
moved his family out of the home he was living at with Rosario. When Rosario,
█████ mom, found out that her son and █████████ had sex Rosario reported she sent

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03.54 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page    10 of 10 |

██████ to live with his maternal uncle. However, through out the investigation it appears that ████ was living with Victor, █████s father. SW Hood cross reported to Det J. Delgado who stated SW Hood could make contact with all parties involved and does not feel that there will be any further investigation based on children's age and is currently waiting to hear back from DA. Family is currently working with Maria, FRC worker. Both parent's Rocio and Horacio are protective of their children. SW Hood believed that the parents did not know about the sexual intercourse.

DISPO: SEXUAL ABUSE UNFOUNDED
MRP: NONE
CRB:GIVEN
RD: 10/29

| NAME OF AGENCY: | Stanislaus County Community Services Agency Family and Childrens Services | | DATE: 08/15/2012 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Carol Stewart | | N5C Stewart | (209) 558-2384 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia     REFERRAL NUMBER: 0023-6660-3044-8054628

| | | | | | |
|---|---|---|---|---|---|
| X EVALUATE OUT | ☐ IMMEDIATE | ☐ 3 DAY | ☐ 5 DAY | ☐ 10 DAY | ☐ N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Stewart, Carol | Social worker IV | 08/15/2012 | 09:44am |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5C Stewart | (209) 558-2384 | Community Services Facility | |

ALERTS:
Case Name: Hilda Garcia/ER-0354535
Sexual Abuse/Eval Out
(Transitional Cal Fresh Only)

Mother told ████ that in February 10 y/o ████████ woke to find dad's girlfriend's son, ████ Gamino, then 13, removing her pants, and he forcefully had sex with her. Mother reported to LE and CPS when ██████ told her. ████ states SW Kelly Hood has already seen the family. Screener finds referral, unfounded and pending approval. ████████ said the sexual contact was consensual. ████ is no longer living in the home with his mother.

Rationale: Duplicate information, already investigated.

Screener: Carol Stewart - N5C
LAW ENFORCEMENT AGENCY                                     POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| | i |

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
Father has custody of the children. ████ and ████████ attend ████ School.

### VICTIM INFORMATION

| NAME | AKA (if applicable) | | SOCIAL SECURITY # |
|---|---|---|---|
| ████████ | | | |

| DOB | AGE | AGE CODE | SEX | ETHNICITY | LANGUAGE | ICWA ELIGIBILITY |
|---|---|---|---|---|---|---|
| ████ | 11 | Year(s) | F | | | Not Asked |

SCHOOL/DAYCARE NAME

SCHOOL/DAYCARE ADDRESS

| ABUSE CATEGORY (See Screener Narrative Attached) | ALLEGED PERPETRATOR NAME | |
|---|---|---|
| Sexual Abuse | ████████ | |
| CASE WORKER NAME (FOR OPEN CASE) | PHONE # (FOR OPEN CASE) | CASELOAD # |

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
11
Page 1 of 5

and Welfare Agency     EMERGENCY RESPONSE REFERRAL INFORMATION
vices
System

Confidential in accordance with
Penal Code Section 11167.5 and/or
WIC Sections 827 and 10850
Page 1 of 5

SER-0620

| NAME OF AGENCY: | Stanislaus County Community Services Agency Family and Childrens Services | | DATE: 09/20/2012 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Lao Ha | | N9E Ha | (209) 558-2973 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia          REFERRAL NUMBER: 1178-1355-0910-4035797

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | | TITLE | DATE | TIME |
|---|---|---|---|---|
| Parreno Amarante, Camille | | Social Worker IV | 09/19/2012 | 12:57pm |
| CASELOAD # | PHONE NUMBER | | LOCATION | |
| N5M Parreno-Amarante | (209) 558-3426 | | Community Services Facility | |

ALERTS:
Path 2, General Neglect          [TANF LINKED]

CN: Hilda Garcia          ER-0354535

CCN: Rosario ███████████
[TANF LINKED]

According to the RP, █████████s front teeth are decayed, ████████teeth look grey in color, they are in need of dental work, past domestic violence in front of the kids. RP believes that the kids need to go to counseling for their emotional well being. Also being reported is that █████████ had small marks on his face, child stated that he got them from popping grease when he was cooking.

Rationale: children need to be taken to the dentist, to make sure that the children's teeth are not rotten and

Screener - N5M- Parreno Amarante

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| ███████, ███████████ █████ | |

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
The children live with their father Horacio Garcia, who has full custody of the children and mom has supervised visits.

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
12
Page  1  of  8

nd Welfare Agency          **EMERGENCY RESPONSE REFERRAL INFORMATION**
ces
ystem

Confidential in accordance with Penal Code Section 11167 5 and/or WIC Sections 827 and 10850
Page 1 of 8

SER-0621

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03:56 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page   1 of 7 |

## DELIVERED SERVICE LOG
### Contacts

FROM:  9/19/2012    TO:  7/10/2020

FOR:



**Contact Date: 09/19/2012    On Behalf Of:**

Contact Purpose: Investigate Referral          Staff Person: Lao Ha
Participant(s): **Horacio G. Garcia, Hilda Perez**
Method: Written          Location:          Status: Completed

9/19/12
4:35pm

SW checked Proview, and there was no result for Horacio Garcia Sr. (father) and Hilda Garcia (mother).

**Contact Date: 09/19/2012    On Behalf Of:**

Contact Purpose: Investigate Referral          Staff Person: Lao Ha
Participant(s):
Method: Telephone          Location:          Status: Scheduled

9/19/12
4:42pm

T/C to Parent Resource Center at 549-8193. Case Manager Maria stated that she has been working with Horacio (father) who has been proactive. Case Manager Maria expressed no concern with Horacio, who did take changed the children to a different clinic since mom was going to the same clinic and causing some conflicts with the doctor. Per Case Manager Maria, Horacio has been attending counseling and the family will receive joint counseling soon.  SW informed Case Manager Maria that SW plan to attempt home visit tomorrow in the morning, and Case Manager Maria said she will be available when SW call tomorrow.



**PLAINTIFF'S(S')
EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
13
Page  1  of  7

SER-0622

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:56 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 2 of 7 |

**Contact Date:** 09/20/2012    **On Behalf Of:** ▇▇▇▇▇▇▇▇▇

**Contact Purpose:** Investigate Referral          **Staff Person:** Lao Ha
**Participant(s): Christopher Garcia, Destiny A. Garcia Perez**
**Method:** In-Person        **Location:** School        **Status:** Completed

9/20/12
9:10am

Visit to ▇▇▇▇▇ Elementary School located on ▇▇▇▇▇▇▇▇.
Children declined to have school personnel present during the interview, which
lasted less than 30 minutes.

F/F with ▇▇▇▇▇▇▇▇ (6 year old) who knew his colors and the difference
between a truth and a lie. He promised to tell the truth. ▇▇▇▇▇ lives with
his dad (Horacio), 3 brothers, and 1 sister. He shared mom moved out already
because mom and dad were arguing with each other, and mom ran over the big dog with
her van. ▇▇▇▇r said mom said bad words to dad, such as the "F" (fuck you)
and "B" (bitch) words. He expressed he doesn't like to hear it, so he goes in the
living room to watch TV. ▇▇▇▇▇r disclosed he visits with mom 1 time last
weekend at the park, and his grandmothers were also at the visit. He reported dad
put him in timeout when he doesn't listen. ▇▇▇▇▇r explained his 2 front teeth
are loose and maybe will fall out, but there is no pain with his teeth. He opened
his mouth, and SW didn't observe any decay but only about 4 silver crowns.
▇▇▇▇ doesn't know that drug is but described alcohol as beer. He said only
the neighbor drinks beer. ▇▇▇▇▇ shared that ▇ aka ▇▇▇▇▇ tried to
cook potatoes fries and got the oil in his face. He disclosed dad takes care of
him, and when dad has to go somewhere, grandparents come to watch them.
▇▇▇▇▇r stated he feels safe with dad and mom. He would call 911 if something
bad happens.

F/F with ▇▇▇▇▇ (11 year old) who promised to tell the truth. She
lives with dad, step mom (Rosario), siblings, and Rosario's kids. ▇▇▇▇y stated
that Rosario moved out for a couple of weeks and moved back in when school started.
She said mom moved out a couple of months ago, and she visited mom last Saturday at
the park where her grandmothers were present. ▇▇▇▇ shared dad and step mom get
along with each other and don't argue or fight. She reported that mom would say
negative things about dad. ▇▇▇▇ disclosed mom used to yell and hit dad, and dad
wouldn't do anything to mom. She expressed feeling mad when mom did that to dad.
▇▇▇▇ shared dad would send her to her room when she gets in trouble. She stated
no one's teeth are hurting, and dad usually tells them to brush at least twice a
day. ▇▇▇▇ described drugs as cocaine (white) and marijuana (green). She
described alcohol as Corona and Tequila. Destiny said dad smoke cigarettes outside
the house. ▇▇▇▇y explained that ▇ tried to cook some fries and when step mom
went outside to check the kids, ▇. put the fries in the oil when it was hot, so it
splashed on his face. She shared dad, step mom, or grandparents take care of them.
▇▇▇▇ said she feels safe with dad and step mom. She expressed mom is not safe
because mom sued to hit her with a wire. ▇▇▇▇ would call the police if
something bad happens.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03.56 AM | Logged-On Staff Person  Eric Anderson  N9 In-box | Page:  3 of 7 |

**Contact Date:  09/20/2012**    **On Behalf Of:** ▊▊ e ▊▊▊▊▊▊▊▊▊
▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

**Contact Purpose:** Investigate Referral    ▊▊▊▊▊▊▊▊    **Staff Person:** Lao Ha
**Participant(s):**▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ G▊▊o
**Method:** In-Person    **Location:** School    **Status:** Completed

9/20/12
9:55am

Visit to ▊▊▊▊▊▊▊▊▊▊ School located on ▊▊▊▊▊▊▊▊, CA
95358.  Children declined to have school personnel present during the interview,
which lasted less than 30 minutes.

F/F with ▊▊▊▊▊▊▊▊▊ (13 year old) who promised to tell the truth.  He
lives with dad (Horacio), dad's girlfriend (Rosario), siblings, and Rosario's kids.
Horacio reported that mom moved out a while back, and he visited her last Saturday
at the park.  He shared mom used to start argument with dad, and dad wouldn't do
anything about it and just stood there doing nothing.  ▊▊▊o expressed even
though his mom is not diagnosed with mental health but she probably had bipolar
because he researched it.  He stated dad and his girlfriend don't argue or fight.
▊▊▊o said mom used to hit and slapped Destiny.  He expressed he is scared of mom
because one time, she held him down and he couldn't breath.  ▊▊▊▊ shared no
one's teeth is hurting, and everyone brush their teeth everyday.  He disclosed dad
would put him in timeout when he doesn't listen.  ▊▊▊▊ described drugs as
marijuana (green) and alcohol as Budlight.  He reported no one drink alcohol or
uses drug.  ▊▊▊ explained that he tried to cook potato fries and the oil was
hot, so it splashed on his face.  He shared that dad's girlfriend was cooking
dinner but he didn't want to eat it, so he decided to cook his own food.  ▊▊▊
showed SW his face, and there was small red marks under the chin.  He didn't
complain about pain and said he put ointment on it right away.  ▊▊▊▊said he
feels safe with dad and dad's girlfriend but not mom.  He would call 911 if
something bad happens.

▊▊▊▊▊▊▊▊▊ (11 year old) who promised to tell the truth.  She lives with dad
and ▊▊n right now but will be coming back to stay with moms today.  ▊▊▊ shared
mom lives with boyfriend (Horacio) and his kids.  She reported that everyone get
along even though sometimes there are so many kids.  ▊▊▊▊ disclosed no one's
teeth are hurting.  ▊▊▊▊ shared ▊ that she didn't know what happened to
▊▊▊▊s face.  She reported described drugs as marijuana (green) and alcohol as
beer and wine.  ▊▊▊▊ shared her dad drinks a couple of beers with his friends
but not to the point he is passing out or acting out of control.  She said mom and
her boyfriend don't argue or fight with each other.  ▊▊▊▊ reported mom would put
her in timeout and dad would warn her if she did something wrong.  She feels safe
with mom and dad.  ▊▊▊▊▊ would call mom and dad if something bad happens.

**Contact Date:  09/20/2012**    **On Behalf Of:**▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊
▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

**Contact Purpose:** Investigate Referral    **Staff Person:** Lao Ha
**Participant(s):**▊▊▊▊▊▊▊▊▊▊▊
**Method:** In-Person    **Location:** School    **Status:** Completed

9/20/12

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03 56 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page 4 of 7 |

10:40am

Visit to ▮▮▮▮e Elementary School located on 707▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Children declined to have school personnel present during the interview, which
lasted less than 30 minutes.

F/F with ▮▮▮▮▮▮▮ (10 year old) who promised to tell the truth. He lives with
mom, mom's boyfriend (Horacio), and Horacio's kids. ▮▮▮ said he will visit his
dad today. He shared that no one teeth is hurting. ▮▮▮ shared ▮. was trying
to make potato fries but the oil popped on his face. He reported that mom was
cooking but ▮. didn't want to eat what she made. ▮▮▮ disclosed mom would tell
him to stop if he did something wrong, and dad would tell him to stop too. He
described alcohol as beer and drugs as a needle. ▮▮▮▮ shared no one drink beer,
and he saw a man dropped a needle on the ground. He said mom and her boyfriend
don't argue or fight each other. ▮▮▮ feels safe with mom and dad. He would
call someone if something bad happens, and SW explained ▮▮▮▮ could call 911 or
his parents.

F/F with ▮▮▮▮▮o (6 year old) who knew her colors and the difference between a
truth and a lie. She promised to tell the truth. ▮▮ said dad lives with Juan,
and mom lives her boyfriend (Horacio). She stated mom would put her in timeout and
dad doesn't do anything when she gets in trouble. ▮▮ doesn't know what drugs or
alcohol is. She reported mom and her boyfriend don't argue or fight with each
other. ▮▮▮ shared no one's teeth is hurting, and she didn't see what happened to
▮▮▮▮▮▮ face. She feels safe with mom and dad. ▮▮▮ doesn't know who to
call, so SW explained she can call 911 or her parents if something bad happens.

**Contact Date: 09/20/2012    On Behalf Of** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Contact Purpose: Investigate Referral          Staff Person: Lao Ha
Participant(s):
Method: Telephone          Location:          Status: Scheduled

9/20/12
10:50am

T/C to Parent Resource Center at 549-8193. Case Manager Maria will be available to
meet with SW today at 11:15am.

**Contact Date: 09/20/2012    On Behalf Of:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Contact Purpose: Investigate Referral          Staff Person: Lao Ha
Participant(s): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮
Method: In-Person          Location: Home          Status: Completed

9/20/12
11:15am

Visit to 822 Bystrum Road, Space 5, Modesto, CA 95351. SW arrived early and waited
for Parent Resource Center Case Manager Maria. A neighbor walked by and SW asked
if she knew Horacio (father) and Rosario (mother). The neighbor threw a rock at

SER-0625

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03:56 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 5 of 7 |

the trailer and called out for Horacio. A woman (Rosario) looked out her window and SW waived to her. The neighbor went back to her trailer, and Rosario came out to meet with SW. SW provided CRB and business card. Rosario left to the front of the trailer and Horacio came out to the back where SW parked the county vehicle. While SW was talking, Case Manager Maria arrived. The interview took place along the fence in the back of the trailer.

F/F with Horacio Garcia DOB (6/28/1981) who is the father to ███████████,
███████████. SW addressed the allegations. Horacio reported that the kids visited with mom on Saturday at the park with paternal grandmother supervising the visit. Horacio stated that mom has visited until now and didn't call to ask about the visits either. Horacio said he takes all his kids to the doctor and dentist, and there is no one complaining about tooth pain. Horacio disclosed ████ got splashed with oil when he tried to cook fries, but he is okay now after he applied the cream. Horacio shared he was attending counseling but has not gone because he started work. Horacio stated that ████ and ██████y will begin counseling through Center for Human Services on McHenry. Horacio said he is receiving food stamps, cash aid, Medi-cal, and WIC for his kids. Horacio denied any criminal, substance abuse, child abuse, or mental health history. Horacio stated he is taking medications for back pain (Hydrocodon and Opana by Dr. Patrick Phoades) and provided SW with prescription bottles. Horacio shared his ex-wife (Hilda) argued with him in front of the kids. SW informed Horacio about the harmful effects of domestic violence in the presence of children. Horacio shared he is no longer with Hilda. Horacio reported using timeout and taking things away from the kids when they don't listen.

After SW interviewed Horacio, SW requested to speak with Rosario privately. Rosario preferred primary language for oral and written communication in Spanish. CSA offered free interpretive services. Rosario accepted the language services. This conversation was conducted in Spanish by Case Manager Maria.

F/F with Rosario ██████ DOB ██████) who is the mother to ██████,
███████████. SW addressed the allegations. Rosario said none of the kids' teeth are hurting. Rosario shared that ██. tried to cook some fries and got hurt from it, but he put cream on it so it is better now. Rosario denied any criminal, substance abuse, or child abuse history. Rosario admitted her ex-spouse was verbally abusive to her but in the front of the kids, so she called the police. SW informed Rosario about the harmful effects of domestic violence in the presence of children. Rosario shared she uses timeout and threatens the kids that they will not visit with their dad if they misbehave. Rosario said she was diagnosed with depression after most of her family left Modesto and she felt there was no family support. Rosario reported she is not taking any medications and never had thoughts of harming herself or others. Rosario shared her kids visit with their dad. Rosario wanted help with getting her TANF. SW explained she needs to contact her eligibility worker.

F/F with ███████████ (4 year old) who appeared healthy and clean. He didn't want to talk with SW. Damien was hiding between Horacio and Rosario. Horacio opened Damien's mouth, and SW didn't observe any decay.

F/F with ███████████ (2 year old) who appeared healthy and clean. SW observed a scratch on his nose. Horacio stated that ████ pushed ██████. SW explained to ██████ to not treat his little brother like that because ██████ can get seriously hurt next time, and ██████ said okay. ██████ didn't want to talk with SW.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 03:56 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page 6 of 7 |

F/F with ████████ (10 months old) who appeared healthy and clean with no
visible mark or bruise. He was too young to be interviewed.

**Contact Date: 09/20/2012    On Behalf Of:** ████ █ ████ █ ████
████████████████████████████████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Lao Ha
**Participant(s):** Hilda Perez
**Method:** In-Person        **Location:** Home        **Status:** Completed

9/20/12
12:00pm

Visit to 1220 Courtney Way, Modesto, CA 95358. SW approached the residence and saw
a man getting something in his car. SW requested to speak with Hilda (mother), so
the man called someone and informed SW that Hilda will come out shortly. SW waited
5 minutes outside the parking curb. SW rang the door bell and an older woman
(maternal grandmother) opened the door and invited SW into the home. Hilda came
downstairs, and SW provided CRB and business card. The interview took place in the
kitchen area.

F/F with Hilda Garcia DOB (5/11/1981) who is the mother to ████████████,
████████████ y. SW addressed the allegations. Hilda said she
visited with her kids on Saturday at the park and noticed that ████████ r have
some cavities such as grey teeth and ████████ had a black spot in one of the teeth.
Hilda expressed during the visit, ████ was okay, ████ r was crying because
he was happy, ████ didn't want to hug her, and ██ didn't want to be near her.
Hilda reported the children didn't complain about pain, but she is concerned
because she usually takes the kids to all the appointments and don't think Horacio
is taking them. Hilda stated Horacio told her that he would take ████████ and ██
for counseling but Horacio hasn't told her anything about it. Hilda disclosed
Horacio was emotionally, verbally, and financially abusive to her because he said
mean things and kept all the money in the relationship. SW informed Hilda about
the harmful effects of domestic violence in the presence of children. Hilda denied
any criminal, substance abuse, or child abuse history. Hilda admitted she had
postpartum depression but didn't take any medication. Hilda expressed she never
had thoughts of harming herself or others. Hilda said she uses timeout with the
kids. Hilda stated she has spanked the kids with her hands and don't recall if
there were mark or bruise. SW informed Hilda about the limitations of spanking.
SW recommended Hilda to discuss concerns with Horacio about the children's well-
being.

**Contact Date: 09/20/2012    On Behalf Of:** ████ █ ████
████████      ████████████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Lao Ha
**Participant(s):**
**Method:** Telephone        **Location:**        **Status:** Completed

9/20/12
12:47pm

T/C to Victor ████████          ) who is the father to ████████████,
████████████ Victor said he doesn't speak English, and SW stated she will

SER-0627

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 03 56 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 7 of 7 |

get a Spanish SW to call back later.

1:19pm

T/C to Victor at ████8.  Victor preferred primary language for oral and written communication in Spanish.  CSA offered free interpretive services.  Victor accepted the language services.  This conversation was conducted in Spanish by SW Orozco-Sandoval.  Victor stated that he is taking care of ████.  Per Victor, ████ doesn't have contact with mom, and the last time was about 1 month ago.  Victor reported that ████ does have telephone calls with mom.  Victor stated ████ attends ████ High School.  Victor expressed he has no concern with mom, except that he worries about the pills she is taking because she acts a little different.  Victor requested information about how to obtain resources for low income housing.  SW Orozco-Sandoval provided Parent Resource Center information.

Summary:  General  Neglect-Unfounded.  A referral was received regarding to children not taken to dentist for tooth decay.  ███████████a, and ████ disclosed mom (Rosario) and mom's boyfriend (Horacio) do not argue or fight.  ██████████., and ████████r stated that dad (Horacio) and step mom (Rosario) do not argue or fight.  No disclosure of tooth pain.  ████████ explained he tried to cook fries and got splashed by oil.  Rosario and Horacio shared they take care of their kids.  Hilda expressed concerns because of what she seen during her supervised visit.  Families are linked with Parent Resource Center for counseling and other resources.  Situation Stabilized.

Disposition:  09/20/2012
MRP:  N/A
CRB:  Provided
Retention:  DO NOT DESTORY

SER-0628

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 01/29/2014 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |
| Camille Parreno Amarante | | N5M Parreno-Amarante | (209) 558-3426 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia aka Perez         REFERRAL NUMBER: 1024-2001-3477-0035797

| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | [ ] N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | | TITLE | DATE | TIME |
|---|---|---|---|---|
| Parreno Amarante, Camille | | Social Worker IV | 01/24/2014 | 10:28am |
| CASELOAD # | PHONE NUMBER | | LOCATION | |
| N5M Parreno-Amarante | (209) 558-3426 | | Community Services Facility | |

ALERTS:
Case Name:Hilda Garcia aka Perez/ER-0354535
Allegations:General Neglect/Path 1
TANF LINKED
Telephone

According to the ████, on 1/24/14 ████████ disclosed that she got into a verbal argument with her mother and that her grandfather pushed her and hit her arm because she was talking back to her mom. ████████ also reports that her mother pulled her younger sibling by the arm and threatened to hit them. ████████ states that law enforcement was involved in incident. Dad has full custody and mom has visits on Saturday's only. No reported marks or bruises.

Rationale: parent teen conflict, no marks or bruises; this referral is being assigned as a PATH 1

Screener:Camille Parreno Amarante

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS   Dad: Horacio Garcia

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
14
Page   1   of   8

...Welfare Agency     EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with Penal Code Section 11167 5 and/or WIC Sections 827 and 10850
Page 1 of 8

SER-0629

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | DATE: 05/12/2014 |
|---|---|---|

STREET ADDRESS: 251 East Hackett Road

CITY AND ZIP CODE: Modesto, California 95358    COUNTY: Stanislaus

| NAME OF SOCIAL WORKER: | | TELEPHONE |
|---|---|---|
| Carol Stewart | CASELOAD ID: N5C Stewart | (209) 558-2350 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia          REFERRAL NUMBER: 0389-0191-2485-0054628

| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | [ ] N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Stewart, Carol | Social worker IV | 05/08/2014 | 01:41pm |

| CASELOAD # | PHONE NUMBER | LOCATION |
|---|---|---|
| N5C Stewart | (209) 558-2350 | Community Services Facility |

ALERTS:

Case Name: Hilda Garcia aka Perez/ER-0354535
General Neglect/Path 1
[TANF Linked]

Twelve y/o ▮▮▮▮ told ▬▬ that mom, with whom she has visits, has been pressuring her to wear more red because mom is gang affiliated. ▮▮▮▮ doesn't want to do it. ▮▮▮▮ does not want to go to mom's, but feels that she needs to be there to protect her younger siblings.

Screener finds that a referral was made in February for parent/teen conflict, however, neither Hutton House or Patterson FRC have a record of the referral.

Rationale: No abuse or neglect disclosed. Re-referring to Patterson FRC for parenting support to mother due to conflicts between mother and 12 y/o. Possible gang affiliation for mother.

Screener: Carol Stewart - N5C

LAW ENFORCEMENT AGENCY                          POLICE REPORT NUMBER

### HOME ADDRESS

|  | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

▮▮▮▮▮▮▮ live with father. The children see mom every Saturday during the day only. ▮▮▮▮ attends ▮▮▮▮ Middle School. ▮▮▮▮ lives with mother.

**PLAINTIFF'S(S')
EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**15**
Page __1__ of __9__

...are Agency    EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with
Penal Code Section 11167.5 and/or
WIC Sections 827 and 10850
Page 1 of 9

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 06/19/2014 |
|---|---|---|---|

STREET ADDRESS: 251 East Hackett Road

CITY AND ZIP CODE: Modesto, California 95358    COUNTY: Stanislaus

| NAME OF SOCIAL WORKER: | CASELOAD ID: | TELEPHONE |
|---|---|---|
| Zorayda Velazquez | N5G Velazquez | (209) 558-2186 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia aka Perez    REFERRAL NUMBER: 0960-2495-3381-0078567

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Velazquez, Zorayda | Social Worker IV | 06/17/2014 | 10:13am |
| CASELOAD # N5G Velazquez | PHONE NUMBER (209) 558-2186 | LOCATION Community Services Facility | |

ALERTS:
CN: Hilda Garcia aka Perez/ER-0354535
General Neglect/Path 1
TANF link

Anonymous reporter states that in the month of February (2014), ▮▮▮ (3) had reported he doesn't like cold baths because it makes him cry, when ask who gives him cold baths he reported that his step-mom, Rosario (32) gives him cold baths. In February 2014, ▮▮▮ was seen with a bruise during bath time and when ask what had happened he said Rosario did it to him and there is belief that ▮▮▮ was hiding from Rosario and Rosario grabbed him and in the process he hit himself against something and got the bruise. ▮▮▮ (8), ▮▮▮ (3), and ▮▮▮ (6) were reported to have been seen with their hands, feet filthy, and hair unclean last Saturday. ▮▮▮ (8) said he didn't take baths at his cousin, Damon house during the whole week (unknown date). ▮▮▮ had also reported that they sleep on the floor but didn't say why they do. ▮▮▮ is reported to have a speech problem and he has been having trouble at school and bio-father Horacio (32) has not been addressing his needs at school. In addition, ▮▮▮ was reported that his teeth in the front are wearing out and dad does not follow-through with taking him to dentist. ▮▮▮ (12) was reported to had had sexual intercourses with one of Rosario's son, J▮▮▮ in the past and he is not supposed to be near ▮▮▮ and the anonymous reporter does not know if he is living in the same house.

Rationale: Path 1-the allegations does not meet criteria for CPS to investigate however, referring family to FRC services for case management services as there is possibility the concerns being reported are custody related issues. Screener finds in CMS/CWS past allegations of sexual abuse against Juan that was unfounded on 08/21/2012.

Screener:Velazquez, Zorayda  N5G
LAW ENFORCEMENT AGENCY

### HOME ADDRESS

ADDRESS COMMENTS   C-IV list Hilda @

CURRENT LOCATION OF CHILD(REN)
at common with Bio-father Horacio Sr. Children visit mot

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 16
Page 1 of 10

and Welfare Agency vices System    **EMERGENCY RESPONSE REFERRAL INFORMATION**    Confidential in accordance with Penal Code Section 11167.5 and/or W/C Sections 827 and 10850  Page 1 of 10

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 12/22/2014 |
|---|---|---|---|

STREET ADDRESS: 251 East Hackett Road

CITY AND ZIP CODE: Modesto, California 95358   COUNTY: Stanislaus

NAME OF SOCIAL WORKER: Michelle Morse   CASELOAD ID: Q2F Morse   TELEPHONE (209) 558-2688

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia   REFERRAL NUMBER: 1417-8824-7845-0054628

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME Stewart, Carol | TITLE Social worker IV | DATE 08/25/2014 | TIME 12:59pm |
|---|---|---|---|
| CASELOAD # N5C Stewart | PHONE NUMBER (209) 558-2350 | LOCATION Community Services Facility | |

ALERTS:
***All parties in the home are bi-lingual: █ father, Victor, who does not live in the home, is Spanish-speaking***

Case Name: Hilda Garcia/ER-0354535
[TANF link]

CCN: Rosario █
[TANF link]

General Neglect/Path 2

RP states: one of the younger children disclosed that 16 y/o █ is living back in the same home with █ now 13-years-old  When the minors were 14 y/o and 11 y/o, they were living in the same home and █ disclosed that they had had intercourse with each other and she thought she was pregnant. The parents at that time were protective and █ left the home to live with his father. █ father told them they needed to "wait until they were older." █ has not disclosed that there is current sexual activity, but RP believes she is at risk due to █ being back in the home.

RP states the children are often dirty. There is a total of 2 adults and 10 children in the mobile home. █ wore 2 left shoes during all of July because he couldn't find his newer shoes. The children have reported there is a bad mice infestation in the home; 4 y/o █ found one in the bathtub and was almost bitten, and 8 y/o █ put one in his drawer to keep as a pet. █ killed it. She drowns them in the bathtub.

█ has VMRC services due to communication disabilities.

█ had a bruise on his back in February and told RP it was caused by Rosario, but was not clear with what the circumstances were. █ also told RP that when he wet himself, Rosario gave him cold showers. RP also states that father has not addressed █ dental care needs and that recently, when █ mother took him to the dentist, he was found to have 16 teeth that require treatment.

Sexual abuse by █ was investigated and closed as unfounded on 8/21/2012: Parents said they had not known the minors were sexually active until █ told them, and parents acted protectively so that the minors were no longer residing in the same home. A Path 1 referral was made on 7/8/14 regarding using cold water as a discipline and the bruise on █ s back.

Rationale: Assigning for unhealthy home due to the rodent infestation, and to assess supervision/protective capacity regarding █ and █

Assigned to: Michelle Morse - Q2F

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 17
Page 1 of 13

a Health and Welfare Agency  EMERGENCY RESPONSE REFERRAL INFORMATION
ocial Services
gement System
93)

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
SER-0632 Page 1 of 13

| 07/15/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 10:58 AM | Logged-On Staff Person  Jillayna Clemens | Page   1 of 8 |

## DELIVERED SERVICE LOG
### All Contacts, Services & Visits

FROM:   8/25/2014      TO:   7/15/2020

FOR:



---

**Contact Date:** 09/02/2014      **On Behalf Of:**

**Contact Purpose:** Investigate Referral      **Staff Person:** Michelle Sims
**Participant(s):**
**Method:** In-Person      **Location:** Home      **Status:** Attempted

On 09/02/2014 at approx. 10:30 am this SW made a HV to the home of Father, Horacio Garcia and Mother, Rosario ████████, address 822 Bystrom, Rd # 5 Modesto, CA. No one was home. This SW left a CRB and business card stating for them to please give this SW a call.

---

**Contact Date:** 09/02/2014      **On Behalf Of:**

**Contact Purpose:** Investigate Referral      **Staff Person:** Michelle Sims
**Participant(s):**                    z
**Method:** In-Person      **Location:** School      **Status:** Completed

On 09/02/2014 at approximately 11:00 AM this SW went to ████ middle school and had a F/F visit with ████████████████ 13 Y/O:

This SW introduced herself as CPS SW and asked destiny if she was okay to talk to this SW alone or if she wanted a teacher present. ████ stated that it was fine to talk to this SW alone. ████ knew the difference between a truth and a lie and stated that she would tell the truth. This SW informed ████y the interview was voluntary. ████ was clean and appropriately dressed with no marks or bruises. The interview remained within the 30 minute time frame. ████ stated that she feels safe at her dad's house but her mom doesn't like her being there. ████ stated that she does not like going to her mom's house. ████ stated that does not live at her dad's house and she does not know where he lives. ████ stated she thinks he lives with his dad or aunt. ████ stated that ████ doesn't visit their home but her parents will meet her at the park. ████ stated that ██ has not been to her house. ████ stated that there are two mice in her house. ████ stated that her older brother drowns the mice. ████ stated that last year ████ use to wet the bed but he does not anymore and when he did they would tell him to go to the bathroom. ████y stated that Rosario gives ████ a bubble bath. ████y stated that ████ does not know the difference between the cold water and the hot water and sometimes he turns the cold water on, and Rosario has never given him a cold bath. ████y stated that she knows her mom is making the reports because she wants to get back with her dad. ████ stated that her mom wants to separate their family because she's not in it. ████ stated that her family is decent but is not perfect and there are nine kids living in her home.

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
1B
Page  1  of  8

| 07/15/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 10 58 AM | Logged-On Staff Person Jillayna Clemens | Page 2 of 8 |

███████ stated that she was being truthful and this SW gave her her business card.

F/F visit with ████████████████████, 12 Y/O.

This SW introduced herself as CPS SW and and asked ██████ if he wanted a staff present or if it was ok to talk with this SW alone. ██████ stated that it was fine for him to talk to this SW alone. Alvaro stated that he knows the difference between a truth and a lie and he will tell the truth. This SW informed ██████ the interview was voluntary. The interview remained within the 30 minute timeframe. ██████ was clean and appropriately dressed with not marks or bruises. ██████ stated that he wants to live with his mom and not his dad because his dad is always drinking. ██████ stated that he only sees his dad once a week. ██████ stated that he feel safe at his mom and his dad's house. ██████ stated that the girls clean inside his home and the boys clean outside and that his home is clean. ██████ stated that ██████ can't clean because he injured his hand. ████ o stated that ██████ broke glass and has stitches in his hand. ██████ stated that ██████ and ███ and him sleep in the middle room and ██████ ██████ sleep on the top bunk and ██████ ██████ sleep on the bottom bunk in the back room. ██████ stated that his dad and mom sleep in the living room where there are cockroaches. This SW asked ████ if ██████ wets the bed. ██████ stated that ██████ sometimes gets scared and that yes ██████ does wet the bed and when that happens his parents change him. ██████ stated that ██████ does not get a cold shower. ██████ stated that ████ r and mom hang out a lot and ████ and ████ y hang out as well. ██████ stated that nothing inappropriate is happening between ██████ and ████. ██ o stated that he likes to play video games at his mom's house and plays outside. ██████ stated that Horacio is very nice and he is a better dad than his own. ██████ stated that if there was one thing he would change about his home he would have it be more organized and clean. ██████ stated that when he gets in trouble he goes in the corner. ██████ stated that he is mostly scared of his dad because he triedto hurt his mom. ██████ stated that for a year or more ██████ was living at his dad's house but that wasn't good because his dad drinks and his dad's girlfriend is very rude and that they never let the dogs in the house. ██████ stated that he didn't know what happened with ████ and ██████ but that it does not happen anymore and his parents keep them safe.

**Contact Date:** 09/02/2014    **On Behalf Of:** ████████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Michelle Sims
**Participant(s):** ████████████████
**Method:** Telephone        **Location:** Other        **Status:** Completed

Case Name: Hilda Garcia/ER-0354535 ref id 1417-8824-7845-0054628
CCN: Rosario ████ b/ER-0457994 ref Id 0139-2195-4392-2054628

On 09/02/2014 at approx. 10:35 am this SW made a TC to Horacio Garcia, phone # (209) 568-5266. Horacio answered the phone and this SW introduced herself as CPS SW and informed Horacio of the open referral. Horacio gave this SW the names of the schools that his and Rosario's children go to and it was not clear during the conversation if ████ was living in his home or not. SW and Horacio agreed to meet at his home on 09/05/2014. Horacio stated ████, 3 y/o and ████████ 4 y/o would be home at that time and this SW could have a visit with them Horacio stated at this time both boys were at PGM.



| 07/15/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 10 58 AM | Logged-On Staff Person. Jillayna Clemens | Page   3 of 8 |

**Contact Date:** 09/02/2014    **On Behalf Of:** ██████████████████

**Contact Purpose:** Investigate Referral            **Staff Person:** Michelle Sims
**Participant(s):** ██████████████████
**Method:** In-Person            **Location:** School            **Status:** Completed

On 9/02/2014 at approximately 12:00 PM this SW arrive to ████ Elementary school.

F/F visit with ██████████████████, 6 y/o:

This SW introduce yourself to ████ asked him if he wanted a teacher present when they talked. ████ n stated that it was fine to talk to this SW alone. ████ knew the difference between a truth and a lie and stated that you would tell the truth. ████ was clean and appropriately dressed with no marks or bruises. This SW informed ████ the interview was voluntary. The interview stayed within the 30 minute time frame. ████ stated that he lives at his dad's house with his sisters and brother and step siblings. ████ n stated that he felt safe at his dad's house. ████ stated that ████ lives at home and a mirror fell on his hand and he got cut. ████ stated that when he is at home he likes to play. ████ stated that nobody is mean to him at home. ████ stated that when he gets in trouble he gets sent to his room. ████ stated that he sleeps on the top bunk with ████ and his other siblings. ████ knew where his body parts were and stated that no one has touched his private parts.

F/F visit with ██████████████████ 8 y/o.

This SW introduce yourself to ████ r asked him if he wanted a teacher present when they talked. ████ stated that it was fine to talk to this SW alone. ████ knew the difference between a truth and a lie and stated that you would tell the truth. ████ r was clean and appropriately dressed with no marks or bruises. This SW informed ████ the interview was voluntary. The interview stayed within the 30 minute time frame. ████ r began crying when talking about home. ████ stated that his dog died that he had for his whole life. ████ r stated that he is small and doesn't understand anything, who would try to kill a puppy. This SW asked ████ how his puppy died and he said it was killed, buy food poisoning and his dog died when he was in first grade. This SW was not clear throughout the time ████ r was talking as to what he was saying when he was crying. This SW asked ████ if anyone in his home is hurting him. ████ stated that sometimes if he passes the limit ████ gets angry. ████ stated that his dad is teaching him to fight. ████ knew all of his body parts and stated that no one was touching him inappropriately. ████ had a bruise on the left side of his chin and he stated that he fell on the playground. ████ r stated that his parents got divorced and now he lives with stepsiblings. ████ r stated that he goes to his mom's house only on Saturdays. ████ stated that ████ lives at home. This SW asked ████ r if he has seen anything inappropriate between ████ and ████ and he stated no. ████ stated that ████ has a temper and because of this he locks his bedroom door. ████ stated that ████ r stopped him from falling out of the window and ████ cut his hand when he was trying to fix the window. ████ was not able to tell this SW why he almost fell out of the window. ████ r stated that there are cockroaches, mice and spiders at home. ████ r stated that he feels comfortable and safe at home. ████ r stated that he does not like school and that he broke his arm when he was playing ping-pong.

| 07/15/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 10.58 AM | Logged-On Staff Person: Jillayna Clemens | Page 4 of 8 |

F/F visit with ████████████████ , 8y/o:

SW introduced herself as CPS social worker and ███ stated it was fine to talk to
this SW alone. The interview stayed within the 30 minute time frame. ███ knew the
difference between a truth and a lie and stated that she would tell the truth. ███ a
was clean and appropriately dressed with no marks or bruises. This SW informed Rosa
the interview was voluntary. ███ a stated that she lives with her four siblings and
five stepsiblings. ███ stated that she is in third grade and her favorite colors
are blue, pink and purple. ███ stated that she feel safe at home, ███ stated that
she wants to change the color of her room to baby blue. ███ stated that Juan lives
at home. ███ a stated that sometimes ███ and ███ play together but they are
never left alone, only ███ and ███ can be together alone. ███ a stated that her
mom said that. ███ stated that there are mice and cockroaches in her home. ███
stated that no one is mean to her at home. ███ knew her body parts and stated that
no one has touched her private parts. ███ stated that when she gets in trouble her
parents tell her that she has to go inside. ███ stated that when ████████ r hits
████████ , ████████ puts them in time out.

**Contact Date: 09/02/2014   On Behalf Of:**
████████ , ████████████████████████
**Contact Purpose:** Investigate Referral       **Staff Person:** Michelle Sims
**Participant(s):**
**Method:** In-Person          **Location:** School          **Status:** Attempted

On 9/2/2014 at approximately 1:00 PM this SW went to ████████ High School and the
secretary stated ████████ was not at school and he was not there last Wednesday,
Thursday or Friday. The secretary stated that his mom called him in absent.

**Contact Date: 09/05/2014   On Behalf Of:**
████████████████████████████████████████
**Contact Purpose:** Investigate Referral       **Staff Person:** Michelle Sims
**Participant(s):** ████████ █ ████████ █ ████████
**Method:** In-Person          **Location:** Home          **Status:** Attempted

On 09/02/2014 at approx. 10:30 am this SW made a HV to the home of Father, Horacio
Garcia and Mother, Rosario ████████ , address 822 Bystrom, Rd # 5 Modesto, CA. Noone
was home. This SW left a CRB and business card stating for them to please give this
SW a call.

**Contact Date: 09/05/2014   On Behalf Of:**
████████ , ████████████████████████
**Contact Purpose:** Investigate Referral       **Staff Person:** Michelle Sims
**Participant(s):**
**Method:** In-Person          **Location:** School          **Status:** Completed

On 9/5/2014 at approximately 10:45 am this SW went to ████████ High School and
interviewed ████████ .

F/F visit with ████████████████████ , 16 y/o:

████████ stated that he was fine to talk to you this SW alone and the interview stayed
within the 30 minute time frame. ███ stated that he knew the difference between a
truth and a lie and that he would tell the truth. This SW informed ███ the

SER-0636



| 07/15/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 10:58 AM | Logged-On Staff Person: Jillayna Clemens | Page 5 of 8 |

interview was voluntary. ████ was clean and appropriately dressed with not marks or bruises. ████ stated that he lived at his dad's house for a year and a half but, he has been living at his mom's home for the past half of the year. ████ stated that his dad drinks and would be at his friends house all day and would not come finally his dad kicked him out. ████n stated that he talked to his step dad, Horacio and Horacio asked him if he would be safe and told him that he could come back home. ████ stated that his step dad had a conversation with him about ████ to make sure that ████ and ████ would be safe living together. ████ agreed that he would be safe. ████ stated that he could've went and stayed with his Aunt and Uncle but that did not work out. ████ stated that he sleeps in the middle room with ████ a and he ████. And ████ and ████ sleep in the back room.

████ stated that he sees ████ as a sister and that she asks him to help her on her homework. ████ stated that he feels there like his parents are protective. ████ stated that his house is clean but there are mice and small cockroaches because of the neighbors behind them. ████ stated that he feels safe at home. Juan stated his mom does not punish ████ by giving him a cold bath when he pees the bed. ████ stated that ████ was taken to the dentist.

Contact Date: 09/05/2014     On Behalf Of: ████████████

Contact Purpose: Investigate Referral          Staff Person: Michelle Sims
Participant(s): ████
Method: In-Person          Location: Home          Status: Completed

On 9/5/2014 approximately 4:00 PM this SW went to the home of father Horacio Garcia, DOB 6/28/1981.

This SW introduced herself as CPS SW to father, Horacio Garcia and gave him a CRB and a business card. Horacio invited this SW into his yard and home.  This SW discussed the referral with Horacio. Horacio stated that he took ████ to the dentist and that he has the papers for that and showed this SW. Horacio stated that ████ had surgery on his teeth. Horacio stated that the first time they made an appointment they waited two weeks to take him to the dentist because they did not have a car. Horacio stated that Maria from PRC comes and does home visits to the house and that ████ and ████ are in counseling. Horacio stated that Maria came just the other day. Horacio stated that he works in the fields. Horacio stated that ████ is living at his home and he told him that he can, but if he sees anything weird between him and ████ it is not going to fly. ████ stated that the first couple of days that ████ was living there, things were tense. Horacio stated that the family told Horacio you don't know what you're doing, but for ████'s safety Horacio wanted him to come live with him, but first he brought him to his mom's sister's house but they would not keep him. Horacio stated ████y and ████ get along fine and that him and Horacio supervise them well. Horacio stated ████r and ████ get along normal now. Horacio stated that ████ spends most of his time with PGM and they do not see him until 5:45 PM when they get home from work.  Horacio stated that PGM lives right next door. Horacio stated that Rosario has not given ████ cold showers because he wet the bed. Horacio stated they have some mice and cockroaches but he has set traps to get rid of them.

F/F visit with (mother) Rosario ████, DOB 10/7/1981.

| 07/15/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 10 58 AM | Logged-On Staff Person  Jillayna Clemens | Page    6 of 8 |

This SW introduced herself to Rosario as CPS SW, gave her a CRB and Business card and asked Rosario if she preferred speaking in English or Spanish. Rosario stated it was fine to speak with this SW in English. Rosario stated that ███ has been living back with them for six or seven months. Rosario stated that she is precocious with ███ and ███ living in the same house but there has been no weird behavior. Rosario stated that ███ and ███ sleep in separate rooms. Rosario stated that she has never given ███ a cold shower because as punishment for wetting the bed. Rosario stated that ███ mostly takes showers when he is with PGM, that she is the one who bathes him. Rosario stated that when she does give the boys a bath she gives the three youngest bathes at the same time. Rosario stated that they took ███ to the dentist and so did Hilda about eight months ago, in order to get a root canal and he got silver put on his teeth. Rosario stated that both ███n and ███ are in counseling through PRC. Rosario stated that she would like to talk to Maria about getting the younger children to counseling.

F/F visit with ███████████████████, 4Y/O:

███████ knew the difference between a truth and a lie and stated that he would tell the truth. ███████ appeared to be well cared for, clean and appropriately dressed with no visible marks or bruises at the time of the visit. ███████ stated that he feels safe at home. This SW asked ███████ what happens when he gets in trouble and he stated that his dad pours cold water on him. ███████ stated that he sleeps in the back bedroom. ███████ stated that there are mice and cockroaches in his house. ███████ stated that his mom took him to the dentist.

F/F visit with ███████████████████, 13 Y/o:

This SW introduced herself as a CPS SW to ███████. ███y appeared to be well cared for, clean and appropriately dressed with no visible marks or bruises at the time of the visit. This SW asked ███████ why she lied to this SW at school. Destiny stated that she lied because ███ is staying at her home and she didn't want her family to get separated. ███████y stated thatshe sometimes feels uncomfortable around ███ because of what has happened. ███████ stated that she told her dad she does not mind if ███ is living there. ███████ stated that she feels safe at home, but that she just doesn't talk that much because it is kind of weird. ███████y said that she acts like nothing happened. ███████ stated that nothing is going on between her and ███████currently and that she doesn't want to lose her family. ███████ stated that she sees ███████ like a brother. ███████y stated that counseling has helped her.

F/F visit with ███████████████████████████ y/o:

███████████ stated that he knew the difference between a truth and al lie and stated that he would tell the truth. ███████████ appeared to be well cared for, clean and appropriately dressed with no visible marks or bruises at the time of the visit. ███████ stated that ███ has been living with them for a couple of months. ███████. stated that he feels safe at home. ███████ .stated that it doesn't bother him that ███ is living with them again. ███████ stated that Rosario does not give ███ cold showers when he wets the bed. ███████ stated that ███y feels comfortable at home and asked this SW if she could help get his mom out of the picture. ███████ .stated that his mom has beat the crap out of all of them and has got on top of him asking him questions about his dad. ███████ stated that he was claustrophobic. ███████. stated that his mom has not recently been hitting him but when he used to live with her a few years ago he got hit every

| 07/15/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSV5LOG |
|---|---|---|
| 10 58 AM | Logged-On Staff Person  Jillayna Clemens | Page    7 of 8 |

day. ███████ stated that this SW was looking at the wrong household and should be looking at his mom. ██████r. stated that ██████r used to have marks all over him and one time when █████ left home and then came back, ████████ was scared and he wasn't the same.

F/F visit with ████████████████████, 13 y/o.

████ stated that she goes to ██████ high school and knew the difference between a truth and a lie. ████ appeared to be well cared for, clean and appropriately dressed with no visible marks or bruises at the time of the visit. ████ stated that she would tell the truth. ████ stated that ████ lived with his dad for a year and a half and now he's living back with them. ████ stated that she feel safe with ████ in the home. ████ stated that she does not think ████ feels uncomfortable. ████ stated that ████ and ████ do not act inappropriate. ████ stated that she sleeps in the middle room with █, ████, and ██. █ stated that her mom, her and ████ give the boys a bath and that if they are in trouble they will go in timeout for five minutes or have to sit in the corner. █ stated that there are mice in her house but they put mouse traps out and traps for the cockroaches. ████ stated that her house is clean when she gets home from school. ████ stated that it is hard living here with all the kids and that she goes to bed at 11 pm and wakes up at 5:30 AM. ████ stated that she is more attached to her mom then her dad. She stated that her dad drinks once in a while. ████ stated that ████ didn't like living with her dad. Lily stated that the incident with ████ and ████y changed her and that she lost her innocence. Lily stated that she wants want to live with ████ and she trusts him with a lot of things.

Continue on 09/05/2014 at approx. 4:01 pm

**Contact Date:** 09/05/2014    **On Behalf Of:** ████████████████████████████
**Contact Purpose: Investigate Referral**    Staff Person: Michelle Sims
**Participant(s):** ██████████ █  ███████
**Method:** In-Person    **Location:** Home    Status: Completed

Continued from note 09/05/2014 at approx. 4:00 pm.

F/F visit with ████████████████████, 2 y/o.

During the time of the visit █████ was running around the backyard smiling and laughing and had no marks or bruises and was clean and appropriately dressed. ████ was too young to do a interview with, that would be beneficial to this case, due to the fact that he did not have full development of his language.

This SW talked with Rosario and Horacio informing them that because the incident was three years ago and they kept ████ out of the house for some time it is fine for ███ to be back in the home as long as they both feel comfortable living with one another and there is appropriate supervision. This SW stated that relations between ████████ and ██████ seem appropriate at this time.

**Contact Date:** 12/22/2014    **On Behalf Of:** ██████ ████ █████ █████████
██████████,    Staff Person: Michelle Sims
**Contact Purpose: Investigate** Referral
**Participant(s): Hilda Perez**
**Method:** Telephone    **Location:** CWS Office    Status: Completed

| 07/15/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 10 58 AM | Logged-On Staff Person  Jillayna Clemens | Page  8 of 8 |

On 12/22/2014 at approx. 5:20 pm this SW made a TC to Hilda Garcia and informed her
of the investigation that had taken place in regards to her children and this SW
informed Hilda the case would be closed out. This SW asked Hilda if she had any
other concerns for this SW and Hilda stated no, her only concern was ▮▮▮▮▮
safety and that she was living again with ▮▮▮. Hilda asked this SW about the
safety plan that had been put in place and this SW stated the safety plan had been
put in place by not only the SW but the family as well and they had followed the
plan for sometime but when they deemed it safe for the safety plan to end that is
when it ended. Hilda stated she had no other questions or concerns for this SW and
thanked this SW for calling her.

Allegations: Inappropriate living conditions with mice in a trailer with 10 kids.
Juan is living back in the home where there were allegations he had sexual
relations with his stepsister. Child who wets the bed is being punished by
stepmother who puts child in cold water.

Dispo: General neglect is unfounded on Rosario ▮▮▮ and Heracio Garcia on behalf
of their children due to the fact that there is no factual evidence that ▮▮▮ is
being punished by being put in cold water. Also the house was clean and this SW did
not see any mice or cockroaches in the home The time of the visit. It has been
reported that ▮▮ and ▮▮▮ are having appropriate relations and ▮▮ was out of
the home for a year and a half.

RD: 2030
MRP: N/A
CRB: Given

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 09/16/2014 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: Carol Stewart | | CASELOAD ID: N5C Stewart | TELEPHONE (209) 558-2350 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia          REFERRAL NUMBER: 0160-9999-9960-2054628

| X EVALUATE OUT | IMMEDIATE | 3 DAY | 5 DAY | 10 DAY | N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME Stewart, Carol | TITLE Social worker IV | DATE 09/05/2014 | TIME 12:49pm |
|---|---|---|---|
| CASELOAD # N5C Stewart | PHONE NUMBER (209) 558-2350 | LOCATION Community Services Facility | |

ALERTS:
Case Name: Hilda Garcia/ER-0354535
General Neglect/Evaluate Out
[TANF link]

When ▮▮▮▮ was 10 y/o, her older step-brother, ▮▮▮▮▮▮▮, who was 13, had sex with her. Mother told ▮▮▮ that it was investigated and there was a no contact order. Mother just informed ▮▮▮ that ▮▮▮ is now living in the home. Mother said she called CPS on 7/25. Two months ago, ▮▮▮▮▮ said that she hasn't seen ▮▮▮and doesn't want to see him. Mom said she recently took ▮▮▮▮ to the dentist. Father had not taken her for 2 years, and she had 11 cavities.

Screener does not find ▮▮▮▮▮▮ on Megan's Law website or Superior Court Case index. Screener finds sexual abuse unfounded on 8/21/2012, as ▮▮▮▮▮ and▮▮▮ gave conflicting stories. Screener finds an open referral with the same concerns plus children being in a mice infested home. Screener gave copy to social worker Michelle Morse.

Rationale: Duplicate concerns; copy to assigned social worker, Michelle Morse.

Screener: Carol Stewart – N5C
LAW ENFORCEMENT AGENCY                                    POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 19
Page  1  of  19

...ith and Welfare Agency
...Services
...nt System

EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with
Penal Code Section 11167.5 and/or
WIC Sections 827 and 10850
SER-0641  Page 1 of 19

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 12/24/2014 |
| --- | --- | --- | --- |
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Bee Lee | | N5D Lee | (209) 558-3643 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

| REFERRAL NAME: Hilda Garcia | | | | REFERRAL NUMBER: 0748-2824-8152-2047805 | |
| --- | --- | --- | --- | --- | --- |
| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | [ ] N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
| --- | --- | --- | --- |
| Lee, Bee | Social Worker IV | 12/08/2014 | 01:06pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5D Lee | (209) 558-3643 | Community Services Facility | |

ALERTS:
Case Name: Hilda Garcia/ER-0354535
General Neglect/Path 1

CCN: Rosario ███████ ER-0457994
(TANF link)
(Calworks active)(SDM completed)

***All parties in the home are bi-lingual: ███████ father, Victor, does not live in the home, but is Spanish-speaking*

Mom reported to ███ today that mom visits with her children, ███████ (9yo), ███████ (4yo), ███████ (16yo), ███████ (13yo), and ███████ (6yo) once a week. The last time she saw them was on 12/5/14. Per ███, mom said the children smelled of urine and feces during their last visit. ███ says the mother is bringing the children in for assessment tomorrow. ███ didn't have the address for the children. Screener TC to ███ and received the info of father's address. ███ also says ███████ used to come over to his mom's home with holes in his shoes. ███████ sometime would come to his mom's home with no underwear. ███ says ███████ has come to see his mom with dry feces in his underwear. ███ says the children are potty trained, but sometimes ███████ and ███████ still need help to wipe after pooping. ███ says the children have said step mom, Rosario, and their father argue. They argued in front of the children. GN-unfounded pending approval since 8/25/14.

Eval out: Referred family to PRC for DV, ███████ wearing underwear with dry feces, ███████ having no underwear, ███████ having holes in his shoes, other resources as needed.

Screener: Bee Lee - N5D

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
| --- | --- |

### HOME ADDRESS

| | PHONE NUMBER |
| --- | --- |
| 8 | |
| N | |

ADDRESS COMMENTS   Common is Horacio Sr.'s address; Hilda lives at

CURRENT LOCATION OF CHILD(REN)
kids @common

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
20
Page 1 of 22

and Welfare Agency      EMERGENCY RESPONSE REFERRAL INFORMATION
vices
System

Confidential in accordance with
Penal Code Section 11167 5 and/or
WIC Sections 827 and 10850

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 02/10/2015 |
|---|---|---|---|

**STREET ADDRESS:** 251 East Hackett Road

**CITY AND ZIP CODE:** Modesto, California 95358  **COUNTY:** Stanislaus

| NAME OF SOCIAL WORKER: | CASELOAD ID : | TELEPHONE |
|---|---|---|
| Dan Shepherd | N5F Shepherd | (209) 558-2684 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

**REFERRAL NAME:** Hilda Perez   **REFERRAL NUMBER:** 0039-2853-1390-7052612

| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | [ ] N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Shepherd, Dan | Social Worker IV | 12/23/2014 | 11:22am |

| CASELOAD # | PHONE NUMBER | LOCATION |
|---|---|---|
| N5F Shepherd | (209) 558-2684 | Community Services Facility |

**ALERTS:**
CN: Hilda Perez
ER # 0354535
Gen Neg

RP reports that RP's nephew was trying to kiss RP's son ███████ The nephew is cognitively delayed and RP was told it didn't mean anything, but when it happened again, RP contacted LE. LE filed a report but they didn't take any action. RP and the mother do not communicate so they have not set any supervision guidelines.
Eval Out
Rationale - No abuse/neglect, this is a family issue only.
Screener - Shepherd - N5F

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

**ADDRESS COMMENTS**

**CURRENT LOCATION OF CHILD(REN)**
AT common address

### VICTIM INFORMATION

| NAME | AKA (if applicable) | SOCIAL SECURITY # |
|---|---|---|
| ███████████ | | ████████ |

| DOB | AGE | AGE CODE | SEX | ETHNICITY | LANGUAGE | ICWA ELIGIBILITY |
|---|---|---|---|---|---|---|
| ████████ | 9 | Year(s) | M | Hispanic | English | Not Asked |

**SCHOOL/DAYCARE NAME**

**SCHOOL/DAYCARE ADDRESS**

| ABUSE CATEGORY (See Screener Narrative Attached) | ALLEGED PERPETRATOR NAME | |
|---|---|---|
| General Neglect | | |
| CASE WORKER NAME (FOR OPEN CASE) | PHONE # (FOR OPEN CASE) | CASELOAD # |

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
21
Page 1 of 11

...th and Welfare Agency
...ervices
...nt System

**EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
SER-0643 Page 1 of 11

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 01/28/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: Michelle Morse | | CASELOAD ID: Q2F Morse | TELEPHONE (209) 558-2688 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia

REFERRAL NUMBER: 1196-9093-7560-3078567

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME Velazquez, Zorayda | TITLE Social Worker IV | DATE 01/27/2015 | TIME 12:15pm |
|---|---|---|---|
| CASELOAD # N5G Velazquez | PHONE NUMBER (209) 558-2186 | LOCATION Community Services Facility | |

ALERTS:

Case Name: Hilda Garcia aka Perez/ER-0354535
Allegation: General Neglect/Path 2
[TANF link]

████ reported that ██ disclosed that ██████ was sexually molested by his cousin, ████████
████████ while at an 8 hour visit with his mother, but ██ did not provide ████ with details of the sexual molestation due to a language barrier. Screener advised ████ to inform ██ to call this screener to report the incident. This screener received a TC from ██ today; per ██, sometime in December 2014, when ████ (6), ████ (4), and ██████ (13), were visiting their mother, Hilda, on a Saturday, they had went over to their grandparents home in Modesto, Ca. Hilda's nephew named ████████ (10) who was reported to have down syndrome had forcefully grabbed ████████ head and had him touch his private part. ████ was reported to have his pants down when this occurred and ██ said that law enforcement was called out, but that LE stated they could not do anything about the incident since ████ had down syndrome. ██ states that ████ had witnessed what had happened and disclosed this allegation to his older sister, ████ and then told ██. ██ states that Hilda bribed the children with toys so they wouldn't say anything about the incident. ██ states the biological father has primary physical custody of the children and mom only visits them on the weekends.

Rationale: Lack of supervision by the mother who failed to supervise the children at the time of her visitation day. Meets criteria for CPS to investigate as Path 2. CMS hx.

**Assigned to: Michelle Morse - Q2F (due to the 6 month police rule).

Screener: Zorayda Velazquez - N5G

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

████████████████████████████████████████ at common with bio-father, Horacio

Sr.

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 22
Page 1 of 12

lth and Welfare Agency
Services
ent System

EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with Penal Code Section 11187 5 and/or WIC Section #27 and 10850
SER-0644 Page 1 of 12

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04 14 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:  1 of 8 |

## DELIVERED SERVICE LOG
### Contacts

FROM:  1/27/2015    TO:  7/10/2020

FOR:

████████████████████████████

Contact Date: 02/03/2015    On Behalf Of: ████████████████████

Contact Purpose: Investigate Referral        Staff Person: Michelle Sims
Participant(s): ████████████████████████████████████████
Method: In-Person        Location: Home        Status: Completed

On 2/3/2015 at approximately 3:25 PM this SW arrived to the home of her Father,
Horacio Garcia DOB 06/28/2015 address, 822 Bystrum Rd. Space 5 Modesto Ca 95351.

This SW introduced herself as CPS social worker and gave Horacio a CRB and business
card. This social worker discussed the referral with Horacio and stated she was
there in regards to the incident that occurred at the children's mother's home.
Horacio stated from what he understood from the kids, this was the second time the
incident happened and during the first incident ████████ kissed ███████ private
parts, and during the second time ██████ told ██████ what was going on and that is
how the incident got reported. Horacio stated the children told him that ████████
grabbed ██████ by the head and was humping him. Horacio stated ██████ told her
mom that if she does not call the police she was going to tell her dad, so mom
called the police. Horacio stated he has called Parent Resource Center and informed
them of the incident and that the children are receiving counseling because of this
incident. Horacio stated Mother, Hilda picks up the kids every Saturday because of
the custody agreement and that this incident happened 4 or 5 Saturdays ago and all
the kids were there. This SW asked Horacio if she could speak with his children
privately and Horacio gave this SW permission but stated destiny was not home, that
she was still on her way home from school. During this conversation Horacio gave
this SW the information to ██████'s parents and his address.

F/F visit with ████████████████████████        (4).

██████████ stated that he feels safe at his mom's house and his dad's house. ██████
knew the difference between a truth and a lie and stated that he would tell the
truth. This SW informed ██████ the interview was voluntary and that he could leave
at anytime.  There were no marks or bruises on William at the time of the visit and
he was clean and appropriately dressed. ██████ knew where his body parts were and
knew where his private parts were. ██████ called his private part his pee pee.
██████████ stated no one has touched him there. ████████ stated ██████ was trying to
make him kiss him but he did not kiss him. ██████ told ████ to kiss him in the
butt. ████████ stated ██████ showed him his pee pee. This SW asked ████████ if he
touched anyone's pee pee and he stated no. ██████ stated he told his mom and his
mom told ██████ to stop. Due to ██████ age and language development he was not
able to give any ore detailed information in regards to the incident.

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
23
Page  1  of  8

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04:14 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page   2 of 8 |

F/F visit with ███████████████████████████████████ (6).

███████knew the difference between a truth and a lie and stated he would tell the truth. This SW informed██████ the interview was voluntary and that he could leave at anytime. There were no marks or bruises on ██████ at the time of the visit and he was clean and appropriately dressed. ██████ stated he feels safe at his dad's house and at his mom's house. ██████ knew where his body parts and where his private parts were. ██████ called his private parts his privacy. This SW asked ██████ if ██████ did anything to make him feel uncomfortable when he was at his mom's house a couple of weekends ago. ██████ stated ██████ stuck his head to ██████ private parts and this made him sad. ██████ stated ██████ pants were off at this time. ██████ stated ██████ told him to kiss him in the mouth but he did not want to. ██████ stated his brother ██ came into the room and saw what was going on and told his mom. ██████ stated their mom said stop doing that. This SW asked ██████ where he was when this happened and he stated he was with his mom downstairs in ██████ house. This SW asked ██████ how many times this happened before and he stated 4 or 10 times. ██████ stated he didn't want to go to ██████ house because he knew something would happen. This SW asked ██████if he has gone to ██████ house since the incident happened and he said yes. ██████ stated ██████ dad hit him because he was being gross and told him to stop. This SW asked ██████ if anyone touched ██████s private parts and he stated no. This SW asked ██████ if anyone touched his private parts and he stated no.

Continue on note 02/03/2015 at approx 3:26 pm

**Contact Date:** 02/03/2015    **On Behalf Of:** ██████████████████████████████

**Contact Purpose:** Investigate Referral         **Staff Person:** Michelle Sims
**Participant(s):** ██████████████████████████████
**Method:** In-Person        **Location:** Home        **Status:** Completed

Note continued from 02/03/2015 at approx. 3:25 pm

F/F visit with ███████████████████████████ (9).

This SW informed ███████████ the interview was voluntary and he could end it at any time. ██████████ knew the difference between a truth and a lie and stated he would tell the truth. There were no marks or bruises on ████████ at the time of the visit and he was clean and appropriately dressed. ███████ stated he feels safe at dad's and when asked if he feels safe at mom's house he stated no. This SW asked ██████████ why he does not feel safe at his mom's house and he stated he is afraid his mom is going to turn back to the way she used to be and that she was mean to him. This SW asked ██████████ if he went to ██████s house when he went to his mom's house on Saturday and he stated no. This SW asked him what about the Saturday before and he again stated no. ██████████ stated he went to ██████ house four Saturdays ago and he remembered that his mom called the police that day. ████████ stated his mom called the police because his little brother was being raped by ██████ ████████ stated this happened two times. Christopher stated the first time ██████ tried getting on him as well and tried to go back and forth on top of him. ██████ stated he punched ██████ and then he left and told ██████ and ██████ to go downstairs with him, but they didn't. ██████ stated the second time ██████ went after ██████ and went back and forth on him. ██████ stated ██████ pants were up when this happened and ██████ pants



| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04:14 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 3 of 8 |

were up too. ▇▇▇▇▇ stated he never saw ▇▇▇▇ private parts. ▇▇▇▇
stated his brother and sister told their mom what was doing with ▇▇▇ and
and his mom told them to stop. ▇▇▇▇▇ stated ▇▇▇ dad said don't tell the
cops, don't tell them anything because he did not want to get in trouble.
▇▇▇▇ stated ▇▇▇ must have seen adults doing this by accident and that's
why he was doing it.

F/F visit with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (17).

This SW introduced herself as CPS social worker. This SW informed ▇▇▇ the
interview was a voluntary and you get an interview anytime. ▇▇▇▇ stated he would
tell tell the truth during the interview. There were no marks or bruises on
at the time of the visit and he was clean and appropriately dressed. This SW
explained to ▇▇▇ she would be speaking with him about the incident that occurred
at his Uncle's house when he was with his mom. ▇▇▇ stated oh about what happened
between ▇▇▇ and his brothers? ▇▇▇▇ stated all the adults were in the kitchen
making tamales, ▇▇▇▇ was outside with his girl cousin and ▇▇▇▇
and ▇▇ were upstairs and they were not making any noise. ▇▇▇ stated when he
went to the room to check on them because his mom told him to, he thought they were
wrestling under the blankets and that his cousin and his brothers looked at him and
it looked like they were doing something wrong. ▇▇▇ didn't pay much attention to
it but went out of the room and told his mom they're playing in the room. ▇▇▇
stated he was doing his hair in the bathroom and decided he should go check on them
again. ▇ stated this time he saw that ▇▇▇ had ▇▇▇▇ under the covers and
when he pulled the covers off ▇▇▇ was pushing ▇▇▇▇ head to his private
parts. ▇▇▇ stated his cousin covered himself and ▇▇▇ got up and ▇▇▇ was
on the side of the bed. ▇▇▇ stated he asked them what they were doing and
got mad. ▇▇▇ stated ▇▇▇▇ pants were down and he went to pull up his pants.
▇▇▇ stated ▇▇▇ pants were unbuckled, unzipped and his underwear were not
on. ▇▇▇ stated he called for his mom and Tia and that his mom pulled the kids
aside and talked to them. ▇▇▇ stated ▇▇▇▇ asked ▇▇▇ what happened and he
said nothing and they asked him again and he said ▇▇▇ pushed ▇▇▇ head to
▇▇ private parts. ▇▇▇ informed them ▇▇▇ told him to kiss him on the
face and on the butt. ▇▇▇ stated ▇▇▇▇ said he had his head towards his
private parts and he couldn't breathe. ▇▇▇ stated it was partly his mom's fault
because she was supposed to be watching them. ▇▇▇ stated his uncle, ▇▇ dad
hit ▇▇▇▇ two times on the head and told him not to come out of his room. ▇▇▇
stated his mom wasn't going to call the cops but he told her he would tell his dad
and that his dad would call the cops ▇▇▇▇ stated because he said his mom called
the cops, due to the custody order. ▇▇▇ stated his mom was in the kitchen
talking to his aunt and his uncle the whole time and it was not his obligation to
check on the kids but it was his mom's and his mom said it was not her fault
everyone was supposed to be watching them. ▇▇▇ stated this was not the first
time this happened. ▇▇▇ stated this happened before, stating ▇▇▇▇ and
were caught in the garage naked with no clothes on but his mom told ▇▇▇▇ dad
they wouldn't call the cops and they made an agreement that she wouldn't bring the
kids back over there for a while. ▇▇▇ stated he remembers they didn't go back to
their uncles house for a while. ▇▇▇▇ stated the first time ▇▇▇ tried to do
something to ▇▇▇, ▇▇▇▇ punched him and ▇▇▇ stated he asked
▇▇▇ why he didn't tell their mom and he said he did but mom said not to
tell. ▇▇▇ stated since that incident happened they hadn't seen ▇▇▇ until the
most recent incident. ▇ stated he does not know where ▇▇▇ is getting this
behavior from, but he does know that ▇▇▇'s mom's boyfriend hates her and one
time he made her lose the baby. ▇▇▇ stated he also thinks ▇▇▇ grandma
sleeps around and maybe he learned his behavior from her.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04.14 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 4 of 8 |

**Contact Date: 02/03/2015**     **On Behalf Of:** ███████████████████████

**Contact Purpose:** Investigate Referral     **Staff Person:** Michelle Sims
**Participant(s):** ████████████████████████
**Method:** In-Person     **Location:** Home     **Status:** Attempted

On 2/3/2015 at approximately 3:25 PM this SW arrived to the home of her Father, ████████████████ address, 822 Bystrum Rd. Space 5 Modesto Ca 95351.

Attempt to see ███████████████ and ████████████

**Contact Date: 02/09/2015**     **On Behalf Of:** ███████████████████████████

**Contact Purpose:** Investigate Referral     **Staff Person:** Michelle Sims
**Participant(s):** **Hilda Perez**
**Method:** Telephone     **Location:** Other     **Status:** Completed

On 2/9/2015 approximately 1:00 PM this SW made a telephone call to mother, Hilda Garcia DOB 05/11/1982, phone number (209) 895-4837. This SW introduced herself as CPS social worker and informed her she was calling in regards to the investigation due to the incident that occurred with her brothers a few Saturdays back. Hilda waived her rights to meet with this SW in person at this time and stated she wanted to speak with her over the phone but that she scheduled an appointment for next week to me in person so this SW could have a face-to-face visit with her baby, ████████ This SW asked Hilda if she could explain what happened the day of the incident. Hilda stated she was downstairs cooking and ██████ and ██████ were in the room upstairs. Hilda stated ██████ and ██████ said mom, so she ran upstairs and she saw ██████ standing by ██████ and ██████ and saw Javier picking up his pants and underwear. Hilda stated that is what she saw and then she scooted ████████ to the restroom. Hilda stated ██████ informed her ██████ had ██████ under the blanket and he was making a humping motion. Hilda stated she took ██████ into the restroom and asked him what happened separately from the other kids and ██████ stated ██████ told him to kiss him on the mouth but ██████ said no. Hilda stated she asked ██████ separately as well and he told her ██████ asked him to kiss him on the mouth as well. Hilda stated she was trying to keep ██████ calm while she figured out what was going on and then she told her brother and her brother took ██████ downstairs to talk with him. Hilda stated she then called the police and made a police report. Hilda stated all this happened at 1:00 PM but the police did not show up until 4:30 PM. Hilda stated she kept the boys separate during that time. Hilda stated this was the first time an incident like this had occurred and denied anything happening previously. This SW asked if an incident had ever occurred with the children in the garage and she stated no and if it did her brother didn't tell her anything about it. Hilda stated she has not gone back over to her brother's home with the children since the incident occurred and when she does stop by there she just goes over to pick something up from the house and leaves right away. Hilda stated her children have had no contact with her brother's children. Hilda stated she has no idea where this behavior came from. Hilda stated she tries to keep her children safe constantly and provide constant supervision. Hilda stated the kids were upstairs in their bedroom when this happen and she was downstairs cooking but she sent up ██████ to check on them. This SW informed Hilda that because of this incident it was important for her to supervise any visits between her children and ██████ any time they visit one another. Hilda stated that because of this incident she does not plan on bringing the children back to her

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04:14 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 5 of 8 |

brother's home anytime soon. Hilda had no questions for this SW but stated she
would give her a call if anything came up.

**Contact Date:** 02/09/2015  **On Behalf Of:** ████████████████████

**Contact Purpose:** Investigate Referral          **Staff Person:** Michelle Sims
**Participant(s):** ████████████████████
**Method:** In-Person          **Location:** Home          **Status:** Completed

On 2/9/2015 or 2:00 PM is SW arrived to the home of Father, Horacio Garcia. Horacio
gave this SW permission to speak with ████████ privately. This SW informed ████████
the interview was voluntary and she could end it at any time. ████████ knew the
difference between a truth and a lie and stated that she would tell the truth.
There were no marks or bruises on ████████ at the time of the visit and she was
clean and appropriately dressed. This SW informed ████████ she was there because of
the incident that occurred when the police got called out to her uncle's house when
she was visiting her mom. This SW asked ████████ if she could explain what happened
during the incident. ████████ stated she was in the bathroom right next to the room
████████████████ were in. ████████ states she went to check on them and
she saw ███████████████ laying under the blanket and ████████ told ████████ to lay
on him. ████████ stated she told ████████ to go downstairs and then went and took a
shower. ████████ stated when she got out of the shower ████ told her to come and
look so she went to the room again and ████████ was underneath the blanket holding
████████ head to his private parts. ████████ stated ████████ pants were off but his
underwear were on and he was humping ████████ and ████████ underwear were off.
████████ stated ████████ was on the side of the bed, on the far corner of the bed.
████████ stated ████████ was playing PlayStation and she told the boys to go
downstairs and then went and told her mom what happened ████████ stated ████ s dad
told him to stop. ████████ stated ████████ and ████████ said this happened before but
that they kept it a secret. ████████ stated her mom and uncle made a deal that they
wouldn't tell what happen and that her mom and the boys would not come back over
for a while. ████████ said this was the first time they had went to their Uncle's
while visiting their mom in a long time. ████████ stated the last time was last
year, 2014 in November or October. ████████ stated her mom did not want to call the
cops this time but that if she didn't her dad was going to use it against her in
court and that was the only reason her mom called the cops. ████████ stated she has
not visited her Uncle's home since this incident happened. ████████ stated her Uncle
Javier only gets the kids on the weekends and that their mother, ████ was not there
when it happened.

**Contact Date:** 02/10/2015          **On Behalf Of:** ████████████████████

**Contact Purpose:** Investigate Referral          **Staff Person:** Melody Pannell
**Participant(s):** **Hilda Perez, Alfredo Cruz-Sosa**
**Method:** Written          **Location:** CWS Office          **Status:** Completed

2/10/15 1:00pm  Office visit

On 2/10/2015, at 1:00pm, SW Trantham conducted a face-to-face interview with
mother, Hilda Garcia DOB 05/11/1982 at the CSA on Hackett Road in Modesto, CA.
Present during the interview was Alfredo (father) and ████████ SW provided the
mother and father with a CRB and SW Morse's business card. The mother stated that
on 12/22/2014 an incident occurred between ████ and ████████. The mother stated
that Alfredo, maternal grandmother, aunt, and aunt's boyfriend, and uncle were

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04:14 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 6 of 8 |

present in the house when the incident occurred. The mother stated that ██████ had ██████ under the covers and were doing a humping motion. The mother stated that ██████ saw this occur but the mother only saw ██████ picking up his pants afterwards, and she isn't sure if he had his underwear up or down. Since this occurred the mother stated there has been no contact with the perpetrator. The mother denied any mental health diagnoses, substance abuse, criminal history, and CPS history as a child. The mother did state she was in a domestic violence relationship previously and has had CPS history as a parent. The father denied any mental health diagnoses, domestic violence history, substance abuse, criminal history, and any CPS history as a parent or a child.

SW Trantham conducted a face-to-face contact with ██████████████ Jr. DOB ████████ At the time of the visit, the child appeared clean and healthy, and he did not have any marks or bruises consistent with abuse or neglect. The child was sleeping but appeared to be developmentally on target, as evidenced by his growth. The child was not interviewed due to his young age and being pre-verbal.

**Contact Date:** 02/13/2015    **On Behalf Of:** ████████████████████████████

**Contact Purpose:** Investigate Referral          **Staff Person:** Michelle Sims
**Participant(s):**
**Method:** In-Person          **Location:** Home          **Status:** Completed

On 2/13/2015 and 4:10 PM this SW arrived to the home of father, Javier ████████ ████████████████████████████████████████

This SW introduced herself as CPS social worker giving father, Javier a CRB and business card and Javier invited this SW into his home. The home was clean and organized with no safety hazards. This SW informed Javier she was there to discuss the incident that occurred at his home on the Saturday that Hilda called the police. This SW asked father, Javier if he could explain to this SW what happened that day. Javier stated he got off of work and he was downstairs and was going to make breakfast but that his sister started making breakfast with his children's Tia and that he decided to rest on the couch. Javier stated ██████ (6), ████████ (4) and his son ██████ (11) who have down syndrome were upstairs playing with the PlayStation and he was watching TV on the couch and nodded off. ██████ stated when he woke up he heard commotion upstairs so he went up there and Hilda informed him ██████ touched her son. Father Javier stated he asked his son if he touched ██████ or ██████ and he stated no. Javier stated he has never had any issues with his son before and that it was hard to believe his son would do something like that. Javier stated his son knows right from wrong and he has discussed with him that no one is allowed to touch him in his genital area and that he is not supposed to touch anybody in their genital area. Javier stated his son has never acted out in anyway like this before and that the other kids are saying this is not the first time has happened. This SW asked Javier if his son ██████ has ever played in the garage with ██████████████████████████ and he said yes but that an adult always checks on them. This SW asked Javier if he has ever found the kids naked in the garage together and he stated no and that nobody has ever talk to him about that. Javier stated he talks to his children about these kinds of things and has told them that they can always come to him and talk to him if something is going on. Father, Javier stated ██████ and ██████ were the ones who walked into the room and saw all of this happen and that he does not know if they're just making this up. Javier stated all Hilda said about the incident was that she had to report it because of the custody battle that is going on between her and the children's dad. Javier

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04:14 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 7 of 8 |

stated other sexual abuse has happened in Hilda's children's father's household and that ▇▇▇▇ was molested when she was a child by her cousin so he wonders if that has something to do with it. This SW asked Javier where he thinks his son would learned this behavior if indeed this incident did occur. Javier stated he does not believe his son has ever seen anything sexual and that he has seen nothing on TV at his house and does not believe he has seen anything at his mom's house either that would cause him to behave this way. Javier stated if a commercial comes on or something else on TV comes on that is not appropriate they will change it. Javier stated his children are at his house for one week and then they stay with their mom for one week. Javier stated he does not have any concerns with mother, Rosa's home. Javier stated his children have not come back to his home since the incident occurred and from now on he does not want them being alone with his son whatsoever. This SW discussed with Javier concerns that if his son is actually acting out sexually and he is not learning it from his environment and due to the fact that he has down syndrome, from a professional standpoint there is a possibility an adult could be sexually abusing him. Javier stated that he is concerned as well if his son is actually acting out sexually, but that he does not know of anyone who could be sexually abusing his son because his son is always either with him or his mother, Rosa and they do not leave him alone with any other people besides family. This SW discussed appropriate supervision if the children are around each other again. This SW asked Javier if she could speak with both of his children privately and father, Javier gave this SW permission.

F/F visit with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (11).

This SW introduced herself as CPS social worker and explained to ▇▇▇▇ what social workers do. This SW explained to ▇▇▇▇ that the interview was voluntary and that he could end it at any time. ▇▇▇▇ did not understand the difference between a truth and a lie. There were no marks or bruises on ▇▇▇▇ at the time of the visit and he was clean and appropriately dressed. This SW asked ▇▇▇▇ where his body parts were and he knew where most of them were but got some of them confused. Javier knew where his private parts were and laughed when this SW asked him. This SW asked ▇▇▇▇ if anyone has touched him in his private parts and he stated yes, ▇▇▇▇. ▇▇▇▇ continued with saying "▇▇▇▇, butt, ▇▇▇▇, butt" but this SW could not understand what he was saying. ▇▇▇▇ continued to say one or two worded sentences like daddy move, hit him, but, hand, Rosa, Tia and then said Tia hit apa. This SW could not understand what ▇▇▇▇ was saying. Father, Javier later informed this SW that his son refers to him as apa. ▇▇▇▇ also mentioned ▇▇▇▇ name but this SW could understand what he was saying due to his developmental stage of language development. When asked if he felt safe at home ▇▇▇▇ stated yes. ▇▇▇▇ stated he likes being at his daddy's house and stated he does not like going to his mommy's. Thus SW ended the interview due to her inability to converse with ▇▇▇▇ that would benefit the investigation.

SUMMARY: GN: lack of supervision by the mother who failed to supervise her children at the time of the visit with her brother shoulder and which resulted in sexual acts between the children.

DISPOSITION: GENERAL NEGLECT is SUBSTANTIATED on Hilda Garcia on behalf of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and ▇▇▇▇ due to the fact that all five children disclosed and gave similar accounts of ▇▇▇▇ grabbing ▇▇▇▇ head and putting it on his private parts and asked both ▇▇▇▇ and ▇▇▇▇ to kiss him inappropriately. Children reported this was not the first incident that occurred between ▇▇▇▇, ▇▇▇▇ and ▇▇▇▇ and that mother, Hilda Garcia did not report the other incidents. Hilda disclosed similar accounts of the incident but denied it had

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04.14 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 8 of 8 |

occurred before. It was reported adults were downstairs and children were upstairs left unattended for quite sometime. Family is connected with Family Resource Center and mother has stated she does not plan on bringing her children to their Uncle's house in the future.

RD: 2032
CRB: Given
■■■: In writing

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/23/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | CASELOAD ID: | | TELEPHONE |
| Zorayda Velazquez | N5G Velazquez | | (209) 558-2186 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

| REFERRAL NAME: Hilda Garcia aka Perez | | | | REFERRAL NUMBER: 1308-1596-2865-9078567 | |
|---|---|---|---|---|---|
| X EVALUATE OUT | IMMEDIATE | 3 DAY | 5 DAY | 10 DAY | N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Velazquez, Zorayda | Social Worker IV | 03/09/2015 | 10:43am |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5G Velazquez | (209) 558-2186 | Community Services Facility | |

ALERTS:
Case Name: Hilda Garcia aka Perez/ER-0354535
General Neglect/EO
[TANF link]

■■■ said to have met with ■■ today and ■■ showed unidentified pictures of bruise/mold on ■■■■■■■■■■■■ ) leg "from neglect due lack of hygiene at father's house.

Rationale: EO-allegations does not warrant CPS involvement. CMS hx indicates that parents have had custody issues.

Screener: Zorayda Velazquez - N5G

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
Bio-father, Horacio, has custody of all of his bio-logical children and lives at common.

### VICTIM INFORMATION

| NAME | AKA (If applicable) | SOCIAL SECURITY # |
|---|---|---|
| ■■■■■■■■ | | ■■■■■ |

| DOB | AGE | AGE CODE | SEX | ETHNICITY |
|---|---|---|---|---|
| ■■■■■■■ | 7 | Year(s) | M | Hispanic |

SCHOOL/DAYCARE NAME

SCHOOL/DAYCARE ADDRESS

| ABUSE CATEGORY (See Screener Narrative Attached) | ALLEGED PERPETRATOR N |
|---|---|
| General Neglect | |
| CASE WORKER NAME (FOR OPEN CASE) | PHONE # (FOR OPEN CASE) |

**PLAINTIFF'S(S') EXHIBIT**
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 24
Page __1__ of __13__

nd Welfare Agency
ces
ystem

**EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
Page 1 of 13

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 06/30/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |
| Leada Allahwerdi | | N5N Allahwerdi | (209) 558-3359 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez aka Garcia PATH 1    REFERRAL NUMBER: 1622-7561-6907-5053204

| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Allahwerdi, Leada | Social Worker IV | 05/14/2015 | 10:19am |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5N Allahwerdi | (209) 558-3359 | Community Services Facility | |

ALERTS:
CN: Hilda Garcia aka Perez /ER-0354535
Allegation: General Neglect
PATH 1
TANF/LINKED
(SDM Completed)

████ reported that ████████ (9) said that his sister ████ (13) told him that when he was a little baby his mother deprived him of food, but there was $500 in mother's bag. ████ told ████ that mother tried to kill him with a knife when he was a baby. ████ told ████████ that mother wanted from her to kick her in the stomach to miscarry ████ (4). ████ didn't report current incident as ████████ stated what ████ has told him about their mother.

Rational: ████████ (9) said that her sister ████ (13) to him that wanted to kill him with a knife when he was a baby and deprived him of food also, ████ told ████████ that mother asked her to kick her in the stomach to miscarry William (4). ████ didn't report current incident as ████████ stated what ████ has told him about their mother. Family is connected with counseling and FRC. The family is referred to FRC for parenting classes and other supportive services that mother is in need.

Screener: Allahwerdi-N5N
LAW ENFORCEMENT AGENCY                                    POLICE REPORT NUMBER

---

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

---

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
25
Page  1  of  11

elfare Agency     EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with
Penal Code Section 11167 5 and/or
WIC Sections 827 and 10850
Page 1 of 11
SER-0654

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 09/14/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |
| Margarita Zamora | | N5H Zamora | (209) 558-2395 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez          REFERRAL NUMBER: 1412-5798-9950-7085506

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

## SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Zamora, Margarita | Social Worker IV | 09/09/2015 | 11:54am |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5H Zamora | (209) 558-2395 | Community Services Facility | |

ALERTS:
Case Name: Hilda Perez (aka Garcia)/ER-0354535
[TANF link]

CCN: Rosario ▇▇▇ R-0457994
[TANF link]

General Neglect/EO

▇▇ reported that during a home visit, Horacio Sr. (34) had a large Rx bottle in his front pocket with a white powdery substance inside. ▇▇ stated that ▇▇▇▇ (16) was asleep, but eventually did come out to talk to ▇▇ about his lack of attendance at school. ▇▇ stated that ▇▇▇▇▇ appeared dirty and unbathed.

Rationale: EO/Allegations do not meet criteria for CPS to investigate.

Screener: Margarita Zamora - N5H

LAW ENFORCEMENT AGENCY                          POLICE REPORT NUMBER

## HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| | 5 |

CURRENT LOCATION OF CHILD(REN)

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 26
Page 1 of 17

Welfare Agency          **EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
Page 1 of 17

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 12/21/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: Aimee Xiong | | CASELOAD ID: Q3D Xiong | TELEPHONE (209) 558-1578 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez    REFERRAL NUMBER: 1608-9033-6344-3090618

[X] EVALUATE OUT  [ ] IMMEDIATE  [ ] 3 DAY  [ ] 5 DAY  [ ] 10 DAY  [ ] N/A SECONDARY REPORT

### SCREENER INFORMATION

| NAME Xiong, Aimee | TITLE Social Worker IV | DATE 09/28/2015 | TIME 04:54pm |
|---|---|---|---|
| CASELOAD # Q3D Xiong | PHONE NUMBER (209) 558-1578 | LOCATION Community Services Facility | |

ALERTS:
Case Name: Hilda Perez (aka Garcia)/ER-0354535
[CalFresh & Medi-Cal only]

CCN: Rosario ████/ER-0457994
[CalFresh & Medi-Cal only]

General Neglect, Physical Abuse/Eval Out

████ 14, said recently (within the last couple of months) that 5 y/o ████ came home from mom's with fingerprint bruises on his shoulder. ████ said mom and her boyfriend made them.
████ had menstrual cramps in the past and mom gave her 2 pills that made the room spin. ████ and her siblings believe mom gave ████ pills when he was 1 or 2. Grandmother told mom to take him to the hospital when he seemed out of it, and mom initially didn't want to take him. ████ had to have his stomach pumped. Mom said the pills must have fallen onto the floor and he took them.
████ said in the past, mom would kneel on ████ throat until he would urinate on himself and almost pass out. ████ said mom used to cook a plate of food for herself and another plate for the 5 children to share. Mom would beat ████ if she tried to make more food. Mom smacked the children on the bare buttocks with a wire, after which they could not sit down. When ████ was about 9, mom left the home at night and there were no other adults present. ████ and ████, who was 11, were responsible for the younger children. When mom and dad were together, they would fight and mom would say it was all the children's fault and suggest that the parents just leave the children. Mom threatened to kill all the family with a knife. Mother punched and choked father, and kicked him in the testicles. Mother has attempted suicide in Destiny's presence, swallowing pills and saying "Don't wake me up."
While in mother's care, ████ and ████ were touched inappropriately by minor maternal cousin ████, who has down syndrome. ████ walked in on this happening.
████ reports past sexual abuse by step-brother, ████, who lives with her. Four years ago, he took her in the garage, kissed her, and then had intercourse with her. He was 13 and she was 10. She reports that her mom called her a whore and her father stopped talking to her. CPS made ████ move in with his mother at the time, but he ended up back in the home. She reports no subsequent incidents.
████ said when she was about 2 and ████ was 4, her cousin, ████, age unknown, took ████ into the bathroom, touched him, and sucking his penis. ████ said he also made her lick and kiss his penis. ████ still has contact with the family. Mother was present during these disclosures and denied anything that had to do with her.

Sexual abuse by ████ was investigated and closed as unfounded on 8/21/2012: Parents said they had not known the minors were sexually active until ████ told them, and parents acted protectively so that the minors were no longer residing in the same home. It was reported on 8/25/14, that ████ was back in the home. This was investigated and it was

th and Welfare Agency    EMERGENCY RESPONSE REFERRAL INFORMATION    Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850 Page 1 of 27

SER-0656

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 27
Page 1 of 27

| CHILD(RENS) NAME (S) | CHILD ID # |
|---|---|
| Christopher Garcia | 0105-1658-5432-0035797 |
| Damien P. Garcia-Perez | 0939-3920-3979-1074866 |
| Horacio Garcia-Perez | 1229-5749-6203-1074866 |
| William Garcia | 1399-8426-4152-0035797 |
| Destiny Garcia Perez | 1421-5901-0776-0035797 |

learned that ▓ was out of the home for a year and a half, and that currently he and ▓ were having an appropriate relationship.
At time of completion of this referral, screener finds that a report was received regarding past DV and past physical and emotional abuse by mother. The referral is pending closure as a Path 1.

Rationale: Eval out. Mother is suspected of using inappropriate discipline, but a path 1 referral has already been made, pending closure. It appears that the majority of the other reported incidents occurred at least several years ago. ▓▓ states mother did not see kids for 4 years, came back into the picture, and now has visits. Past sexual abuse by ▓ was investigated and allegations unfounded.

Screener: Aimee Xiong - Q3D
LAW ENFORCEMENT AGENCY                                              POLICE REPORT NUMBER

---

### HOME ADDRESS

PHONE NUMBER

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
Children live with dad and visits mother.

---

### VICTIM INFORMATION

| NAME | | | | AKA (If applicable) | | SOCIAL SECURITY # |
|---|---|---|---|---|---|---|
| ▓▓▓▓ | | | | | | ▓▓▓▓ |

| DOB | AGE | AGE CODE | SEX | ETHNICITY | LANGUAGE | ICWA ELIGIBILITY |
|---|---|---|---|---|---|---|
| ▓▓▓▓ | 10 | Year(s) | M | Hispanic | English | Not Asked |

SCHOOL/DAYCARE NAME

SCHOOL/DAYCARE ADDRESS

| ABUSE CATEGORY (See Screener Narrative Attached) | ALLEGED PERPETRATOR NAME | |
|---|---|---|
| General Neglect | Hilda Perez | |
| Physical Abuse | Hilda Perez | |
| CASE WORKER NAME (FOR OPEN CASE) | PHONE # (FOR OPEN CASE) | CASELOAD # |

---

State of California Health and Welfare Agency    **EMERGENCY RESPONSE REFERRAL INFORMATION**    Confidential in accordance with
Department of Social Services                                                                        Penal Code Section 11167.5 and/or
CWS Case Management System                                                                           WIC Sections 827 and 10850
IN-ERREFR (12/93)                                                                                    Page 2 of 27

SER-0657

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 11/18/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | CASELOAD ID: | | TELEPHONE |
| Christopher Lopez | N5I Lopez | | (209) 558-2372 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

**REFERRAL NAME:** Hilda Perez

**REFERRAL NUMBER:** 1155-8646-4395-5058734

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Lopez, Christopher | Social Worker IV | 10/12/2015 | 06:46pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5I Lopez | (209) 558-2372 | Community Services Facility | |

ALERTS:

Case Name: Hilda Perez (aka Garcia)/ER-0354535
Companion Case Name: Rosario ███████ ER-0457994
PATH 1/Physical Abuse

████ reported that mother Hilda Perez disclosed that son ██████████ (5) had told her that stepmother Rosario ███████ had scratched him on his arm while hitting him for being in trouble. No bruises reported. ██████ disclosed that his sister ████████████████ (14) hits him when he is in trouble and he does not like it. No bruises reported. ████ reported that father has custody of the children and mother has visits.

Staffed with SWS Holmes. Recommendation was for a PATH 1.

Rationale: PATH 1 for parenting resources for stepmother due to ████████ being scratched when she disciplined him.

Screener N5I Lopez
LAW ENFORCEMENT AGENCY                    POLICE REPORT NUMBER

### HOME ADDRESS

PHONE NUMBER

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 28
Page 1 of 18

nd Welfare Agency ces ystem    EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
Page 1 of 18

SER-0658

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 11/23/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Leada Allahwerdi | | N5N Allahwerdi | (209) 558-3359 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez E/O          REFERRAL NUMBER: 0928-9644-7525-1053204

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |

## SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Allahwerdi, Leada | Social Worker IV | 10/13/2015 | 01:41pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5N Allahwerdi | (209) 558-3359 | Community Services Facility | |

ALERTS:
Case Name: Hilda Perez (aka Garcia)/ER-0354535
CCN: Rosario ▆▆▆▆ ER-0457994
Allegation: Physical Abuse
Evaluated Out
TANF/LINKED
(SDM Completed)

▆▆▆ reported that stepmother Rosario ▆▆▆ grabbed ▆▆▆ (5) by the arm and scratched him in his right forearm and the incident happened recently. ▆▆▆ didn't report that ▆▆▆ has bruises or marks.

Rational: ▆▆▆ (5) said that his stepmother Rosario ▆▆▆ scratched him in his right forearm. The incident happened recently. ▆▆▆ didn't report that ▆▆▆ has bruises or marks. This is duplicate report and it is evaluated out as same allegation was reported on 10/2/2015 and family was referred to FRC for supportive services.

Screener: Allahwerdi-N5N

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

## HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 29
Page 1 of 21

and Welfare Agency vices System

**EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
Page 1 of 21

SER-0659

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 10/28/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Leada Allahwerdi | | N5N Allahwerdi | (209) 558-3359 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez PATH 1    REFERRAL NUMBER: 0414-6170-0440-3053204

[X] EVALUATE OUT   [ ] IMMEDIATE   [ ] 3 DAY   [ ] 5 DAY   [ ] 10 DAY   [ ] N/A SECONDARY REPORT

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Allahwerdi, Leada | Social Worker IV | 10/21/2015 | 11:54pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5N Allahwerdi | (209) 558-3359 | Community Services Facility | |

ALERTS:
CN: Hilda Perez/ER-0354535
Allegation: General Neglect
Path 1
TANF/LINKED
(SDM Completed)

▮▮▮ reported that ▮▮▮▮▮▮ 16) said that he witnessed domestic violence between the parents when his parents were living at the same home. ▮▮▮▮▮ said physical and emotional abuse from his mother's side. ▮▮▮▮▮ said that CPS was involved with his family in December 2014. ▮▮▮▮▮ said that his mother has joint legal custody with the father. ▮▮▮▮ is receiving counseling. ▮▮▮▮▮ is no longer living with his father.

Rational: ▮▮▮▮▮ (16) said he witnessed domestic violence between parents when his father was living with them. ▮▮▮▮▮ is receiving counseling. Parents have joint legal custody. Horacio no longer lives with his father. The family is referred to FRC for additional supportive services.

Screener: Allahwerdi-N5N

LAW ENFORCEMENT AGENCY                                POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 30
Page 1 of 11

and Welfare Agency vices System   **EMERGENCY RESPONSE REFERRAL INFORMATION**   Confidential in accordance with Penal Code Section 11187.5 and/or WIC Sections 827 and 10850
Page 1 of 11

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 12/07/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: Leada Allahwerdi | | CASELOAD ID : N5N Allahwerdi | TELEPHONE (209) 558-3359 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

| REFERRAL NAME: Hilda Perez E/O -1 | | | | REFERRAL NUMBER: 1186-0916-7422-7053204 |
|---|---|---|---|---|
| X EVALUATE OUT | IMMEDIATE | 3 DAY | 5 DAY | 10 DAY | N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME Allahwerdi, Leada | TITLE Social Worker IV | DATE 11/09/2015 | TIME 02:14pm |
|---|---|---|---|
| CASELOAD # N5N Allahwerdi | PHONE NUMBER (209) 558-3359 | LOCATION Community Services Facility | |

ALERTS:
Hilda Perez/ER-
Allegation: General Neglect
Evaluated Out
TANF/LINKED
(SDM Completed)

■■■■ reported that ■■■■ (14) said when she was 3rd or 4rd grade she had Appendectomy (7 years ago). On the day that she was released from hospital her father put her to bed and went out to run his earns. ■■■■ said when her father left the home at that time Hilda (her mother) told her to get out of the bed and clean the house. ■■■■ said when she told her mother that she just got out of hospital and cannot clean up. ■■■■ said mother pulled her out of bed by the hair. ■■■■ said her brother ■■■■ told her that he would do it. ■■■■ said Hilda became angry because drawer was not clean. ■■■■ said her brother ■■■■ got the blame and Hilda beat him up for that. ■■■■ said over the years her mother Hilda tells her "I will kill you in the sleep". ■■■■ said during all years Hilda told her that "I wish you were dead" and "I would kill you". ■■■■said Hilda use to lock her and her brother in the closet for long period of time. Her mother told her younger ■■■■"you so much look like dad that I wish I killed you". ■■■■ said this incident happened while she was living with her mother Hilda. ■■■■ lives with her father. Destiny is receiving counseling with Sierra Vista. Destiny is no longer visiting her mother. There is no current abuse report by ■■■■. The incident happened to ■■■■ ver 7 years ago.

Rational: There is no current abuse reported by ■■■■ The incident happened to ■■■■ over 7 years ago. Destiny lives with her father. ■■■■ is receiving counseling with Sierra Vista. ■■■■ s no longer visiting her mother.

Screener: Allahwerdi-N5N
LAW ENFORCEMENT AGENCY                                    POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
■■■■and her brother live with father a'

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-J
Exhibit Number:
31
Page 1 of 21

th and Welfare Agency
ervices
t System
EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with
Penal Code Section 11167.5 and/or
WIC Sections 827 and 10850
Page 1 of 21

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 12/09/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | Michelle Morse | CASELOAD ID: Q2F Morse | TELEPHONE (209) 558-2688 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

| REFERRAL NAME: Hilda Perez | | | REFERRAL NUMBER: 1278-1284-5861-1058734 |
|---|---|---|---|
| [NA] NA EVALUATE OUT | [ ] IMMEDIATE   [ ] 3 DAY | [ ] 5 DAY   [X] 10 DAY | [ ] N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Lopez, Christopher | Social Worker IV | 12/08/2015 | 06:00pm |
| CASELOAD # N5I Lopez | PHONE NUMBER (209) 558-2372 | LOCATION Community Services Facility | |

ALERTS:
Case Name: Hilda Garcia aka Perez/ER-0354535
General Neglect/Path 2

■ reported that [ ] (7) was throwing a tantrum today since he did not want to do his homework. Mother Hilda Garcia yelled at son and scared the children in the home to the point where [ ] (1) starting crying. Stepfather Alfredo Sosa became upset and starting yelling at [ ] and threatened to hurt him. Mother and stepfather got into a verbal altercation. ■ is concerned since the children were scared that the situation will escalate to a physical altercation. Screener recommended that ■ contact LE if there is a physical altercation between parents and/or if any of the children are physically injured.

Rationale: PATH 2 due to a domestic violence altercation between parents in the home in front of the children in which a child was threatened by stepfather.

Screener N5I Lopez
Assigned N9B Yang
LAW ENFORCEMENT AGENCY                                        POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| | |

CURRENT LOCATION OF CHILD(REN)

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
32
Page  1  of  17

Health and Welfare Agency
cial Services
gement System
)

**EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with
Penal Code Section 11167.5 and/or
WIC Sections 827 and 10850
Page 1 of 17

SER-0662

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04:20 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page  1 of 9 |

### DELIVERED SERVICE LOG
#### Contacts

FROM:  12/8/2015     TO:  7/10/2020

FOR: ███████████

---

**Contact Date: 12/17/2015**     **On Behalf Of:** ████████████████
███████████████████████

Contact Purpose: Investigate Referral          Staff Person: Michelle Sims
Participant(s): ████████████████████████████████

Method: In-Person          Location: Home          Status: Attempted

On 12/17/2015 at approx. 4:40 pm this SW went to the home of Hilda Garcia, address 3143 Prune Ave. Patterson Ca, 95363. This SW knocked on the door three times and no one answered. SW left a CRB and business card written on it to give this SW a call.

**Contact Date: 12/17/2015**     **On Behalf Of: Damien P. Garcia Perez, Horacio Garcia Perez, William T. Garcia, Destiny A. Garcia Perez, Christopher Garcia, Alfredo Cruz-Sosa**
Contact Purpose: Investigate Referral          Staff Person: Michelle Sims
Participant(s): **Hilda Perez**
Method: Telephone          Location: Other          Status: Completed

On 12/17/2015 at approx. 6:05 pm this SW received a missed call and voicemail from mother, Hilda Perez phone (209) 895-4837 who informed this SW she received a CRB and business card on her door and she was giving this SW a call back.

On 12/18/2015 at approx. 9:35 am this SW gave Hilda a call back and there was no answer so SW left a VM introducing herself as CPS SW and asked Hilda to give her a call back.

Hilda called this SW call back at approx. 12:00 pm and SW introduced herself as CPS SW informing Hilda she was calling in regards to a referral received. Hilda reported she was granted full legal and physical custody November 19th so all 6 children now live with her. Hilda reported ██████ and ████████ are having a hard time with the transition and have been missing a lot of school, not wanting to go. Hilda reported on Monday ████████ would not wake up so she called the school and they sent a security from Truancy to the home and ████████ still would not get out of bed. Hilda reported ██████ was upset about this so she locked herself in the bathroom with a blade and cut herself. Due to this Hilda allowed ████████ to go back to her father's home and stay with him for the night, but she was supposed to come back Tuesday for school and she did not ████████ is still at her father's home. ████████ deals with PTSD and ████████ also cuts himself. School counselors are

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04:20 AM | Logged-On Staff Person: Eric Anderson N9 in-box | Page: 2 of 9 |

working with them as they have refused other counseling. ███ and ███ have been diagnosed with Depressive Disorder, and ███████ has been diagnosed Anxiety and ADHD. Hilda reported according to the court order ███ is not allowed around oldest step brother ██████ because the judge finds him unfit according to what happened years ago. ████ is upset about this and thinks it is stupid. According to custody order ████ is not allowed to be with step mother alone because of physical abuse and she gave him a cold bath. Hilda reported children go to their father's home every other weekend. Friday at 5:00 pm and return Sunday at 7:00 pm. Hilda reported ████████, and ████ are doing well at her home and like their new schools. Hilda wanted to make sure this SW knows how to speak with children who have mental health issues. SW informed Hilda she has spoken with her children before. Home visit is scheduled for Tuesday at 9:00 am due to children being on holiday vacation next week and having a half day today.

**Contact Date:** 12/22/2015  **On Behalf Of:** ████████

**Contact Purpose:** Investigate Referral     **Staff Person:** Michelle Sims
**Participant(s):** **Hilda Perez**
**Method:** Telephone     **Location:** CWS Office     **Status:** Completed

On 12/22/2015 at approx. 9:00 am this SW made a TC to mother Hilda Perez to confirm home visit. Hilda reported that Father, Alfredo took off with ████████ (1) because he does not want to cooperate with CPS. Hilda reported Alfredo knows his rights when it comes to CPS and he does not have to let him see him. Hilda reported she needs to leave her home by 10:15 am and two of the children are sleeping and ██████ is at her father's home and will most likely stay there because that is where she wants to be. Hilda reported she would prefer to reschedule the home visit. Home visit was rescheduled for 01/05/2015 at 9:00 am.

SW informed Hilda of the referral over the phone and Hilda reported the referral was false and she knew where this was coming from. Hilda reported the day of the incident ████ was upset because his zipper broke. Hilda reported is depressive and he has a learning disability. Hilda reported when she re-directs him he gets upset and he started yelling at her. Hilda reported Baby ████ is sensitive and he does not like loud noises. ████ started to cry and so she told ████ to calm down and she put him in time out. Hilda reported ████ became even more upset after this and started grabbing stuff and she was afraid he was going to hurt himself. Hilda reported ████ walked over to the conventional oven which was warm and pulled on it so she put ████ in a safe spot. ████ dropped to the floor kicking and yelling and ████ began to cry even more. Hilda reported she went to comfort ████ and told ████ that is not ok, walking him to his room. Hilda reported later on ████ came out of his room by himself and they all sat around the table and were doing their homework. Hilda reported ████ apologized to ████ Hilda denied that her and father, Alfredo got into an argument and reported they do not argue. Hilda reported she will try to make sure baby, ████ is home when SW comes out to her home and if not she will bring him to the office the following Wednesday when she runs errands. Hilda reported the children go back to school 01/11/2015.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04.20 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:  3 of 9 |

**Contact Date: 01/04/2016      On Behalf Of:** ███████████████████████

**Contact Purpose:** Investigate Referral           **Staff Person:** Michelle Sims
**Participant(s):** ████████████████████████████

**Method:** In-Person        **Location:** Home              **Status:** Completed

On 01/04/2015 at approx. 9:40 am this SW arrived to the home of mother, Hilda
Perez, address 3143 Prune Ave. Patterson, Ca 95363. This SW knocked on the door and
mother, Hilda Perez invited this SW into her home. The home was clean and
appropriate with plenty of food and no safety hazards. Hilda gave this SW
permission to speak with her children. SW saw ███████████████ (5) who
was in the home and SW said hi to him and asked him if he remembered this SW.
█████████ shook his head yes and then walked in to his bedroom. Hilda said he
does not want to talk to you. SW asked Hilda if she could please speak with ████
████ (17) .Hilda went into the room to get him and William came back out. ████
was willing to speak to this SW when his mother was not present.

F/F visit with ████████████████████ (5).

████████ was clean and appropriately dressed at the time of the visit. ████ had a
red scratch on his forehead about an inch long and he reported he got it when he
hit his head on his skateboard. William also had a bump on his finger that
resembled a bug bite. ████ reported to have no other marks or bruises at the
time of the visit. Hilda Garcia had informed ████████ interview with this SW was
voluntary an according to ██████████ (17), she told him not to speak with this SW.
████ knew the difference between a truth and a lie, an example was when he said
it would be a lie if SW said he was at Disneyland because the truth is he is at
home.

████ reported he feels safe at home. ████████ reported when he gets in trouble he
gets sent to time out or gets a warning. SW asked ██████ if anyone fights or
argues at home and reported ██████████ does. When asked if anyone else fights
████ reported ██████ and ██ do. ████ did not know whether or not his mom and
Alfredo fight. At this time Jr. walked into the living room and the interview
ended. SW would like to acknowledge ██████ was hesitant to speak with this SW. The
interview lasted approx. 5 minutes.

F/F visit with ████████████████████████████ (17).

SW introduced herself to ███ and he reported that he remembered speaking with this
SW previously. ████ was clean and appropriately dressed with no visible marks or
bruises at the time of the visit. ███ can differentiate the difference between
truth and lie and stated that he would tell the truth. This SW informed ███ that
the interview was voluntary and he could stop the interview at anytime. The
interview remained within the 30 minute timeframe. SW spoke with ███ in the den of
the house but he kept pausing to hear if his mother was listening and at one time
peeked behind the curtain to look. SW asked ███ if he would feel more comfortable
speaking with this SW outside and he agreed.

████ reported it is different living with his mom and he feels safe because he is
big and already knows how to take care of himself. ████ reported he already knows
when he turns 18 his mother is going to kick him out, but he will always have a

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04:20 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:  4 of 9 |

home at his dad's house. SW asked ▇▇▇ if he feels like his brothers are safe at his
mom's home and he said no. ▇▇▇ reported there was an incident when ▇▇▇▇ did not
want to put his shoes on and his mother got really mad because when he goes to his
dad's home he swaps shoes. ▇▇▇ reported his mother kept grilling him about the
shoes until it got to a point where ▇▇▇▇ did not even want to wear shoes and
ended up not wearing any when he left the home. ▇▇▇ reported his mother
interrogates ▇▇▇▇ and the other night ▇▇▇▇ was telling her no and he
had went outside and was trying to leave but his mother grabbed him by the shoulder
and wouldn't let him go, finally pulling him back in the house. ▇▇▇ reported this
was the night ▇▇▇▇ called CPS. ▇▇▇ reported his mother has gotten really close
to being physical with his brothers but has not hit them yet. ▇▇▇ reported his
brothers are in time out half the day and they go into timeout because of things
like running around and playing. ▇▇ Reported his mother and her boyfriend do not
fight or argue or at least not front of them that he knows of. This SW asked ▇▇▇▇
if he feels safe around his mother's boyfriend and he reported sometimes he feels
safe around him it depends what mood he is in. ▇▇▇ reported his mother's boyfriend
gets mad quickly and gets mad at the boys when they're just running around playing.
▇▇ Reported sometimes his mom's boyfriend scares him and he doesn't know if he's
going to end up hitting his brothers. ▇▇▇▇ reported the night that ▇ called
CPS his mother's boyfriend stayed in his room and only came out one time and was
very pissed but didn't say anything. ▇▇ reported that night ▇▇▇▇▇ had locked
himself in the bathroom with ▇▇▇ because that is where they thought they would
be the safest. ▇▇ Reported he still misses his dad and the boys always ask if they
can go back home to their dads house. ▇▇ reported his mom puts a lot of stuff into
his brothers' heads and he knows that she is not supposed to talk to them about
court but she does because they will start saying stuff out of nowhere that they
are not supposed to know. He reported they get enough to eat at home, ▇▇ Stated he
likes being at his dads house better and he goes there the first and third weekend
of the month. ▇▇ reported his mother talks about kicking them out and she started
saying this when they first got there. ▇▇ reported his mother would let him go to
his dad's house but he does not want to leave his brothers alone with his mom. ▇▇
reported his mother let ▇▇ go to his dad's because she was too much for her.
▇▇ reported when they were younger, his mom would hit them. She walked out on them
but now she's back in their life. Jr. reported when they lived at their dads house
they were ok but since they have moved to their mom's ▇▇▇▇▇▇▇ has been labeled
as ADHD, ▇▇▇ has been labeled as transgender and ▇▇▇▇ as colorblind. ▇▇
reported ▇▇▇ liked to play with his stepsister's toys but that was it. ▇▇
reported since he has come to his mother's home his mother has put all these things
in his head saying that he can choose to be a boy or girl and has given him girl
clothes and now he wears girl clothes. ▇▇ reported his brothers may not talk to
this SW because his mom was telling them not to talk to this SW. ▇▇▇▇ reported
his mom even tried to tell him not to talk with this SW. She gave him a red card
that had his rights on it. ▇ had nothing further to say to this SW.

SW went back in the home and all children were in their mother's room. SW asked
▇▇▇▇▇ if he would be willing to speak with this SW and he agreed. ▇▇▇▇▇
wanted to speak with this SW while his brothers were present. SW spoke with
▇▇▇▇▇ and ▇▇▇ in the room together with their brothers.

Continue on note 01/04/2016 at approx. 9:41 am.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04:20 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:  5 of 9 |

**Contact Date: 01/04/2016    On Behalf Of:** ████████

████████████████████████████████████████████

**Contact Purpose:** Investigate Referral            **Staff Person:** Michelle Sims
**Participant(s):** ████████████████████████████████████

**Method:** In-Person            **Location:** Home            **Status:** Completed

Continued from note 01/04/2016 at approx. 9:40 am.

F/F visit with ████████████████████ (10).

This SW introduced herself as a CPS SW and asked ████████ if he remembered this
SW and he did. ████████ said he felt comfortable talking with this SW alone.
████████ was clean and appropriately dressed with no visible marks or bruises at
the time of the visit. ████ can differentiate the difference between truth
and lie and stated that he would tell the truth. This SW informed ████████ that
the interview was voluntary and he could stop the interview at anytime.  The
interview remained within the 30 minute timeframe.

████████ reported sometimes he feels safe at his mom's home, but the times he
does not is when he is left home alone with ████████████████████ ████████
reported he also does not feel safe when he is in the car and feels like he is
going to crash. ████ reported for discipline he gets put in timeout, in the
chair in the kitchen and he has to sit in time out for 20 minutes. ████
reported ████ sits in time out for 10 minutes. ████ reported he has to go
in time out a lot because he keeps playing and he is only supposed to play outside.
SW asked ████████ about the time that ████ was upset and he locked himself in
his bathroom with ████████████ reported he did not remember and the
interview ended.

F/F visit with ████████████████████ (1).

Due to ████ being the age of 1, this SW was not able to interview the child. He
was well groomed and dressed, appeared healthy, and had no visible marks or
bruises. The child appeared to be of average height and weight as other children of
similar age.

F/F visit with ████████████████████ 08 (7).

This SW introduced herself as a CPS SW and asked ████ reported he remembered this
SW. ████ said he felt comfortable speaking to this SW with his brothers present.
████ was clean and appropriately dressed with no visible marks or bruises at the
time of the visit. ████ can differentiate the difference between truth and lie
and stated that he would tell the truth. This SW informed ████ that the interview
was voluntary and he could stop the interview at anytime. The interview remained
within the 30 minute timeframe.

SW asked ████ if he feels safe at his mom's house and he said no. SW asked ████
why he does not feel safe and he remained quiet and did not answer. ████ reported
his mom and ████ got into an argument and it looked like his mom was going to hit
████████ reported his mother kept yelling and raising her voice. The interview
ended.

SER-0667

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04 20 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 6 of 9 |

SW spoke with mother, Hilda Perez and discussed with her a couple concerns. Hilda reported ▮▮▮▮ wants to dress like a girl and likes playing with girls toys. Hilda reported she took ▮▮▮ to see a specialist/ counselor for transgender children and was told he did not need services. Hilda reported she puts her children in time out once in a while but not that often. Hilda reported she learned you put children in timeout for 2 minutes for every year they are born. Hilda does not usually do that but cuts the time in half. Hilda reported she puts the boys in time out for hitting each other and saying bad words. Hilda reported she does not want the boys to hurt each other. Hilda reported all children are in counseling through Center for Human Services with the exception of ▮▮▮▮ because they could not provide him services. Hilda reported when ▮▮▮▮. was born she and his father took parenting classes through catholic charities called Nurturing Parents Work Shop. Hilda continuously brought the conversation back to how her children had all these issues from staying at their father's home. Hilda also showed this SW the custody papers saying ▮▮▮▮ could not be around ▮▮▮ Hilda gave this SW Father, Alfredo's phone # (209) 765-3812.

**Contact Date:** 01/04/2016    **On Behalf Of:** ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮
**Contact Purpose:** Investigate Referral    **Staff Person:** Michelle Sims
**Participant(s):** ▮▮▮▮▮▮
**Method:** In-Person    **Location:** Home    **Status:** Completed

01/04/2016 at approx. 11:05 am this SW arrived to the home of father. Horacio Garcia, address 822 Bystrum Rd. Modesto, Ca. ▮▮▮▮▮▮▮▮▮. SW knocked on the door and ▮▮▮▮ answered. ▮▮▮▮ came outside to speak with this SW reporting her parents were not home and she was watching her siblings.

This SW introduced herself as a CPS SW and Destiny reported she remembered this SW. Destiny said she felt comfortable talking with this SW alone. Destiny appeared healthy and clean with no visible marks or bruises on her at the time of the visit, with the exception of cutting scars on her left arm and a 1/2 an inch long each. There were about 25 scars. There were no fresh marks. Destiny can differentiate the difference between truth and lie and stated that she would tell the truth. This SW informed Destiny that the interview was voluntary and she could stop the interview at anytime. The interview remained within the 30 minute timeframe.

▮▮▮▮ reported ▮▮▮▮▮▮▮▮ 12/08/2015, ▮▮▮▮ was throwing a tantrum, he has a speech disorder and he was throwing himself on the ground. ▮▮▮▮ reported everyone was watching a movie but ▮▮▮ was mad and began yelling and kicking so their mother told him he was going to stay in timeout for another 30 minutes. ▮▮▮ reported ▮▮▮▮ continued to talk back and her mom kept getting at him. ▮▮▮ reported she did not know what her mom was going to do to Damien so she told ▮▮▮ to get ready to call the police. ▮▮▮ was scared ▮▮▮▮ was going to have an asthma attack. Destiny reported at this time Freddy started crying and he cried 3 times. ▮▮▮▮ was yelling. Alfredo Sr. came out and picked up ▮▮▮ cursing, telling ▮▮▮ don't be scaring my f'n kid like that. ▮▮▮ reported Alfredo Sr. told her mother to take ▮▮▮ to his F'n room and that is what her mother did and she was angry with ▮▮▮▮. ▮▮▮▮ reported ▮▮▮▮ (17) started to get into it, but then he and ▮▮▮▮ went to their room. ▮▮▮▮ reported a little while later Alfredo Sr. showed ▮▮▮ a tazer and was threatening him. ▮▮▮▮

SER-0668

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04:20 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page:   7 of 9 |

reported ██████ told her that Alfredo Sr. is always yelling at them so he is used
to it by now. ██████ reported ██████████ is scared Alfredo Sr. will hit ██████
██████ reported that night she stayed up and made sure nothing happened to her
brother. ██████ reported when she was at her mother's home she started cutting
herself because it was too much living at her mom's and when her mom caught her she
asked her if she wanted to go to her dad's. ██████ reported that is what her
mother does, she doesn't want to deal with a problem so she gets rid of it. ██████
reported she has not cut herself since she came back to her dad's house. ██████
reported she could not handle the stress at her mother's home. ██████ reported she
would have to watch the kids and heat up the food for everyone and that her and
██████ watched the children all the time while mother was at work. ██████
reported she wants to be at her dad's house but she worries about her brothers at
her mom's and wants to go back just to make sure they are ok. ██████ stated an
incident occurred in which her mother locked her phone in her room and wouldn't let
her have it and she kept following her around bothering her. Destiny reported she
told her mother to get out of her face and stop following her and her mom
threatened to call the cops. ██████ reported when ██████ lived at his dad's he
would play with his step sister's, barbies, but that he is young and that is what
he likes to do. ██████ reported when ██████ went to his mother's home she started
putting it in his head that he is a girl and that he can be whatever he wants to
be. ██████ reported her mother bought ██████ girl toys and clothes for Christmas,
but that he is not transgender and she has put this label on him. ██████ reported
one day her mother asked ██████ if he wanted to grow out hishair and have hair
like a princess. ██████ reported she is disturbed by all of this because ██████
did not used to be like this before living with mom. ██████ reported she feels
safe at her dad's home but not at her mom's.

██████ informed this SW her father's phone # was (209) 658-5266.

**Contact Date:** 01/04/2016    **On Behalf Of:** ████████████████████████████
██████████

**Contact Purpose:** Investigate Referral         **Staff Person:** Michelle Sims
**Participant(s):** Horacio G. Garcia
**Method:** Telephone              **Location:** Other          **Status:** Completed

On 01/04/2015 at approx. 11:10 am this SW made a TC to Father, Horacio Garcia,
phone # (209) 568-5266. This SW introduced herself as CPS SW and informed Horacio
she had an open investigation in regards to mother, Hilda Perez's home and asked
him if he has any concerns. Horacio reported his biggest concern is that Hilda is
telling ██████ that he is a girl and is dressing him in girls clothes. Horacio
reported ██████ told him his mother told him he could make the decision to be a
boy or girl and told him he is a girl in a boys body. Horacio reported he has asked
██████ if he wants to cut his hair but he says no because his mom told him girls
have long hair. Horacio reported he is also concerned because mother is saying
██████ is colored blind, but he knows he is not because he knows the difference
between red and blue. Horacio reported he is also concerned because mother was
allowing ██████ to smoke, not just cigarettes but marijuana. Horacio reported
██████ did not smoke when he lived at his house and ██████ gave him his lighter
recently an told him he would quit after Father, Horacio talked to him. Horacio
reported other then these concerns the children seem happy when they come to visit
him.

SER-0669

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04:20 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page: 8 of 9 |

**Contact Date: 01/04/2016     On Behalf Of:** ███████████████████████

**Contact Purpose:** Investigate Referral          **Staff Person:** Michelle Sims
**Participant(s):** **Alfredo Cruz Sosa Sr**
**Method:** Telephone          **Location:** CWS Office          **Status:** Attempted

On 01/04/2016 at approx. 4:04 pm this SW made a TC to father, Alfredo Cruz Sosa, Phone # (209) 765-3812. There was no answer. SW introduced herself as CPS SW and asked Alfredo to please give this SW a call back.

On 01/07/2016 at approx. 9:10 am this SW made a TC to father, Alfredo Cruz Sosa, Phone # (209) 765-3812. SW introduced herself as CPS SW and asked Alfredo to please give this SW a call back. SW called phone # for Hilda (209) 895-4837 and left a message informing her she still needed to speak with Alfredo before she closed out her case and if she could please give this SW a call back.

Due to the telephone call conversation on 12/22/2015 when Hilda stated that Father, Alfredo was not going to be cooperative with CPS and due to the fact that he has not called this SW back. This SW is closing out the case without talking with Alfredo due to his allegations being Unfounded.

SUMMARY: ██ reported that ██████████████ (7) was throwing a tantrum today since he did not want to do his homework. Mother Hilda Garcia yelled at son and scared the children in the home to the point where ████ (1) starting crying. Stepfather Alfredo Sosa became upset and starting yelling at ████ and threatened to hurt him. Mother and stepfather got into a verbal altercation. ██ is concerned since the children were scared that the situation will escalate to a physical altercation. Screener recommended that ██ contact LE if there is a physical altercation between parents and/or if any of the children are physically injured.

DISPOSITION: GENERAL NEGLECT is UNFOUNDED on Hilda Perez and Alfredo Cruz on behalf of children and EMOTIONAL ABUSE is INCONCLUSIVE on Hilda Perez on behalf of children due to the fact that children disclosed they were scared during an argument that occurred in the home due to ██████ behavior and mother trying to deal with his behavior. Parents and children denied that there has been any physical altercations in the home and also deny that Hilda and ████ argue or fight. ████ is back living with her father after an incident in which she was cutting herself and mother told her she could live with her father. ████ reports she was cutting herself because it was too much living with her mother and they argued often. Father, Horacio, ████ and ██ are all reporting mother, Hilda is putting it in ███████'s head that he is a girl, buying him girl clothes and telling him he is a girl in a boys body. Mother denies this, but reports ████ likes to play with girls toys and where girls cloths. Father, Horacio, ████ and ██ all report that mother is saying ████ is color blind but he is not. Children receive counseling through Center for Human Services with the exception of ████.

RD: 2032
CRB: Given
███: N/A

SER-0670

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04:20 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page 9 of 9 |

**Contact Date:** 01/15/2016      **On Behalf Of:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Contact Purpose:** Investigate Referral          **Staff Person:** Michelle Sims
**Participant(s):**
**Method:** In-Person          **Location:** CWS Office          **Status:** Completed

On 01/15/2016 at approx. 4:30 pm this SW staffed this High Risk Case with ER
Manager Christine Huber and informed her of allegation disposition and details to
the investigation. Case was approved to close out.

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 12/16/2015 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: Zorayda Velazquez | | CASELOAD ID: N5G Velazquez | TELEPHONE (209) 558-2186 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez
REFERRAL NUMBER: 0295-8721-7086-7078567

[X] EVALUATE OUT  [ ] IMMEDIATE  [ ] 3 DAY  [ ] 5 DAY  [ ] 10 DAY  [ ] N/A SECONDARY REPORT

### SCREENER INFORMATION

| NAME Velazquez, Zorayda | TITLE Social Worker IV | DATE 12/15/2015 | TIME 04:57pm |
|---|---|---|---|
| CASELOAD # N5G Velazquez | PHONE NUMBER (209) 558-2186 | LOCATION Community Services Facility | |

ALERTS:
Case Name: Hilda Perez (aka Garcia)/ER-0354535
General Neglect/EO
[CalFresh & Medi-Cal only]

███████ (14) reported that her mother, Hilda Perez (33), and her mother's boyfriend are gone during the day, and that her younger brother, ███████ (5), arrives home from school on the bus before she, her mother, or her mother's boyfriend arrive home. █████ reports that the only person home is her older brother, Horacio (17), who has not been attending school. █████ reports that she is unaware if Horacio is awake during this time or is able to supervise █████

Rationale: EO-CMS shows that there is an open case since 12/08/15 for DV incident between caregivers; open to SW Morse - Q2F.

Screener: Zorayda Velazquez - N5G

LAW ENFORCEMENT AGENCY                    POLICE REPORT NUMBER

### HOME ADDRESS
| PHONE NUMBER

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
At common.

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 34
Page 1 of 15

and Welfare Agency
ices
System

EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with Penal Code Section 11167.5 and/or W/C Sections 827 and 10850
Page 1 of 15

SER-0672

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 04/14/2016 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Ellen Carrillo | | N9I Carrillo | (209) 558-3419 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez

REFERRAL NUMBER: 1299-5643-8923-6090375

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME | | TITLE | DATE | TIME |
|---|---|---|---|---|
| Carrillo, Ellen | | Social Worker IV | 01/07/2016 | 09:16am |
| CASELOAD # | PHONE NUMBER | | LOCATION | |
| N9I Carrillo | (209) 558-3419 | | Community Services Facility | |

ALERTS:
Case Name: Hilda Perez (aka Garcia)/31-0354535
[CalFresh & Medi-Cal only]

Companion Case Name: Rosario ███████/31-0457994
[TANF link]

General Neglect/ EO

███████ (14) reported that as a child, her mother, Hilda Perez, routinely made statements regarding her half brother ███ aka ████████ being a "bastard child" or saying that she should kill ███ Destiny reports that as a result, she grew up to hate ███ reports that a series of incidents occurred approximately 3 years ago. She reports that she slapped ████ on the face, locked him in a bathroom unattended until he stopped crying, and shut/locked ███ in a refrigerator for a few seconds. ███████ reports these were separate incidents that occurred during those 3 years. ████ reports that she doesn't like to be around ████ due to the guilt she feels. She reports she no longer has feelings of hate or anger to ████ and no other incidents have occurred.

Rationale: ███████ reports that approximately 3 years ago, she was abusive to her half brother "███ aka ████ ████ reports that she slapped him, and locked him in a bathroom until he stopped crying. She also reports that she shut him in the refrigerator for a few seconds. ████ is receiving counseling services and reports no other incidents or feelings of hate towards ███

Screener: Ellen Grace Carrillo – N9I

LAW ENFORCEMENT AGENCY

POLICE REPORT NUMBER

### HOME ADDRESS

PHONE NUMBER

CURRENT LOCATION OF CHILD(REN)

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
35
Page 1 of 34

...lth and Welfare Agency
...ervices
...nt System

EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with
Penal Code Section 11167.5 and/or
WIC Sections 827 and 10850
Page 1 of 34

SER-0673

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 02/04/2016 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |
| Carol Stewart | | N5C Stewart | (209) 558-2350 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez    REFERRAL NUMBER: 1496-6260-7371-6054628

[X] EVALUATE OUT  [ ] IMMEDIATE  [ ] 3 DAY  [ ] 5 DAY  [ ] 10 DAY  [ ] N/A SECONDARY REPORT

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Stewart, Carol | Social worker IV | 01/22/2016 | 04:43pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5C Stewart | (209) 558-2350 | Community Services Facility | |

ALERTS:
***All parties in the home are bi-lingual: ▇ father, Victor, who does not live in the home, is Spanish-speaking***
Case Name: Hilda Perez aka Garcia / 31-0354535
Companion Case Name: Rosario ▇ ER-0457994
General Neglect/ E/O

▇, and ▇ have Cal Fresh and Medi-Cal with mother.
▇ 14, said she used to get her "ass beat" (hair pulled and slapped around) by her father. She referred to this as in the past and it seems it was at least a year ago. Currently mom has full custody but ▇ is living with dad.
Referral pending closure as GN unfounded/ EA inconclusive for mother. There have been 11 prior referrals in the past 2 years, most evaluated out.

Rationale: Disclosure is of past inappropriate parenting. Currently there is no abuse and the minor is already in counseling.

Screener Carol Stewart
LAW ENFORCEMENT AGENCY                    POLICE REPORT NUMBER

### HOME ADDRESS
PHONE NUMBER

ADDRESS COMMENTS  Common is mother's address.

CURRENT LOCATION OF CHILD(REN)
Residences for the children are per C-IV, but ▇ states ▇ and at least some of her siblings are now with dad.

PLAINTIFF'S(S') EXHIBIT Case Number: 1:21-CV-00841-JAM-KJN Exhibit Number: 36 Page 1 of 36

SER-0674

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 05/17/2016 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Cristina Mendez | | Q1G Mendez | (209) 558-1522 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez (aka Garcia)   REFERRAL NUMBER: 1257-3824-1752-4082068

[X] EVALUATE OUT  [ ] IMMEDIATE  [ ] 3 DAY  [ ] 5 DAY  [ ] 10 DAY  [ ] N/A SECONDARY REPORT

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Mendez, Cristina | | 05/13/2016 | 02:30pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| Q1G Mendez | (209) 558-1522 | Community Services Facility | |

ALERTS:
Case Name: Hilda Perez (aka Garcia)/ ER-0354535
General Neglect/ Path 1
[Cal Fresh & MediCal only]

■ reported that mothers leaves to work while leaving ▆ (17) supervising younger children. ■ reported that ▆ screams at children and uses physical discipline. ■ reported that mother has been made aware; however, continues to leave ▆ in charge supervising minor children in the home.

On 05/13/16 a second call came in. ■ reported that ▆ (14) disclosed that mother leaves them 9-10 hours with older brother ▆ (17). ■ reported that based on what ▆ disclosed, ▆ is not mature enough to be supervising younger siblings due to using physical punishment as a form of discipline such as smacking, yelling, pulling by arms. Most recent incident occurred on 05/12/16 where ▆ (17) got mad at younger sibling ▆ and pulled him by the hand and smacked him. No marks or bruises reported.

Rational: Path 1 referred to FRC for counseling and supportive services.

Screener Mendez N5E
LAW ENFORCEMENT AGENCY                    POLICE REPORT NUMBER

### HOME ADDRESS
PHONE NUMBER

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)
at common

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 37
Page 1 of 22

Health and Welfare Agency   EMERGENCY RESPONSE REFERRAL INFORMATION   Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850 — Page 1 of 22

SER-0675

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 08/24/2016 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |
| Cristina Mendez | | N5E Mendez | (209) 558-1522 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez (aka Garcia)     REFERRAL NUMBER: 0425-1116-9675-6082068

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | | DATE | TIME |
|---|---|---|---|---|
| Mendez, Cristina | | | 06/27/2016 | 11:36am |
| CASELOAD # | PHONE NUMBER | LOCATION | | |
| N5E Mendez | (209) 558-1522 | Community Services Facility | | |

ALERTS:
Case Name: Hilda Perez (aka Garcia)/ER-0354535
Allegation: General Neglect/Eval Out

████ reported that ████ (████ s younger sibling) told mother that when ████ visit s father, she sleeps in the same bed with step-brother ████████ ██ reported that per mother, there is a custody order that ████ cannot be in the home when ████ is visiting.

CMS hx shows referral investigation 07/25/2012 for Sexual abuse against ████ Disposition was UNFOUNDED.

Rationale: Eval-Out. ████ is 14 years of age and ████ is 18. Per Child Sexual Abuse reporting requirements, if a child is 14 or over and is having consensual sex activity with person under 21 years of age, it does not meet child abuse criteria.

Screener: Cristina Mendez - N5E

LAW ENFORCEMENT AGENCY                              POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| ADDRESS COMMENTS | |

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**38**
Page _1_ of _26_

...th and Welfare Agency     EMERGENCY RESPONSE REFERRAL INFORMATION     Confidential in accordance with Penal Code Section 11187.5 and/or WIC Sections 827 and 10850
...ervices
...nt System                                                                          Page 1 of 24

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/21/2016 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | Carol Stewart | CASELOAD ID: N5C Stewart | TELEPHONE (209) 558-2350 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez

REFERRAL NUMBER: 1454-8164-7858-0054628

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

## SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Stewart, Carol | Social worker IV | 06/28/2016 | 08:39am |
| CASELOAD # N5C Stewart | PHONE NUMBER (209) 558-2350 | LOCATION Community Services Facility | |

ALERTS:
Case Name: Hilda Perez (aka Garcia)/ ER-0354535
General Neglect/ Path1
CalFresh and Medi-Cal only

▇▇▇▇▇ 10, told ▇▇▇ that yesterday ▇▇▇▇▇ 14, grabbed his shoulder, threw him into the wall, and slapped his face. Mother was not home: ▇▇▇▇ was babysitting. This is a second time: about a month ago ▇▇▇▇ 17, grabbed ▇▇▇▇▇ or ▇▇▇, 8, hard by the shoulders, which left bruises. This was also while mother was not at home. For discipline, mom just talks to them. There is a history of physical abuse by mom to the children. Screener finds that 17 y/o ▇▇▇ using physical discipline on the younger children was reported on 5/13/2016 and referred to DRP for counseling and supportive services.

Rationale: Older minors use physical discipline on younger children while mother is not home. Path 1 referral has already been made.

Screener Carol Stewart

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

## HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 39
Page 1 of 25

...elfare Agency     **EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
Page 1 of 25

SER-0677

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 08/24/2016 |
|---|---|---|---|

| STREET ADDRESS: | 251 East Hackett Road | | |
|---|---|---|---|
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |

| NAME OF SOCIAL WORKER: | CASELOAD ID: | TELEPHONE |
|---|---|---|
| Claudia Llamas-Caballero | Q2H Llamas-Caballero | (209) 558-2040 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez          REFERRAL NUMBER: 1191-8301-8584-4085051

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Llamas-Caballero, Claudia | Social Worker IV | 08/19/2016 | 04:10pm |

| CASELOAD # | PHONE NUMBER | LOCATION |
|---|---|---|
| Q2H Llamas-Caballero | (209) 558-2040 | Community Services Facility |

ALERTS:
Case Name: Hilda Perez (aka Garcia)/ ER-0354535
Physical Abuse/Path 2

███ reports that ███ stated the following incident happened 2 months ago. Mother grabbed
███ (2) roughly by the shoulder leaving marks, shoving him in the room, and leaving him
in there with no supervision. ███ then fell out of the window landing on a cactus plant.
███ had taken pictures and her mother took the phone away. ███ concerned with mother's
parenting.

CWS/CMS: Substantial hx and mother has hx of physical abuse

Rationale: Incident where mother grabbed 2 y/o roughly leaving marks and leaving him in a
room unsupervised to the point where he fell out of a window.

Screener and assigned to Llamas-Caballero Q2H

LAW ENFORCEMENT AGENCY                    POLICE REPORT NUMBER

### HOME ADDRESS

PHONE NUMBER

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 40
Page 1 of 28

Welfare Agency     **EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with
Penal Code Section 11167.5 and/or
WIC Sections 827 and 10850
Page 1 of 28

SER-0678

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04:26 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page 1 of 5 |

## DELIVERED SERVICE LOG
### Contacts

FROM: 8/19/2016   TO: 7/10/2020

FOR: ████████████████████

**Contact Date:** 08/26/2016   **On Behalf Of:** ████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Claudia Llamas-Caballero
**Participant(s):** ████████████████████████████████████

**Method:** In-Person        **Location:** Home        **Status:** Attempted

Case Name: Hilda Perez (aka Garcia)
31-0354535
Path 2

Substantial CWS/CMS Hx. Previous investigation for EA INC by SW Morse. Prior
Evaluate outs this year for similar concerns that ████ reports that her mother
is emotionally and physically abusive.

On 8/26/2016, SW Llamas attempted a H/V at 3143 Prune Ave Patterson, CA. SW Llamas
circled around as there are multiple homes with no number. SW attempted a T/C at
number provided and was unable to leave a voicemail.

**Contact Date:** 09/12/2016   **On Behalf Of:** ████████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Claudia Llamas-Caballero
**Participant(s):**
**Method:** Written        **Location:**        **Status:** Completed

SW Llamas informed by Intake SW Velazquez that minor Destiny is currently at Hutton
House.

**Contact Date:** 09/13/2016   **On Behalf Of:** ████████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Claudia Llamas-Caballero
**Participant(s):**
**Method:** Telephone        **Location:**        **Status:** Completed

On 9/13/2016, SW Llamas and MSW Intern Sierra were on their way to Hutton House.
Intake SW Stokes called stating that ████████ is back at school and reporting that
her mother is emotionally and physically abusive.

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 41
Page 1 of 5

SER-0679

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04:26 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 2 of 5 |

**Contact Date: 09/15/2016**    On Behalf Of: ██████████

**Contact Purpose:** Consult with Staff Person    **Staff Person:** Carol Stewart
**Participant(s): Hilda Perez**
**Method:** Telephone    **Location:**    **Status:** Completed

9/15/2016 T/C with SW Stewart
Hilda called this SW sounding upset and anxious. She received a text from "Ariana," from (209) 312-8021, stating Ariana is from CPS and wants to know about the runaway status and if ████ was in school. She texted back but it sounded fishy and she ended the call. Sunday mom had not heard from ████ and SO got involved and ████ came home on Sunday. Mother last saw them on Tues before school. They went to school but did not return home. In the afternoon she got a text saying he was hanging out with friends. Mother called Deputy Walker at SO and texted dad that they had run away, but dad did not respond. ████ seems to have a lot of new stuff lately. They said dad is "loaded" after selling something.
This SW asked if anything unusual happened before ████ and ████ ran away. ████ had a 25 oz bottle of beer hidden in her room. Mom found it and took her cell phone away. ████ threatened to jump out the window. 10 y/o told officers that ████ watched videos of how to jump out of a car. Both ████ and ████ are cutters. All of the children are engaged in counseling. The children are not supposed to see their father, but there was a picture on her phone of dad and ████ together. Mother is concerned that ████ and her 18 year old brother share a bed at dad's. ████ has not disclosed inappropriate touching. This SW advised that if a CPS SW is assigned to the family, SW will get in touch with that person and request a call to her.

**Contact Date: 09/16/2016**    On Behalf Of: ██████████

**Contact Purpose:** Investigate Referral    **Staff Person:** Claudia Llamas-Caballero
**Participant(s): Hilda Perez**
**Method:** Telephone    **Location:**    **Status:** Completed

On 9/16/2016 SW Llamas completed a T/C with the mother Hilda Perez. She stated that she would let SW know what day works for her for next week. Both children who ran away are back at home. SW provided desk and cell number.

**Contact Date: 09/21/2016**    On Behalf Of ██████████

**Contact Purpose:** Investigate Referral    **Staff Person:** Claudia Llamas-Caballero
**Participant(s)**
██████████
**Method:** In-Person    **Location:** Home    **Status:** Completed

On 9/21/2016, SW Llamas completed a scheduled H/V with the family. SW would like to note that ████ was not home at this time and ████ (17) had ran away again. The home is found by going up the long driveway area and the home is the last one on the left. There are a lot of stray dogs in the area. SW was greeted by Hilda and invited into the home. CRB and business card provided. The home appeared to be clean and appropriate with no visible hazards. The home is a one story.

SER-0680

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04:26 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page 3 of 5 |

F/F with the mother, Hilda. Referral allegations were discussed. Hilda stated that ████ (2) was on timeout in her room when she realized it was too quiet and he was missing from the room. She stated that she had not noticed that the window was open. The window is one that opens from the bottom and swings out. She stated that he had fallen out and was not injured. He was taken to the Dr to make sure he did not have any fractures. She stated that he was not on timeout for longer than a few minutes. She denied dragging or yanking ████ into the room causing marks or bruises. Hilda is well aware of the laws of corporal punishment and was informed to ensure that this does not happen again by closing the windows.

Hilda stated numerous concerns with ████s behavior because she wants to be with her father. Her father allows her to be with her step brother ████ (18) who is not supposed to be around. Hilda stated that she filed an order in which dad is not to have contact with the children due to failing to protect ████ Hilda also stated that the father does not accept ████ dressing as a girl and so he shaved the child's head. She stated that she has court on the 26th and agreed to contact SW in regards to update. SW was informed that LE has been contacted numerous times and Hilda knows to call LE when her children run away.

F/F with ████ ). SW Llamas introduced herself as CPS and spoke to child in his bedroom alone. ████ cried to SW that he prefers to be with his father. He stated that his mother yells and screams at him and his siblings. He stated that he likes his father's house because he has friends there but they are unable to feed everyone. He stated that his mother has a court order on his dad and has not seen his dad for 3 months. When asked about counseling, ████ stated that he is not depressed and became upset. In regards to the incident, ████ stated that his mother "dragged" ████ by his wrist and he walked behind her. He stated that Alfredo was put in the other room and mom had forgotten that the window was not latched. He reported that ████ fell out the window and was found quickly. ████ did not have any marks or bruises and appeared to be healthy.

F/ F with ████ aka "████" aka "███" (████ ). Hilda stated that ████ is being seen by a specialist as he prefers to be referred to as ████ and dresses in female clothing. SW Llamas introduced herself as CPS and spoke to child in their room. ████ denied receiving marks or bruises and denied being scared of Hilda. ████ reported feeling safe at home and did not report any concerns.

F/F with ████ ). ████ appeared to have no marks or bruises. He repeated whatever people said around him. Child was too young to interview at this time.

F/F with ████ ). ████ appeared to be clean and healthy with no visible marks or bruises. ████ refused three times to speak with SW. SW was unable to complete interview with him.

F/F with Alfredo Cruz Sosa, father to ████ (2). SW Llamas introduced herself as CPS. Alfredo prefers to speak in Spanish. Alfredo was not present for incident and reported no concerns for this SW.

SER-0681

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 04:26 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 4 of 5 |

**Contact Date: 11/01/2016    On Behalf Of:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Contact Purpose:** Investigate Referral          **Staff Person:** Claudia Llamas-Caballero
**Participant(s):** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Method:** In-Person          **Location:** Other          **Status:** Completed

On 11/1/2016, Hilda contacted SW Llamas via text message that ▓▓▓▓▓▓ has returned
but is staying with MGM Andrea (Spanish speaking) at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
SW agreed to meet right away. SWs arrived at the address and were invited in by
Hilda. The home appeared to be clean and appropriate with no visible hazards.

F/F with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). SW Llamas and MSW Intern Contreras
introduced themselves as CPS. ▓▓▓▓▓▓ agreed to speak with SWs in private. ▓▓▓▓▓▓
does not want to return to mother's home. She stated that her brother ▓▓▓▓▓▓ is
fine and does not plan on returning with his mother. He turns 18 in less than 2
weeks. She stated that she hates her mother and does not feel safe due to her past.
She stated that when she was 9 y/o, her mother attempted to kill them all. She
stated that her mother told LE she suffered from Bipolar and depression and was not
arrested. In regards to allegations of emotional and physical abuse, Destiny stated
that she did have pictures of bruises on her brothers but that they are not good
pictures as it does not show their faces. She stated that she does not feel like
her brothers are safe with her mother as she yells and manipulates things. Destiny
is concerned that her brother ▓▓▓▓▓▓ is being forced to dress as a girl and that
his mother makes him. ▓▓▓▓▓▓ does not like the police due to them trying to arrest
her after she repeatedly told them she did not want to be at her mother's home.
Destiny agreed to stay with MGM and understands what to do in case of an emergency.

F/F with Hilda Perez. Hilda agrees to have ▓▓▓▓▓▓ stay at MGMs home. She stated
that the court has approved for ▓▓▓▓▓▓ to only have supervised visits with her
siblings. Hilda agrees that another adult needs to supervise visits due to her and
▓▓▓▓▓▓ not having a good relationship. Hilda reported that she will follow up with
▓▓▓▓▓▓ in regards to changing her to a closer school.

F/F with MGM Andrea. SW Llamas introduced herself as CPS and provided CRB and
business card. Andrea prefers to speak in Spanish. She agreed to care for ▓▓▓▓▓▓
She stated that ▓▓▓▓▓▓ is well behaved and is not sure what the concern with her
is. She agreed to hide knives and medications from ▓▓▓▓▓▓. She had no questions
for this SW.

**Contact Date: 11/10/2016    On Behalf Of:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Contact Purpose:** Investigate Referral          **Staff Person:** Claudia Llamas-Caballero
**Participant(s):**
**Method:** In-Person          **Location:** CWS Office          **Status:** Completed

On 11/10/2016, SW Llamas staffed referral with A.D. Huber. Present at this time was
MSW Intern Contreras. Mother is well aware of resources and all children are in
counseling. Minor ▓▓▓▓▓▓ is living with MGM. ▓▓▓▓▓▓ (17) will turn 18 this month
and contact could not be made due to him running away. SW was advised to close
referral.

Summary and Disposition

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04 26 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 5 of 5 |

General Neglect: Inconclusive
On 8/19/2016, a referral was received with ▇▇▇ reporting that ▇▇▇▇▇▇ (15) stated
▇▇▇▇▇▇ 2) was grabbed roughly by their mother Hilda and left in a room. ▇▇▇▇▇
then fell out of the window. Hilda denied leaving marks on ▇▇▇▇▇ and confirmed
that ▇▇▇▇▇ fell out of the one story window as she forgot that the window was not
latched. Children ▇▇▇▇▇▇▇▇▇▇▇▇, and ▇▇▇▇▇▇▇▇ appeared clean with no
visible marks or bruises at time of visit. ▇▇▇▇▇ was seen in November as she had
ran away and is now living with MGM in Modesto. ▇▇▇▇▇▇▇ had runaway during
investigation. Hilda is aware of local resources and is in contact with LE when
children were running away. The father has not seen the children due to court
orders. Staffed with AD Huber for closure. GN Inconclusive for lack of supervision.
Situation stabilized.

Date Closed: 11/28/2016
SDM: Safe
Risk: Very High
CRB: Provided

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 09/09/2016 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |
| Zorayda Velazquez | | N5G Velazquez | (209) 558-2186 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez (aka Garcia)     REFERRAL NUMBER: 0787-7261-0469-2078567

| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | [ ] N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Velazquez, Zorayda | Social Worker IV | 09/07/2016 | 05:32pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5G Velazquez | (209) 558-2186 | Community Services Facility | |

ALERTS:

Case Name: Hilda Perez (aka Garcia)/31-0354535
Allegation: Emotional Abuse/EO

Mother, Hilda (34) is being reported to be physically and emotionally abusing her children and there is pictures to prove that ▇▇▇ (2) and ▇▇▇ (6) have had bruises in the past. Mom often yells profanity to ▇▇▇ and about two months ago, ▇▇▇ was unsupervised in the room and he fell of the window and landed on a plant of cactus. ▇▇▇ (10) is reported to hurt himself such as hitting himself in the head and scratching himself because mother tells him that ▇▇▇ hits him but it's not true. Mother, Hilda is reported that she forces ▇▇▇ to dress up like a girl and ▇▇▇ does not want to dress like a girl and he feels confused. Hilda also will purposely get into ▇▇▇ face and will push her (unknown why mother will do that). Children see their bio-father, Horacio (34) every 1st and 3rd weekend and currently ▇▇▇, is at Hutton House as she ran away from her home and Horacio Sr. is giving ▇▇▇ permission to remain at Hutton House.

Rationale: EO-SW Claudia Llamas-Caballero has an open case since 08/19/16 concerning minor falling off from the window. Screener will forward this concerns to SW Claudia for follow-up.

Screener: Zorayda, SW V-N5G

LAW ENFORCEMENT AGENCY                                    POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| | ( |

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 42
Page __1__ of __24__

Welfare Agency     **EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with Penal Code Section 11167 5 and/or 17 and 10850
SER-0684 Page 1 of 24

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 08/01/2017 |
|---|---|---|---|

**STREET ADDRESS:** 251 East Hackett Road

**CITY AND ZIP CODE:** Modesto, California 95358      **COUNTY:** Stanislaus

| NAME OF SOCIAL WORKER: | CASELOAD ID : | TELEPHONE |
|---|---|---|
| Margarita Zamora | N5H Zamora | (209) 558-2395 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

**REFERRAL NAME:** Hilda Perez      **REFERRAL NUMBER:** 1706-4620-2558-9085506

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Zamora, Margarita | Social Worker IV | 09/13/2016 | 11:51am |

| CASELOAD # | PHONE NUMBER | LOCATION |
|---|---|---|
| N5H Zamora | (209) 558-2395 | Community Services Facility |

**ALERTS:**
CN: Hilda Perez (aka Garcia) / 31-0354535
ALL: General Neglect/EO

▇▇▇: ▇▇▇ (15) came to the class reporting that she had ran away. She reported that she is not ok and "that there is child abuse going on in my home and I have pictures". ▇▇▇ ask further details regarding this disclosure and ▇▇▇ (15) did not offer details. She is currently back with her mother, but mother has called LE on her a couple of times. ▇▇▇ (15) reported that she plans on running away again.

Screener finds a referral dated 08/19/16 in which child had reported PA by the mother towards a sibling and reported that she had taken pictures.

Rationale: current report does not meet criteria for CPS to respond at this time and will be EO as this appears to be duplicate information.

Screener Stokes N5F
Entered M. Zamora N5H

**LAW ENFORCEMENT AGENCY**      **POLICE REPORT NUMBER**

### HOME ADDRESS

**PHONE NUMBER**

**ADDRESS COMMENTS**

**CURRENT LOCATION OF CHILD(REN)**

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
43
Page  1  of  3

...nd Welfare Agency   **EMERGENCY RESPONSE REFERRAL INFORMATION**
...ces
...System

Confidential in accordance with
Penal Code Section 11167.5 and/or
...Sections ...27 and 10850
SER-0685 Page 1 of 30

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 06/14/2017 |
|---|---|---|---|
| STREET ADDRESS: 251 East Hackett Road | | | |
| CITY AND ZIP CODE: Modesto, California 95358 | | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Laura Rodriguez | | Q1C Rodriguez | (209) 558-3756 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez PATH 2          REFERRAL NUMBER: 1283-3249-9877-3053204

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |

## SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Allahwerdi, Leada | Social Worker IV | 05/22/2017 | 03:52pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5N Allahwerdi | (209) 558-3359 | Community Services Facility | |

ALERTS:
CN: Hilda Perez/ER-0354535
Allegation: General Neglect
PATH 2
Cal-Fresh & Medi-Cal Linked
(SDM Completed)

▬▬ reported that father received a call from the mother who stated that their son had fallen and broke his arm and they were at Emanuel Hospital. ▬▬ stated that father said when he got to hospital his son was crying and asking for him to comfort him. ▬▬ stated that father said that mother said their son was on top of chest where he had put a chair on top of chest and he fell. ▬▬ stated that father said the doctor asked the mother where she was when her child fell. Mother said "I was in the kitchen cooking". Father said that his son ▬▬ s arm and elbow has been fractured and surgery has been scheduled for tomorrow at 10:00 a.m. in the morning at Madera Children's Hospital. The incident happened last night at 10:30 p.m. while mother was in kitchen cooking.

Rational: ▬▬ (3 years old) has fracture in his arm and elbow and he has been scheduled for surgery for tomorrow 10:00 a.m.

Screener: Allahwerdi SW V-N5N

Assigned: SW Rodriguez -Q1C
LAW ENFORCEMENT AGENCY                                    POLICE REPORT NUMBER

## HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 44
Page 1 of 26

...lfare Agency      EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with Penal Code Section 11167.5 and/or 11167 and 10850
SER-0686 Page 1 of 26

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04.29 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 1 of 3 |

## DELIVERED SERVICE LOG
### Contacts

FROM: 5/22/2017    TO: 7/10/2020

FOR: ███████████

**Contact Date: 05/31/2017**    **On Behalf Of:** ████████████

**Contact Purpose:** Investigate Referral     **Staff Person:** Laura Avila
**Participant(s):** ███████████

**Method:** In-Person     **Location:** Home     **Status:** Completed

On 5/31/17 at 1:13pm SW Rodriguez accompanied by SW Diaz completed a HV to Hilda Perez at 3143 Prune ave Patterson Ca 95363. SW Rodriguez was greeted at the door by Hilda Perez. SW then introduced self as CPS SW and was invited in the home. SW Rodriguez reviewed allegations with Hilda separately in her room with minor ████ (3) present. Hilda stated her other two children ████ (9) and ████ (6) where at school. Hilda stated that her son ████ goes by ████ and is a transgender minor. Hilda stated that last Sunday 5/22/17 her son ████ was taken to Emmanuel's Hospital due to an injury he received from falling off a chair he placed on top of a ottoman in the center of the living room. She stated that she had previously told him not to get on the chair but he did not listen. She stated that all her children were present during the incident and witnessed what happened. She stated that Emmanuel Hospital admitted him but could not do anything for him and referred him to Madera's children Hospital. She stated that ████ had a follow up appointment yesterday where they were told that he would have to keep his cast on for three weeks. She stated that they're upcoming appointment will be June 21.

SW's interviewed minors separately in the home. Minors understood the difference between a truth and a lie and agreed to tell the truth. All minors appeared to be well groomed, clean with no visible marks or bruises consistent with abuse and neglect. SW then attempted to interview minor ████, SW attempted to ask him how he broke his arm but was unable to get a disclosure from him due to his interest in other objects. It should be noted as we walked inside the house ████ did disclose that he had broken his arm but could not tell us anything further.

Face to face with ████████ (11). He stated that he lives at home with his siblings and mother. His father Horacio is not involved in his life. He stated that he mother disciplines him by yelling at him or putting him on a time out. He stated that his brother ████ had fallen off of the center furniture in the living room. He stated that his mother was in the kitchen cooking and he was in his mother's room and saw the whole accident. He stated that his brother was told by his mother not to get on top of the center piece. He stated that his brother didn't listen and grabbed a small camping chair and placed it on top of the center piece. He stated once his brother was on top he saw that he had fallen and landed on his arm. He

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
45
Page 1 of 3

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04:29 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page   2 of 3 |

stated that he was taken to the hospital by his mother and ███████ father. He stated feeling safe at home.

Face to face with ██████ (15). Interview completed by SW Diaz. ██████ stated that she lives with her mother and siblings. She stated as a discipline her mother gives her extra chores to do or stays in her room. She stated knowing what tequila, whiskey, Xanax, THC and Cocaine. She stated no one at home uses drugs or alcohol. She stated that her brother broke his arm. She stated that she didn't see what happened to him because she was in the back room of the house withheld other siblings. She stated that her mother was in the kitchen cooking. She stated that she did see a load thump and they ran out to the living room and saw their brother ██████ laying on his tummy on the ground. She stated that she does not feel safe at her moms but she does at her grandma s because of past physical abuse by mom.


SW discussed with Hilda appropriate supervision and advised her to be more mindful of what minor does to avoid accidents in the future.

**Contact Date:  06/01/2017    On Behalf Of:** ███████████████████████████████████
████████████████████████████████████████████████████████████████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Ana Diaz
**Participant(s):** ███████████████████████████████
**Method:** In-Person            **Location:** School            **Status:** Completed

On 6/1/17 at 10:25 AM SW Diaz completed F/F contact with minor, ████████████ (9) at ████████ Elementary school in Patterson. The minor agreed to a voluntary interview with this SW without school staff present.  The minor appeared clean and healthy with no visible marks or bruises.  The minor knows the difference between a truth and a lie.  He agreed to tell the truth during this interview.  This interview lasted less than 30 minutes.
████████ (9) stated he lives with his mother Hilda, his brother ████████████ (11), his brother ████████ (6), he goes by ████████, his brother ███████████████, 18) and his little brother ████████ (████ 3). His ████████ (15) now lives with his grandmother.  ████████ lives with grandmother because she doesn't want her mother to talk to her anymore.  She did not know anything else.  He feels safe at home with his mother and his siblings.  He does not see his father anymore.  In case of an emergency he knows he can call 911.  When you gets in trouble at home, he gets grounded and that means no TV, can't go outside or he goes on a time out.  He did not know what alcohol and drugs are.  He knew his private parts and pointed to the areas.  He knew the difference between good touch and bad touch.  He denied any bad touch experiences.  If this were to happen he would tell an adult.

████████ (3) was by himself in the living room when he got hurt.  His mother was in the kitchen cooking.  ████████ was climbing on a chair and he heard his mother tell ████████ "get off the chair".  But, ████████ got on the chair again and that's when he fell off and got hurt.  Victoria (████████, 6), ████████ (15) and ████████████ 11) were in their mother's bedroom.

On 6/1/17 at 10:50 AM, SW Diaz completed F/F contact with minor, ████████████ (6), goes by ████████ at ████████ Elementary school in Patterson.  The minor agreed to a voluntary interview with this SW without school staff present.  The minor appeared clean and healthy with no visible marks or bruises.  The minor knows the difference between a truth and a lie.  She agreed to tell the truth during this

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 04:29 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 3 of 3 |

interview.  This interview lasted less than 30 minutes.

████████ (6) stated she lives with her mother Hilda, her brother ████████ (
18), her brother ████████ (11) her brother ████ (9) and her brother ████████
(████, 3).  Her sister ████████ (15) lives with their grandmother.  When she gets
in trouble at home she goes on time out.  In case of an emergency she knows to call
911.  She feels safe at home with their mother and her siblings.  She does not know
what alcohol and drugs are.  She knew about body safety and pointed to her private
parts.  She knew the difference between good touch and bad touch and denies any bad
touch experiences.
She stated she did not see ████ (3) fall.  She heard him crying and went to the
living room and saw him on the floor.  He was trying to get up and he was crying.
████████ put a camping chair on top of toy box/foot rest and he sat in the chair and
fell off.  She stated her mother saw ████ (3) on the floor and called his dad and
they took him to the hospital.  She stated they were at the hospital the whole
night.  She stated she was in her mother's room watching TV.  Her mother was in the
kitchen washing dishes.

**Contact Date: 06/14/2017    On Behalf Of:** ████████████████████████
████████████████████████

**Contact Purpose:** Investigate Referral
**Participant(s):** **Hilda Perez**                          **Staff Person:** Laura Avila
**Method:** Written              **Location:**              **Status:** Completed

Summary:

General Neglect: Unfounded

On 5/22/17 a referral was received stating that ████████ (3) had fallen and broke
his arm and was taken to Emmanuel hospital.  ████ stated that mother was questioned
where she was when he fell and she stated that she was in the kitchen cooking.
During investigation SW interviewed all minors ████████ (9), ████████ (11),
████████ (6), ████████ (15).  They all stated that ████████ had accidently fallen off
of a camping chair that was stacked on top of  an ottoman.  SW attempted to
interview ████████but he was not responding but did disclose he broke his arm. The
mother stated that the day of the incident she had told ████████ not to get on top
of the chair.  She stated that her children where in their rooms and ████████was in
the living room while she was cooking in the kitchen.  She stated that she then
heard a cry and saw that he had fallen on his arm.  She stated that she then took
him to the hospital where he had surgery.  SW was able to confirm hospital stay from
the discharge paperwork that mother provided.  Therefore, this allegation of General
Neglect is unfounded since it was an accidental incident.

Date Closed: 6/14/17
CRB: Given
████: written
RET: 2032

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/25/2017 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Carol Stewart | | N5C Stewart | (209) 558-2350 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

**REFERRAL NAME:** Hilda Perez  **REFERRAL NUMBER:** 0874-8542-4190-9054628

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Stewart, Carol | Social worker IV | 06/30/2017 | 04:05pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5C Stewart | (209) 558-2350 | Community Services Facility | |

ALERTS:
CN: Hilda Perez/ER-0354535
Allegation: General Neglect/ Path 1
Cal Fresh and Medi-Cal only

RP states mother took 3 y/o ▓▓▓▓ to the doctor,▓▓▓▓ was diagnosed with scabies, but mother did not follow through with the treatment. On Wednesday father took ▓▓▓▓ to the doctor again, and got the prescription, but mother is not letting father care for the child now, since she was served with the custody court papers. RP states there is a custody court date of August 3.
RP further states there is a risk of sexual abuse, because mother takes ▓▓▓▓ around her brother, who molested ▓▓▓▓ older siblings. RP does not know if there is unsupervised contact with the brother.
RP further states that a year ago, mother put ▓▓▓▓ in her room on a time out and shut the door and left him there. He fell out of the open window, went to the front door and knocked. RP thinks the child was briefly unconscious. ▓▓▓▓ has broken his leg falling off the back of the truck, and 6-7 weeks ago broke his elbow when he put a chair on top of the toy box and climbed up on it. Mother said he fell, ▓▓▓▓ said his brother ▓▓▓▓ pushed him. Mother was not in the room.
Screener finds that the incident in which ▓▓▓▓ broke his elbow was investigated and is pending closure as GN unfounded. The child falling out of the window was investigated and closed as GN inconclusive on 12/19/2016. Screener finds that the inappropriate touching occurred between William and his mother's nephew ▓▓▓▓ who has Down Syndrome and was 10 years old. This was closed as GN substantiated on 3/30/2015.

Rationale: Supervision concerns have previously been investigated. RP believes child is not being treated for scabies, however, now has limited contact with the child and limited information. RP states there are custody concerns. Referring to FRC for support regarding custody concerns.

Screener Carol Stewart
LAW ENFORCEMENT AGENCY

_____

### HOME ADDRESS

_____

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 46
Page _1_ of _25_

Welfare Agency ... **EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 08/29/2017 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Kimberly Rodriguez | | N5M Rodriguez | (209) 558-2376 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez     REFERRAL NUMBER: 1576-1006-2398-9080876

| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | [ ] N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Rodriguez, Kimberly | Social Worker V | 07/15/2017 | 09:10pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5M Rodriguez | (209) 558-2376 | Community Services Facility | |

ALERTS:
CN: Hilda Perez/31- 0354535
EO/General Neglect

MRP reported Alfredo Sosa called to request a security check on his son ▮▮▮▮▮ He is worried about him since he has not seen him in a month due to court. Alfredo and Hilda are going through a custody battle. He is concerned ▮▮▮▮▮ is neglected. He said last time he saw his son he had bruises on him. In May ▮▮▮▮▮ broke his elbow. CPS responded out and said everything was fine. LE attempted to do a security check but was unable to make contact with ▮▮▮▮▮ MRP is letting CPS know because there may be an open investigation. Hilda said last week to another officer making a security check that ▮▮▮▮▮ has been making false accusations for court. Alfredo is also concerned because Hilda takes ▮▮▮▮▮. to her brother's house and her nephew was accused of sexually assaulting kids 2 or 3 years ago. The nephew has a disability. Hilda said that she does go there but doesn't leave her son unsupervised.

Screener finds that the incident in which ▮▮▮▮▮ broke his elbow was investigated and is pending closure as GN unfounded. The inappropriate touching occurred between ▮▮▮▮▮ and his mother's nephew ▮▮▮▮, who has Down Syndrome and was 10 years old. This was closed as GN substantiated on 3/30/2015.

Rational: custody battle between parents. No current concerns. Past concerns were investigated.

Screener: SW Rodriguez N5M

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|
| Sheriffs Office:Patterson | |

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**47**
Page __1__ of __8__

...elfare Agency    **EMERGENCY RESPONSE REFERRAL INFORMATION**

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 10/03/2017 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |

| NAME OF SOCIAL WORKER: | CASELOAD ID : | TELEPHONE |
|---|---|---|
| Yesenia Tovar | N5L Tovar | (209) 558-1783 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

**REFERRAL NAME:** Rosario ▓▓▓▓▓

**REFERRAL NUMBER:** 0645-0308-0741-3098046

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Tovar, Yesenia | Social Worker IV | 08/16/2017 | 10:59am |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5L Tovar | (209) 558-1783 | Community Services Facility | |

**ALERTS:**
Case Name: Rosario ▓▓▓▓ 31-0457994
Allegations: General Neglect / P1
TANF linked

▓▓▓ reported that mother Rosario gave birth to ▓▓▓ on 7/22. ▓▓▓ was sent to NICU due to withdrawing from methadone and opiates that mom was prescribed. ▓▓ was concerned because this is Rosario's 6th child and when asked to give the baby a bath she said she didn't want to do it and had the nurse do it. ▓▓▓ disclosed that Public Health Nurse was notified to follow up on Rosario and children.

Screener finds CMS history: P2 GN unfounded in 2014, P2 GN unfounded 09/2012, P3 GN unfounded 07/2012, and P3 SA unfounded 07/2012

Rationale: P1 General Neglect, referring to FRC for additional support and parenting resources.

Screener: SW Y. Tovar N5L.

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| | |

**ADDRESS COMMENTS**

**CURRENT LOCATION OF CHILD(REN)**
Two addresses listed in CMS for ▓▓▓▓▓▓▓

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**48**
Page __1__ of __42__

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/13/2018 |
|---|---|---|---|

| STREET ADDRESS: | 251 East Hackett Road | | |
|---|---|---|---|
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |
| Leonor Sierra | | N9L Sierra | (209) 558-2041 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez                    REFERRAL NUMBER: 0160-3673-0277-3098046

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | | TITLE | | DATE | TIME |
|---|---|---|---|---|---|
| Tovar, Yesenia | | Social Worker IV | | 09/13/2017 | 05:26pm |
| CASELOAD # | PHONE NUMBER | | LOCATION | | |
| N5L Tovar | (209) 558-1783 | | Community Services Facility | | |

ALERTS:

Case Name: Hilda Perez / 31-0354535
Allegations: General Neglect / P2
TANF linked

▆▆▆ called to report that there is a court order for ▆▆▆▆▆▆▆ (3) to go to Leaps and Bounds in order to have an evaluation done (possible diagnosis) and receive behavioral/counseling services. Dad Alfredo Sr. has cooperated, turned in the forms needed and gave consent on his behalf. However, it has been a month since services have been court ordered and mom Hilda has not given consent and Leaps and Bounds has tried contacting her. Dad Alfredo is concerned because every time he picks up ▆▆▆▆▆▆ (3) the child is mean, curses, and hits others. Per Alfredo Sr., ▆▆▆▆▆▆. (3) has about 1.5 weeks that his behavior has increased, and now he has started to hit himself in the face and head with closed fists.

Screener finds CMS history: P2 General Neglect unfounded 05/2017, P2 Physical Abuse unfounded/General Neglect inconclusive 08/2016, P2 General Neglect unfounded/Emotional Abuse inconclusive 12/2015, P2 General Neglect substantiated 01/2015, and P2 General Neglect unfounded 09/2014.

Rationale: P2 General Neglect, due to court ordered behavioral/counseling services for ▆▆▆▆▆▆ (3) and mom Hilda not cooperating or following up.

Screener: SW Y. Tovar N5L.
Assigned: SW L. Sierra N9L.

| LAW ENFORCEMENT AGENCY | | POLICE REPORT NUMBER |
|---|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| | |

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
49
Page  1  of  29

Agency    EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:01 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:   1 of 7 |

## DELIVERED SERVICE LOG
### Contacts

FROM:  9/13/2017     TO:  7/10/2020

FOR:  ███████████████████

---

**Contact Date:  09/18/2017     On Behalf Of:** ██████████████████████████

---

**Contact Purpose:** Investigate Referral          **Staff Person:** Leonor Sierra
**Participant(s):**
**Method:** Written          **Location:** CWS Office          **Status:** Completed

Case Name:   PEREZ, HILDA
31- 0354535
GN/Path 2

CWS/CMS HX:

40 -Referrals

12/15/2011 GN-Substantiated
Mother admitted from suffering from depression for over a one year. She has
attempted to overdose once while her daughter was present.  In November of 2011 she
pulled a knife on her mother and husband after they attempted to have a family
intervention. She was taken the behavioral center however released after a couple
hours.  Mother admitted to spanking her daughter with a wire which resulted in
marks. Children are now enrolled in counseling services. Mother has started taking
her medication and resumed counseling. Father has not allowed minors to be alone
with mother. Joint visit completed with Parent Resource Center. Family engaged in
FRC services. General Neglect will be substantiated due to inappropriate parent and
referral will be closed with FRC services. SDM Risk Moderate.
01/11/2012 GN - Unfounded
01/20/2012 GN-EO
02/07/2012 GN-Substantiated
Allegations of GN are substantiated. The referral alleged that 18 month old ███████
tested positive for benzodiazepines when brought in to the ER. He does have another
medical issue that has nothing to do with that. Hilda knew she should not be
breastfeeding ████████ while taking the medication she is taking ( a benzo, a
sleeping pill and an antidepressant) and in fact, told the last SW and PRC staff
member that she was not breastfeeding. Hilda admitted to this and has agreed that
she needs more intensive help for her mental well being and knows that her children
are safest with their father, Horacio.  Horacio agreed to keep his children safe
and there will be no unsupervised time with Hilda and the children. PRC is involved
and will report any concerns to this agency.
01/27/2015
GENERAL NEGLECT is SUBSTANTIATED on Hilda Garcia on behalf of ██████████████
████████████████████████████████████due to the fact that all five children disclosed

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 05:01 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 2 of 7 |

and gave similar accounts of ▮▮▮ grabbing ▮▮▮ head and putting it on his
private parts and asked both ▮▮▮ and ▮▮▮ to kiss him inappropriately.
Children reported this was not the first incident that occurred between
▮▮▮ and ▮▮▮ and that mother, Hilda Garcia did not report the other
incidents. Hilda disclosed similar accounts of the incident but denied it had
occurred before. It was reported adults were downstairs and children were upstairs
left unattended for quite some time. Family is connected with Family Resource
Center and mother has stated she does not plan on bringing her children to their
Uncle's house in the future.
04/04/2012  GN-EO
07/25/2012 GN- Unfounded    At risk, sibling -Unfounded
08/15/2012 SA-EO
09/19/2012 GN-Unfounded
01/24/2014- GN EO
05/08/2014 GN-EO
06/17/2014 GN-EO
08/25/2014 GN- Unfounded
09/05/2014 GN-EO
12/08/2014 GN-EO
12/23/2014 GN-EO
01/27/2015 GN-Substantiated
DISPOSITION: GENERAL NEGLECT is SUBSTANTIATED on Hilda Garcia on behalf of
William, Damien, Christopher, Destiny, and Junior due to the fact that all five
children disclosed and gave similar accounts of ▮▮▮ grabbing William's head and
putting it on his private parts and asked both ▮▮▮ and ▮▮▮ to kiss him
inappropriately. Children reported this was not the first incident that occurred
between ▮▮▮, ▮▮▮ and ▮▮▮ and that mother, Hilda Garcia did not report the
other incidents. Hilda disclosed similar accounts of the incident but denied it had
occurred before. It was reported adults were downstairs and children were upstairs
left unattended for quite some time. Family is connected with Family Resource
Center and mother has stated she does not plan on bringing her children to their
Uncle's house in the future.
03/09/2015 GN-EO
05/14/2015 GN-EO
09/09/2015 GN EO
09/28/2015 PA-EO GN -EO
10/12/2015 PA-EO
10/13/2015 GN-EO
10/21/2015 GN-EO
11/09/2015 GN-EO
12/08/2015 EA- Inconclusive
12/15/2015 GN-EO
01/07/2016 GN-EO
01/22/2016 GN-EO
05/13/2016 GN-EO
06/27/2016 SA-EO
06/28/2016 G-EO
08/19/2016 GN- Inconclusive    At risk- Unfounded
09/07/2016 EA-EO
09/13/216  GN-EO
05/22/2017 GN-Unfounded
06/30/2017 GN-EO
07/15/2017 GN-EO
08/16/2017  GN-EO

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05.01 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 3 of 7 |

0-CASE HISTORY

Contact Date: 09/22/2017     On Behalf Of: ███████████████████████████████

Contact Purpose: Investigate Referral          Staff Person: Leonor Sierra
Participant(s): ████████████████
Method: In-Person          Location: Home          Status: Completed

On 09/22/2017 @ 12:40 pm, SW Sierra conducted a visit to 3143 Prune Ave Patterson,
CA. SW was greeted at the door and invited into the home by Hilda Perez (mother).
SW provided Ms. Perez with a business card and a CRB. At the time of the visit the
home was clean and orderly, and there were no health or safety concerns observed in
the home. Also present at the home was ████████████████ (3 yo).

F/F with ████████████████ (3 yo) was completed. At the time of the visit the child
appeared clean and healthy, and he did not have any marks or bruises consistent
with abuse or neglect. The child was not interviewed due to her young age and being
pre-verbal.

F/F with Hilda Perez (mother) completed.  SW went over referral with mother. Hilda
disclosed she was in a car accident recently which caused has caused her to be
unable to drive. She currently has a cast on her right hand.  She reported not
knowing anything about court order paperwork. She stated she filled out what she
needed to and was working with the facility to make arrangements for treatment.  SW
discussed the importance of following medical treatment and the components of the
child's medical needs. SW Sierra went over the consequences that may occur if CPS
continues to get referrals regarding the same allegations. Hilda denied history of
substance use, CPS involvement as a child and criminal record. She disclosed
domestic violence (emotional, verbal) with ex-husband but that was a long time ago.
She stated she suffered from postpartum depression and is taking ibuprofen, stool
softener and Norco for pain. She stated she disciplines the children by time out or
taking away their play station or electronics.  Hilda stated her older kids do not
have any contact with their father.
SW spoke with staff, Sonia (FRC), to schedule appointment and transportation for
Hilda and her son.

Contact Date: 09/22/2017     On Behalf Of: ██████████████████████████████████

Contact Purpose: Investigate Referral          Staff Person: Leonor Sierra
Participant(s): ████████████████
Method: In-Person          Location: School          Status: Attempted

On 9/22/2017 at 1:30 pm SW Sierra F/F attempted contact with ████████████████
████████ (16) at Patterson High School, Patterson. Staff informed SW that youth no
longer attends the high school. She may be on independent study.

Contact Date: 09/22/2017     On Behalf Of: ████████████████████████████████████

Contact Purpose: Investigate Referral          Staff Person: Leonor Sierra
Participant(s): ████████████████
Method: In-Person          Location: School          Status: Completed

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 05:01 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 4 of 7 |

On 9/22/2017 at 2:08 pm SW Sierra F/F completed contact with ███████████ aka ██████████ (7) at Creekside Middle School, Patterson. ████████ agreed to a voluntary interview with this SW without school staff present. She knew the difference between a truth and a lie and agreed to tell the truth during this interview. ████████ appeared clean and healthy with no visible marks or bruises. The interview lasted less than 30 minutes. She reported feeling safe at home with her mother and siblings. She states they get along well and use words when they fight. When they get disciplined mom will turn off their games, time out, or grounds them. She knows to call 911 in case of emergency and has enough food, clothing. She stated she does not know what drugs or alcohol is. She does not know anything about what is happening with her younger brother but mom takes good care of them.

@ 2:14 pm SW Sierra F/F completed contact with ████████████████ (9) at ████████ Middle School, Patterson. ████████ agreed to a voluntary interview with this SW without school staff present. He knew the difference between a truth and a lie and agreed to tell the truth during this interview. ████████ appeared clean and healthy with no visible marks or bruises. The interview lasted less than 30 minutes. He reported feeling safe at home with her mother and siblings. He stated having enough food, clothing, and knowing to call 911 in case of emergency. He does not know what drugs or alcohol is. ████████ stated his mom disciplines him by time out or grounding him. He reports everyone gets along fine and does not know anything about his brother, ██████████.

@ 2:35 pm SW Sierra F/F completed contact with ██████████████ (11) at ████████ Middle School, Patterson. ████████ agreed to a voluntary interview with this SW without school staff present. He knew the difference between a truth and a lie and agreed to tell the truth during this interview. ████████ appeared clean and healthy with no visible marks or bruises. The interview lasted less than 30 minutes. He reported feeling safe at home with her mother and siblings. He denied any fighting at home and stated they use words when they argue. He reports having enough food, clothing and knows to call 911 in case of emergency. ████████ stated his mother will give him time out or ground him when he gets in trouble. He was able to identify "coke, marijuana, weed, tobacco" as drugs and "beer, light beer" as alcohol. He denied anyone in the home does any alcohol or drugs. He informed SW that they call his little brother ████████████ and that sister is transgender. He stated he does not know anything about any doctors for ████████ at all.

**Contact Date:** 07/12/2018      **On Behalf Of:** ████████████████

**Contact Purpose:** Investigate Referral       **Staff Person:** Leonor Sierra
**Participant(s):** ██████████████████████████████████████████

**Method:** In-Person       **Location:** Home       **Status:** Completed

On 7/12/18 at 12:42 pm SWs Sierra and M. Gomez completed F/F contact with ████████ ████████ (17), ████████ (11), ████████ (7), ████████ (4) and Hilda Perez (mother) inside of their residence, 3143 Prune Ave, Patterson, CA. This SW identified herself and provided Hilda with a CRB and business card. Hilda invited these SWs into the home. The home appeared clean and appropriate with no safety concerns. The referral allegations were reviewed with her.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:01 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 5 of 7 |

███ (11), ███████████ (10), ███████ aka ██████ (7) and ███████ (4) appeared clean and healthy with no visible marks or bruises. None disclosed any safety or risk concerns. SW observed them watching television and sleeping in their room.

F/F completed with ███████ (17). She agreed to voluntary interview with this SW. She knew the difference between a truth and a lie and agreed to tell the truth during this interview. She appeared clean and healthy with no visible marks or bruises. SW observed ████ just woke up from a nap. She reported living with her brothers, sister, and mom. She stated they get along well and don't really argue too much. She stated she feels safe, knows to call 911 in case of emergency, and safe means "being comfortable, vulnerable and not worried anything will happen." ███████ identified "Xanax, heroin, cocaine, THC, DAB, Lean" as a drug and "Patron, Jack Daniel's, Rum, beer, Corona" as alcohol. She denied anyone in the home does any alcohol or drugs. She reports that her mother will have her stay home or take away T.V., phone to discipline her or her siblings.

F/F completed with Hilda Perez (mother). She reported to SW that she completed all counseling sessions with Leaps & Bounds. She stated she was going 1 x a week every other week because she would switch off with ██████s father. She disclosed she has a restraining order against Alfredo Cruz Sosa (father). She did not report any concerns or issues. SW discussed the importance of following medical treatment and the components of the child's medical needs. SW Sierra went over the consequences that may occur if CPS continues to get referrals regarding the same allegations. SW went over FRC services however Hilda informed SW that she is already involved with them.

**Contact Date:** 07/12/2018   **On Behalf Of:** ████████████████████████

**Contact Purpose:** Investigate Referral        **Staff Person:** Leonor Sierra
**Participant(s):** Alfredo Cruz Sosa Sr
**Method:** Telephone        **Location:** CWS Office        **Status:** Completed

T/C on 07/12/18 at 2:34pm was attempted to Alfredo Cruz Sosa (father) at phone number 209-408-6415 SW Sierra was unable to complete contact with father. SW Sierra left a voicemail.

T/C @ 2:44 pm from phone number 209-408-6415 was received. Caller identified themselves as Alfredo Cruz Sosa (father). SW informed Mr. Sosa of his right to a face-to-face contact, and he waived this right and agreed to speak with this SW by phone regarding the referral allegations. He reported that he shares custody with Hilda Perez (mother) 50/50. Alfredo stated they have completed all the sessions however he requested one more for 7/17/18. He has no other concerns at this time. He denied any history of mental health, criminal record, substance use, or CPS involvement as a child. He disclosed some domestic violence against Hilda when they were together. He did report that Hilda does have a restraining order against him. He said he disciplines his son by time out or taking stuff away. He provided SW with contact counselor Obed 558-4595 at Leaps & Bounds.

SER-0698

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:01 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page. 6 of 7 |

**Contact Date: 07/12/2018**   On Behalf Of: ██████████████

**Contact Purpose:** Investigate Referral       **Staff Person:** Leonor Sierra
**Participant(s):**
**Method:** Telephone       **Location:** CWS Office       **Status:** Completed

T/C on 07/12/2018 at 2:38 pm was completed to FRC (Patterson/ Sonia/Maria) at phone number 209-690-3100. Maria verified she currently have open referral with Hilda Perez. She will continue to keep open and will reach out to her again. She stated in the pass they have helped with food.

T/C at 2:53 pm was attempted to Obed (Leaps & Bounds) at phone number 209-558-4595. SW Sierra was unable to complete contact with Obed. SW Sierra left message. Clerk Sandy informed SW that she had not heard of any concerns regarding this case.

**Contact Date: 07/13/2018**   On Behalf Of: ██████████████

**Contact Purpose:** Investigate Referral       **Staff Person:** Leonor Sierra
**Participant(s):**
**Method:** Telephone       **Location:** CWS Office       **Status:** Completed

T/C on 7/13/8 @ 8:08 am from phone number 209-558-4595 was received. Caller identified themselves as Obed (Leaps & Bounds). Obed informed SW that sessions are all wrapped up and he does not have any concerns. He stated he did make the referral for parents to continue some parenting classes to help with co-parenting.

**Contact Date: 07/16/2018**   On Behalf Of: ██████████████

**Contact Purpose:** Investigate Referral       **Staff Person:** Leonor Sierra
**Participant(s):**
**Method:** In-Person       **Location:** CWS Office       **Status:** Completed

On 07/16/2018 SW TAP staffed this referral. Present at this staffing were ER SWS II Eric Anderson, FM SW Justin Palmer, and CT SWS II Julie Bartlett. Level of intervention was discussed and decision to place close referral was approved.


Summery and Disposition
On 09/13/2017 ███ reported Hilda Perez (mom) is not cooperating or following up with court ordered behavioral/counseling services for ███████ (3). Hilda was involved in car accident that initially prevented her from signing paperwork and completing follow up. Children did not disclose any safety or risk concerns. Parents have completed counseling. SW verified that paperwork and counseling sessions completed. Prior to closing no further calls or reports were made by ███. SW discussed the importance of following medical treatment and the components of the child's medical needs. SW Sierra went over the consequences that may occur if CPS continues to get referrals regarding the same allegations.
FRC already involved with family and will continue to offer services. Situation is stabilized and referral is closed as inconclusive.

General Neglect- Inconclusive
SDM: Completed Safe

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:01 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page:   7 of 7 |

Risk: Very High
CRB: Provided
RET: 03/13/2032

SER-0700

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/30/2018 |
|---|---|---|---|

| STREET ADDRESS: | 251 East Hackett Road | | |
|---|---|---|---|
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |

| NAME OF SOCIAL WORKER: | CASELOAD ID : | TELEPHONE |
|---|---|---|
| Matthew Mercado | Q2B Mercado | (209) 558-2358 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

**REFERRAL NAME:** Hilda Perez

**REFERRAL NUMBER:** 1083-2938-2053-4096259

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Torres, Diana | Social Worker IV Trainee | 07/29/2018 | 11:37am |

| CASELOAD # | PHONE NUMBER | LOCATION |
|---|---|---|
| Q2C Torres | (209) 558-1877 | Community Services Facility |

**ALERTS:**

CN: Hilda Perez/ER-0354535
Allegation: Emotional Abuse/Path 2
Cal-Fresh & Medi-Cal Linked

████ reported that ████████ (17) stated that when she gets upset she will try and walk away and her mother will follow her, both engaging in a verbal altercation ████████ stated that mother will say things, telling her to "get the fuck out, no one wants you here". She reported that her mother tells her that "she is stupid, you're not going to get what you want". ████ reported that her mother belittles her and puts her down and feels like she is being pushed to the edge. ████ reported that minor was not put on a 51/50 hold but was seen for an evaluation.

Rationale: Path 2 Allegation meets SDM criteria for emotional abuse

Screener: SW Torres Q2C

Assigned to SW Mercado Q2B

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

**ADDRESS COMMENTS**

**CURRENT LOCATION OF CHILD(REN)**

(

**PLAINTIFF'S(S') EXHIBIT**
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 51
Page 1 of 28

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:02 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 1 of 3 |

## DELIVERED SERVICE LOG
### Contacts

FROM: 7/29/2018    TO: 7/10/2020

FOR: ████████

**Contact Date: 08/01/2018    On Behalf Of:** ████████

**Contact Purpose:** Investigate Referral    **Staff Person:** Matthew Mercado

**Participant(s):** ████████

**Method:** In-Person    **Location:** Home    **Status:** Completed

Hilda Perez
On August 1, 2018 at 11am, I, SW Mercado made an in person contact with Hilda Perez (DOB: 05/11/82) at her residence at 3143 Prune Ave, Patterson, CA 95363. SW Mercado introduced himself and provided Ms. Perez with a CRB and business card. Ms. Perez stated that she would prefer to talk with SW Mercado outside because she does not want her younger children to know what is being said. SW Mercado reviews the referral allegations with Ms. Perez. Ms. Perez denies directing profanity towards ████ or telling her to leave the home. Ms. Perez stated that things are hard with ████. ████ gets mad when she is being asked or told to do something as simple as a chore. Ms. Perez stated that ████ has called her a "fucking bitch" and has told her four-year-old brother "I am going to slap the fuck out of you." Ms. Perez stated that she is not allowed to stay with her father Horacio Garcia (DOB: 6/28/81) due to a court order she has against Mr. Garcia's stepson. Ms. Perez informed SW Mercado that Mr. Garcia's stepson is ████ boyfriend and Mr. Garcia has not been protective of her. Ms. Perez stated that Destiny is unable to stay with her grandparents because she is disrespectful towards them and has stolen money from them in the past. Ms. Perez stated that she no longer knows what to do with ████ and has had "enough." Ms. Perez stated that ████ has counseling services through Aspiranet and she is receiving services through the Patterson Family Resource Center.

████████ (17)
I, SW Mercado made an in person contact with ████████ at the residence. ████ appeared to be clean and healthy during the time of this contact. Destiny stated that she does not have a good relationship with her mother and that the two argue a lot. ████ stated that her mother does direct profanity towards her and has told her to leave the home. ████ states that she has "had enough" and hates her mother. ████ stated that it is not fair that she gets blamed for everything and her mother does not discipline her siblings when they use profanity. ████ stated that she feels like she is going to do something to her mother. As ████ was clarifying what that meant, she stated that she is not afraid to fight her mother and wants to leave the home. ████ stated that she is receiving counseling services through Aspiranet. SW Mercado informed ████ that assaulting her mother and running away will only get her in more trouble with law

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
52
Page 1 of 3

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 05:02 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:  2 of 3 |

enforcement.

▆▆▆▆▆▆▆▆▆▆▆ (12)
I, SW Mercado made an in person contact with ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆) at
the residence. ▆▆▆▆▆▆▆ appeared to be clean and healthy during the time of this
contact. ▆▆▆▆▆▆ stated that everything is good at home. ▆▆▆▆▆▆ stated
that he is provided with plenty of food and clothes. ▆▆▆▆▆▆ stated that Mr.
Perez does not use profanity towards him or his siblings and applies appropriate
disciplinary action. ▆▆▆▆▆▆ stated that when he gets into trouble he is put on
time out or has electronics taken away. ▆▆▆▆▆▆ stated that he feels safe at
home.

I, SW Mercado attempted to have an in person contact with ▆▆▆▆▆▆▆▆
▆▆▆▆▆▆ at the residence. ▆▆▆▆▆▆ appeared to be clean and healthy during the time
of this visit. Ms. Perez informed SW Mercado that ▆▆▆▆▆ has Head Functioning
Autism. ▆▆▆▆ refused to speak with SW Mercado.

▆▆▆▆▆▆▆ (8)
I, SW Mercado attempted to have an in person contact with ▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆ at the residence. ▆▆▆▆▆▆ appeared to be clean and healthy during the
time of this visit. Ms. Perez informed SW Mecado that ▆▆▆▆▆ identifies as
transsexual feminine.  Victoria refused to speak to SW Mercado.

I, SW Mercado had a face to face contact with ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆) at
the residence. ▆▆▆▆▆▆ appeared to be healthy and clean during the time of this
contact. Due to ▆▆▆▆▆ young age he was not interviewed.

**Contact Date: 08/27/2018    On Behalf Of: Damien P.** ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**Contact Purpose:** Investigate Referral         **Staff Person:** Matthew Mercado
**Participant(s):**
**Method:** In-Person          **Location:** CWS Office          **Status:** Completed

On August 27, 2018 at 10:15am, I, SW Mercado staffed this case with Manager Julien
Wren for high risk closure. Investigation approved for closure.

**Contact Date: 08/27/2018    On Behalf Of:** ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**Contact Purpose:** Investigate Referral         **Staff Person:** Matthew Mercado
**Participant(s):**
**Method:** Written          **Location:** CWS Office          **Status:** Completed

Summary: Emotional Abuse, Inconclusive

▆▆▆ reported that ▆▆▆▆▆▆▆▆ (17) stated that when she gets upset she will try
and walk away and her mother will follow her, both engaging in a verbal
altercation. ▆▆▆▆▆▆ stated that mother will say things, telling her to "get the
fuck out, no one wants you here." She reported that her mother tells her that "she
is stupid; you're not going to get what you want." ▆▆▆▆▆▆ reported that her mother
belittles her and puts her down and feels like she is being pushed to the edge. ▆▆▆
reported that the minor was not put on a 51/50 hold but was seen for an evaluation.
Destiny is receiving counseling services through Aspiranet while the other minors

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 05:02 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 3 of 3 |

in the home are receiving services through the Patterson Family Resource Center. Allegations of emotional abuse are inconclusive. SDM risk is high.

CRB: Given

SDM: Completed

■■■: July 29, 2018

MD: 03/2032

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE 12/11/2018 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Margarita Zamora | | N5H Zamora | (209) 558-2395 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez       REFERRAL NUMBER: 0386-6319-0821-4085506

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Zamora, Margarita | Social Worker IV | 12/05/2018 | 12:47pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5H Zamora | (209) 558-2395 | Community Services Facility | |

ALERTS:

CN: Hilda Perez/ER-0354535
Sexual Abuse/EO

The father reported that when ▇▇▇▇▇▇ (4) returned back from his mother's home on Sunday, he disclosed that his older half-brother ▇▇▇▇▇▇ (13) had touched his private parts at night. No other details regarding the abuse were reported. The father filed a police report (Police Report: S18-053593), but stated that nothing was done and due to custody paperwork, ▇▇▇▇▇▇. went back to the mother today.

CMS Hx: Family has a total of 25 referrals. Last investigation for EA was INC and GN was UNF on 8/2018.

***Staffed with ER SWS Anderson***

Police Report has been requested.

Rationale: Vague information. EO for now until Police Report is received.

Screener: M. Zamora N5H
LAW ENFORCEMENT AGENCY                                     POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| | |

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
53
Page __1__ of __29__

Welfare Agency    **EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with
Penal Code Section 11167.5 and/or
15 827 and 10850
Page 1 of 29
SER-0705

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 02/05/2019 |
|---|---|---|---|

| STREET ADDRESS: | 251 East Hackett Road | | |
|---|---|---|---|
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Lawrence Jones | | N9J L. Jones | (209) 558-2341 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez       REFERRAL NUMBER: 0484-2127-6351-0060515

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Vanderpool, Tiffany | Social Worker IV | 12/05/2018 | 02:16pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5F Vanderpool | (209) 558-2992 | Community Services Facility | |

ALERTS:
CN: Hilda Perez/ER-0354535
Sexual Abuse/Path 2

On Dec 3rd, RP ▓▓▓▓▓ up Alfredo from his mother's time with him. RP reported that he reminded ▓▓▓▓▓ that no one is supposed to touch his privates. RP reported that ▓▓▓▓▓ stated "I have something to tell you". RP reported that ▓▓▓▓▓ reported that ▓▓▓▓▓▓▓ grabbed "my nana". RP reported that ▓▓▓▓▓ calls his penis. RP reported that they stopped ▓▓▓▓▓ from saying anything more and took him to the Sheriffs department to make a report. RP reported that ▓▓▓▓▓ did report that ▓▓▓▓▓ touched him while he was pretending to sleep. RP reported that the report number is ▓▓▓▓▓. RP reported that ▓▓▓▓▓ is supposed to go back to his mom's today. RP reported that ▓▓▓▓▓ parents have 50/50 custody and he spends 5 days with mom and 5 days with dad. RP reported that dad intends to file for full custody of ▓▓▓▓▓

Called Patterson SO -        Will be referred for a deputy to investigate.

Path 1: RP reports minor disclosed brother at mom's house touched his penis. RP reported to SO. Unknown if this was over or under the clothing or the context in which this took place.

Screener: SW T. Vanderpool N5F

1/23/19, SO requesting SW for CAIRE on 1/28/19 at 2:30pm. Upgraded to Path 2.
Assinged: SW L. Jones N9L

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
54
Page __1__ of __24__

Welfare Agency   EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with
Penal Code Section 11167.5 and/or
SER-070627 and 10850
Page 1 of 24

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:04 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:    1 of 4 |

## DELIVERED SERVICE LOG
### Contacts

FROM:  12/5/2018    TO:  7/10/2020

FOR:  ███████████████

**Contact Date: 01/28/2019    On Behalf Of:** ███████████
**Contact Purpose:** Investigate Referral         **Staff Person:** Lawrence Jones
**Participant(s):** ████████████████████████
**Method:** In-Person        **Location:** Other        **Status:** Completed

1.28.19 Observed CAIRE interview with minor ████████████████████

On January 28, 2019 at 2:30 PM SW L. Jones and SWS E. Anderson observed a CAIRE
interview facilitated by Detective Tim Redd with the minor ██████████ (4) at
Stanislaus Family Justice Center 1418 J Street, Modesto California. At the time of
the interview, ████████ (4) appeared clean and healthy, and did not have any visible
marks or bruises that would be consistent with abuse or neglect.

████████ had a hard time verbalizing himself during the interview. ████████
identified his "pepe" as being his private part.  When asked if anyone ever touched
his "pepe", ████████ replied "no". ████████ did not disclose that anyone made him
touch someone else's "pepe" and reported that no one has touched his "pepe".

1.28.19 Completed F/F contact with father Alfredo Cruz-Sosa Sr.

On January 28, 2019 at 2:52 PM SW L. Jones and SWS E. Anderson completed F/F
contact with father Alfredo Cruz-Sosa at Stanislaus Family Justice Center 1418 J
Street, Modesto California.  Alfredo reports being in a relationship with mother,
Hilda Perez, for five years.  Alfredo reports testing positive for drugs when
she gave birth to minor ████████████████████  Alfredo Sr. reports that he is
unsure what he should do now because PD said they cannot do anything and reports
that the half-brother is still touching ██████████ inappropriately.  Alfredo Sr.
reported that he has 50/50 custody of ████████████ and wants to file for full
custody.  Alfredo Sr. reported Hilda has several other children, by other men, that
have been sexually abused in her care.  SWS Anderson informed Alfredo that this SW
will be interviewing Hilda and assessing the home as well as the other children in
the home.

**Contact Date: 01/29/2019    On Behalf Of:** ██████████████
**Contact Purpose:** Consult with Collateral        **Staff Person:** Tiffany Vanderpool
**Participant(s):**
**Method:** Telephone        **Location:**        **Status:** Completed

On 1/29, SW Vanderpool received a call from a ███ stating that Alfredo Sr took
██████████ to the doctor on 1/29/19 at 4:00pm.  The father called the same morning
to make the appointment for follow up from an urgent care visit for the child being
sick. ███ reported that Alfredo SR reported that that ████ reported that his
13 year old brother fondled his genitals and his rectum when the older brother
thought he was sleeping. ███ reported that the child did not disclose. ███
reported that because the father stated that the child reported being sexually

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
55
Page  1  of  4

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05.04 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 2 of 4 |

abused, the doctor ordered blood work for ████████ to rule out any STDs.

**Contact Date: 01/29/2019     On Behalf Of:** ███████ ████ ████
**Contact Purpose:** Investigate Referral          **Staff Person:** Lawrence Jones
**Participant(s):**████████
**Method:** In-Person          **Location:** Home          **Status:** Completed

On January 29, 2019 at 11:07 AM SW L. Jones completed F/F contact with mother Hilda
Perez, son ████████ and daughter ████████ (17) at
Patterson California. This SW identified himself and provided Hilda with a Civil
Rights Brochure and business card. Hilda greeted this SW and invited this SW
inside the home. This SW did not observe any visible hazardous concerns.

F/F contact with mother Hilda Perez

When reviewing the referral allegations, Hilda reported that ████████ did tell
her about a game he played with other son ████████ that she thought was
not appropriate. Hilda reported ████████. stated they would build a fort. Hilda
reports that when he was in the fort ████████. would pretend that he was sleep
and ████████ would have to grab his "testicles" in order to wake up. Hilda
reports that this occurred about a month ago and has not happened again. Hilda
reports having a long talk with ████████ about the situation and ████████
said he would not do it again. Hilda reports that ████████ now sleeps in the
room with her. This SW discussed the importance of providing appropriate
supervision for her children. This SW explained that further reports of lack of
supervision could result in a higher level of CPS intervention. This SW advised
Hilda to continue to let ████████ sleep in her room when he comes over and Hilda
agreed. Hilda reported her daughter ████████ being in independent studies,
and ████████ attending ████████ Elementary and sor ████████ attending
████████ Middle school. Hilda reports that ████████ birth name was ████████ but
he had a sex change is now

F/F contact with minor ████████ ████████ ████ (████ ██/██/████)

At the time of visit, ████████ (17) appeared to be clean and healthy, and did not
have any visible marks or bruises that would be consistent with abuse or neglect.
████████ (17) appeared to be just waking up and agreed to participate in the
voluntary interview. The interview lasted less than 30 minutes. ████████ (17)
reports living with her mom, the baby, ████████ and sometimes
████████ ████████ reports having enough food and clothing in the home. ████████
reports feeling safe at home and identified calling 911, CPS, or the Emergency
Hotline when she did not feel safe. ████████ reports that when she gets into
trouble she is not able to use electronics. ████████ reports no domestic violence;
no drug or alcohol use in the home. ████ was not interviewed due to age.

**Contact Date: 01/29/2019     On Behalf Of:** ███████ ████ ████
**Contact Purpose:** Investigate Referral          **Staff Person:** Lawrence Jones
**Participant(s):**████████
**Method:** In-Person          **Location:** School          **Status:** Completed

On January 29, 2019 at 12:16 PM SW L. Jones completed F/F contact with ████████ (10)
and ████████ (8) at ████████ lementary 624 W Las Palmas Ave, Patterson
California. ████████ separately agreed to voluntary interview with this
SW without school staff present. ████████ appeared to be clean and
healthy with no visible marks or bruises that would be consistent with abuse or

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:04 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 3 of 4 |

neglect. Both interviews lasted less than 30 minutes.

F/F contact with ████████████████████████████)

████ (10) reports living with mom, two sisters, and three brothers. ████
reports having enough food and clothing in the home. ████ reports he feels safe
at home and identified calling 911 or telling mom when he did not feel safe.
████ reports that when he gets into trouble that he would get grounded and has to
stay in his room. ████ reports that no one fights inside that home except the
brother arguing over games. ████ reports not knowing of any drugs or alcohol.

F/F contact with ████████████████████

████ (8) reports living with 4 brothers and a sister. ████ reports that
two brother sleep in mom's room and the rest of the children sleep in the other
room. ████ reports that baby brother ████ and ████ (4) sleep in mom's
room. ████ reports having enough food and clothing in the home. ████
reports feeling safe in the home and identified calling 911 when she did not feel
safe. ████ reports that when she gets into trouble she would have timeout in
mom's room. ████ reports no one fighting in the home. ████ was able to
identify cocaine being a drug but did not remember where she learned that from.
████ reports no drugs being used in the home.

**Contact Date:** 01/29/2019  **On Behalf Of:** ████
**Contact Purpose:** Investigate Referral  **Staff Person:** Lawrence Jones
**Participant(s):** ██████████████
**Method:** In-Person  **Location:** School  **Status:** Completed

On January 29, 2019 at 12:51 PM SW L. Jones completed F/F contact with ████
(13) at ████ Middle School 535 Peregrine Dr. Patterson California. ████
agreed to voluntary interview with this SW without school staff present.
████ new the difference between a truth and a lie and agreed to tell the
truth during this interview. ████ appeared to be clean and healthy with no
visible marks or bruises that would be consistent with abuse or neglect. The
interview lasted less than 30 minutes.

████ reports living with mom, two brothers and sisters. ████ reports
that his little brother ████ lives with him sometimes. ████ reports wanting
to be a mathematician or architect when he grows up. ████ reports having
enough food and clothing in the home. ████ reports feeling safe in the home
and identified calling 911 when he did not feel safe. ████ reports that
when he gets into trouble he has to go to timeout. ████ reports no one
fighting in the home just arguing among the brothers. ████ identified
tobacco as being a drug and bud light being alcohol. ████ reports knowing
about Bud Light because he would see it at Walmart. ████ identified that
difference between a good touch and a bad touch and identified his "penis" and his
"butt" as being his private parts. ████ reported playing a game called
"Nice Butt" where you go and hit a person's butt and run away. This SW discussed
how games like that are inappropriate and should not be played. ████
acknowledged the game being inappropriate and reported knowing that he should not
touch any one's privates because it could ruin his reputation for when he wants to
go to college.

End Contact

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:04 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:   4 of 4 |

Closing summary:

Disposition: Allegations of SEXUAL ABUSE are UNFOUNDED.

Summary: On December 3, 2018, RP called to report ▮▮▮▮▮▮▮ (4) told the RP his
brother ▮▮▮▮▮▮▮▮▮ had touched his penis at mother's house.   RP reported to SO
for investigation.  January 23, 2019 this referral was upgraded to path 2 and a
CAIRE interview was conducted.  During the CAIRE interview▮▮▮▮▮▮▮▮▮ did not
disclose any one touching his penis.  During my investigation mother Hilda agreed
to have ▮▮▮▮▮▮▮▮ sleep in her room from now on. Hilda also agreed to keeping
closer supervision of her children.

CRB: Provided
SDM: Completed
RD: 02/2036

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 02/21/2019 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Kimberly Potter | | N5P Potter | (209) 558-1596 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia (aka Perez)          REFERRAL NUMBER: 0936-8876-6911-1095105

| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | [ ] N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Potter, Kimberly | | 02/21/2019 | 12:26pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5P Potter | (209) 558-1596 | Community Services Facility | |

ALERTS:

CN: Hilda Garcia (aka Perez)/ER-0454535
Allegation: Sexual Abuse/Eval Out
Calfresh and Medi-Cal

████ reported that an ██ reported to them that the child, █████b (4), was visiting the mother during Christmas break from 12/18/2018 to 01/07/2019, and that prior to that there was little to no contact with the mother. ███ reported that the child disclosed that during that visit that his half-brother, ███████ (13), had touched his penis. ██ reported that the half-brother masturbated the child and later the child, ███████ (4), complained of pain in his "bottom" and there are concerns that there may have been penetration, although no disclosure has been made by the child in regards to that at this time. ███ reported that the child has had emotional problems since returning to school after the break and he has been defiant and aggressive with other children. ███ reported that the child has a learning disability and a speech impediment, stuttering, that seems to have gotten worse as well. ███ reported that the child has begun wetting the bed and having nightmares. ███ reported that the father has been appropriate and made a report with LE and CPS about the concerns, he has filed to amend custody to ensure more supervision during visits, and he also has the child in counseling and just completed paperwork to get the child a counselor through Sierra Vista to address the concerns. ███ reported that it is unknown if the mother is aware of the concerns. ███ reported that the child has not disclosed these concerns to them and there have been no new allegations at this time.

Screener found two referrals for the same allegations from 12/05/2018, for sexual abuse to the child, ██████ (4), by the half-brother, ███████████ (13), that was unfounded and evaluated out. The child attended a CAIRE on 01/28/2019, and he did not disclose any sexual abuse and the mother, Hilda, was made aware of the concerns and agreed to have the child sleep in her room from now on. Screener provided ███ with information for Parents United.

CMS Hx: 27 referrals in Stanislaus County: GN 01/27/2015 SUB; No Case Hx.

Rationale: There are no new allegations of abuse or neglect at this time, the concerns were previously investigated and the father is protective and appropriate.

Screener: K. Potter, N5P

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**56**
Page __1__ of __32__

d Welfare Agency     EMERGENCY RESPONSE REFERRAL INFORMATION

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 05/08/2019 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Shynelle Jones | | N9C S. Jones | (209) 558-1405 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez

REFERRAL NUMBER: 1140-3449-2709-5090505

| NA | EVALUATE OUT | X | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | | DATE | TIME |
|---|---|---|---|---|
| Laster, Tonya | Social Worker IV | | 04/11/2019 | 01:25pm |
| CASELOAD # | PHONE NUMBER | LOCATION | | |
| N5J Laster | (209) 558-2341 | Community Services Facility | | |

ALERTS:

CN: Hilda Garcia (aka Perez)/ER-0354535
Allegation: Physical Abuse - P3

■■■ reported that ■■ observed marks on 5 y/o ▆▆▆▆▆▆▆▆▆▆▆ s arms. ■■■ reported on the right arm, there is a bruise between the elbow and shoulder which appeared to be finger marks and above the elbow is a red scratch. ■■■ also reported the minor has a bunch of little scratches on his right forearm.

■■■ reported on the left arm, in between the elbow and the shoulder, have dry scratches and underneath the elbow there is another scratch that is light pink and dark red. ■■■ reported the minor was seen by medical staff today who suspect physical abuse. ■■■ reported the minor was asked what happened but he provided inconsistent responses. ■■ reported the ■■ observes this marks yesterday 4/10/19 after the minor was picked up from his father's home (Alfredo Cruz Sousa Sr). The mother (Hilda Perez) has 5 other children: ▆▆▆▆▆▆▆▆▆▆▆▆ and ▆▆▆▆▆▆▆▆▆▆ who are not the biological children of Alfredo Cruz Sousa and are reported to not visit at his home.

CWS Hx: The mother has significant hx dating back to 2012.

Rationale: minor with bruising and medical staff suspected abuse. SDM completed
Screener: T. Laster N5J
Assigned: S. Jones

LAW ENFORCEMENT AGENCY

POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| 3143 Prune Ave | (209) 892-9100 |
| Patterson, California 95363-9746 | |

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

STANISLAUS COUNTY
CHILD PROTECTIVE SERVICES
CONTROLLED DOCUMENT
This copy was prepared by
Stanislaus County Child Protective Services
on 7/24/2020 by: Jillayna Clemens
for the official use of:
Robert K. Howell, ESQ
and may not be revealed to any
unauthorized persons.
These documents are confidential.
UNLAWFUL RELEASE OR POSSESSION OF
THIS INFORMATION IS A MISDEMEANOR.
(Part 9, 97 pages)

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
57
Page 1 of 24

...fare Agency    EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with
Penal Code Section 11167.5 and/or
WIC Sections 827 and 10850
Page 1 of 26

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 05:06 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:  1 of 4 |

## DELIVERED SERVICE LOG
### Contacts

FROM:  4/11/2019     TO:  7/10/2020

FOR:  ███████████

**Contact Date:** 04/11/2019     On Behalf Of: ████████████
**Contact Purpose:** Investigate Referral          **Staff Person:** Shynelle Jones
**Participant(s): Alfredo Cruz Sosa Sr**
**Method:** In-Person          **Location:** Other          **Status:** Completed

F/F contact with Alfredo Sr  at the common address, 144 Weber Ave Patterson, Ca.
Alfredo greeted SW Jones and she provided him with CRB and business card. The home
appeared clean and appropriate with no visible safety concerns.

SW Jones explained the purpose of the home visit and reviewed referral allegations
with Alfredo. Alfredo reported that he noticed the marks on his son's forearm on
Friday April 5th, he states that he took pictures of the marks because they
appeared odd. Alfredo disclosed that Hilda did not notify Alfredo that anything
happened to ███████ .

Alfredo disclosed that ███████ refused to answer him when he asked what
happened.
SW Jones inquired if marks on ███████ s arm could be self-inflicted, because they
appeared to be self-inflicted scratches. Alfredo disclosed that he believes that
they can be self-inflicted because he has caught him scraping his arm with a key
and told him to stop. Alfredo disclosed that the older children in the home have a
history with "cutting" and could have taught ███████ how to harm himself. Alfredo
states " I don't trust the children in the home because they once touched my son
inappropriately.  Alfredo disclosed the incident was previously reported and
investigated.

Alfredo disclosed that  he has 50/50 custody with Hilda and she has been giving him
a hard time. He states that she constantly lies about him to try to take his son
away.

Alfredo denied hitting his son as a form of discipline, he insisted that the marks
were already present and provided SW Jones with pictures dated 4/5/19.

**Contact Date:** 04/11/2019     On Behalf Of: **Alfredo Cruz-Sosa**
**Contact Purpose:** Investigate Referral          **Staff Person:** Shynelle Jones
**Participant(s):**
**Method:** In-Person          **Location:** Other          **Status:** Completed

Dr. Visit
On 4/10/19 SW Jones completed F/F contact with Dr. Ray Datta. MD of Del Puerto
Health Center, 1700 Keystone Pacific Pkwy Unit B Patterson, CA 95363. SW Jones
introduced herself and provided Dr. Datta with a business card.
SW Jones listened to Dr. Data's concerns regarding the family and ███████ s BX. She
disclosed that ███████ refused to show her the marks on his arm and provided her
with inconsistent stories. Dr. Datta disclosed that Hilda told her that ███████ did

**PLAINTIFF'S(S')**
**EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**58**
Page  **1**   of  **4**

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:06 AM | Logged-On Staff Person: Eric Anderson N9 in-box | Page: 2 of 4 |

not have the marks on his arms before he went to his father s home.
Dr. Datta could not say if the marks were consistent with child abuse but she did
say that she does not believe they came from normal daily activities such as
running and playing.
DR. Datta disclosed that that the mother presented appropriately.

**Contact Date: 04/11/2019      On Behalf Of:** ███████████
**Contact Purpose:** Investigate Referral                    **Staff Person:** Shynelle Jones
**Participant(s): Christopher Garcia**
**Method:** In-Person          **Location:** Other                    **Status:** Completed

F/F Contact
SW Jones completed F/F contact with ███████ (13) at Del Puerto Health Center,
1700 Keystone Pacific Pkwy Unit B Patterson. SW Jones introduced herself and
explained the purpose of this interview. ████████ appeared to be clean and
healthy with no visible marks or bruises. He knew the difference between a truth
and a lie and agreed to tell the truth during this interview. ████████ disclosed
that he is comfortable speaking to SW Jones without another adult present. This
interview lasted less than 30 minutes.

SW Jones discussed referral allegations, ███████ reports that he did not pay
attention to his brothers arms before he went to his dads so me so he is unaware if
he had them already or not. C██████r disclosed that his mother does not use
spanking as a form of discipline. He also reported that he thinks Alfredo's father
grabs his arms sometimes but he never witnessed it.
████████r disclosed it is not uncommon for his brother to trip and fall at school
or get marks and bruises from playing because he plays rough.
███████ disclosed that he feels safe at home.

**Contact Date: 04/11/2019      On Behalf Of:** ███████████
**Contact Purpose:** Investigate Referral                    **Staff Person:** Shynelle Jones
**Participant(s):** ███████████ █ ███████████
**Method:** In-Person          **Location:** Other                    **Status:** Completed

SW Jones introduced herself to ████o (5) and asked if he could participate in a
voluntary interview. ███████ requested that his mother be present during this
interview. ████o knew the difference between a truth and a lie but he could not
agree to tell the truth during this interview.
████████ disclosed that he likes to be called ██████, he had faint scratches on his
right forearm and scrape near his left elbow
It appeared to be challenging for █████ to stay on topic and participate in this
interview, his mother interfered with asking questions by asking leading questions.
████████ disclosed that he got the marks on his arms from swimming in the ocean with
sharks and his father. He demonstrated how he swam with the sharks in the ocean.
SW Jones pointed to marks on the other side of his arm and he reported that he
could not tell her where they came from. He screamed "I hate you" "your ugly". SW
Jones explained to Hilda that the interview was over but Hilda requested that SW
Jones continue to ask ███████ questions regarding the marks. ████████ disclosed that
the scrape on his arm was from falling at school on Friday. He had the scrap mark
covered with a band aide.
████████ disclosed that his father does not hit him, as a form of punishment. SW
Jones asked Alfred if the marks could be self-inflicted, he took off running
screaming "She's ugly"

SW Jones ended the interview.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:06 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 3 of 4 |

F/F contact with Hilda at Del Puerto Health Center, 1700 Keystone Pacific Pkwy, Unit B Patterson, CA.. SW Jones introduced herself and provided Hilda with a CRB and business card. Hilda agreed to participate in a voluntary interview with SW Jones.
SW Jones reviewed referral allegations with Hilda, She disclosed that ▓▓▓▓ came back from his father's house and he had the marks on his arms. She disclosed that he didn t have the marks on his arms before he left. She disclosed that he went to his father's house from Wednesday to Friday. Hilda also disclosed that she notices that ▓▓▓▓'s behavior is different when he come from his father s house. She disclosed that he is very angry and does not listen to her. Hilda disclosed that ▓▓▓▓lo told her that his father tells him not to listen to her and to be mean to his children.
Hilda disclosed that she does not believe that ▓▓▓▓'s marks could be self-inflicted because she believes that he would tell her.
SW Jones inquired about validity to the story ▓▓▓▓ told about swimming in the ocean with sharks. SW Jones inquired if he tells stories often. Hilda disclosed that he has an active imagination.
Hilda disclosed that she thinks ▓▓▓▓s father is hitting ▓▓▓lo but ▓▓▓lo will not confirm or deny. She believes that he cries because he does not want to tell her what happens at his dads home.
Hilda could not confirm, that she has seen ▓▓▓▓'s father abuse him.
Hilda disclosed that ▓▓▓▓s father was recently granted 50/50 custody of ▓▓▓ and he is spending half time at his father's house.
SW Jones discussed FRC Services and Family Maintenance. Hilda disclosed that she is interested in counseling services through FRC.

F/F contact with ▓▓▓▓ (17), she appeared clean and healthy with no visible marks or bruises. She knew the difference between a truth and a lie and agreed to tell the truth during this interview. ▓▓▓▓ agreed to meet with SW Jones without another adult present. This interview lasted less than 30 minutes.
SW Jones reviewed referral allegations with ▓▓▓▓, She disclosed that she doesn t know anything about ▓▓▓o's marks on his arms She disclosed that when her mom brought it to her attention she tried to see the marks on his arms but he refuses to show her. Destiny could not confirm if ▓▓▓▓'s father has a history of using "spankings" as a form of discipline.
▓▓▓y disclosed that her mother does not use "Spankings" as a form of discipline.

F/F contact with ▓▓▓ (0), SW Jones completed F/F contact with the newborn. Due to his age and inability to speak N▓ was unable to participate in this interview. He appeared to be clean and healthy with no visible marks or bruises.

**Contact Date:** 05/08/2019 **On Behalf Of** ▓▓▓▓▓▓
**Contact Purpose:** Investigate Referral       **Staff Person:** Eric Anderson
**Participant(s):** ▓▓▓▓▓▓
**Method:** Written    **Location:** CWS Office      **Status:** Completed

SWS Anderson observed the pictures of alleged abuse. This information coupled with the written information by SW Jones does not appear consistent with child abuse. The injuries that SWS Anderson saw are injuries that could be incurred in many different fashions and mechanisms. It is possible and likely that the minor does not know where all of the injuries came from. The alleged scratches on the forearm area are not significant in this SWS's opinion and are unlikely in physical abuse scenarios. The other injury appears to be a friction scratch or burn that are common for children when and if falling on either a hard surface or possibly carpet

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:06 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 4 of 4 |

even. SWS Anderson did not observe fingerprint marks on the child. The other 5
children in mother's care were not all interviewed because they do not go to the
father's home. Father is the alleged perpetrator in the original allegations being
reported. Based on the pictures, SWS Anderson has no concerns of abuse

Summary & Disposition
Allegations of physical abuse against Alfredo Cruz Sr. are unfounded. During this
investigation Hilda reported that she believes Alfredo Jr received the marks from
his father's house. However, Alfredo Sr. provided SW Jones with photos of the marks
that he noticed on his arm the day he picked him up.

Allegations- Physical Abuse unfounded
RET-03/2032
SDM-Completed
■■■-Written
CRB-Given

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 05/08/2019 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Shynelle Jones | | N9C S. Jones | (209) 558-1405 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia (aka Perez)  REFERRAL NUMBER: 1654-6713-8546-3092631

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | | TITLE | | DATE | TIME |
|---|---|---|---|---|---|
| Rodriguez, Laura | | Social Worker IV | | 04/26/2019 | 12:08pm |
| CASELOAD # | PHONE NUMBER | | LOCATION | | |
| N5C L. Rodriguez | (209) 558-3756 | | Community Services Facility | | |

ALERTS:

Case Name: Hilda Garcia (aka Perez) / ER-0354535
Allegations: Sexual Abuse / Path 2
Calfresh and Medical

Per ▬▬, mother received emergency temporary custody over minor ▬▬▬ (5) on 4-15-19 for allegations of physical abuse against father. Per ▬▬, during an assessment mother stated that ▬▬▬▬ had disclosed sometime in January that he asked his half-brother ▬▬▬▬▬ to touch him in his genital area, (which was reported and investigated on 12/5/18) mother asked him where he knew this from and he disclosed that his father was the one touching him. No recent incidents where disclosed nor other details. Per ▬▬, family goes back to court on 5/8/19.

**Staffed with SWS Llamas-Caballero, recommendation was to assign as a 10 day**

CMS Hx- Family has a total of 29 referrals in Stanislaus county. Most recent investigation 4/11/19 PA INCON, assigned to SW Jones. Screener found two referrals for the same allegations from 12/05/2018, for sexual abuse to the child, ▬▬ (4), by the half-brother, ▬▬▬▬ (13), that was unfounded and evaluated out. The child attended a CAIRE on 01/28/2019, and he did not disclose any sexual abuse and the mother, Hilda, was made aware of the concerns and agreed to have the child sleep in her room from now on. No Case Hx

Rationale: path 2, mother stated that minor ▬▬▬ had disclosed sometime in January that he asked his half-brother ▬▬▬▬▬ to touch him in his genital area, (which was reported and investigated already on 12/8/18)) mother asked him where he knew this from and he disclosed that his father was the one touching him.

Screener: SW L. Rodriguez N5C,

Assigned: SW S. Jones N9C. (per 6 month rule).

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| 3143 Prune Ave | (209) 408-0415 |
| Patterson, California 95363 | |

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 59
Page 1 of 28

...d Welfare Agency ...es ...stem  EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
SER-0717 Page 1 of 28

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:08 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:  1 of 4 |

## DELIVERED SERVICE LOG
### Contacts

FROM:  4/26/2019      TO:  7/10/2020

FOR:  ███████████████████

**Contact Date:  07/12/2019      On Behalf Of:** ███████████████████████ ██ ████,

**Contact Purpose:** Investigate Referral           **Staff Person:** Shynelle Jones
**Participant(s):** ██████████████████████████████████████████
                                                                          z

**Method:** In-Person          **Location:** Home          **Status:** Completed

SW Jones completed a H/V at the common address 3134 Prune Ave Patterson, Ca. SW Jones was greeted by Hilda and invited into the home. SW Jones provided Hilda with a CRB and business card, the home appeared to be clean and appropriate with no visible safety concerns. SW Jones was accompanied by SW April C. who had to meet with Hilda to discuss more recent referral allegations. SW Jones explained the purpose of this interview, Hilda agreed to meet with SW Jones regarding referral allegations.

SW Jones discussed the referral allegations with Hilda, she disclosed to her knowledge ██████r and ████████were playing a game called "Sleepy Sleepy". explained that the game is played by one of the children laying down playing asleep while there other one tries to wake the sleeping person up. Hilda disclosed that during this game ██████ allegedly told his 13 year old brother Christopher to touch his penis. She disclosed that A███lo told her that " he grabbed me" Hilda could not disclose where ████████er grabbed ████████, she stated that it was on top of the clothing but would not describe where ██████████r touched ██████

Hilda disclosed that she when the incident took place she was in the kitchen cooking. Hilda disclosed that she is really not sure what happened and she had a conversation with her children about inappropriate touch.

Hilda disclosed that her son ████████r didn t touch ████████'s penis. Since the incident she disclosed that she does not allow the children to be home alone. It appeared to SW Jones that Hilda became frustrated and asked SW Jones if she can record the conversation. SW Jones stated that she does not consent to being recorded. Hilda did record the conversation. Hilda stated that she no longer wanted to talk to SW Jones because she is getting frustrated and feels like SW Jones is asking questions to punkish
Hilda discussed ████████ transition to ████████ she stated that the transition took started when ████████ was in Kindergarten. She states that she decided to take him to see a Doctor because he told her that he wanted to be a girl. Hilda disclosed that it was not her idea

F/F contact with ████████, he appeared to be clean and healthy with no visible

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
60
Page  1  of  4

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:08 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:    2 of 4 |

marks or bruises. SW Jones introduced herself and explained the purpose of this
interview. ████████r agreed to meet with SW Jones regarding referral allegations.
He knew the difference between a truth and a lie and agreed to tell the truth
during this interview. ████████er appeared nervous and shy, he answered interview
questioned with his head down and without  direct eye contact.
SW Jones explained to ████████r that he wasn't t t in trouble and did not have to
be nervous. ████████r disclosed that a long time ago he built a fort in his room
with his little brother ████████ They were playing tag together running in and out
of the fort. ████████ disclosed that his brother ████████ asked him to touch his
"Ding-a-ling". ████████r reported that he touched his brother's belt buckle and
stated " I stopped because I knew it was wrong". ████████r disclosed that this
concluded the incident.
████████r disclosed that the night of the incident his mother called him into her
room along ████████ and she talked to them about inappropriate touching and
appropriate game. ████████ states that when he was leaving the room he overheard
Hilda ask ████████ if he learned the inappropriate touching game from his father, he
also heard her ask ████████ "does your daddy do things to you like that" ████████
stated that he went to his room before he heard ████████ respond to the question.

████████isclosed that Alfredo Sr, was a great step dad when he was in a
relationship with his mother. ████████er disclosed that he has never witnessed
Alfredo Sr. hit his mother or hit his son ████████. He also disclosed that he has
never heard that ████████ was being sexually abused byhis father until recently.
████████ disclosed that when Alfredo Sr. and his mother were in a relationship
they appeared to be happy, he reported that he does not recall them fighting as
much as they do now and that Alfredo was not abusive to any of the children.

SW Jones attempted to complete F/F contact with ████████████████) she
appeared to be clean and healthy with no visible marks or bruises. SW Jones
introduced herself and discussed the purpose of the interview. ████████a told SW
Jones that she did not want to participate in this interview and wanted to know if
her participation was mandatory. SW Jones explained that this interview is
voluntary and needed the interview.

F/F contact with ████████), SW Jones introduced herself and explained the purpose
if this interview. ████████ appeared to be clean and healthy with no visible marks or
bruises. He reports that he feels comfortable meeting with SW Jones without another
adult present. ████████ knew the difference between a truth and a lie and agreed to
tell the truth during this interview. SW Jones reviewed referral allegations with
████████n.
He disclosed to SW Jones that he does not know anything about the referral
allegations. ████████ disclosed that he has never had any problems with Alfredo Sr
when he used to live with the family. ████████n disclosed that he feels safe living at
home with his mother.

SW Jones completed F/F contact with ████████ (9 months), he appeared clean and healthy
with no visable marks or bruises. ████████ is too young to participate in this
interview therefore SW Jones observed ████h nursing in his mothers arms. He appesred
to be in track with his developmental milestones.

SW Jones completed F/F contact with ████████o (5), he appeared to be clean and
healthy with no visable marks or brusies. He was very active and was ealiy
distracted during the interview. SW JOnes introduced herself and explained a SW's
position. It appeared that ████████o could have been promted to questionsing becuase
before SW Joned could ask any quetions ████████ began to provide information about

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 05:08 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page:  3 of 4 |

his father. he pointed at a mole on his aem stating "Look what my dad did and daddy punched me in the head" ███████ started hitting his own head. ███████ also disclosed that his father makes him watch scary movies. ███████ knew the difference between a truth and a lie and agreed to tell the truth during this interview. SW Jones reviwed referal allegations with ███████ however, ███████ denied allegations that his brother ███er touched him inapproprietly in the genital area. He disclosed that he told his mom that his dad touched his butt becuase he wanted her to make him an appointment. SW Jones eneded the interview due to ███lo not being able to stay on track and he was running throughout the home while SW Jones was interviewing him. ███████ is too young to participate.

**Contact Date:** 07/12/2019      **On Behalf Of:** ████████████████████████████ ██ █████ ,
█████████████████████████

**Contact Purpose:** Investigate Referral                **Staff Person:** Shynelle Jones
**Participant(s):**
**Method:** In-Person            **Location:** Home             **Status:** Completed

Home Visit note continued–

F/F contact with Shane, SW Jones introduced herself and explained the purpose of this interview. Shane identified his self as Hilda's fiance and ████s father. SW Jones provided ████ with a CRB and business card and agreed to participate in a voluntary interview with SW Jones.
Shane openly disclosed that he has a bi polar diagnosis and has suffered with the mental disorder since he was a teenager. Shane disclosed that he has also been on medication since he was a teen. Shane presented well, he was attentive and receptive during this interview.
 SW Jones reviewed referral allegations with Shane, he disclosed that he was aware of the referral allegations mentioned in the report. He states that he has an open relationship with the kids and that he was told that sleepy, sleepy is a game that was played between ███████r and ███████. Shane disclosed that "Sleepy, Sleepy" is played when one player pretends to be sleeping and the other player touches the sleeping player inappropriately to wake them up. Shane disclosed that he was aware that ██████o told ███████o's penis. Shane reports that ████████████ did not touch ████b's penis.
Shane disclosed that he believes that ███████ is being sexually abused at his father's house because that us what he has been told by Hilda. Shane disclosed that he believes Hilda because she is a good mother and she would not lie about that. Shane disclosed that he has been with Hilda for little over a year and he has recently met her kids, He stated that he did not want to meet her kids because he did not know if he was going to be in a serious relationship with Hilda because she has so many children and she is a lot alder then he is. Shane said that they recently became engaged and he is working on having a relationship with her children.
SW Jones discussed how Shane can be protective and that the children need constant supervision. Shane agreed and provide strict supervision of the minors. when he is home.

F/F with Hilda, SW Jones reminded Hilda to provide strict supervisor in the household, SW Jones also discussed emotional abuse and ways that she can learn to co parent with Alfredo Sr.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 05:08 AM | Logged-On Staff Person: Eric Anderson  N9 In-box | Page:  4 of 4 |

**Contact Date:** 07/12/2019    On Behalf Of: ███████████████████████████████ ,
████████████████████████████████████ ▌ ███████████

**Contact Purpose:** Investigate Referral      **Staff Person:** Shynelle Jones
**Participant(s):** **Alfredo Cruz Sosa Sr**
**Method:** Telephone     **Location:** Other     **Status:** Completed

SW Jones completed F/F contact with Alfredo Sr, she introduced herself and
explained the purpose of this interview. Alfredo waived his rights to F/F contact
with SW Jones and agreed to discuss referral allegations over the phone.
SW Jones reviewed referral allegations with Alfredo, He reported that Hilda is
lying again because she did not get what she wanted at the last custody hearing.
Alfredo was given 50/50 custody and she wanted full custody. Alfredo disclosed that
Hilda call CPS and makes allegations against him before every court date.
 He reported that they have court on August 1st at 8:30am and on that court date
the mediator will be choosing a primary parent for ███████ .
Alfredo disclosed that Hilda will do anything to keep ██████ o for him. He disclosed
that he has never touched his son inappropriately and reported that it may be
possible that ██████er touched ██████ inappropriately because has told him in
the past. ████ o cannot confirm if allegations are true or not but he reported
that he makes sure he is protective of his son.
██████ disclosed that his therapist has mentioned that Hilda is emotionally
abusing ██████ because she makes him say things that are not true about his
father. According to ██████ the therapist feels that He should have primary
custody of his son because ██████ does better with him.

Summary & Disposition
Referral allegations of Sexual abuse were found to be inconclusive. SW Jones
discussed referral allegations with parents involved and was able to mitigate the
allegation by Hilda agreeing to provide more strict supervison. Hilda declined to
FRC and FM services.

Dispo-Sexual abuse Inconclusive
CRB-Given
SDM-Complete
████-Written
RET=10/2036

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/02/2019 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |
| Stephanie Herrera | | Q2R Herrera | (209) 558-1780 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia (aka Perez)     REFERRAL NUMBER: 0142-9849-8392-7145067

| NA | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | X | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

## SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Chambers, DeReassa | Social Worker IV | 06/26/2019 | 07:40pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| Q3D Chambers | (209) 558-1753 | Community Services Facility | |

ALERTS:

Case Name: Hilda Garcia (aka Perez) / ER-0354535
Allegations: Sexual Abuse & Physical Abuse / Path 2

███ reported that mother Hilda Perez stated that son ███████████ (5) told her that in the past that his father Alfredo Cruz-Sosa Sr. touched his "nana", which mother says he calls his penis. Son told mother that father punched him in the face since he was angry that he said "no". Son told mother his nose started bleeding from his nose. ███ stated that there is a mark on minor's lip. Minor gave two different stories regarding the cause; father punching him then later he said father cut him using a knife. Minor also reported that father sleeps naked with him and that he does not like it.

Rationale: PATH 2 due to PA & SA concerns in the past.

Screener: SW C. Lopez N5I,

On 06/26/19, LE notified CPS that mother had filed a report regarding the same allegations. SO Deputy Louis stated that ████████ (5) has a planned visit with father on Monday 7/1/2019. A CAIRE interview is scheduled for Friday 06/28/2019 at 10am. Mom's address in CMS/CWS states 3143 Prune Ave Patterson; however, ███ reported that address to belong to the father and reported mother's address is the common address. Police report # P19007530.

CMS Hx- Family has a total of 30 referrals in Stanislaus county. Most recent open investigation 4/26/19 SA assigned to SW Jones. Screener found two referrals for the same allegations from 12/05/2018, for sexual abuse to the child, ████████ (5), by the half-brother, ████████ (13), that was unfounded and evaluated out. The child attended a CAIRE on 01/28/2019, and he did not disclose any sexual abuse and the mother, Hilda, was made aware of the concerns and agreed to have the child sleep in her room from now on. No Case Hx

**Staffed with SWS II Anderson, it was decided to treat this referral as a delayed IR due to the CAIRE interview and upcoming visit with father.

Rationale: Path 2 SA & PA, mother reported father engaged in lude sexual conduct with minor and punched minor, causing an injury. Minor lives with mother and visits father on the weekend. Treated as a delayed IR due to CAIRE interview and visit with father.

Screener: SW D. Chambers Q3D,

Assigned: SW S. Herrera Q2R.

LAW ENFORCEMENT AGENCY                                    POLICE REPORT NUMBER

PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
61
Page 1 of 32

...nd Welfare Agency    EMERGENCY RESPONSE REFERRAL INFORMATION    Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
...ices
...ystem

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:10 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 1 of 5 |

## DELIVERED SERVICE LOG
Contacts

FROM: 6/26/2019   TO:  7/10/2020

FOR:



**Contact Date:** 07/01/2019   **On Behalf Of:** ███████████████████z. ███████████

**Contact Purpose:** Investigate Referral   **Staff Person:** Stephanie Herrera
**Participant(s):** ███████ █
**Method:** In-Person   **Location:** Other   **Status:** Completed

* It should be noted the CAIRE was interview was scheduled on 7/1/19 and
confirmation was sent on 6/27/19 to
SW Shynelle Jones, however, information provided on 6/26/19 through CPS hotline
provided information that CAIRE interiew is on 6/27/19 at 10:00 am which was
incorrect when SW Herrera went and was informed by Rosemarie Pettitt of correct
date/time*

Child, ████████sa (5):
On 7/1/2019 at 9:00am, a CAIRE interview was scheduled regarding allegations to
this referral. ████o indicated he knew the difference between a truth and a lie.
████o denied sexual abuse allegations to this referral. SW spoke to Alfredo after
CAIRE interview who denied that father punched him or ever put his hands on him. SW
did not observe a mark on his lip as indicated in referral. SW did not observe any
marks or bruises. ███████ reported he feels safe with mother and father.


Conversation with Detective, Talea Martin (Patterson Police Services)
On 7/1/2019 at 9:20 am, SW spoke to Detective. Talea Martin who is assigned to
case. Detective reported to SW after ███████'s CAIRE interview with no disclosure
by ███████ it will be determine as unfounded. Detective indicated that there is
nothing to go by and no criminal code violation. Detective reported that it appears
to be a custody issue between mother, Hilda Perez and father, Alfredo Cruz Sosa Sr.
and child, ████o is in the middle of custody issues. Detective also reported she
does not believe allegations to this referral. Detective then spoke to mother after
CAIRE interview while this SW was present. Dectective informed mother there were no
disclosures by ████o, therefore, legally there was nothing that could be done.
Mother asked dectective what to do if ███████ continues disclosing, mother was
advised by dectective not to question ███████ and allow counseling services to be
third party to information ███████ is disclosing due to ongoing custody issues with
father.

Subsequent conversation with child, ███████████5) :
After CAIRE interview at 9:30 am , SW had face to face contact with child, ████████
(5) to cover other allegations of physcial abuse that are to this referral. ███████


PLAINTIFF'S(S')
EXHIBIT
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
62
Page __1__ of __5__

SER-0723



| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 05:10 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 2 of 5 |

reported he feels safe with mother and father. ▉▉▉▉ reported he feels safe at home. ▉▉▉▉ denied that father ever punched him and denied having a mark on lip. ▉do denied cut was caused by father using a knife. ▉▉▉▉ denied sleeping with father naked. eported that father sleeps naked with him and that he does not like it. SW did not observe any visible marks or bruises ▉▉▉▉ denied the following: any mental health (denied wanting to hurt other or herself), witnessing domestic violence, witnessing drug use, anyone ever touching him inappropriately and denied anyone has ever made him touch them inappropriately. ▉▉▉▉o reported he gets grounded as a form of discipline.

On 7/1/2019 at 9:45 am, SW had face to face contact with child, ▉▉▉▉ (8) at CAIRE center privately. ▉▉▉▉ a indicated she knew the difference between a truth and a lie ▉▉▉▉ reported she feels safe at home. SW did not observe any visible marks or bruises. ▉▉▉▉ia denied the following: any mental health (denied wanting to hurt other or herself), witnessing domestic violence, witnessing drug use, anyone ever touching her inappropriately and denied anyone has ever made her touch them inappropriately. ▉▉▉▉ reported she gets grounded as a form of discipline.

(17)
On 7/1/2019 at 9:45 am, SW face to face contact with minor, ▉▉▉▉ (17) at CAIRE center privately. ▉▉▉▉ indicated she knew the difference between a truth and a lie. ▉▉▉▉ reported she feels safe at home. SW did not observe any visible marks or bruises. ▉▉▉▉ denied the following: any mental health (denied wanting to hurt other or herself), witnessing domestic violence, witnessing drug use. ▉▉y denied that anyone has ever touched her inappropriately and denied anyone has ever made her touch them inappropriately ▉▉▉▉ reported she gets her cellphone taking away as a form of discipline.

**Contact Date:** 07/01/2019   **On Behalf Of:** ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

**Contact Purpose:** Investigate Referral        **Staff Person:** Stephanie Herrera
**Participant(s):** Alfredo Cruz Sosa Sr
**Method:** In-Person         **Location:** Other         **Status:** Completed

Interview with father, Alfredo Cruz Sosa:
On 7/1/2019 at 10:50 am, SW had face to face contact with father, Alfredo Sosa at mother's home address:      Ave Patterson, Ca where is location he picks up child, Alfredo Sosa(5) per court order. SW provided father with CRB and business card. SW went over allegations to this referral with father. Father denied all allegations to this referral. Father reported that mother is manipulating and coaching Alfredo (5). Father reported currently he and mother share 50/50 custody. Father reported to SW that all allegations are lies and both he and mother have court on August 1, 2019 at 8:30 am where judge will determine what parent has primary custody of Alfredo(5). Father reported to SW he has attempted to have exchanges with child, Alfredo at a Sheriff's station due to the lies mother makes avoiding any future allegations, however, it was denied at family court due to mother stating she couldn't make it to station for every exchange due to it being far. Father denied the following: CPS history, criminal arrest history. Mental health, domestic violence, and drug use. Father reported he talks to Alfredo as a form of discipline and denied any other discipline. Father reported Alfredo receives counseling services at Las Palmas with counselor Kristin, 1x per week, however temporarily seeing Luciado at Hilmar counseling services 1x per week. Alfredo also receives counseling services with Caesar Hernandez at Patterson School

SER-0724

| | | |
|---|---|---|
| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:10 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page:   3 of 5 |

District every Monday. Father then proceeded to show SW videos of ▓▓▓▓ ( 5) when
he picks him up from mother, SW observed ▓▓▓▓▓ crying as ▓▓▓o is getting in
father's car. Father indicated that ▓▓▓ is crying when he is getting picked up
at mother's because he doesn't want to be there. W encouraged father to discuss all
concerns related to custody at next court family law court hearing.

**Contact Date:** 07/01/2019   **On Behalf Of:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Contact Purpose:** Investigate Referral        **Staff Person:** Stephanie Herrera
**Participant(s):** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Method:** In-Person           **Location:** Home          **Status:** Completed

Interview with child: ▓▓▓▓▓▓▓▓▓▓ (13)
On 7/1/2019 at 11:00 am, SW spoke to ▓▓▓▓▓▓ at home address
Ave Patterson, CA. ▓▓▓▓r indicated he knew the difference between a truth and
a lie. ▓▓▓▓▓r reported he feels safe at home. SW did not observe any visible
marks or bruises. SW spoke to ▓▓▓▓▓▓▓ privately in a bedroom. ▓▓▓▓▓
denied the following: any mental health (denied wanting to hurt other or himself),
witnessing domestic violence, witnessing drug use, anyone ever touching him
inappropriately and denied anyone has ever touched him inappropriately. ▓▓▓▓
reported he gets grounded as a form of discipline.

Interview with child: ▓▓▓▓▓▓ a (11)
On 7/1/2019 at 11:15 am, SW spoke to ▓▓▓▓▓▓▓ at home address      Ave
Patterson, CA. ▓▓▓ indicated he knew the difference between a truth and a lie.
Damien reported he feels safe at home. SW did not observe any visible marks or
bruises. SW spoke to ▓▓▓n privately in a bedroom. ▓▓▓ denied the following:
any mental health (denied wanting to hurt other or himself), witnessing domestic
violence, witnessing drug use, anyone ever touching him inappropriately and denied
anyone has ever touched him inappropriately. ▓▓▓▓ reported he gets grounded or
time-out as a form of discipline.

**Contact Date:** 07/01/2019   **On Behalf Of:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ,

**Contact Purpose:** Investigate Referral        **Staff Person:** Stephanie Herrera
**Participant(s):** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓ ▓▓▓▓
**Method:** In-Person           **Location:** Home          **Status:** Completed

Interview with mother, Hilda Garcia aka Perez:
On 7/1/2019 at 11:30 am, SW spoke to father, Hilda Perez at home address:
     Ave Patterson, Ca .SW provided mother with CRB and business card. SW went
over allegations to this referral with mother. Mother reported all allegations are
true. Mother reported she has a restraining order against, father, Alfredo Sosa
Cruz Sr. as of 2017. Mother reported there is an upcoming family law court hearing
on 8/1/19 at 8:30 am to determine if she or father are granted primary custody of
▓▓▓o. Mother informed SW there was a craigslist listing soliciting sexual
activities with a profile of her, mother proceeded to show SW indicating it was
father, ▓▓▓▓ who posted listing. Mother reported it was listed on 6/9/19 and
they had court on 6/5/19, mother indicated she doesn't have proof it is father but
believes it is due to the coincidence of timing.  Mother provided SW with current
restraining order against, father Alfredo Sosa and custody documents which are in
the file. Custody arrangements are that both parents have joint legal and physcial
custody of ▓▓▓▓ , court case #8007445. Restraining Order effective 04/05/18
untill 4/05/2021.

| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
|---|---|---|
| 05:10 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page: 4 of 5 |

Mother reported that child, ██████ sees counselor, Kristin at Las Palmas Health Center 1x per week, however Kristin is on one month leave therefore Alfredo seeing Leticia Alameda at Hilmar Heath Center 1x per week. Mother reported ██████ was diagnosed with depression on 6/20/19 and was not prescribed any medication. Mother reported that a referral is being made by Hilmar Health Center to Sierra Vista so ██████ o can receive additional mental health services. Mother reported having CPS history. Mother denied the following: criminal arrest history. Mental health, domestic violence, and drug use. Mother reported she talks to children or puts them on time-out or take electronics as a form of discipline. SW encouraged mother to discuss all concerns related to custody at next court family law court hearing. Mother reported father, Horacio Perez is the father to children: ██████, ██████████████ and ██████████. Mother reported she has full and sole custody of children as of 2016.

Observation of baby, ██████:
On 7/1/2019 at 11:30 am, SW made face to face contact with baby, ██████z at home address: ██████ Ave Patterson, Ca  SW observed mother craddling N██ in her arms. SW observed mother holding ██ on her lap and observed ██ able to lift his head and balance on mother's lap. SW observed mother breastfeeding ██h. SW N█ to appear healthy and did not observe any marks or brusies.

Conversation with mother's fiance, Shane Beard(DOB:05/19/1993):
On 7/1/2019 at 11:45 am, SW spoke to mother's fiance, Shane Beard the father to baby, ██████mother's home address: ██████ Ave Patterson, Ca. SW spoke to Mr. Beard privately. Mr. Beard reported he does not live with mother currently, stating he lives with his parents at 609 Perwinkle Ave Patterson, Ca.  SW asked Mr. Beard if he had any concerns regarding mother, Hilda Perez. Mr. Beard indicated he has no concerns regarding mother stating she is a good mother and has no concerns stating "I wouldn't be with her if I had concerns."  Mr. Beard indicated the allegations to this referral are true as he has heard, (5) disclose the allegations to him.  Shane reported the following: he has CPS history as a child denied any criminal arrest history, mental health, and domestic violence. Mr. Beard reported he uses CBD cream for back pain and denied any other drug use. Mr. Beard reported he has been diagnosed with bipolar and ADD at the age of 13. Mr. Beard reported he takes Ridalin(25 mg) which he takes every other day, Depakote (50mg) which he takes every day. Mr. Beard also reported he manages his bipolar by keeping busy with work. Mr. Beard reported he talks to children as a form of discipline.

**Contact Date: 07/02/2019    On Behalf Of:** ████████████████████████████████

**Contact Purpose:** Investigate Referral                 **Staff Person:** Stephanie Herrera
Participant(s):
**Method:** Fax                    **Location:**                    **Status:** Completed

On 7/2/2019 , SW Herrera requested police report # P19007530  by fax for incident to this referral.

* Open 10 day assigned to S. Jones on 4/26/19., #1654-6713-8546-3092631*

Allegations of sexual abuse by father, Alfredo Sosa Sr. to child, ████████████. is concluded as unfounded.
Allegations of at risk sibling abused by  Alfredo Sosa Sr. to children: ██████████



| 07/10/2020 | Stanislaus County Community Services Agency - Stanislaus | SDSVSLOG |
| 05:10 AM | Logged-On Staff Person: Eric Anderson N9 In-box | Page:   5 of 5 |

███ a (13).    ███████    z (11),  ████████  ( 8 months),  ████████  98)
and    ████████    (17) is concluded as unfounded.

███ reported that mother Hilda Perez stated that son ████████ (5) told her
that in the past that his father Alfredo Cruz-Sosa Sr. touched his "nana", which
mother says he calls his penis. Son told mother that father punched him in the face
since he was angry that he said "no". Son told mother his nose started bleeding
from his nose. ███ stated that there is a mark on minor's lip. Minor gave two
different stories regarding the cause; father punching him then later he said
father cut him using a knife. Minor also reported that father sleeps naked with him
and that he does not like it. A CAIRE interview was scheduled and held on 7/1/19 at
9:00 am for child, ████ who did not disclose anything and denied allegations to
this referral. Assign Detective, Talea Martin (Patterson Police Services) reported
to SW after ████████ 's CAIRE interview with no disclosure by ████████ it will be
determine as unfounded. Detective reported that it appears to be a custody issue
between mother, Hilda Perez and father, Alfredo Cruz Sosa Sr. and child, Alfredo is
in the middle of custody issues. SW spoke to father who denied all allegations to
this referral. Mother indicated allegations are true and were disclosed to her by
Alfredo. SW spoke to other children in the home who indicated they feel safe at
home and denied any abuse. Current custody arrangements are that both parents have
joint legal and physcial custody of ████████ , court case #8007445. Restraining Order
effective 04/05/18  untill 4/05/2021 between mother and father. It appears there is
an ongoing custody battle involving mother and father, Alfredo Sosa Sr involving
common child, ████████ Jr. There is a court hearing on 08/01/2019 at 8:30 am to
determine what parent will be issued primary care of child. During SW Herrera
investigation, mother shared a posting on craiglist accusing father of posting
about her, father showed SW videos of ████ o allegedly when he picks up ████████
from mother's home indicating he does not want to be with her. Furthermore, both
parents demonstrated by them showing SW media content of both accusing one another
of
doing things to each other. The children all reported feeling safe with parents and
denied any abuse. Situation Stabilized.


SDM: Completed
████: 7/2/2019
CRB:Given
Retention:10/20/2036

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/05/2019 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Christopher Lopez | | N5I Lopez | (209) 558-2372 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

**REFERRAL NAME:** Hilda Garcia

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY |
|---|---|---|---|---|---|---|---|---|---|

**REFERRAL NUMBER:** 1172-2888-4543-1058734
N/A SECONDARY REPORT

## SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Lopez, Christopher | Social Worker IV | 07/03/2019 | 01:51pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5I Lopez | (209) 558-2372 | Community Services Facility | |

**ALERTS:**

Case Name: Hilda Garcia (aka Perez) / ▆▆▆▆▆▆▆
Allegations: Sexual Abuse /EO

▆▆▆ reported that mother Hilda Garcia took her son ▆▆▆▆ (5) to Del Puerto Health Center in Patterson. Mother had a concern that her son has an abnormal rectum. Mother stated that her son told her that his father Alfredo Cruz-Sosa Sr. is doing things to him in his bottom. ▆▆▆ noted that there are custody issues between mother and father regarding son. ▆▆▆ is concerned since mother is "unclear" in answering whether or not son has had hard bowel movements or is constipated, so that the doctor could determine if there is medical concern with minor. Minor would not answer questions asked by doctor. At this time, minor was examined by Dr. Rodriguez on 07/03/19 and there are no child abuse concerns.

CMS search shows a P2 for SA on father Alfred Cruz-Sosa Sr., assigned to SW Herrera, as closed. Open from 06/26/19-07/03/19. Allegations were unfounded.

Staffed with SWS Brayfield and SW Llamas. Recommendation was E/o.

Rationale: EO since ▆▆▆ did not provided any new medical concerns that minor has been sexual abused.

Screener N5I Lopez

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

## HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| ▆▆▆▆▆▆▆▆▆▆ | ▆▆▆▆▆ |

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**63**
Page __1__ of __19__

...and Welfare Agency ...ices System

**EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
Page 1 of 19

**SAFETY PLAN**

Family Name: Hilda Perez          Referral/Case #: [redacted]

Date: 1/10/14    Today, at least one child in the Perez family is in some danger. The family also has ways to be protective. Everyone in the family and the Stanislaus County Child Protective Services workers believe that by working together, we can help all children stay at home safely. This plan will be reviewed approximately 30 to 60 days from the safety plan's date as well as any changes that may occur to the safety plan or on the case that could affect the safety plan, including changes of program. This is our plan and it will be reviewed no later than _____ (60 days out from date above).

## WHAT IS THE DANGER? (SDM SAFETY THREAT)

| SDM # | Describe the specific situation or actions that cause the child to be unsafe (danger statement). | Name(s) of Child(ren) in danger |
|---|---|---|
| 2,6, 10 | Multiple SA referrals, EA allegations. Failure to protect | [redacted] DOB [redacted] |
| | | |
| | | |

## WHAT IS THE PLAN TO KEEP THE CHILD (REN) SAFE?

| SDM # | What are the actions that will be taken to address the danger? | Who will take these steps? | What will be done if these actions are not working? |
|---|---|---|---|
| 2,6, 10 | [redacted] will remain in the care of Father Alfredo Sosa Sr. Alfredo Sr will file for Full Custody of [redacted] | Alfredo Sosa Sr | Further CPS involvement. Removal of child. |
| | | | |
| | | | |

We may not all agree about the danger, but we do agree to follow the plan. We know if the plan does not keep all children safe, we must find a new plan. A new plan may mean that the children have to stay someplace else. We know that we can decide not to agree with this plan. If we do not agree with this plan, our children may have to stay someplace else for now but in a few days we can tell our story to a judge who will decide whether our children can come home.

| Parents / Legal Guardians | Worker / Supervisor |
|---|---|
| [signature] Sr | [signature]  FR Social Worker |
| Children | Other Participants  SSA |

**PLAINTIFF'S(S')
EXHIBIT**
Case Number:
1:21-CV-00841-JAM-KJN
Exhibit Number:
**64**
Page _1_ of _1_

SER-0729

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/05/2019 |
|---|---|---|---|

STREET ADDRESS: 251 East Hackett Road

CITY AND ZIP CODE: Modesto, California 95358  COUNTY: Stanislaus

NAME OF SOCIAL WORKER: Christopher Lopez  CASELOAD ID: NSI Lopez  TELEPHONE (209) 558-2372

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Garcia  REFERRAL NUMBER: 1172-2888-4543-1058734

[X] EVALUATE OUT  [ ] IMMEDIATE  [ ] 3 DAY  [ ] 5 DAY  [ ] 10 DAY  [ ] N/A SECONDARY REPORT

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Lopez, Christopher | Social Worker IV | 07/03/2019 | 01:51pm |

CASELOAD #: NSI Lopez  PHONE NUMBER: (209) 558-2372  LOCATION: Community Services Facility

ALERTS:

Case Name: Hilda Garcia (aka Perez) / ▉

Allegations: Sexual Abuse /EO

▉ reported that mother Hilda Garcia took her son ▉ to Del Puerto Health Center in Patterson. Mother had a concern that her son has an abnormal rectum. Mother stated that her son told her that his father ▉ is doing things to him in his bottom. ▉ noted that there are custody issues between mother and father regarding son. ▉ is concerned since mother is "unclear" in answering whether or not son has had hard bowel movements or is constipated, so that the doctor could determine if there is medical concern with minor. Minor would not answer questions asked by doctor. At this time, minor was examined by Dr. Rodriguez on 07/03/19 and there are no child abuse concerns.

CMS search shows a P2 for SA on father ▉, assigned to SW Herrera, as closed. Open from 06/26/19-07/03/19. Allegations were unfounded.

Staffed with SWS Brayfield and SW Llamas. Recommendation was E/o.

Rationale: EO since ▉ did not provided any new medical concerns that minor has been sexual abused.

Screener NSI Lopez
LAW ENFORCEMENT AGENCY  POLICE REPORT NUMBER

### HOME ADDRESS

PHONE NUMBER

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 65
Page 1 of 19

EMERGENCY RESPONSE REFERRAL INFORMATION

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850
Page 1 of 19

SER-0730

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/08/2019 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| Tonya Laster | | N5J Laster | (209) 558-2341 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez

REFERRAL NUMBER: 1570-2855-8603-9090505

| [X] EVALUATE OUT | [ ] IMMEDIATE | [ ] 3 DAY | [ ] 5 DAY | [ ] 10 DAY | [ ] N/A SECONDARY REPORT |
|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Laster, Tonya | Social Worker IV | 07/03/2019 | 04:50pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5J Laster | (209) 558-2341 | Community Services Facility | |

ALERTS:
Case Name: Hilda Garcia (aka Perez) / 31-0354535
Allegations: Sexual Abuse- Eval Out

███ reported the mother, Hilda Garcia reported information regarding ███████████████, that mother said she forgot to disclose to a medical provider at an unknown time and date. Hilda reported that ████████████████ asked/motioned to her if the medical professional was going to lick his bottom. ███ reported they are not sure if the mother asked minor if the father, Alfredo Sr had done that to him. However, the mother reported minor stated the father does that to minor. ███ reported the mother was unclear in her information.

Staffed with SWS Brayfield to E/O as another report was made earlier today regarding same incident.
Rationale: Does not rise to the level of investigation. SDM completed.
Screener: T. Laster N5J

LAW ENFORCEMENT AGENCY                    POLICE REPORT NUMBER

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|
| | |

CURRENT LOCATION OF CHILD(REN)

PLAINTIFF'S(S') EXHIBIT
Case Number: 1:21-CV-00841-JAM-KJN
Exhibit Number: 66
Page 1 of 22

...d Welfare Agency    EMERGENCY RESPONSE REFERRAL INFORMATION

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 10/03/2019 |
|---|---|---|---|

| STREET ADDRESS: | 251 East Hackett Road |
|---|---|

| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus |
|---|---|---|

| NAME OF SOCIAL WORKER: | CASELOAD ID : | TELEPHONE |
|---|---|---|
| Margo Norris | Q1C Norris | (209) 558-2305 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez- EO

REFERRAL NUMBER: 0815-5749-5640-7094800

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Norris, Margo | Social Worker V | 07/03/2019 | 07:56pm |

| CASELOAD # | PHONE NUMBER | LOCATION |
|---|---|---|
| Q1C Norris | (209) 558-2305 | Community Services Facility |

ALERTS:

CN: Hilda Perez / ER#-0354535
Allegation: SA Eval Out
MRP reported LE took report P19-007758. RP reported mother picked up minor from the father's house, took minor home, and bathed minor. Mother noticed minor had a scratch on buttocks near rectum. MRP reported per mother, minor said "daddy hurt me." Mother took minor to doctor and doctor stated minor has a small cut on inside of rectum consistent w/ constipation and hard stool.
CMS HX: Family has some hx
Rationale: SA Eval Out as no evidence of SA. Same info reported twice during day-time. SW staffed with on-call Llamas.
Screener: SW Norris, Q1C

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|
| Sheriffs Office:Patterson | P19-007758 |

### HOME ADDRESS

PHONE NUMBER

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

### VICTIM INFORMATION

| NAME | AKA (if applicable) | SOCIAL SECURITY # |
|---|---|---|
| | | |

| DOB | AGE | AGE CODE | SEX | ETHNICITY | LANGUAGE | ICWA ELIGIBILITY |
|---|---|---|---|---|---|---|
| | 5 | Year(s) | M | White* | English | Not Asked |

SCHOOL/DAYCARE NAME

SCHOOL/DAYCARE ADDRESS

| ABUSE CATEGORY (See Screener Narrative Attached) | ALLEGED PERPETRATOR NAME | |
|---|---|---|
| Sexual Abuse | Alfredo Cruz Sosa Sr | |
| CASE WORKER NAME (FOR OPEN CASE) | PHONE # (FOR OPEN CASE) | CASELOAD # |

**PLAINTIFF'S(S') EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**67**
Page __1__ of __22__

nd Welfare Agency
ces
System

**EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with
Penal Code Section 11167.5 and/or
17 and 10850
Page 1 of 11

SER-0732

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/16/2019 |
|---|---|---|---|
| STREET ADDRESS: | 251 East Hackett Road | | |
| CITY AND ZIP CODE: | Modesto, California 95358 | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID : | TELEPHONE |
| April Cobbs | | N9G Cobbs | (209) 558-3953 |

## EMERGENCY RESPONSE REFERRAL INFORMATION

REFERRAL NAME: Hilda Perez

REFERRAL NUMBER: 0568-2388-4351-1140967

| X | EVALUATE OUT | | IMMEDIATE | | 3 DAY | | 5 DAY | | 10 DAY | | N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME | TITLE | | DATE | TIME |
|---|---|---|---|---|
| Cobbs, April | | | 07/10/2019 | 10:54pm |
| CASELOAD # | PHONE NUMBER | LOCATION | | |
| N9G Cobbs | (209) 558-3953 | Community Services Facility | | |

ALERTS:
Sexual Abuse/Path
CN: Hila Perez  31-0354535

Minor
███████████████

███ reported that MOB ,Hilda Perez, took minor █████ (5) to the peditrician on 7/10 because she noticed that the minor's anus was more open than usual after returning from a visit with FOB Alfredo Cruz-Sosa (DOB 12/22/82). ███ reported that MOB  brought minor into Valley Children's Hospital to have minor further assessed. Minor stated FOB gave him a "shot" in his bottom (2 shots) but would not go into further detail. ███ reported that mom stated the minor disclosed that FOB put "spikey things" in my mouth and reported his throat hurts. ███ reported that MOB stated that the minor disclosed that FOB put his mouth on his "nana" referring to his penis. ███ reported that MOB reported there was a temporary restraining order against FOB which was recently lefted. ███ reported that MOB stated that she has been attempting to get full custody of minor but to no avail. ███ reported there were no physical indications of Sexual Abuse but the minor's throat did appear to be irritated. ███ reported that MOB appeared to be very protective and stated she would contact LE. Minor resides with MOB at common address.

Rationale: Evaluate Out as it appears that MOB Hilda Perez doctor shops. The aforementioned referral allegations were last reported on 7/3/19 and were EO'd due to similar concerns. MOB appears to make these allegations as a result of custody issues. ███ reported that there were no physical indicators of sexual abuse and minor was released.

| LAW ENFORCEMENT AGENCY | POLICE REPORT NUMBER |
|---|---|

### HOME ADDRESS

| | PHONE NUMBER |
|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

| State of California Health and Welfare Agency Department of Social Services CWS Case Management System IN-ERREFR (12/93) | EMERGENCY RESPONSE REFERRAL INFORMATION | Confidential in accordance with Penal Code Section 11167.5 and/or 10850 |
|---|---|---|

SER-0733

Page 1 of 11

| NAME OF AGENCY: | Stanislaus County Community Services Agency Child and Family Services | | DATE: 07/11/2019 |
|---|---|---|---|
| STREET ADDRESS: | | | |
| CITY AND ZIP CODE: | | COUNTY: Stanislaus | |
| NAME OF SOCIAL WORKER: | | CASELOAD ID: | TELEPHONE |

## EMERGENCY RESPONSE REFERRAL INFORMATION

| REFERRAL NAME: HIlda Garcia Perez | | | | REFERRAL NUMBER: 1376-0441-0328-7060515 | |
|---|---|---|---|---|---|
| NA EVALUATE OUT | IMMEDIATE | 3 DAY | 5 DAY | X 10 DAY | N/A SECONDARY REPORT |

### SCREENER INFORMATION

| NAME | TITLE | DATE | TIME |
|---|---|---|---|
| Vanderpool, Tiffany | Social Worker IV | 07/11/2019 | 03:10pm |
| CASELOAD # | PHONE NUMBER | LOCATION | |
| N5F Vanderpool | (209) 558-2992 | Community Services Facility | |

ALERTS:

CN: Hilda Garcia (aka Perez) / 31-0354535
emotional abuse / path 2

█████ reported that MOB ,Hilda Perez, took minor ██████ (5) to the pediatrician on 7/10 because she noticed that the minor's anus was more open than usual after returning from a visit with FOB Alfredo Cruz-Sosa (DOB 12/22/82). ████ reported that MOB brought minor into Valley Children's Hospital to have minor further assessed. Minor stated FOB gave him a "shot" in his bottom (2 shots) but would not go into further detail. ████ reported that mom stated the minor disclosed that FOB put "spikey things" in my mouth and reported his throat hurts. ████ reported that MOB stated that the minor disclosed that FOB put his mouth on his "nana" referring to his penis. ████ reported that MOB reported there was a temporary restraining order against FOB which was recently left. ████ reported that MOB stated that she has been attempting to get full custody of minor but to no avail.
Path 2: mother has taken the child to multiple doctors and exposed the child to multiple medical exams for sexual abuse as well as a CAIRE interview where the child did not disclose. Staffed with SWS Brayfield to assign as a path 2.

CMS hx: THERE ARE 34 REFERRALS FOR THIS FAMILY SINCE 2014. This will be the 9th referral for sexual abuse in the past year.

Screener: SW T. Vanderpool N5F
Assigned: SW E. Cortez N1E

LAW ENFORCEMENT AGENCY                                    POLICE REPORT NUMBER

### HOME ADDRESS

| | | PHONE NUMBER |
|---|---|---|

ADDRESS COMMENTS

CURRENT LOCATION OF CHILD(REN)

**PLAINTIFF'S(S')
EXHIBIT**
Case Number:
**1:21-CV-00841-JAM-KJN**
Exhibit Number:
**68**
Page __1__ of __26__

elfare Agency    **EMERGENCY RESPONSE REFERRAL INFORMATION**

Confidential in accordance with Penal Code Section 11187.5 and/or 17 and 10850
SER-0734 Page 1 of 26

Day 2

SUPERIOR COURT OF CALIFORNIA, COUNTY OF STANISLAUS, SITTING AS THE JUVENILE COURT

In Re: PEREZ-BEARD,

No. JVDP-19-000172

Date: 10/08/2019

JUDICIAL OFFICER: AMERAL
CLERK MD C.Luna

REPORTER: Pharr
INTERPRETER

MODESTO, CA
LANGUAGE:        FOR:

APPEARANCES:
[ ] MINOR        ATTY: Lundeberg
[ ] MOTHER       ATTY: Chase
[ ] FATHER       ATTY: Dorsnio
[ ] OTHER        [ ] ATTY:

COUNTY COUNSEL: Cubb
SOCIAL WORKER: Granados
[ ] OTHER:
[ ] OTHER:

THE CASE IS REGULARLY CALLED FOR HEARING:

[ ] Conference held   [ ] Pre-trial hearing held

[ ] Late report filed [ ] defect waived [ ] not waived

[ ] Proper Notice given [ ] not given [ ] defect waived [ ] not waived
[ ] Indian Child Welfare Act [ ] does [ ] does not [ ] unknown if it applies

[ ] Motion to continue by [ ] Court [ ] Agency [ ] Minor / Mother / Father / Guardian for _____
[ ] Good cause appearing continuance is GRANTED - _____
[ ] Motion to continue is DENIED.

[ ] _____ Amended Petition filed [ ] Counsel waives reading of the petition, further advisement of rights and denials entered

[ ] Mother [ ] Father [ ] Guardian advised of the right to counsel.
[ ] Mother [ ] Father [ ] Guardian waives right to counsel
[ ] Court gives [ ] Mother [ ] Father [ ] Guardian the address advisement
[ ] ICWA inquires made.

[ ] Court appoints _____ for _____
[ ] Agency shall serve discovery forthwith.

[ ] Agency shall provide all counsel with log notes from _____ to _____

[ ] At the discretion of the Social Worker the minor may be released to _____ if deemed appropriate.
[ ] _____

JURISDICTION

WITNESSES SWORN: _____

THE COURT MAKES THE FOLLOWING FINDINGS:

EXHIBITS MARKED FOR ID:

[ ] Determines allegation of Petition to be TRUE by a preponderance of the evidence.

Agency: _____ Rec'd _____
Minor: _____ Rec'd _____
Mother: _____ Rec'd _____
Father: _____ Rec'd _____
Guardian: _____ Rec'd _____

[ ] Determines child is a person described by Soc 300 (b) _____ W&I.

[ ] 387 Petition is sustained. The prior disposition is no longer effective.
[ ] Petition is amended on the record. - 1st amended

[ ] NOT TRUE [ ] Petition is DISMISSED for
[ ] Insufficient evidence [ ] Interest of justice
2nd Amended Petition to be filed

THE COURT FINDS:

[ ] Mother [ ] Father [ ] Guardian submits via offer of proof.
[ ] Waiver of Rights form submitted by [ ] Mother [ ] Father [ ] Guardian and filed in open court.
[ ] Mother [ ] Father [ ] Guardian knowingly and intelligently waives each of the rights as explained on the waiver and understands the nature of conduct alleged in the petition and possible consequences

[ ] The court dismisses the petition dated _____ [ ] on the motion of the Agency [ ] 301 W&I contract entered
[ ]
[ ]

TRANSFER

THE COURT ORDERS:

[ ] Case transferred to County of _____
[ ] Mother [ ] Father [ ] Guardian address: _____

CONTINUED / TRAILED TO: _____ at _____ for: [ ] Contested [ ] Jurisdiction [ ] Disposition

NEXT HEARING DATE: _____ at _____ for [ ] Pre-Trial [ ] Paternity [ ] Subpoena Review

HEARING DATE SET FOR: _____ IS VACATED / CONFIRMED.

[ ] Time waiver entered [ ] Previous orders remain in full force and effect [ ] including orders entered in _____ County.

[ ] 387 [ ] 1st [ ] 2nd Amended
PETITION DATED: 8-16-19

[ ] JURISDICTION        [ ] PRETRIAL

EXHIBIT
A31

Form J-300 (2) Revised 4/19

MINUTE ORDER

COS 001381

SER-0735



FILED

JUL 2 9 2019

CLERK OF THE SUPERIOR COURT
COUNTY OF STANISLAUS
BY _____
_____ DEPUTY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF STANISLAUS

In the Matter of N      Pt

A Minor Child

**ORDER OF DETENTION**

CASE NO.   JVDP-19-000172

The above entitled matter came on to be heard this ~~24th~~ 29th day of July 2019, as provided in the Juvenile Court Law of the State of California;

And it now appearing that the Stanislaus County Community Services Agency, through its social workers, before this Court recommends, and this Court finds that the welfare of said person requires that an order be made by the Court vesting the care and custody of this person with the Stanislaus County Community Services Agency, as hereinafter set forth, until further order of this Court, for the protection of such minor.

Now, therefore, it is ordered, adjudged and decreed that said person is placed in the care and custody of said Stanislaus County Community Services Agency, to be held by such agency in suitable placement.

The Stanislaus County Community Services Agency, through its Social Workers may authorize such medical, surgical, dental, mental health, or other remedial care for the minor by licensed practitioners and/or qualified mental health professionals as from time to time appears necessary. The Social Workers may authorize the release of the child/ren's mental health records or information; inspect the mental health records of the minor; and obtain copies of the mental health records of the minor as needed in order to assess and treat the minor and as necessary for decisions to be made regarding custody, visitation, and services.

ORDER OF DETENTION

**EXHIBIT**
**A42**

COS 001413
SER-0736

The Court hereby finds, based upon evidence presented thus far, that this order is not detrimental to the minor(s). This order shall remain in effect until the earlier date of the dispositional hearing, or further order of the Court.

**The health-care provider may refuse to release the records or information of the minor if he or she determines that access to the child's records would have a detrimental effect on the provider's professional relationship with the child or the child's physical safety or psychological well-being. (*CA Health and Safety Code Section 123115.*)**

**The health-care provider shall refuse to release the records or information of the minor if, in the opinion of the provider, the minor is authorized by law to consent to treatment and has not authorized the release of information. (*CA Health & Safety Code Section 112115*).**

Done in open Court this 2̶4̶ 29th day of July 2019

_____
ANN Q. AMERAL
JUDICIAL OFFICER OF THE COURT

ORDER OF DETENTION

COS 001414
SER-0737